

**CORPORATION SERVICE COMPANY·**

# Notice of Service of Process

**BZS / ALL**
**Transmittal Number: 4407637**
**Date Processed: 03/24/2006**

| | |
|---|---|
| **Primary Contact:** | SOP Scan - CC - Entertainment<br>SOP - PowerBrief - Wilmington<br>Sop - Scan<br>Suite 400 2711 Centerville Road<br>Wilmington, DE 19808 |

| | |
|---|---|
| **Entity:** | SFX Sports Group, Inc.<br>Entity ID Number  1957575 |
| **Entity Served:** | SFX Sports Group, Inc. |
| **Title of Action:** | Audrey (Shebby) D'Onofrio vs. SFX Sports Group, Inc. |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Discrimination |
| **Court:** | Superior Court Civil Division, District Of Columbia |
| **Case Number:** | 06-0002143 |
| **Jurisdiction Served:** | District Of Columbia |
| **Date Served on CSC:** | 03/23/2006 |
| **Answer or Appearance Due:** | 20 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Certified Mail |
| **Plaintiff's Attorney:** | David E. Schreiber<br>301-951-1530 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

2711 Centerville Road   Wilmington, DE 19808   (888) 690-2882  |  sop@cscinfo.com

# David E. Schreiber, P.C.

*Attorney at Law*

*4550 Montgomery Avenue, Suite 760 N, Bethesda, Maryland 20814-3304*

*Area Code 301-951-1590    Facsimile 301-951-1599*

March 20, 2006

**CERTIFIED MAIL, R.R.R.:**

Corporation Service Co.
1090 Vermont Ave., N.W.
Washington, D.C. 20005

> Re:  D'Onofrio v. SFX Sports Group, Inc., et. al
> Case No. 2006CA002143 B

Dear Sir/Madam:

Please be advised that I represent the Plaintiff, Ms. Audrey (Shebby) D'Onofrio, with respect to the above referenced matter. Your company is listed as registered agent for the defendant, SFX SPORTS GROUP, INC. Enclosed is a District of Columbia Superior Court summons, complaint and initial order to be served on the defendant. Please be further advised that this letter is written without prejudice to my client's legal rights and interests. Thank you.

Very truly yours,

DAVID E. SCHREIBER, P.C.

By: _____
David E. Schreiber, Esq.

Enclosure
DES/jf
cc:    Ms. Audrey (Shebby) D'Onofrio

C:\MyFiles\CLIENTS\Shebby\Letters\Corp Service SFX.wpd



# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

AUDREY D'ONOFRIO
    Vs.                                    C.A. No.    2006 CA 002143 B
SFX SPORTS GROUP INC

## INITIAL ORDER

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("SCR Civ") 40-I, it is hereby **ORDERED** as follows:

(1) Effective this date, this case has assigned to the individual calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption. On filing any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of serving on each defendant: copies of the Summons, the Complaint, and this Initial Order, and any General Order issued **by the judge** to whom the case is assigned. As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in SCR Civ 4(o).

(3) Within 20 days of service as described above, except as otherwise noted in SCR Civ 12, each defendant must respond to the Complaint by filing an Answer or other responsive pleading. As to the defendant who has failed to respond, a default and judgment will be entered unless the time to respond has been extended as provided in SCR Civ 55(a).

(4) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge at an Initial Scheduling and Settlement Conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients **prior** to the conference whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this Conference.**

(5) Upon advice that the date noted below is inconvenient for any party or counsel, the Civil Assignment Office (202) 879-1750 may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. Request must be made not less than six business days before the scheduling conference date. No other continuance of the conference will be granted except upon motion for good cause shown.

Chief Judge Rufus G. King, III

Case Assigned to: Judge GERALD I FISHER
Date:  March 17, 2006
Initial Conference: 9:30 am, Friday, June 16, 2006
Location:  Courtroom A-50
          515 5th Street N.W.
          WASHINGTON, DC 20001

Caio.doc

CA Form 1

# Superior Court of the District of Columbia

## CIVIL DIVISION
### 500 Indiana Avenue, N.W.,  Room JM-170
### Washington, D.C. 20001  Telephone: 879-1133

Audrey (Shebby) D'Onofrio

*Plaintiff*

vs.

SFX Sports Group, Inc., et. al
5335 Wisconsin Ave., NW *Defendant*
Suite 850
Washington, DC 20015

06-0002143

Civil Action No. _____

## SUMMONS

To the above named Defendant:

    You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

    You are also required to file the original Answer with the Court in Room JM 170 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

*Clerk of the Court*

David E. Schreiber
Name of Plaintiff's Attorney

4550 Montgomery Ave., Ste 760N
Address

Bethesda, MD 20814

301-951-1530
Telephone

By _____
Deputy Clerk

Date _____

**PUEDE OBTENERSE COPIAS DE ESTE FORMULARIO EN ESPANOL EN EL TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA, 500 INDIANA AVENUE, N.W., SALA JM 170**

**YOU MAY OBTAIN A COPY OF THIS FORM IN SPANISH AT THE SUPERIOR COURT OF D.C., 500 INDIANA AVENUE, N.W., ROOM JM 170**

NOTE: SEE IMPORTANT INFORMATION ON BACK OF THIS FORM.

CV(6)-456/May 83

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, *DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME*.

