UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AUDREY (SHEBBY) D'ONOFRIO : | |
| : | |
| Plaintiff : | |
| : | |
| v.   : | Case No.: 06-687 JDB |
| : | Judge John D. Bates |
| : | |
| SFX SPORTS GROUP, INC., et. al. : | |
| : | |
| Defendants : | |

## PLAINTIFF'S STATUS REPORT

Pursuant to this Court's Scheduling Order dated January 29, 2007, Plaintiff submits the following status report to the Court regarding the progress of discovery. Unfortunately, the progress has been meager. However, some startling disclosures have recently come to light.

It may be recalled that the Defendants have repeatedly told the Court and the Plaintiff since the inception of this case originally in the Superior Court for the District of Columbia in March of 2006, that they could not locate, much less produce, electronic data, in particular Plaintiff's e mails, which were not supposedly saved or retrievable. This has proved to be a substantial misstatement of fact. As late as the last hearing on this matter on January 29, 2007 Ms. Barnes continued to indicate that the Plaintiff's e mails were not retrievable.[1] Such, evidently, was not the case.

---

[1] As we told the Court at the hearing "We are not comfortable with the representations of this company that they can't find anything." (transcript, p. 54)

On February 13, 2007 Defendants' counsel wrote to inform the Plaintiff, for the first time, that Defendants had apparently "been able to retrieve plaintiff's electronic documents from her employment with SFX... on a server system that was established by Clear Channel Communications, Inc. ("CCU") in connection with a separate and unrelated legal matter." (Exhibit A, Barnes' letter of February 13, 2007) Plaintiff requested that the material be provided so that her expert could search to data directly.

On February 21, 2007 Defendants' counsel delivered to Plaintiff's counsel 3 DVD's purportedly containing electronic material, some 63,000 pages of e mails, in an adobe PDF format which was unsearchable.[2] Plaintiff objected immediately to the format, together with the fact that it was impossible to relate any particular e mail to any particular document request or interrogatory answer, and requested that the material be produced in a searchable form, preferably as a Pst file, as recommended by Plaintiff's consultant at Kroll Ontrack. Defendants were also requested to relate the material to their discovery responses.[3] Thereafter, Defendants' counsel acquiesced in part and delivered to the Plaintiff, at her deposition on March 1, 2007, a DVD containing what was represented as searchable Pst files.[4] In the SFX's 4th Supplemental Response to Plaintiff's First Request for Production of Documents, delivered on March 1, 2007, regarding requests 1, 2, 11-14,

---

[2] The disks were created by counsel "as discovery production". (Shannon deposition, p. 32)

[3] Exhibit, e-mails between counsel, February 22 through February 27, 2007.

[4] Kroll has advised Plaintiff's counsel that Kroll reviewed the second DVD. This DVD does not contain Pst files. The e-mails appear to have been copied from an unknown brand Electronic Discovery program. Kroll has been able to reformat the material so as to make it searchable and useable. They are in the process of searching the data for relevant material.

2

21, 26, 32, 54, 55, 58-60, its counsel merely referred the reader to "see electronic documents produced for copying and inspection..." Given the number of pages delivered electronically, some 63,000, the task of determining what document went with which discovery request was impossible.

Also on February 21, 2007, the Plaintiff deposed SFX's Rule 30(b)(6) designee regarding the electronic document storage maintained by Defendant, SFX produced Mr. Joe Shannon, an employee of "Clear Channel Corporate". He is the Chief Technology Officer, second in command to the Chief Information Officer, David Wilson. The deposition lasted some 3 hours. Aside from a discussion of the items listed in Plaintiff's Notice, filed previously with this Court, Mr. Shannon made 2 startling revelations.

