UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AUDREY (SHEBBY)  D'ONOFRIO          :
                                   :
              Plaintiff            :
                                   :
        v.                         :        Case No.: 06-687 JDB
                                   :        Judge John D. Bates
                                   :
SFX SPORTS GROUP, INC., et. al.    :
                                   :
              Defendants           :
.............................................:

## **PLAINTIFF'S SECOND MOTION TO COMPEL DISCOVERY, AND FOR SANCTIONS**

The Plaintiff, **AUDREY (SHEBBY) D'ONOFRIO**, by and through counsel, David E.

Schreiber, Esq., moves this court pursuant to F.R.C.P. §§ 26, 33, 34, and 37, for the entry

of an order:

> a) compelling the Defendants to fully answer all interrogatories;
> b) compelling the Defendants to produce all requested documents;
> c) compelling the Defendants to categorize all documents produced, whether electronically or paper, by reference specifically to the particular request to which the documents are responsive;
> d) compelling the Defendants to file a privilege log as to any legitimately withheld documents;
> e) assessing appropriate sanctions for the spoliation of evidence;
> f) enlarging time for discovery.

As grounds therefor the Plaintiff incorporates the accompanying Memorandum of

Points and Authorities in Support of Plaintiff's Motion to Compel Discovery, and for

Sanctions.

1

Respectfully submitted,

DAVID E. SCHREIBER, P.C.


By:_____/s/_____
David E. Schreiber, Esq.
4550 Montgomery Avenue, Suite 760N
Bethesda, Maryland 20814
(301) 951-1530
Bar No. 152082
Counsel for Plaintiff


## CERTIFICATE PURSUANT TO LCvR 7.0(m)

Plaintiff's counsel has sent numerous letters to Defendants' counsel by facsimile and first class mail, beginning on September 8, 2006, through the present, regarding the issues noted In this motion.  The Court has held status conferences on numerous occasions and has ordered counsel to confer on numerous occasions, regarding  these issues and has advised counsel to file this motion. The issues addressed in this motion unfortunately could not be resolved satisfactorily without the Court's current intervention.


_____/s/_____
David E. Schreiber, Esq.

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Plaintiff's Second Motion to Compel Discovery, and for Sanctions, Memorandum in Support thereof and proposed order was filed and served electronically, on May 17, 2007 to:

Johnine P. Barnes, Esq.
Lee T. Ellis, Jr. Esq.
Baker & Hostetler, LLP
Washington Square, Suite 1100
1050 Connecticut Ave., N.W.
Washington, D.C. 20026-5304


_____/s/_____
David E. Schreiber, Esq.

2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AUDREY (SHEBBY) D'ONOFRIO          :
                                   :
            Plaintiff              :
                                   :
      v.                           :          Case No.: 06-687 JDB
                                   :          Judge John D. Bates
                                   :
SFX SPORTS GROUP, INC., et. al.    :
                                   :
            Defendants             :
............................................................:

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S SECOND MOTION TO COMPEL DISCOVERY, AND FOR SANCTIONS**

The Plaintiff, **AUDREY (SHEBBY) D'ONOFRIO**, by and through counsel, David E.

Schreiber, Esq., in support of her Second Motion to Compel Discovery, and For Sanctions,

pursuant to F.R.C.P. §§ 26, 33, 34, and 37 states as follows:

**I.    INTRODUCTION:**

1.    The Plaintiff filed her original Motion to Compel on September 15, 2006.  The Court

      denied the motion without prejudice on or about September 20, 2006, indicating that

      it wished counsel for the parties to work out their differences and to ask the Court

      for assistance if and when necessary.  The procedural history has been recited

      previously regarding the Defendants' attempts  to delay discovery and/or to avoid

      producing information and documents, in an appropriate fashion,  which will support

      Plaintiff's claims, and are well known to this Court.

2.    Most recently, this Court was advised by the Plaintiff in her March 21, 2007 status

      report of the spoliation of evidence that has occurred for over a year, together with

the intentional withholding of discovery documents (electronic and otherwise). Since that time, the Plaintiff has deposed three (3) additional witnesses whose testimony has revealed further questionable acts and omissions on the part of the Defendants. Additionally, the Court ordered the defendants to supplement their discovery responses within 30 days of the hearing. The additional supplementation was negligible and merely highlighted the Defendant's non-responsive approach to discovery.

