**EXHIBIT A:**
**DEFICIENT DOCUMENT RESPONSES:**

1. In producing electronic e mails on February 21, 2007, Defendants merely noted that the Plaintiff would be referred to the material produced, supposedly the Plaintiff's e mails. The emails comprised over 63,000 pages, initially not in a searchable form, and without any access to metadata, without any categorization or any indication of which documents might be responsive to a particular request. The manner of production necessitated the services of Kroll to try to determine what documents were contained in the e mails and to search for key names or phrases to determine if the material was responsive. It was determined the relevant e mails denoted by the Plaintiff were not contained in that document production. No metadata was retrievable from the initial DVD produced by Defendants.
2. **Communications by and to the Plaintiff regarding her employment relationship with the Defendant [SFX #1 ]**: No meaningful communications regarding the issues of salary, title, pregnancy or disability were produced. In particular, Plaintiff maintains there were many email messages and memoranda discussing the nature of the Plaintiff's employment relationship, i.e. salary, title, pregnancy and disability that have not been produced.
3. **Employees that are or were similarly situated to the Plaintiff [SFX #7 ]**: The financial information and job description material regarding Howard Schacter, the Plaintiff's predecessor, and principal comparator, were not fully produced, in particular, his employment contract. The deposition of Joseph Shannon, Defendant's IT designee, indicated that all stored financial information could be accessed, and that it has not been requested or produced. the deposition of Kimberley Wray indicated that the employment contract was probably located at the Defendants' facility in Houston, Texas, but had not been requested from that locale.
4. **The personnel file of the person who replaced Plaintiff [SFX #15]**: The answer to interrogatory #12 regarding that person or entity indicates that no one at SFX replaced the Plaintiff; that answer begged the question[1] of whether or not someone from somewhere else or from another entity or Defendant organizations replaced Plaintiff. During the deposition of Ms. Wray, she indicated that the public relations function was outsourced upon Ms. D'Onofrio's termination, which is contrary to the prior representations of the Defendants and, in particular, Alaka Williams, the

---

[1]12.    Identify (see Definition and Instruction E, I) each individual who was hired or promoted to the position for which the Plaintiff was employed, or who assumed Plaintiff's job responsibilities, subsequent to the Plaintiff's termination:
    a. Name, address, sex, age, race, religion and national origin;
    b. The individual's prior employment with the defendant;
    c. The date hired or promoted;
    d. The position to which hired or promoted;
    e. The individual's qualifications.

       person who notified Ms. D'Onofrio of her termination. She indicated that she did not know how the public relations function was to be handled. [pp. 220-221]

5. **Plaintiff's payroll records [SFX #16]:** Defendant maintains that there are no responsive documents. Joseph Shannon, Defendant's IT designee, indicated that those records are maintained by Defendants. He indicated that financial and HR backups are maintained differently from e-mail (p. 103-104). Financial records are kept for eight years and are mostly paper records instead of electronic (p. 103). To the best of Mr. Shannon's knowledge, all active HR is still in house (p. 103). He believes that Ms. D'Onofrio, despite being terminated a year and a half ago, is still in the active data (p. 104). The HR data that he is referring to includes name, social security number, hiring date, business unit, and payroll information (p. 104).

6. **Plaintiff's employment contract with the Defendant, SFX [SFX #17]**. In the response, there is no acknowledgment about whether or not a contract existed. Further, the response says, "see documents." The supplement states to see "Tab A." There was no contract in Tab A. Kimberley Wray indicated at her deposition that employment contracts are kept in Houston, Texas.

7. **Other employees of SFX treated similarly to Plaintiff [SFX #18]** : There was no response.

8. **Personnel files of employees who are or were in similar job description, had similar duties, or received compensation comparable to that of the Plaintiff. [SFX #19]** : There was no response.

9. **All documents related to Plaintiff's personnel file and employment with Defendant** [**SFX #20**]: Again the Plaintiff knows of numerous emails and memoranda and correspondence she had with Defendant[s] requesting a promotion and corresponding compensation.

10. **Other allegations of discrimination by the Defendant [SFX #22]** Defendant did not produce any documents related to this request. Defendants' counsel stated she would only consider producing documents from May 2002 to October 2005. Plaintiff requests documents from May 2000 - October 2005. To date, neither a response nor any documents have been produced.

11. **Nature of the Defendant's operations, organization, etc. [SFX #24]** The document(s) produced only allude to proposed operations and organization. There are no documents directed to what the Defendant's operation and organization is to date. Plaintiff will move to compel Defendant to produce documents and responses related to the Defendant's operations, physical locations, and corporate organizational structure.

12. **Any complaints of discrimination or harassment committed by the Defendant, its employees, or agents. [SFX #27]:** Defendant objected on the grounds that the information is irrelevant and inadmissible. Noting was produced.

13. **Applicant pool of Defendant, based on name, qualifications, date of application, position applied for and its rate of pay, date of birth, sex, national origin or religion. [SFX #33]** Nothing was produced although the Plaintiff agreed to limit the requested breakdown by eliminating religion or national origin.

14. **Breakdown of the Defendant's employment market pool. [SFX #34]** Defendant

has not produced any documents in response to this request to date.

15. **Defendant's financial information**. **[SFX #41]** To date, Defendant refuses to produce such documents.

16. **Job descriptions or job qualifications for Defendant's organization**. [SFX #48] Defendant's counsel asked us to limit the Request to PR and Marketing job descriptions, which was done. Nothing was produced.

17. **Any correspondence that discusses Plaintiff's job title or compensation**. [**SFX #54**] No such documents have been produced. Mr. Shannon testified that no one asked the IT Department to search for e-mail information relating to her title or compensation among the requested group of names (p. 116).

18. **Documents used by Defendant in process of attempting to obtain new clients**. **[SFX #55]** Defendant refuses to produce such documents. Plaintiff requests all that the Defendant produce any documentation related to securing and forming a contract with new clients.

19. **Decision to not promote the Plaintiff**. **[SFX #57]** Defendants' counsel stated during a discovery conference that Defendant would produce such documents if required.

20. **Restructuring of Defendant**; **the alleged reason for terminating Plaintiff**. [**SFX #58**] The only document produced was the "Business Plan" of March 2005. No drafts or revisions to the document, or any subsequent document, have been produced in paper form or electronically, which was a specific request by the Plaintiff.

21. **Contracts between Defendant and clients [SFX #60]:** These contracts will show that the services provided by the Plaintiff were still being utilized by Defendants subsequent to Plaintiff's termination purportedly due to not offering public relations services.

22. As noted previously, the most recent productions of e mails by Defendants do not correspond to the requests itemized by the Plaintiff. Aside from not being complete, the Defendants cavalierly refer the Plaintiff to search through tens of thousands of pages of emails, as well as some documents, not categorized or in any manner organized for purposes of relating the documents to a particular request.

23. Lastly, Mr. Shannon indicated that Until February 2007, he had not been contacted about this case nor had he ever heard of Ms. D'Onofrio (p. 136-137). After he was contacted, he discovered that Mr. Cavender had been involved with this case (p. 137-138). Neither Mr. Shannon nor his boss–David Wilson–were aware of Mr. Cavender's efforts (p. 138-139). Any communication regarding the search of these documents bypassed him and Mr. Wilson and went directly to Mr. Cavender (p. 139) who is the point person and the security principal in the IT department (p. 139-140).