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (624-1161) or the Neighborhood Legal Services (682-2700) for help or come to Room JM 170 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

# Superior Court of the District of Columbia
## CIVIL DIVISION — CIVIL ACTIONS BRANCH

## INFORMATION SHEET

Audrey (Shebby) D'Onofrio

vs.

SFX Sports Group, Inc., et. al

Case Number: _____

Date: 3-13-03

---

**Name:**  *(please print)*
David E. Schreiber

**Firm Name:**
David E. Schreiber, P.C.

**Telephone No.:**       **Unified Bar No.:**
301-951-1530       152086

**Relationship to Lawsuit**

☒ Attorney for Plaintiff

☐ Self (Pro Se)

Other: _____

**TYPE OF CASE:**   ☐ Non-Jury      ☐ 6 Person Jury      ☒ 12 Person Jury

Demand: $ ___TBD___      Other: __Reinstatement__

**PENDING CASE(S) RELATED TO THE ACTION BEING FILED**

Case No. _____ Judge _____ Calendar # _____

Case No. _____ Judge _____ Calendar # _____

---

**NATURE OF SUIT:**   *(Check One Box Only)*

**A. CONTRACTS**

| | | **COLLECTION CASES** |
|---|---|---|
| ☐ 01 Breach of Contract | ☐ 07 Personal Property | ☐ 14 Under $25,000 Pltf. Grants Consent |
| ☐ 02 Breach of Warranty | ☐ 09 Real Property-Real Estate | ☐ 16 Under $25,000 Consent Denied |
| ☐ 06 Negotiable Instrument | ☐ 12 Specific Performance | ☐ 17 OVER $25,000 |
| ☐ 15 Other: _____ | | |

**B. PROPERTY TORTS**

| | | |
|---|---|---|
| ☐ 01 Automobile | ☐ 03 Destruction of Private Property | ☐ 05 Trespass |
| ☐ 02 Conversion | ☐ 04 Property Damage | ☐ 06 Other: _____ |
| ☐ 07 Shoplifting, D.C. Code § 3-441 | | |

**C. PERSONAL TORTS**

| | | |
|---|---|---|
| ☐ 01 Abuse of Process | ☒ 09 Harassment | ☐ 17 Personal Injury |
| ☐ 02 Alienation of Affection | ☐ 10 Invasion of Privacy | ☐ 18 Wrongful Death |
| ☐ 03 Assault and Battery | ☐ 11 Libel and Slander | ☐ 19 Wrongful Eviction |
| ☐ 04 Automobile | ☐ 12 Malicious Interference | ☒ 20 Other: Discrimination |
| ☐ 05 Deceit (Misrepresentation) | ☐ 13 Malicious Prosecution | ☐ 21 Asbestos |
| ☐ 06 False Accusation | ☐ 14 Malpractice Legal | ☐ 22 Toxic/Mass Torts |
| ☐ 07 False Arrest | ☐ 15 Malpractice Medical | |
| ☐ 08 Fraud | ☐ 16 Negligence | |

**SEE REVERSE SIDE AND CHECK HERE** ☐ **IF USED**

Form CV(6)-496/Feb. 95                                               5-0993-1 wd-354

## INFORMATION SHEET, Continued

**D. OTHERS**

I.
- ☐ 01 Accounting
- ☐ 02 Att. Before Judgment
- ☐ 04 Condemnation (Emin. Domain)
- ☐ 05 Ejectment
- ☐ 07 **Insurance/Subrogation Under $25,000 Pltf. Grants Consent**
- ☐ 08 Quiet Title
- ☐ 09 Special Writ (Specify)

  _____

- ☐ 10 T.R.O./Injunction
- ☐ 11 Writ of Replevin
- ☐ 12 Enforce Mechanics Lien
- ☐ 16 Declaratory Judgment
- ☐ 17 Merit Personnel Act (D.C. Code Title 1, Chapter 6)
- ☐ 18 Product Liability
- ☐ 24 Application to Confirm, Modify, Vacate Arbitration Award (D.C. Code 16-4315)

- ☐ 25 Other: _____
- ☐ 26 **Insurance/Subrogation Under $25,000 Consent Denied**
- ☐ 27 **Insurance/Subrogation Over $25,000**

II.
- ☐ 03 Change of Name
- ☐ 06 Foreign Judgment
- ☐ 13 Correction of Birth Certificate
- ☐ 14 Correction of Marriage Certificate

- ☐ 15 Libel of Information
- ☐ 19 Enter Administrative Order as Judgment [6-2713(h) or 36-319(a)]
- ☐ 20 Master Meter (D.C. Code 43-541, et seq.)