**First, no one at Clear Channel, the parent of SFX, and the entity that maintained all of the electronic storage of e-mails, documents, records, etc. contacted him or his division about this case until no earlier than *February 7, 2007*.** (Shannon deposition, p. 16) Between February 7 and the 21st, after he was contacted by counsel, he determined that they had "quite a bit of Ms. D'Onofrio's e-mail". (Shannon deposition, p. 18) (However, the material produced on the DVD's was not his creation.) He determined that the e mails existed by searching "our archiving system...Legato". (Shannon deposition, p. 19) He stated that Legato was the system used to archive selected users' e-mails, that is those selected by Clear Channel's Legal Department, which would give him a list in a time frame depending upon lawsuits. Mr. Shannon stated that neither he nor anyone in his IT unit received any notification of retention of electronic data regarding this potential or pending legal matter from October 6, 2005 until February 7,

2007. (Shannon deposition, pp. 19-21)

Mr. Shannon further testified that he had not been contacted by Vanessa Villaneuva of Clear Channel's Legal Department about this case nor by Kimberly Wray, Director of Human Resources Services of Clear Channel. (Both of these people were notified of Ms. D'Onofrio's claims in October, 2005) (Shannon deposition, pp. 22-23) Mr. Shannon found out, subsequent to February 7, 2007, that a John Cavender, a "security principal for Clear Channel', did a search in September/October of 2006, but found nothing regarding Ms. D'Onofrio's claims. Mr. Cavender apparently communicated this to Richard Munisteri, General Counsel of Live Nation, a subsidiary of Clear Channel (and also a defendant in this case). (The request went direct to Mr. Cavender, an employee of Mr. Shannon, without his knowledge.)[5] (Shannon deposition, pp. 22-27)

Mr. Shannon also stated that in September of 2005 there was no retention policy for electronic material, such as e-mails, documents, spreadsheets, contracts, memoranda, unless it was for e-mails associated with a "person currently under litigation".[6] (Shannon deposition, p. 28) He did state that it is now Clear Channel's policy since January of 2003 to "keep material for five days".

Evidently, Ms. D'Onofrio was placed on a litigation list in *August of 2004* due to a

---

[5]It was unclear why Mr. Shannon was not informed at the time of this search of Mr. Cavender for Ms. D'Onofrio's e-mails or the fact that nothing was supposedly located.

[6]"To me it means, we have a litigation e-mail server. And when we get notification from our Legal Department that XYZ employee or ex-employee needs to be put on the litigation server, that's about the extent of the contact I receive, not the reason why or what phase of the case it's in or even if there is a case. " (Shannon deposition, p. 29)

Dept. of Justice or SEC investigation of Clear Channel that caused 11,000 people to be placed on this list. (Shannon deposition, p. 31)   The e-mail production was described as what "Ms. D'ONOFRIO was a party to". (Shannon deposition, p. 33)  However, beyond these e-mails, his IT department was never informed of a request "not just for e-mails that were either directed or from Ms. D'Onofrio but from other people about certain issues or topics in this case, including discussions about Ms. D'Onofrio". (Shannon deposition, p. 34)  Accordingly, if 2 other people e mailed about her salary, that would not have been included in the material produced. (Shannon deposition, pp. 34-35)

**The second startling disclosure**, regarding the existence of Ms. D'Onofrio's computer, revealed in Mr. Shannon's deposition, was that Gene Mason, who Mr. Shannon believed was the general manager of SFX in Washington, D.C.[7], looked "through or at or inquire[d] of her [Ms. D'Onofrio's] computer or her hard drive" in the spring/summer of 2006.  Mr. Mason evidently tried to copy existing data off of her local hard drive, but experienced "great difficulties" as the hard drive had failed.  Mr. Shannon said that Mr. Mason tried to "resurrect" the hard drive, tried to restore the operating system (Microsoft XP), without success.  Mr. Shannon also verified that between the time of Ms. D'Onofrio's termination and the spring/summer of 2006 no one else used Ms. D'Onofrio's computer. (Shannon deposition, p. 47-48)

**Mr. Shannon said the computer is no longer available;  Mr. Shannon said "it was scrapped" in the summer of 2006.**  (Shannon deposition, p. 49)   None of Ms.

---

[7]Mr. Mason was not the IT person for the office.  Mr. Shannon indicated that a John Sis acted in that capacity, as a regional person.  He did not investigate Ms. D'Onofrio's computer.  (Shannon deposition, p. 47)

5

D'Onofrio's data, i.e. her Outlook calendar, which was resident on an Exchange system in San Antonio was retained. (Shannon deposition, p. 50)

Mr. Shannon also testified that some of Ms. D'Onofrio's electronic material may have been stored on "the server from her public share." He assumed that this was the same as material stored on her "H drive...on the local server." (Shannon deposition, pp. 50-51) Mr. Shannon believed that Mr. Mason produced some of these documents " for counsel" such as "Word, Excel, spreadsheets, things like that, not e-mails" (Shannon deposition, pp. 52-53) Plaintiff cannot identify any such documents in the material produced by the Defendants to date.