3.    Previously, the Plaintiff has written to the Defendants' counsel on a number of occasions to attempt to remedy, or at least limit, the problems that now must be addressed by the Court. Some of those letters and e-mails have been submitted previously and others will be upon the hearing of this matter.

4.    A detailed factual review of the procedural history of this matter once again is not warranted since the Court no doubt has reviewed previously the pleadings filed by the Plaintiff which have recited the tortured chronology of this matter.

## II.    DISCOVERY DEFICIENCIES:

### A.    PRIVILEGE LOG:

5.    Thus far, Defendants have not filed a privilege log although in many of their responses they claim attorney client or work product privileges. Defendants' counsel has indicated on a number of occasions that she would provide a log but to date nothing has been provided. Additionally, throughout the various depositions witnesses were asked to indicate what documents they located and/or produced. (This was especially important since the documents were collected by Defendants' counsel, who represented that she determined what documents were relevant

and/or responsive to all of the requests.)   During the depositions Defendants'

counsel objected each time by suggesting that the fact that a witness located a

document and turned it over to counsel would violate either the attorney client

privilege or the work product privilege.   Such a position made Plaintiff's discovery

of information regarding the efforts to locate and produce documents impossible.

F.R.C.P. 26(b)(5), as well as the instructions, requires that a log be furnished as to

any documents withheld on the basis of privilege or attorney work product. [1]  "The

essential function of a privilege log is to permit the opposing party, and ultimately,

the court, to evaluate a claim of privilege." *U.S. v KPMG. LLP*, 237 F. Supp. 2d 35,

38 (D.D.C. 2002).  Throughout Defendants' discovery responses, as well as during

depositions of Defendants' witnesses, defense counsel has claimed privilege as to

documents that a witness supplied to counsel.  Defense counsel has also claimed

the mere fact that the witness actually produced a document to counsel as

somehow being indicative of counsel's work product.  However, to the extent that

a document was produced that was privileged or indicative of work product, that fact

should be commemorated in a log.  Numerous requests have been made to no

avail.

## B.    REQUEST FOR PRODUCTION OF DOCUMENTS:

6.    The Defendants have failed to produce documents in a responsive fashion to

particular requests.  Attached hereto as Exhibit A is a list of the most important

items that continue to be deficient.  Noted among the deficiencies is the fact that the

---

[1]See "Discovery Problems and their Solutions", ABA publication (2005) by
Magistrate Judge Grimm, together with Fax & Sandler, pp. 62-64, 99-104.

claimed basis for the Plaintiff's termination, the so-called "Business Plan", (which is not directed to the Plaintiff) has not been produced in its original electronic format, with accompanying metadata; no drafts or subsequent iterations have been provided; and no notes or other related material have been provided (all as previously requested on more than one occasion by letter as well as in person).

7.    As may be recalled from prior filings, the Defendants failed to locate electronic data, memoranda, and especially e-mails, for almost a year after suit was filed, and some 17 months after being notified of the claims.  When they "discovered" the Dept. of Justice archived material (some 11,000 people, including employees of SFX) , the electronic data was not produced in a searchable form.  Only after complaints by the Plaintiff did the Defendants' counsel make a "searchable" data base available.[2] However, an exhaustive review by Plaintiff's consultant, Kroll, revealed that the pertinent e-mails and documents were not among the material produced.  A request to have a Kroll representative personally review the archived material at the Defendants' Texas or D.C. locations has been rebuffed by Defendants' counsel, after an earlier indication (prior to the February 2007 production) that it would be allowed.[3]

8.    The Defendants have also admitted to "scrapping" the Plaintiff's computer. (Shannon deposition, p. 49)  Their witnesses, however, are not consistent in their versions of how this came about.   Gene Mason stated that  he scrapped Plaintiff's

---

[2]See Declaration of Douglas Bond, Kroll Ontrack, Exhibit C, to be filed shortly.