- ☐ 21 Petition for Subpoena [Rule 28-I(b)]
- ☐ 22 Release Mechanics Lien
- ☐ 23 Rule 27 (a)(I) (Perpetuate Testimony)

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

AUDREY (SHEBBY) D'ONOFRIO                      *
    1450 Emerson Ave., #309                 *
    McLean, VA 22101                        *
                                            *
        PLAINTIFF                   *
                                            *          C.A. No.:    06-0002143
v.                                             *
                                            *
SFX SPORTS GROUP, INC.                         *
    5335 Wisconsin Ave., N.W.               *
    Suite 850                               *
    Washington, DC 20015                    *
    Serve: Corporation Service Co.          *
    1090 Vermont Ave., N.W.                 *
    Washington, D.C. 20005                  *
                                            *
AND                                            *
                                            *
LIVE NATION, INC.                              *
    (Formerly CEE Spinco, Inc., or          *
    Clear Channel Communications,           *
    Inc.)                                   *
    9348 Civic Center Dr.                   *
    Beverley Hills, CA 90210                *
    and/or                                  *
    2000 West Loop South,                   *
    Suite 1300,                             *
    Houston, TX 77027                       *
                                            *
AND                                            *
                                            *
CLEAR CHANNEL COMMUNICATIONS                   *
    INC., (aka Clear Channel                *
    Entertainment and CEE Spinco,           *
    Inc.)                                   *
    200 Basse Road                          *
    San Antonio, TX 78209                   *
    Serve: Corporation Service Co.          *
    1090 Vermont Ave., N.W.                 *
    Washington, D.C. 20005                  *
                                            *

RECEIVED
Civil Clerk's Office

MAR 1 7 2006

Superior Court of the
District of Columbia
Washington, D.C.

1

AND                                          \*

                                              \*

JOHN DOES 1- 5, employees of     \*
     CEE Spinco, Inc., Clear Channel \*
     Entertainment, Inc., Live Nation,  \*
     Inc., and/or SFX Sports Group,   \*
     Inc.                                \*

                                              \*

                DEFENDANTS    \*

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## COMPLAINT

The Plaintiff, **AUDREY (SHEBBY) D'ONOFRIO,** by and through her undersigned counsel, **David E. Schreiber, Esq.**, states to this court as follows:

## PARTIES

1.    Plaintiff, Audrey (Shebby) D'Onofrio, (hereinafter, at times, "Plaintiff" or "Ms. D'Onofrio") is currently a resident of the Commonwealth of Virginia, previously was a resident of the District of Columbia, at all times relevant herein and was an employee of SFX Sports Group, Inc.

2.    Defendant, SFX Sports Group, Inc., (hereinafter, at times, "SFX") is a corporation organized and existing under the laws of the State of Delaware, with its principal offices in the District of Columbia, and does business in the District of Columbia. It is currently a wholly owned subsidiary of Live Nation, Inc. At times, it has done business as "Clear Channel Entertainment".

3.    Defendant, Clear Channel Communications, Inc. (hereinafter, at times, "Clear Channel"), is a corporation organized and existing under the laws of the State of Texas, with its principal place of business at 200 Basse Road, San Antonio, TX 78209. It was the parent of SFX Sports Group, Inc. during the course of events

course of events described herein. The current parent of SFX Sports Group, Inc. is Defendant, LIVE NATION INC., a corporation organized and existing under the laws of the State of Delaware. Subsequent to the events and claims described herein, Clear Channel became Live Nation, Inc. through a tax free exchange of stock involving its subsidiary, CEE Spinco, Inc., a Delaware corporation. All defendant corporations are named as parties since the ownership and operation of all defendant corporations includes overlapping or common directors, officers and executives, at least in part, such that the claims noted herein may be attributable to those individuals in a variety of their capacities.

4.     Defendants, JOHN DOES, Numbers 1 through 5, are officers, directors and employees of Defendants, SFX Sports Group, Inc., CLEAR CHANNEL COMMUNICATIONS and LIVE NATION, INC.[1] who were responsible and/or involved in the discriminatory actions, etc., noted herein.

5.     In this action, the Plaintiff challenges the discriminatory actions of the Defendants, her unequal compensation, her diminished corporate title and stature, their retaliation against her for her protected activities and her wrongful termination from the position of Senior Director of Public Relations for Defendant, SFX Sports Group, Inc.

6.     Ms. D'Onofrio, the Plaintiff, who was highly qualified for the position she held, and was highly effective in that position, suffered discrimination and disparate treatment based upon her gender in that she was not fairly compensated, having

---

[1]As well as possibly CEE SPINCO, INC.

3

been paid less than the Defendants' male employees who worked in the same or similar positions with similar duties and who performed similar amounts of work. Defendants further discriminated and treated Ms. D'Onofrio in a disparate manner based on her gender, by virtue of her being pregnant, her perceived disability as a result thereof, and by subjecting her to a hostile work environment, all of which culminated in Defendants' termination of Ms. D'Onofrio. Ms. D'Onofrio complained repeatedly to her superiors about her treatment, the unequal pay, and the hostility shown toward her. As a result of her protected activities, the Defendants retaliated by firing her. Ms. D'Onofrio seeks, among other relief, back pay and front pay (based upon a salary equal to a male employee(s) who were in her position), compensatory and punitive damages and a permanent injunction/specific performance, including reinstating her to her employment, retroactively changing her job title to Vice President of Public Relations, and compensating her at a salary commensurate with her position.

### JURISDICTION AND VENUE:

7. This Court has jurisdiction of this action pursuant to 11 D.C. Code §921, the District of Columbia Human Rights Act, Title 2, Chapter 14 and the D.C. Family Medical Leave Act, 32 D.C. Code §510. The jurisdiction of the Equal Pay Act claim arises under 29 U.S.C. 216(b).

8. Venue is properly laid in the District of Columbia because, among other reasons, the Plaintiff's claims arise from events and occurrences that principally occurred in this location/district.