It is apparent, therefore, based upon Mr. Shannon's testimony on behalf of the Defendants, that highly relevant information and documentation has been either destroyed or purposely withheld from the Court and the Plaintiff. It is now approximately 17 months since the Defendants were notified by letter, dated October 5, 2007, of Ms. D'Onofrio's claims and her request that Defendants "must take every reasonable step to preserve this information until the final resolution of this matter...[t]his includes, but is not limited to, an obligation to discontinue all data destruction and backup tape recycling policies"; 12 months since the filing of this action; 10 months since the Rule 26f meeting; and 8 months since the Plaintiff propounded discovery to the Defendants. The substantial prejudice to the Plaintiff's prosecution of her case cannot be discounted or ignored.[8]

---

[8]The Plaintiff was deposed by the Defendants on March 1, 2007. During the course of the deposition Ms. Barnes attempted to question Ms. D'Onofrio about 2 e-mails from March, 2005, which the Defendants had purportedly produced as part of the some 63,000 pages of PDF files on February 21, 2007 and again on March 1, 2007. When Ms. D'Onofrio was unable to comment on the substance of the communications, since she had not seen them in some 2 years, and could not place them in any context,

The Plaintiff will shortly file a motion requesting both financial and evidentiary sanctions to be imposed against the Defendants for these actions. (It is anticipated that the cost to the Plaintiff for the services of Kroll Ontrack will be substantial and that a request to shift those expenses will be included in the motion regarding sanctions.) It is anticipated that a hearing on these matters may be necessary.

Additionally, the Defendants have not produced all of the requested information or documentation as reviewed by the Court at the last hearing. The deficiencies in discovery will be the subject of the Plaintiff's renewal of her original Motion to Compel filed on or about September 15, 2006, which the Court denied without prejudice on September 20, 2006.

Going forward, it is anticipated that, at the very least, the Plaintiff will take the deposition of Gene Mason, the person who "scrapped" Ms. D'Onofrio's computer, as well as the Defendants' corporate designee pursuant to Rule 30(b)(6), regarding those items listed in the original Rule 30(b)(6) notice of deposition. Thereafter, the Plaintiff will depose witnesses who have personal information of the claims in this case, after having reviewed all material requested of the Defendants. Given the unfortunate posture of this case, once again the Plaintiff anticipates the need for a further enlargement of time for discovery.

---

Ms. Barnes complained that Ms. D'Onofrio was non-responsive and thereafter adjourned the deposition, claiming that she would renew it at a later date. Ms. Barnes had been advised previously by Plaintiff's counsel, by letters/email as well as by court filings, that proceeding with Ms. D'onofrio's deposition, without having produced the requested documentation and information, was sheer folly and would be unproductive. Nonetheless, Ms. Barnes insisted on going forward..Ms. Barnes was advised that the Defendants would not have a second deposition of Ms. D'Onofrio without a court order to that effect.

        Respectfully submitted,

        DAVID E. SCHREIBER, P.C.


        By:_____/s/_____  
        David E. Schreiber, Esq.  
        4550 Montgomery Avenue, Suite 760N  
        Bethesda, Maryland 20814  
        (301) 951-1530  
        Bar No. 152082  
        Counsel for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Plaintiff's Status Report was mailed, postage prepaid, this 14th day of March, 2007 to:

Johnine P. Barnes, Esq.  
Lee T. Ellis, Jr. Esq.  
Baker & Hostetler, LLP  
Washington Square, Suite 1100  
1050 Connecticut Ave., N.W.  
Washington, D.C. 20026-5304

        _____/s/_____  
        David E. Schreiber, Esq.

C:\MyFiles\CLIENTS\Shebby\Pleadings\Discovery\STATUS REPORTS\Pl Status March 14, 07.wpd