[3]It might posited that the Plaintiff's retention of Kroll may have prompted the recent availability of some electronic data.  The Defendants' refusal to allow Kroll to investigate further may be an indication of other spoliation issues.

computer in the winter of 2005 (Mason deposition, p. 117-127). However, in his

deposition, Joseph Shannon said that Mr. Mason informed him that Mason

scrapped the computer in the spring or summer of 2006.[4] Additionally, Mr. Mason

testified that during the summer of 2006 he was requested by Daniel Rosier, a

Defendant, and the person who ostensibly ordered the termination, to look for

Plaintiff's e-mails on the server located in D.C. at SFX. He determined that there

were no e-mails on the server since someone had gone into the server and deleted

the e-mails. The Plaintiff suggests that It will be apparent to this Court that the

Defendants have deliberately caused the spoliation of the electronic records of the

Plaintiff and have purposely failed to produce those e-mails and other documents

that are still available.

## C. INTERROGATORIES:

9. The Defendants have also failed to answer fully the interrogatories propounded to

them. This was addressed in Plaintiff's first motion to compel filed September 15,

2006 and the additional "information" subsequently supplied has not fulfilled

Defendants' obligations under the applicable Rules. (F.R.C.P. §§ 33, 37)

10. As stated in Plaintiff's original motion, "the answers alone are patently insufficient

and are subject to challenge under F.R.C.P. §37. See *Discovery Problems and

Their Solutions*, Grimm, Fax & Sandler (2005 ed., ABA), pp. 31-34, citing

*U.S.S.E.C. v. Elfindepan, S.A.*, 206 F.R.D. 574, 576-77 (M.D.N.C. 2002)."

11. In deposing Ms. Alaka Williams, who signed the answers to interrogatories for both

SFX and Live Nation, it became apparent that she was not personally conversant

---

[4]See ¶ 16, infra.

with much of the information stated in the answers; rather, it appeared that the answers were prepared by counsel, as were the document responses, without any substantial input by Ms. Williams.  It further appeared that she did not know the source of much of the information contained in many of the answers such that the details could be explored, which is contrary to the Definitions and Instructions "F".  As was stated in Plaintiff's original motion: "The information supplied in the answers does not denote the source of the information or the persons providing the information, as noted in the definitions and instructions.[5]  An integral part of the answers should include the source of the information since it may well be that Ms. Williams does not have personal knowledge of the information being provided.  The Plaintiff cannot test the veracity and accuracy of the information when the source of the information is not provided."  That statement proved to be true.

12.    Attached hereto as Exhibit B is a list of the most significant answers to interrogatories that are deficient.

**III.    SPOLIATION:**

13.    As noted in Plaintiff's March 21, 2007 Status Memorandum, spoliation on a major scale has taken place in this matter.  Initially, Defendants represented to the Plaintiff and the Court that there were no e-mails involving the Plaintiff that could be located.  Then in February 2007 thousands of e-mails were found.  Defendants represented that in 2004 the U.S. Department of Justice required Clear Channel to archive e-

---

[5]It may also be noted that Alaka Williams, Human Resources at  Live Nation, Inc., executed the answers to interrogatories for both Defendants, SFX Sports Group, Inc. and Live Nation, Inc.  Her authority/capacity  to sign for SFX and/or Live Nation is not noted in the verification section of the signature blocks.

mails and documents for 11,000 employees, including Ms. D'Onofrio and other employees of SFX.  No witness at this point can indicate the parameters of the selection of these 11,000 individuals.  The archiving of e-mails pursuant to the Dept. of Justice investigation was well known to all defendants and in particular to the in house lawyers of Clear Channel and Live Nation since they were notified of this claim on October 6, 2005, less than 2 weeks after Ms. D'Onofrio was terminated.[6] Nevertheless, no electronic material was produced until February 2007, some 18 months after notice of the claim was received, and some  12 months after suit was filed.  When Defendants eventually produced **some** electronic material, it was in an adobe format that was in effect unsearchable.  After being pressed, it was reproduced in a searchable, but "wiped" format, without any metadata, and not categorized by particular requests.  More importantly, the material was largely extraneous to the issues and claims in this case, and does not contain the e-mails that the Plaintiff has stated she either sent or received from many individuals. Additionally, Defendants have ignored the request for items contained in Request 51 through 60 to Clear Channel, the parent, (as well as Live Nation and SFX)  which maintained the electronic material for all of the Defendants during the relevant time periods, except with respect to a boilerplate statement contained in their 4th Supplemental Response delivered on February 28, 2007 which stated "Subject to and without waiving SFX's previous objections and limitations agreed to by the parties, see electronic documents produced for copying and inspection pursuant to

---

[6]It does not appear that SFX has its own in house counsel.  Rather, they have used both Clear Channel and Live Nation counsel.