4

## STATEMENT OF FACTS:

9.      In May 2000, Audrey (Shebby) D'Onofrio was hired as the Senior Director of Public Relations at SFX Sports Group, Inc., by Bill Allard (Chief Operating Officer) and Howard Schaecter (Vice President of Public Relations).  At that time, Ms. D'Onofrio was told that Mr. Schaecter may be moving to the "Entertainment" branch of SFX, and if he did, that she would be promoted to his position.

10.     A few months later, Mr. Schaecter was moved to the "Entertainment" branch of the company and Ms. D'Onofrio ascended to Mr. Schaecter's former role, but she was not given the corresponding change in title or an equivalent salary.  Mr. Schaecter made it clear to Ms. D'Onofrio that he was not comfortable with her having the same job title/position as him, that being Vice President, despite the fact that he no longer worked at SFX Sports, Group, Inc.  However, even after Mr. Schaecter was subsequently made a Senior Vice President, Ms. D'Onofrio was still not given the title of Vice President nor was she given an equivalent salary.

11.     In September 2000, Ms. D'Onofrio went to a Clear Channel (the parent of SFX) executive retreat in Florida as the only woman from SFX.  Ms. D'Onofrio was excluded from nightly activities and important meetings.  Ms. D'Onofrio was humiliated by their treatment, but continued to ask to be included in meetings, with much resistance from SFX executives.  Frequently, the nightly activities included going to "strip clubs", which the executives claimed was why she was not allowed to attend.  Typically, 10-15 people (department heads) were invited

to attend this annual retreat. After expressing displeasure with her treatment at the conference, Ms. D'Onofrio was never invited again. Additionally, Ms. D'Onofrio was excluded from the company's quarterly meetings, and other important corporate meetings, in which her predecessor, Mr. Schaecter, was regularly included.

12.    In the summer of 2001, Ms. D'Onofrio raised serious ethical concerns she had with then SFX Chairman and CEO, David Falk, regarding an upcoming publicity campaign for the Sporting News's list of most powerful people in sports. This resulted in a serious disagreement between Ms. D'Onofrio and Mr. Falk.

13.    Shortly after the disagreement with Mr. Falk SFX was reorganized and Mr. Allard was terminated. At this time Ms. D'Onofrio was informed that her position was to be eliminated. Upon information and belief, Ms. D'Onofrio avers that the decision to eliminate her position was in retaliation for her "disagreement" with Mr. Falk. Ms. D'Onofrio was offered a position working for Mr. Schaecter in New York, to work with him in the Entertainment branch of the company as a "promotion". Ms. D'Onofrio declined Mr. Schaecter's offer, which angered him. After declining the offer, she was retained for 30 days and was given two-and-a-half month's severance pay with additional insurance coverage. Ms. D'Onofrio spent those last 30 days finishing up all of her projects and giving agents instructions on how to handle their clients' public relations without her.

14.    After leaving SFX, Ms. D'Onofrio was continually contacted by SFX agents for help with public relations matters. Ms. D'Onofrio essentially was performing the

same job from home but with no compensation. Within a few months of departing, Ms. D'Onofrio was told by members of SFX management that SFX wanted her back, but that Mr. Schaecter was opposed. Several months later, in 2002, and after Mr. Falk took on a more ceremonial position at the company, Robert Urbach, then an SFX Executive Vice President, contacted Ms. D'Onofrio and asked her to return to the company in her former capacity. Ms. D'Onofrio was told that if she returned, she would not be required to report to, or even communicate with, Mr. Schaecter. Upon information and belief, Mr. Schaecter tried to prevent her return, but an offer was extended to her. However, prior to her return, Ms. D'Onofrio wished to clarify her position and salary. Ms. D'Onofrio was ultimately told by Mr. Urbach that if she "played ball," the title would be changed in a few months to Vice President, with a commensurate increase in salary. Ms. D'Onofrio accepted the offer to return based upon that understanding. Shortly after her return to SFX, Ms. D'Onofrio once again pressed the salary and title issue, requesting to be a Vice President, but she was told that some of the men in the office would be unhappy since they did not receive promotions that year.[2] Ms. D'Onofrio persisted, saying that it would not be a promotion, only assigning the correct title to her position.

15.    After Ms. D'Onofrio was rehired, she continued to raise the issue of her compensation and title. Subsequent to her return the terms of the "understanding" upon which she relied for her return were "modified". She was

---

[2]During Ms. D'Onofrio's tenure at SFX, several men were promoted while

told that the compensation and title change was "in the works" and to be patient. She was further told that if she could accomplish different public relations milestones, she would receive the salary and title change, but these promises also went unfulfilled, despite achieving such milestones. At one point, Mr. Urbach, her direct supervisor, informed her that he submitted the paperwork for her title and salary increase, but again, upper management did not act on his recommendation and there was never any change in her compensation or title.

16. In December 2004, Mr. Urbach left SFX, so Ms. D'Onofrio asked her new supervisor, Peter Hughes, about her compensation and title, and he said he would "look into it". Ms. D'Onofrio also approached SFX's Corporate Counsel, Michael Principe, about the salary and title issue, expressing that she could even be satisfied *at that time* with simply the title change and no corresponding increase in salary (which she believed would come about as a result of the title change). He said that he would talk to Arn Tellem, Chief Executive Officer and President, when he visited Mr. Tellem at his Los Angeles office during the spring of 2005, and that it should not be a problem. Once again, however, no change was ever made to Ms. D'Onofrio's compensation or title.