C:\MyFiles\CLIENTS\Shebby\Pleadings\Discovery\MOTIONS\Motion may 16.wpd

a Stipulated Protective Order agreed upon by the parties." Having hired Kroll to attempt to search the material, Plaintiff can personally represent that the documents produced were not responsive to those requests.[7] It is frankly inconceivable that Clear Channel's lawyers were unaware of the archived material from the Department of Justice investigation for some 18 months. One can only be left with the impression that the delay was deliberate and that the refusal to produce responsive documents for the Requests 51 through 60 is a further deliberate act to undermine the discovery process. Plaintiff has indicated that she wishes to have Kroll Ontrack do a forensic investigation of the archived material to retrieve the electronic material that she left behind upon her abrupt termination. Having initially agreed, defense counsel now refuses to allow this investigation, even in the fact of the spoliation issues before this court.

14.    To make matters worse, the Defendants' witnesses have contradicted each other as to when the "retrieval" actually took place, as well as what attempts were actually made. Mr. Shannon of Clear Channel indicated that he was the person in IT most knowledgeable regarding these matters (he was produced as a corporate designee und F.R.C.P. 30(b)(6)). He said that became involved in this effort only around February 7, 2007 (p. 16-17). Defense counsel contacted him in order to see if what they were looking for existed and if he could get it in the electronic document arena

---

[7]Defense counsel's letter of February 21, 2007, announcing that they have just found the material, indicated that they had "been able to retrieve plaintiff's electronic documents from her employment with SFX Sports Group, Inc. ("SFX") on a server system that was established by Clear Channel Communications, Inc. ("CCU") in connection with a separate and unrelated legal matter." This statement directly contradicts the boilerplate language for responses 51-60.

(p. 17).  He indicated that e-mails are located by using Clear Channel's archiving system – entitled Legato (p. 19).  He further indicated that the archiving system archives e-mails of selected users (p. 19).  The Legal Department sends a list to Mr. Shannon of users to be selected for archival purposes; the frequency of these lists is dependant on lawsuits filed against Clear Channel (p. 19-20).  Mr. Shannon did not receive anything about the D'Onofrio case until February of 2007 (p. 20).  Mr. Shannon also testified that in September/October 2006, John Cavender, one of his employees, ran searches on the Legato system to determine whether there were any e-mails or electronic documents available to Clear Channel or SFX with regards to a request for documents (p. 23-24).  Mr. Cavender is a security principal for Clear Channel; he maintains different applications and the security base of those applications (p. 24-25).  Mr. Shannon stated that in his searches, Mr. Cavender indicated that he did not find anything (p. 25).  He searched the current (as of Sept./Oct. 2006) e-mail and Legato systems and apparently indicated in writing to the General Counsel of Live Nation–Richard Munisteri–that he did not find anything (p. 25-26).[8]  This search would have encompassed material dating from 2004 if it existed (p. 25).  Mr. Cavender actively assisted with the most recent search of e-mails by Mr. Shannon (p. 27).  This search occurred in San Antonio, Texas where the archives are kept (p. 28).

15.  Mr. Shannon is unaware of who created the disks (produced to the Plaintiff) with some 46,000 items on them and did not believe that they were created by Mr. Cavender (p. 31-32).  The e-mails on the disks were located by Mr. Cavender and

_____

[8]No such document has ever been produced to the Plaintiff.

burned onto one DVD and sent to defense counsel (p. 32-33).  The time frame of Mr. Cavender's actions is somewhere around the 10th, 11th, or 12th of February, 2007 (p. 33).  The criteria for selecting these e-mails is that anything sent to or from Ms. D'Onofrio was included (p. 33).  Discussions via e-mail about her that were not sent to her would not be included in this archive (p. 34-35).[9]

16.    Mr. Shannon also testified that Gene Mason, a local employee of SFX in D.C., had looked at Ms. D'Onofrio's computer in the Spring/Summer 2006 and tried to copy the data off her local hard drive; experiencing great difficulty in doing so because the hard drive had failed and assumed that  he had no success in resurrecting the hard drive (p. 47- 48).  Therefore, the computer just sat there until it was scrapped because it was no longer "breathing" (p. 48-49).  He said that no one used her computer subsequent to her termination (p. 49).