17. In March 2005, Ms. D'Onofrio did not receive a bonus, which she had received previously during each year of her employment, despite the fact that she was told she would receive one. Ms. D'Onofrio had more than satisfactorily completed another significant year of work and was even nominated for a company wide

---

she remained stagnant in the same position.

performance award.  Mr. Principe told her that the company forgot to inform her that she would not receive a bonus; that only employees with bonuses written in their contracts would be eligible.

18.  In August 2005, Ms. D'Onofrio informed Alaka Williams, the Human Resources Manager at Clear Channel who was assigned to SFX Sports Group, Inc., that she was pregnant.   Some weeks later, Ms. D'Onofrio again spoke to Ms. Williams about her pregnancy and her resulting medical condition. Ms. D'Onofrio was having a difficult pregnancy and was experiencing several serious medical issues.   Ms. D'Onofrio also made several other SFX and Clear Channel executives aware of her pregnancy related problems at various times during August and September, 2005.  Ms. D'Onofrio informed Ms. Williams that her OB/GYN, Dr. Patricia Bannon, thought it was in her best interest to go on disability as her medical issues made working unsafe.  In light of her physician's advice, Ms. D'Onofrio asked Ms. Williams, on or about September 22nd or 23rd, 2005, to provide the necessary disability paperwork for her to complete, in order to go on disability.

19.  The following Monday, September 26, 2005, Ms. D'Onofrio  had a conversation with Jeff Newman, the SFX Events Director, about whether or not she intended to return to the company after her pregnancy.  This conversation took place on the sidewalk in front of the SFX Sports Group offices.   Ms. D'Onofrio assured Mr. Newman that she intended to return to work after her pregnancy. While this conversation was taking place, Ms. Williams walked by and asked if Ms.

9

D'Onofrio was planning on returning to the office later that day.  Ms. D'Onofrio stated that she would return after lunch and then asked if Ms. Williams had the disability paperwork available.  Ms. Williams said she had the paperwork and that she would bring it to Ms. D'Onofrio's office.  Ms. D'Onofrio then went to lunch, but, as a consequence of her pregnancy, began feeling ill and decided to go home for the day.  Ms. D'Onofrio left Ms. Williams a message indicating that she had to go home due to illness, but that Ms. Williams could still leave the paperwork on her desk.

20.     Later that afternoon, Ms. D'Onofrio received a voice-mail message from Ms. Williams, asking her to return to the office immediately to discuss the disability paperwork.  Ms. D'Onofrio attempted to reach Ms. Williams by phone, but was unsuccessful.   Ms. Williams then called back about 20 minutes later, with Kimberly Wray, the head of Clear Channel Human Resources, also on the phone.  They told her that due to changes in the company, there was no longer a need for a public relations function, such that her position was to be eliminated effective that day.  Ms. Williams and Ms. Wray told Ms. D'Onofrio that they were sending her a severance package via overnight delivery.  When Ms. D'Onofrio requested that they explain the severance package further, Ms. Williams and Ms. Wray offered to read portions of the severance package over the telephone.  She was told that she the terms of the package stated that she would receive $10,800.00, minus taxes and no additional insurance coverage, if she agreed not to sue.  Ms. D'Onofrio did not comment any further on the severance package,

10

but asked if they wanted her to finish her current projects, and they said that they would let her know if they did. Ms. Williams and Ms. Wray never called to discuss having Ms. D'Onofrio finish any existing project.

21. Immediately after her phone conversation with Ms. Williams and Ms. Wray, Ms. D'Onofrio called Kenneth Meyerson, the President of SFX Tennis, and informed him of her termination. Mr. Meyerson said he was shocked and had no idea that terminating her position was included in any changes to the company. (SFX had planned on changing some of its departments, but Public Relations was never included in that plan.) Mr. Meyerson also expressed concern as to how the public relations function for his clients would be served in light of Ms. D'Onofrio's departure.

22. Immediately after her telephone conversation with Mr. Meyerson, Ms. D'Onofrio called Bud Martin, a Principal of SFX Golf, and informed him of her termination. He, too, was shocked and had no idea that her position was to be eliminated.

23. After her phone conversation with Mr. Martin, Ms. D'Onofrio received a call from her assistant, Tim Yowpa, who told her that he had been let go from the company because it purportedly did not have a need for a public relations function anymore.

24. Ms. D'Onofrio then called Mr. Newman, the SFX Events Director, to inform him of her termination. He told her that he had no idea that she was to be terminated and that he thought she had done a great job. In addition, Mr. Newman was concerned about one of his events on which Ms. D'Onofrio was working, and he

11

asked her if she would consider consulting for him. Ms. D'Onofrio said that she would think about it and would try to help him on the event.

25.     On the night of September 26, 2005, Ms. D'Onofrio received a call from John Kim, an SFX Baseball agent, who also said he had recently heard about her termination and was sorry. He, too, had no prior knowledge that Ms. D'Onofrio was to be terminated.

26.     From Tuesday morning, September 27, 2005, through Thursday morning, September 29, 2005, Ms. D'Onofrio attempted to call Ms. Williams or anyone in Ms. Williams' office at Clear Channel. Ms. D'Onofrio never received a return call from anyone at Human Resources at Clear Channel during that period of time.