17.    The Plaintiff has also determined that other material supposedly unavailable is, in fact, retrievable.  Just last week at the deposition of Kimberley Wray, in San Antonio, Texas, it was determined that Mr. Schacter's employment contract (the person Plaintiff alleges held her position prior to her promotion) was probably located in Houston, with other material archived from Clear Channels' recent sale of Live Nation.[10]

        13    Q.  (By Mr. Schreiber) Has anybody asked you,
        14    to your knowledge, of trying to locate this supposed
        15    employment agreement?

_____

[9]Plaintiff's Request's 51-60 were far more expansive than merely limiting the sender or recipient to Ms. D'Onofrio.  It is apparent that the search was intentionally limited to avoid retrieving the most relevant correspondence and documents.

[10]This is contrary to representations from Defendant s' counsel going back almost 9 months.

16    A.  No.  We did not keep Entertainment's
17  employment agreements in San Antonio.
18    Q.  Who did?
19    A.  They were maintained in Houston.
20    Q.  I see.  So who in Houston would have,
21  possibly, Mr. Schaecter's agreement?
22    A.  I am not sure of the person who maintained
23  it.  It possibly could have -- It could have been
24  Kimberly Boron.[11]

18.   Ms. Wray also revealed that there would continue to be a need for public relations

at SFX (Ms. D'Onofrio's general job responsibility) contrary to Defendants' denials

that there was no need for public relations, a statement which was also made to Ms.

D'Onofrio at the time of her termination.[12]   In questioning Ms. Wray about her

conversation with Mr. Rosier, prior to Plaintiff' termination, the following questions

and answers occurred.

88
24    Q.  So he knows that she's pregnant.  You know
25   that she's pregnant.  You then have this

89
1   conversation this late afternoon, early evening.
2   Tell me exactly what the two of you talked about.
3    A.  Again, I don't recall if we had a
4   conversation or if it was e-mailed.  When I found
5   out that she was going to be put on the list, we did
6   verbally talk, and I told him that she is pregnant.
7   His response was that Michael Rapine and him have
8   decided they were going to be getting rid of the --
9   the entire PR function and that was going to be
10  outsourced outside the company.
11    Q.  Wow.  Outsourced.  Okay.  That's the first
12  time we've heard that.  Now, the outsourcing that he
13  just told you about, what did he say about that, if

---

[11]Wray deposition, p. 148.

[12]This claim was contrary to Ms. Williams testimony in her deposition.  Williams
deposition, p. 271, 289.

14  anything?
15      A.   That was it.[13]

## IV.    SANCTIONS:

19.    Sanctions are appropriate in this case.  It is clear at this point, and will become even

clearer during the proposed hearing on this motion, that intentional destruction of

evidence has occurred.  Moreover, Defendants have purposefully withheld relevant

and important evidence of their wrongdoing from the Plaintiff, thereby obstructing

her ability to present evidence supporting her claims.   "The scope of a party's

preservation obligation can be described as follows: Once a party reasonably

anticipates litigation, it must suspend its routine document retention/destruction

policy and put in place a 'litigation hold' to ensure the preservation of relevant

documents."  Zubulake v. UBS Warburg, 220 F.R.D. 212, 218 (S.D.N.Y. 2003) (IV).

This obviously has not occurred in this case.  The appearance of a knowledgeable

representative of the general counsel for all Defendants, which control the course

of the defense in this matter, at a proposed hearing, should be mandatory, so that

the Court can assess the degree of the contumacious actions by the Defendants.

In Zubulake (IV), supra., the court ordered that the costs associated with the

discovery infractions be borne by the Defendants.

20.    In Zubulake v. UBS Warburg, 229 F.R.D. 422, 2004 WL 1620866 (S.D.N.Y. July 20,

2004) (Zubulake (V)), the employee contended that the employer, who recovered

some of the deleted relevant e-mails, prejudiced her case by producing recovered

e-mails long after the initial document requests. Furthermore, some of the e-mails

---

[13]Wray deposition, p. 88-89.  Obviously, no e-mail commemorating this exchange
has been produced by Defendants.