27.     On Thursday, September 29, 2005, Ms. Williams finally called Ms. D'Onofrio after she had left another message that day. Ms. D'Onofrio indicated that she wanted to come to the office to retrieve her personal belongings. They agreed that Ms. D'Onofrio could do so on Friday, September 29, 2005.   Ms. D'Onofrio came in that Friday, packed up her office, and said goodbye to former co-workers and also showed Ms. Williams the locations of various public relations files, records and related materials.

28.     On September 29, 2005, Mr. Newman contacted Ms. D'Onofrio about consulting on one of his tennis events, on which she had been working. He also indicated his displeasure with her sudden and unexpected termination. Ms. D'Onofrio said that she would consider the consulting assignment, provided that it had been approved by SFX Sports and Clear Channel. Mr. Newman later informed her

that Dan Rosier, the SFX Controller, was aware of the situation and said it was agreeable. However, due to medical concerns, Ms. D'Onofrio ultimately declined Mr. Newman's proposed consulting assignment.

29.     On Tuesday, October 27, 2005, Clear Channel issued a press release, stating that although Mr. Tellem was leaving the company in December, 2005, SFX would continue business with the current divisional management team. Although the press release also stated that SFX had lain off various underperforming units, Public Relations had never been considered an underperforming unit and was not even a "for profit" area of the company.

30.     During the week of Ms. D'Onofrio's termination, SFX had changed the contact name on her written press releases to that of Lowell Taub, one of the company's agents. Although all of the releases had been written before Ms. D'Onofrio was terminated, Mr. Taub subsequently was listed as the company's public relations contact. Mr. Taub's name was removed from the press releases and the web site as the public relations contact after SFX was notified that Ms. D'Onofrio rejected their proposed severance package and had retained legal counsel. Upon information and belief, Ms. D'Onofrio's position has been taken over by various individuals/employees at SFX since the company's principal function is the promotion of professional athletes by way of various marketing and public relations strategies.

## COUNT I
## (DISCRIMINATION BASED ON PREGNANCY)

31.     Plaintiff repeats the allegations contained in paragraphs 1 through 30 as though

set forth fully and at length herein.

32.    This action arises under the District of Columbia Human Rights Act, Title 2,

Chapter 14, Subchapter I, § 2-1401.05 (b), which states as follows:

Women affected by pregnancy, childbirth, or related medical conditions shall be
treated the same for all employment-related purposes, including receipt of
benefits under fringe benefit programs, as other persons not so affected but
similar in their ability or inability to work, and this requirement shall include, but
not be limited to, a requirement that an employer must treat an employee
temporarily unable to perform the functions of her job because of her pregnancy-
related condition in the same manner as it treats other temporarily disabled
employees.

Further, D.C. Code 2001, § 2-1402.11(a) (1) states as follows:

It shall be an unlawful discriminatory practice to do any of the following acts,
wholly or partially for a discriminatory reason based upon the race, color, religion,
national origin, sex, age, marital status, personal appearance, sexual orientation,
family responsibilities, disability, matriculation, or political affiliation of any
individual:
    (1) *By an employer.* – To fail or refuse to hire, or to discharge, any
    individual; or otherwise to discriminate against any individual, with respect
    to his compensation, terms, conditions, or privileges of employment,
    including promotions; or to limit, segregate, or classify his employees in
    any way which would deprive or tend to deprive any individual of
    employment opportunities, or otherwise adversely affect his status as an
    employee.

33.    Defendants, as well as through their agents, servants and/or employees, violated

the District of Columbia Human Rights Act in that they terminated and

discriminated against Plaintiff, Ms. D'Onofrio, because of her pregnancy as well

as her request to go on disability as a result of her pregnancy and her

pregnancy-related medical conditions.    Ms. D'Onofrio was pregnant, was

qualified for her position, was adversely affected by the decision to terminate her,

which was directly related to her pregnancy, her position remained open and/or

14

was filled by others with less relevant experience that were not pregnant.

34.  As a direct and proximate result of Defendants' actions, Plaintiff has suffered loss
of income and other employment benefits, mental anguish, emotional distress,
personal humiliation, indignity, embarrassment, inconvenience, stigma, pain and
suffering, and damage to her personal and professional reputation justifying an
award including, but not limited to, reinstatement to her position, reinstatement of
her seniority rights, lost income (back and front pay at an appropriate salary),
interest on lost income, restoration of lost benefits, compensatory and punitive
damages.

WHEREFORE, the premises considered, the Plaintiff demands relief as
specified hereinafter.

## COUNT II
## (DISCRIMINATION BASED ON GENDER)

35.  Plaintiff repeats the allegations contained in paragraphs 1 through 34 as though
set forth fully and at length herein.

36.  This action arises under the District of Columbia Human Rights Act, Title 2,
Chapter 14, Subchapter II, Part B, § 2-1402.11(a)(1), which states as follows:

It shall be an unlawful discriminatory practice to do any of the following acts,
wholly or partially for a discriminatory reason based upon the race, color, religion,
national origin, sex, age, marital status, personal appearance, sexual orientation,
family responsibilities, disability, matriculation, or political affiliation of any
individual:

(1) *By an employer.* – To fail or refuse to hire, or to discharge, any
individual; or otherwise to discriminate against any individual, with respect
to his compensation, terms, conditions, or privileges of employment,
including promotions; or to limit, segregate, or classify his employees in
any way which would deprive or tend to deprive any individual of
employment opportunities, or otherwise adversely affect his status as an

15

employee.