14

were never produced, including an e-mail that pertained to a relevant conversation about the employee. As such, the employee requested sanctions in the form of an adverse inference jury instruction. Determining that the employer had wilfully deleted relevant e-mails despite contrary court orders, the court granted the motion for sanctions and also ordered the employer to pay costs. The court further noted that defense counsel was partly to blame for the document destruction because it had failed in its duty to locate relevant information, to preserve that information, and to timely produce that information. In addressing the role of counsel in litigation generally, the court stated that "[c]ounsel must take affirmative steps to monitor compliance so that all sources of discoverable information are identified and searched." Specifically, the court concluded that attorneys are obligated to ensure that all relevant documents are discovered, retained, and produced. Additionally, the court declared that litigators must guarantee that identified relevant documents are preserved by placing a "litigation hold" on the documents, communicating the need to preserve them, and arranging for safeguarding of relevant archival media.

21. F.R.C.P. 37(c)(1) states that if a party, without substantial justification, fails to disclose information required by F.R.C.P. 26(a) or 26(e)(1), or to amend a prior response to discovery as required by F.R.C.P. 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at trial, at a hearing, or on a motion any witness or information not so disclosed. In addition to or in lieu of this sanction, the Court, on motion and after affording an opportunity to be heard, may impose other appropriate sanctions. In addition to requiring payment of reasonable expenses, including attorney's fees, caused by the failure, these sanctions may include any of

the actions authorized under Rule 37(b)(2)(A)-(C) and may include informing the jury of the failure to make the disclosure.

22.    The Sedona Principles (arising out of conferences held regarding electronic discovery) state that a court should only consider sanctions if it finds that (1) there was a clear duty to preserve, (2) there was an intentional or reckless failure to preserve and produce relevant electronic data, and (3) there is a reasonable probability that the evidence lost has materially prejudiced another party.  Principle 14.    If these three prerequisites are satisfied, then the Principles condone consideration of monetary fines, adverse inference instructions, and default judgments.  Comment 14(d), citing *Carlucci v. Poper Aircraft Corp.*, 102 F.R.D. 472 (S.D. Fla. 1984).  Several courts have cited the Principles approvingly in discussing electronic discovery issues.  See *LLC v. Deutsche Bank AG*, 2005 U.S. Dist. LEXIS 3021, 25 (D.Minn. 2005) (citing the Principles in sanctioning a company that relied on backup tapes, subsequently destroyed, instead of a litigation hold to preserve evidence); *Zubulake v. UBS Warburg*, 229 F.R.D. 422, at n.122 (S.D. N.Y. 2004) (referring to the Sedona Conference as providing "very useful guidance"); *In re Search of 3817 W. West End*, 321 F.Supp.2d 953, 956 (N.D. Ill. 2004) (relying on the Principles definition of 'metadata'); *Zakre v. Norddeutsche Landesbank Girozentrale*, 2004 U.S. Dist. LEXIS 6026 (S.D. N.Y. April 6, 2004) (following Principle 11 concerning format for production of electronic data); *Pueblo of Laguna v. U.S.*, 60 Fed. Cl. 133 (Ct. Claims March 19, 2004) (citing the Principles' standards for preservation order with approval); *Zubulake v. UBS Warburg*, 220 F.R.D. 212 (S.D. N.Y. 2003) (citing the Principles' statement that absent specific

circumstances, preservation obligations should not extend to disaster recovery backup tapes).

23.     To receive an adverse inference instruction (or, for that matter, any other sanction for spoliation), the party must establish: "(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a 'culpable state of mind' and (3) that the destroyed evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense."  Id. at 220.  To establish a "culpable state of mind," a Court has held that a plaintiff need only establish ordinary negligence.  *Residential Funding Corp. v. DeGeorge Fin. Corp.,* 306 F.3d 99, 108 (2d Cir. 2002).  It is suggested that even at this juncture it is apparent that the Defendants' actions go beyond mere negligence.  The Plaintiff will request that this Court impose such an adverse inference on the Defendants, both for purposes of the any dispositive motion or at the trial of this matter.  The adverse inference instruction would allow the jury to infer that any documents destroyed by the Defendants may be assumed to be favorable to the Plaintiff.