37.    Defendants, as well as through their agents, servants and/or employees, violated the District of Columbia Human Rights Act in that they terminated Ms. D'Onofrio and discriminated against the Plaintiff, by virtue of her gender in that as a woman, she repeatedly requested and was denied a change in her compensation package equal that of similarly situated and/or performing males, a change in her title from Senior Director to Vice President, to accurately reflect the quality of work she performed while other, similarly-situated male employees, received promotions with corresponding changes in job titles and compensation; Plaintiff was not paid an equivalent salary equal to similarly-situated male employees in the Defendant organization; Plaintiff was subjected to disparate treatment with respect to opportunities within the Defendant organization in that she was excluded from conferences, meetings, retreats and the like, which were necessary for her to succeed and advance in Defendant's organization; and Plaintiff was subjected to a continuous severe or pervasive hostile work environment.  Ms. D'Onofrio was a member of a protected class (female), was qualified for the job from which she was terminated, the termination occurred despite her employment qualifications, and the termination was based upon the characteristic that placed her in the protected class.  Her employer had no bona fide reason for her termination.

38.    As a direct and proximate result of Defendants' actions, Plaintiff has suffered loss of income and other employment benefits, together with mental anguish,

16

emotional distress, personal humiliation, indignity, embarrassment, inconvenience, stigma, pain and suffering, and damage to her personal and professional reputation justifying an award including, but not limited to, reinstatement to her position, reinstatement of her seniority rights, reclassification of her position to that commensurate with its responsibility (Vice President), lost income (back and front pay at an appropriate salary), interest on lost income, restoration of lost benefits, compensatory and punitive damages.

WHEREFORE, the premises considered, the Plaintiff demands relief as specified hereinafter.

## COUNT III
## (DISCRIMINATION BASED ON DISABILITY)

39.    Plaintiff repeats the allegations contained in paragraphs 1 through 38 as though set forth fully and at length herein.

40.    This action arises under the District of Columbia Human Rights Act, Title 2, Chapter 14, Subchapter II, Part B, § 2-1402.11(a)(1), which states as follows:

It shall be an unlawful discriminatory practice to do any of the following acts, wholly or partially for a discriminatory reason based upon the race, color, religion, national origin, sex, age, marital status, personal appearance, sexual orientation, family responsibilities, disability, matriculation, or political affiliation of any individual:
(1) *By an employer.* – To fail or refuse to hire, or to discharge, any individual; or otherwise to discriminate against any individual, with respect to his compensation, terms, conditions, or privileges of employment, including promotions; or to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities, or otherwise adversely affect his status as an employee.

41.    Defendants, as well as through their agents, servants and/or employees, violated

17

this section of the District of Columbia Human Rights Act in that they terminated and discriminated against Plaintiff by virtue of regarding her as disabled by virtue of her request to go on short term disability leave due to her pregnancy and pregnancy-related medical conditions, despite her willingness and ability to perform her job responsibilities and functions from home, when her pregnancy related medical conditions prevented her from working from her office.

42. As a direct and proximate result of Defendants' actions, Plaintiff has suffered loss of income and other employment benefits, together with mental anguish, emotional distress, personal humiliation, indignity, embarrassment, inconvenience, stigma, pain and suffering, and damage to her personal and professional reputation justifying an award including, but not limited to, reinstatement to her position, reinstatement of her seniority rights, reclassification of her position to that commensurate with its responsibility (Vice President), lost income (back and front pay at an appropriate salary), interest on lost income, restoration of lost benefits, compensatory and punitive damages.

WHEREFORE, the premises considered, the Plaintiff demands relief as specified hereinafter.

## COUNT IV
## (UNEQUAL PAY)

43. Plaintiff repeats the allegations contained in paragraphs 1 through 42 as though set forth fully and at length herein.

44. This action arises under the Equal Pay Act, 29 U.S.C.A. § 206(d) (1), which states as follows:

18

No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (I) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex: Provided, That an employer who is paying a wage rate differential in violation of this subsection shall not, in order to comply with the provisions of this subsection, reduce the wage rate of any employee.

45.    Defendants, as well as through their agents, servants and employees, violated the Equal Pay Act in that they discriminated against Plaintiff by refusing to give her the correct job title (and corresponding compensation) of Vice President for the nature, quantity, and quality of her work while paying greater salaries to and/or promoting similarly-situated male employees, who did not perform a higher quantity or quality of work, to higher positions, such as Vice President, with the corresponding increases in salary. Additionally, Plaintiff's predecessor as Vice President of Public Relations was compensated more than her despite the fact that she performed the responsibilities and functions of the position at a higher level.

46.    As a direct and proximate result of Defendants' actions, Plaintiff has suffered loss of income and other employment benefits, together with mental anguish, emotional distress, personal humiliation, indignity, embarrassment, inconvenience, stigma, pain and suffering, and damage to her personal and professional reputation justifying an award including, but not limited to,

19

reinstatement to her position, reinstatement of her seniority rights, reclassification of her position to that commensurate with its responsibility (Vice President), lost income (back and front pay at an appropriate salary), interest on lost income, restoration of lost benefits, compensatory and punitive damages.

WHEREFORE, the premises considered, the Plaintiff demands relief as specified hereinafter.