24.     Lastly, to the extent necessary, by virtue of the Defendants' actions, it may be necessary for the Court to once again enlarge the time for discovery.

WHEREFORE, the premises considered, the Plaintiff, AUDREY (SHEBBY) D'ONOFRIO, requests that the Court enter the proposed order requiring the Defendants a) to produce all requested documents in an orderly and responsive format, b) to fully answer all interrogatories and to designate specifically all documents that may be responsive to a particular interrogatory, c) to file a particularized privilege log as to any

legitimately withheld documents, d) to impose appropriate sanctions of counsel fees and costs,  e) to order sanctions for the spoliation of the evidence in this matter, including costs associated with investigating all issues pertaining to the electronic discovery material lost, destroyed or withheld, and f) for such other and further relief as this Court may deem just and proper.

Respectfully submitted,

DAVID E. SCHREIBER, P.C.

By:_____/s/_____
David E. Schreiber, Esq.
4550 Montgomery Avenue, Suite 760N
Bethesda, Maryland 20814
(301) 951-1530
Bar No. 152082
Counsel for Plaintiff

## **REQUEST FOR HEARING**

The Plaintiff requests a hearing on this matter.

_____/s/_____
David E. Schreiber, Esq.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AUDREY (SHEBBY) D'ONOFRIO          :
                                   :
            Plaintiff              :
                                   :
      v.                           :          Case No.: 06-687 JDB
                                   :          Judge John D. Bates
                                   :
SFX SPORTS GROUP, INC., et. al.    :
                                   :
            Defendants             :
...........................................................:

## **ORDER**

Upon consideration of Plaintiff's Second Motion to Compel Discovery, and for Sanctions, any opposition thereto, and good cause having been shown, it is by this Court this _____ day of _____, 2007,

ORDERED, that Plaintiff's Second Motion to Compel Discovery, and for Sanctions be, and the same is hereby, GRANTED, and it is

FURTHER ORDERED, that the Defendants shall produce and deliver to Plaintiff's counsel all requested documents in an orderly and responsive format, within __ days of the date of this order, and it is

FURTHER ORDERED, that the Defendants answer all interrogatories fully and completely, and deliver said answers to Plaintiff's counsel, within ___ days of the date of this order, and it is

FURTHER ORDERED, that Defendants shall file a privilege log as to any documents legitimately subject to the attorney client or work product privilege, and it is

FURTHER ORDERED, that as sanctions to be imposed against the Defendants, the

Plaintiff is awarded counsel fees and costs associated with the filing of the instant Motion, as well as costs associated with investigating all issues pertaining to the electronic discovery material lost, destroyed or withheld, upon submission by Plaintiff's counsel within ___ days of the date of this order a statement of time incurred, hourly billable rate, and costs associated with the instant Motion, and it is

FURTHER ORDERED, that as a sanction for the spoliation of the material noted in Plaintiff's motion, as well as adduced at the hearing of this matter, an adverse inference instruction shall be granted to the Plaintiff and against the Defendants, both for purposes of any dispositive motion or at trial, such that it would allow the court and/or the jury to infer that any documents destroyed by the Defendants may be assumed to be favorable to the Plaintiff, and it is

FURTHER ORDERED, that the time for discovery in this matter shall be enlarged as noted below by _____ months with other dates adjusted accordingly, to accommodate the difficulties encountered by the Plaintiff as a result of Defendants' delays in responding in an appropriate fashion to Plaintiff's discovery requests:

Discovery:           to be concluded by _____

ADR:                 30-60 days after the close of discovery

Dispositive Motions: Begins 90 days after the close of discovery

Oppositions:         30 days after receipt of dispositive motion

Reply:               15 days after receipt of opposition

Decision:            60 days after filing of reply

_____
JOHN D. BATES, JUDGE
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Copies to:

David E. Schreiber, Esq.
David E. Schreiber, P.C.
4550 Montgomery Avenue
Suite 760N
Bethesda, Maryland 20814

Johnine P. Barnes, Esq.
Lee T. Ellis, Jr. Esq.
Baker & Hostetler, LLP
Washington Square, Suite 1100
1050 Connecticut Ave., N.W.
Washington, D.C. 20026-5304