### COUNT V
### (RETALIATION)

47.    Plaintiff repeats the allegations contained in paragraphs 1 through 46 as though set forth fully and at length herein.

48.    Ms. D'Onofrio repeatedly complained about the Defendants' actions toward her, including but not limited to their hostility, their gender discrimination, and her unequal pay and job title, which constituted protected activity.  Furthermore, Ms. D'Onofrio engaged in protected activity by virtue of her request for short term disability leave due to her medical condition arising out of her pregnancy.  As a result of her protected activities, Defendants wrongfully terminated Plaintiff because of her pregnancy, her gender, her pregnancy-related medical conditions, and because of her continual requests to receive the compensation and appropriate job title for the quantity and quality of her work, under the pretext of restructuring SFX.  Although there had been plans to restructure unrelated divisions or portions of SFX, particularly in its New York City office, Public Relations, Plaintiff's area of responsibility, was never included in those plans.

49.    As a direct and proximate result of Defendants' retaliatory actions, Plaintiff has

suffered loss of income and other employment benefits, together with mental anguish, emotional distress, personal humiliation, indignity, embarrassment, inconvenience, stigma, pain and suffering, and damage to her personal and professional reputation justifying an award including, but not limited to, reinstatement to her position, reinstatement of her seniority rights, reclassification of her position to that commensurate with its responsibility (Vice President), lost income (back and front pay), interest on lost income, restoration of lost benefits, compensatory and punitive damages.

WHEREFORE, the premises considered, the Plaintiff demands relief as specified hereinafter.

## COUNT VI
## (D.C. FAMILY MEDICAL LEAVE ACT VIOLATION)

50. Plaintiff repeats the allegations contained in paragraphs 1 through 49 as though set forth fully and at length herein.

51. Ms. D'Onofrio is a member of a protected class under the D.C. Family Medical Leave Act (hereinafter "DC FMLA") and has been employed by the employer (SFX) for more than one year and had worked in excess of 1,000 hours in the previous year. (§32-501)

52. Ms. D'Onofrio's request for time off due to complications involving her pregnancy qualified as a serious health condition under the DC FMLA. Ms. D'Onofrio gave her employer reasonable notice as required under the law. (§32-502(f) and (g) (1), 503(c) (1))

53. Under the DC FMLA Ms. D'Onofrio was entitled to medical leave as long as she

21

was unable to perform her job functions.

54.    Defendants wrongful termination of Ms. D'Onofrio was a violation of the DC FMLA (§32-507) by virtue of the following language: " (a) It shall be unlawful for any person to interfere with, restrain, or deny the exercise of or the attempt to exercise any right provided by this chapter."

55.    Said termination was in retaliation for asserting her rights und the DC FMLA.

56.    Ms. D'Onofrio is entitled to damages pursuant to §32-509(b)(6) for back pay and benefits, liquidated damages or "Consequential damages not to exceed an amount equal to 3 times the amount determined under subparagraph (A) of this paragraph plus any medical expenses not covered by the health insurance of the employee".

WHEREFORE, the premises considered, the Plaintiff demands relief as specified hereinafter.

## RELIEF

WHEREFORE, the premises considered, the Plaintiff, **AUDREY (SHEBBY) D'ONOFRIO,** demands judgment against the Defendants, jointly, severally, and individually, such that the Court enter:

a.    A permanent injunction (specific performance) requiring the Defendants to reinstate her to her prior position, to now be known as Vice President of Public Relations instead of Senior Director of Public Relations, to retroactively change Ms. D'Onofrio's personnel file to reflect her job title as Vice President of Public Relations instead of Senior Director of Public

Relations, with seniority rights, from a date to be determined by the trial of this matter;

b.   Award to Plaintiff and against Defendants lost income (both back pay - up to 3 years from the date of filing of this action, and front pay, at an appropriate salary) and other employment benefits;

c.   Award to Plaintiff and against Defendants compensatory damages;

d.   Award to Plaintiff and against Defendants punitive damages;

e.   Award to Plaintiff and against Defendants pre-judgment and post-judgment interest;

f.   Award to the Plaintiff damages under the DC FMLA, §32-509(b) (6) as noted above:

g.   Award to Plaintiff and against Defendants attorneys' fees, costs and disbursements associated with prosecution of this action; and

h.   Award to Plaintiff such additional relief as justice may require.

23

I, **AUDREY (SHEBBY) D'ONOFRIO**, do hereby solemnly declare and affirm under the penalties of perjury that the foregoing statements are true and correct to the best of my knowledge, information and belief.

Audrey (Shebby) D'Onofrio

Respectfully submitted,

DAVID E. SCHREIBER, P.C.

By:
David E. Schreiber, Esq., #152082
4550 Montgomery Avenue, Suite 760N
Bethesda, Maryland 20814
(301) 951-1530
Counsel for Plaintiff

## DEMAND FOR JURY TRIAL

The Plaintiff demands a jury trial in this action.

David E. Schreiber, Esq.

C:\MyFiles\CLIENTS\Shebby\Pleadings\Complaint March 8, 2006.wpd

24



CERTIFIED MAIL

7001 0360 0003 7010 1601

Law Offices of David E. Schreiber, P.C.
4550 Montgomery County, Suite 760N
Bethesda, MD 20814

Send to:

**Corporation Service Co.**
**1090 Vermount Ave., NW**
**Suite 430**
**Washington, DC 20005**