# EXHIBIT 1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA


AUDREY (SHEBBY) D'ONOFRIO,          .

          Plaintiffs,               .

                                    .    CA No. 06-0687 (JDB)
     v.                             .
                                    .    Washington, D.C.
SFX SPORTS GROUP, et al.,           .    Friday, March 18, 2007
                                    .    9:17 a.m.
          Defendants.               .

. . . . . . . . . . . . . . .       .


TRANSCRIPT OF STATUS HEARING
BEFORE THE HONORABLE JOHN D. BATES
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiff:          DAVID E. SCHREIBER, ESQ.
                            4550 Montgomery Avenue
                            Suite 760N
                            Bethesda, Maryland 20814
                            301-951-1530


For the Defendants:         JOHNINE P. BARNES, ESQ.
                            ADRIENNE M. KING, ESQ.
                            Baker & Hostetler, LLP
                            1050 Connecticut Avenue, NW
                            Suite 1100
                            Washington, D.C. 20036-5304
                            202-861-1633


Court Reporter:             BRYAN A. WAYNE, RPR, CRR
                            Official Court Reporter
                            U.S. Courthouse, Room 6812
                            333 Constitution Avenue, NW
                            Washington, D.C. 20001
                            202-354-3186


Proceedings reported by machine shorthand, transcript produced
by computer-aided transcription.

1    we've actually agreed that we will consider producing.

2        So from the defendant's standpoint, discovery is moving

3    forward.  For the record, I would like the Court to know that,

4    although I have not had a chance to really read the motion to

5    compel, (1) I was not even aware that he was going to file one,

6    and/or (2) contacted about many of the issues that he's raising

7    there.

8        THE COURT:  I think those are fair points for you to

9    make in your response to the motion.  I read the rule 7(m)

10   certification, and it is expansive but a little elliptical, and

11   I just wasn't sure what the situation was.  But that's something

12   I think you should raise in your response.

13       MS. BARNES:  Okay.  Thank you, Your Honor.

14       I'm sorry, the one thing that I do want to go on record

15   for, and I know you're referring it to a magistrate judge, but

16   we're going on Tuesday for the deposition of Dan Rosier.

17       I have asked plaintiff's counsel for a rule 30(b)(6)

18   designation so that in the event that a lot of the issues that

19   will be covered in the rule 30(b)(6) can be covered while we're

20   deposing Dan Rosier out there in California so we don't have to

21   do a back-and-forth or duplicative effort.

22       THE COURT:  That seems sensible.

23       MS. BARNES:  I have not received it.  I just want to

24   make note before for the Court I have not received it.  The

25   deposition is scheduled on Tuesday.  I'm going to be gone on

**EXHIBIT 2**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA


AUDREY (SHEBBY) D'ONOFRIO,         .

          Plaintiffs,              .
                                   .   CA No. 06-0687 (JDB)
     v.                            .
                                   .   Washington, D.C.
SFX SPORTS GROUP, et al.,          .   Wednesday, March 21, 2007
                                   .   9:23 a.m.
          Defendants.              .
                                   .
. . . . . . . . . . . . . . . .


TRANSCRIPT OF STATUS HEARING
BEFORE THE HONORABLE JOHN D. BATES
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiff:          DAVID E. SCHREIBER, ESQ.
                            4550 Montgomery Avenue
                            Suite 760N
                            Bethesda, Maryland 20814
                            301-951-1530


For the Defendants:         JOHNINE P. BARNES, ESQ.
                            ADRIENNE M. KING, ESQ.
                            Baker & Hostetler, LLP
                            1050 Connecticut Avenue, NW
                            Suite 1100
                            Washington, D.C. 20036-5304
                            202-861-1633


Court Reporter:             BRYAN A. WAYNE, RPR, CRR
                            Official Court Reporter
                            U.S. Courthouse, Room 6812
                            333 Constitution Avenue, NW
                            Washington, D.C. 20001
                            202-354-3186



Proceedings reported by machine shorthand, transcript produced
by computer-aided transcription.

1           MR. SCHREIBER:  One thing that I wanted to address

2     today, in the last production of material, the defendants

3     indicated, "See electronic discovery produced."  They gave us

4     63,000 pages.  Future reference, we're going to ask that the

5     documents at least be noted as responsive to a particular

6     request, because going through 63,000 pages, I don't want to

7     have to come back to the Court about that.

8           Since it just happened recently, I just wanted to alert the

9     Court and to counsel to alleviate that problem as far as the

10    motion to compel, where sanctions is concerned.  Giving us

11    63,000 pages and trying to figure it out -- I've got somebody

12    working on it, obviously.  We haven't just sat idle.  But that's

13    not how I conducted discovery, and I'm asking that the Court and

14    counsel to understand that it would not be productive to do that

15    in the future.  So I would ask that to happen.

16          THE COURT:  Ms. Barnes?

17          MS. BARNES:  Some of the things that were not stated

18    in the status report is that the 63,000 were produced because

19    that's what plaintiff requested.  When the electronic

20    information was discovered, I sent a letter to plaintiff's

21    counsel asking that we come up with search terms, asking that we

22    come up with something agreeable that would produce the

23    responsive documents, because all the documents are not

24    responsive.

25          And in normal circumstances, all the documents would not be

1  produced because they're not responsive and not relevant to --

2  I mean, there are things in there like little pictures of

3  something that she captured off of the Internet that have

4  absolutely nothing to do with this case and that we would not

5  have produced.

6      But in fairness to plaintiff, in light of the way that the

7  information was discovered, we requested of plaintiff's counsel,

8  how do you want this produced?  We asked him for search terms.

9  I have correspondence that indicates that plaintiff denied and

10 said that they did not want to use search terms.

11     So when you ask me to produce documents that are not

12 responsive and many of which are not relevant, which we only did

13 in fairness to make sure that if there were any concerns with

14 respect to not receiving things or making sure they have

15 everything, then you can't ask me to categorize something that I

16 wouldn't produce to you otherwise.

17     But in fairness, in trying to make sure that everything was

18 encompassed -- and I have correspondence.  And when we sent it

19 to plaintiff's counsel, I put in the correspondence, "At your

20 request is all of the information."  So all of this is well

21 documented.

22          THE COURT:  Okay.  I understand, and I think there's

23 some surface appeal to that.

24          MR. SCHREIBER:  May I?

25          THE COURT:  With respect to this issue of 63,000 pages,

1    we'll call it, that aren't tagged, specifically to discovery

2    responses, that may be a dispute between the parties now, and it

3    may be a dispute in the future.  I'm not telling you anything

4    that should dissuade you from talking with each other and

5    working together on the discovery in this case.  Indeed, I would

6    suggest to you that that's even more important now than it was

7    in the past.

8         So, on that issue, you can discuss it, you can work

9    together, but if there is something that one side or the other

10   thinks is not right, file a motion on it, and the losing party

11   may well be faced with having to pay the cost of the other side.

12        I just don't think that discovery has worked in this case,

13   and one of the reasons it hasn't worked may be because, unlike

14   in most cases where I make the offer and it seems to work, I

15   made myself available, and it seems from what has occurred in

16   this case with the phone calls to chambers and in looking at

17   some of the communications between the two sides with the threat

18   of a call to Judge Bates always being presented to the other

19   side, I don't think it's really worked.

20        So now you're going to have to spend your client's money,

21   so to speak -- applies more to one side than the other, in all

22   likelihood -- to file a motion, and if the motion is not well

23   taken or the defense of the motion is not well taken, you may

24   well be paying for the other side's costs as well as your own.

25        All right?  So we have a schedule, and we need another

1    status call.  I don't want to let you too far from my sights,

2    and we will do that in May, Mr. Bradley.  Sometime around the

3    middle of May.  It's just a status call.

4            THE DEPUTY CLERK:  Okay.  We can do it on Friday,

5    May 18 at nine o'clock.

6            THE COURT:  How does Friday, May 18, at 9 a.m. sound

7    to you, Mr. Schreiber?

8            MR. SCHREIBER:  I'm available, Your Honor.

9            THE COURT:  Ms. Barnes?

10            MS. BARNES:  May 18?

11            THE COURT:  May 18.  Friday, May 18, 9 a.m.

12            MS. BARNES:  I'm fine on that date.

13            THE COURT:  All right.  We'll have a status on Friday,

14    May 18, at 9 a.m.  Any other direction you need in terms of

15    where we're going?  At that status, depending upon how things

16    seem to be going, I may well set a further schedule in the case.

17            MR. SCHREIBER:  As far as experts, things like that,

18    we're still in premature position of not having enough

19    information to have economists actually do anything in this

20    case.

21            THE COURT:  We can talk about that a little bit.

22            MR. SCHREIBER:  All right.  I just want to let the

23    Court know that.

24            THE COURT:  Okay.  I will see you then, and I wish you

25    luck in your efforts.  And, quite frankly, I hope not to hear

# EXHIBIT 3

| | |
|---|---|
| **From:** | David E. Schreiber [des913@covad.net] |
| **Sent:** | Wednesday, May 02, 2007 5:36 PM |
| **To:** | Barnes, Johnine |
| **Cc:** | 'David E. Schreiber' |
| **Subject:** | RE: D'Onofrio v SFX et al |

Johnine,
If convenient, I will call you tomorrow afternoon.
In the meantime, check on the dates for Kennedy.
Also, we believe that there are many e mails and documents not produced which will necessitate the forensic inquiry.
Regards.

David E. Schreiber, Esq.
David E. Schreiber, P.C.
4550 Montgomery Ave., Suite 760N
Bethesda, MD 20814
o) 301 951 1530
f) 301 951 1599

CONFIDENTIALITY NOTICE

This e-mail transmission is intended only for the personal and confidential use of the recipient(s) designated above. It may also constitute an attorney-client communication or represent attorney work product and may therefore be legally privileged. If you are not the intended recipient of this communication (or an agent responsible for delivering it to the intended recipient), you are hereby notified that any review, disclosure or use of the information contained herein is Strictly Prohibited. If you have received this communication in error, please notify us by telephone, at 301-951-1530, or by return e-mail, immediately. Thank you.

-----Original Message-----
**From:** Barnes, Johnine [mailto:jbarnes@bakerlaw.com]
**Sent:** Wednesday, May 02, 2007 3:59 PM
**To:** David E. Schreiber
**Subject:** RE: D'Onofrio v SFX et al

David,

Please feel free to call me at your convenience. I am not sure to what your statement "As you indicated you most recent discovery responses were negligible" is referring. But, so that it is clear I am not and to the extent you may have thought, have not stated that our discovery responses are negligible. Defendants are complying with all appropriate and relevant discovery requests. We do need to speak because I am not clear as to why Kroll "has to do its forensic investigation." As I stated, if your calendar does not permit you to be available at certain time, please feel free to give me a call when you are available. Thank you.

JPB

-----Original Message-----
**From:** David E. Schreiber [mailto:des913@covad.net]
**Sent:** Wednesday, May 02, 2007 3:56 PM
**To:** Barnes, Johnine
**Cc:** David Schreiber
**Subject:** RE: D'Onofrio v SFX et al

Johnine,
You haven't called.

Kennedy's deposition should be soon. May 17, 25, 30, 31.

As you indicated you most recent discovery responses were negligible.
Try calling me tomorrow afternoon.
Regards.


David E. Schreiber, Esq.
David E. Schreiber, P.C.
4550 Montgomery Ave., Suite 760N
Bethesda, MD 20814
o) 301 951 1530
f) 301 951 1599


CONFIDENTIALITY NOTICE

This e-mail transmission is intended only for the personal and confidential use of the recipient(s) designated above. It may also constitute an attorney-client communication or represent attorney work product and may therefore be legally privileged. If you are not the intended recipient of this communication (or an agent responsible for delivering it to the intended recipient), you are hereby notified that any review, disclosure or use of the information contained herein is Strictly Prohibited. If you have received this communication in error, please notify us by telephone, at 301-951-1530, or by return e-mail, immediately. Thank you.

-----Original Message-----
**From:** Barnes, Johnine [mailto:jbarnes@bakerlaw.com]
**Sent:** Tuesday, May 01, 2007 4:27 PM
**To:** David E. Schreiber
**Subject:** RE: D'Onofrio v SFX et al

David,

I will call you tomorrow regarding the issues raised below.  Is there any particular dates on which you propose to depose Julie Kennedy?  Thanks.

JPB

-----Original Message-----
**From:** David E. Schreiber [mailto:des913@covad.net]
**Sent:** Tuesday, May 01, 2007 2:57 PM
**To:** Barnes, Johnine
**Cc:** David Schreiber
**Subject:** RE: D'Onofrio v SFX et al

Johnine,
I would like to schedule a deposition for Julie Kennedy this month.
Additionally, I would like to arrange to have Kroll do their forensic investigation of CCC archives of e mails/documents [Legato] in San Antonio, as noted previously in our correspondence and court filings.
Please call me to discuss.
Thank you.

David E. Schreiber, Esq.
David E. Schreiber, P.C.
4550 Montgomery Ave., Suite 760N
Bethesda, MD 20814
o) 301 951 1530
f) 301 951 1599

CONFIDENTIALITY NOTICE

This e-mail transmission is intended only for the personal and confidential use of the recipient(s) designated above. It may also constitute an attorney-client communication or represent attorney work product and may therefore be legally privileged. If you are not the intended recipient of this communication (or an agent responsible for delivering it to the intended recipient), you are hereby notified that any review, disclosure or use of the information contained herein is Strictly Prohibited. If you have received this communication in error, please notify us by telephone, at 301-951-1530, or by return e-mail, immediately. Thank you.

No virus found in this incoming message.
Checked by AVG Free Edition.
Version: 7.5.463 / Virus Database: 269.6.0/775 - Release Date: 4/24/2007 5:43 PM

No virus found in this outgoing message.
Checked by AVG Free Edition.
Version: 7.5.467 / Virus Database: 269.6.2/782 - Release Date: 5/1/2007 2:10 AM

This email is intended only for the use of the party to which it is addressed and may contain information that is privileged, confidential, or protected by law.  If you are not the intended recipient you are hereby notified that any dissemination, copying or distribution of this email or its contents is strictly prohibited. If you have received this message in error, please notify us immediately by replying to the message and deleting it from your computer.

Internet communications are not assured to be secure or clear of inaccuracies as information could be intercepted, corrupted, lost, destroyed, arrive late or incomplete, or contain viruses. Therefore, we do not accept responsibility for any errors or omissions that are present in this email, or any attachment, that have arisen as a result of e-mail transmission.

No virus found in this incoming message.
Checked by AVG Free Edition.
Version: 7.5.467 / Virus Database: 269.6.2/782 - Release Date: 5/1/2007 2:10 AM

No virus found in this outgoing message.
Checked by AVG Free Edition.
Version: 7.5.467 / Virus Database: 269.6.2/784 - Release Date: 5/1/2007 2:57 PM

This email is intended only for the use of the party to which it is

5/29/2007

addressed and may contain information that is privileged, confidential, or protected by law. If you are not the intended recipient you are hereby notified that any dissemination, copying or distribution of this email or its contents is strictly prohibited. If you have received this message in error, please notify us immediately by replying to the message and deleting it from your computer.

Internet communications are not assured to be secure or clear of inaccuracies as information could be intercepted, corrupted, lost, destroyed, arrive late or incomplete, or contain viruses. Therefore, we do not accept responsibility for any errors or omissions that are present in this email, or any attachment, that have arisen as a result of e-mail transmission.

No virus found in this incoming message.
Checked by AVG Free Edition.
Version: 7.5.467 / Virus Database: 269.6.2/784 - Release Date: 5/1/2007 2:57 PM

No virus found in this outgoing message.
Checked by AVG Free Edition.
Version: 7.5.467 / Virus Database: 269.6.2/784 - Release Date: 5/1/2007 2:57 PM

**EXHIBIT 4**

1

1        UNITED STATES DISTRICT COURT

2        FOR THE DISTRICT OF COLUMBIA

3     ---------------------------x

4     AUDREY (SHEBBY) D'ONOFRIO,                **COPY**

5              Plaintiff,

6         vs.                      Case No. 06-687 JDB
                                   Judge John D. Bates
7     SFX SPORTS GROUP, INC.,
      et al.,
8
               Defendants.
9     ---------------------------x

10                          Bethesda, Maryland

11                          February 21, 2007
      Deposition of
12                  **JOE SHANNON**

13    called for oral examination by counsel for

14    Plaintiff, pursuant to notice, held at the law

15    offices of David E. Schreiber, 4550 Montgomery

16    Avenue, Suite 760N, Bethesda, Maryland, beginning

17    at 11:32 a.m., before Lynell C.S. Abbott,

18    Shorthand Reporter and Notary Public in and for

19    the State of Maryland, when were present on behalf

20    of the respective parties:

21

22

2

```
 1              A P P E A R A N C E S

 2

 3       On Behalf of Plaintiff:

 4       Law Office of David E. Schreiber

 5       By:  David E. Schreiber, Esq.

 6       4550 Montgomery Avenue, Suite 760N

 7       Bethesda, Maryland  20814

 8       (301) 951-1530

 9

10       On Behalf of Defendants:

11       Baker & Hostetler

12       By:  Johnine P. Barnes, Esq.

13       1050 Connecticut Avenue, N.W.

14       Suite 1100

15       Washington, D.C.  20036-5304

16       (202) 861-1633

17              and

18       Donna K. Schneider, Esq.

19       Clear Channel

20       200 East Basse Road

21       San Antonio, Texas  78209

22       (210) 832-3468
```

3

1      Also Present:

2      Audrey (Shebby) D'Onofrio

3      Douglas Bond

4

5

6              C O N T E N T S

7   EXAMINATIONS

8   JOE SHANNON                               PAGE

9      BY MR. SCHREIBER                          4

10

11

12

13

14              E X H I B I T S

15   MARKED FOR IDENTIFICATION              PAGE

16   AND ATTACHED:

17

18   JS Exhibits:

19      No. 1                                  10

20      No. 2                                  22

21

22

18

1      Q.    Moving forward.

2      A.    Moving forward, over the next week

3   or so I determined that we had quite a bit of

4   Ms. D'Onofrio's e-mail.

5      Q.    Counsel was kind enough to send over

6   to us, it arrived this morning, counsel said they

7   tried last night, a disk.  Well, it's not a disk

8   actually.  There's two disks.  There's two disks

9   that were sent over.  The first disk, I didn't

10  even see the first one.  DEF 1 through 28379 and

11  then 28544 through 46656.  And then the second

12  disk has 28380 DEF and then 28543.

13           So I'm estimating from the numbering

14  here that there are some 46,656 e-mails on here.

15  Is that correct?

16      A.    I don't know.  I did not create those.

17      Q.    Who created these?

18      A.    I don't know.

19      Q.    You were just telling me about

20  locating e-mails.

21      A.    Yes, sir.

22      Q.    How did you locate e-mails sometime

19

1    between February 7th and February 21st?

2         A.    I searched our archiving system.

3         Q.    And what kind of archiving system is

4    maintained?

5         A.    It's a Legato.

6         Q.    Spell that.

7         A.    L-e-g-a-t-o.

8         Q.    L-e-g-a-t-o.  Is that a brand name?

9         A.    That is a brand name; company name,

10   also.

11        Q.    And that is the system that you,

12   meaning Clear Channel, uses to archive all

13   e-mails?

14             MS. BARNES:  Objection.

15             THE WITNESS:  Selected users' e-mails.

16             BY MR. SCHREIBER:

17        Q.    And how is one, a user, selected to be

18   archived?

19        A.    My Legal Department gives me that

20   list.

21        Q.    And how often does the Legal

22   Department give you a list?  Weekly?  Monthly?

29

1    A.    I have no idea what phase of
2 litigation a case is in.
3    Q.    Well, how do you characterize the word
4 "litigation" that you just used?  What does it
5 mean corporately?
6    A.    To me it means, we have a litigation
7 e-mail server.  And when we get notification
8 from our Legal Department that XYZ employee or
9 ex-employee needs to be put on the litigation
10 server, that's about the extent of the contact I
11 receive, not the reason why or what phase of the
12 case it's in or even if there is a case.
13    Q.    Do you know when Ms. D'Onofrio was put
14 on this list, this litigation server list?
15        MS. BARNES:  Objection.
16        THE WITNESS:  I do now.
17        BY MR. SCHREIBER:
18    Q.    Tell me what you know.
19    A.    August 2004.
20    Q.    August of 2004 Ms. D'Onofrio was put
21 on a list.  Was there any information regarding
22 why she was on a list about potential -- was it a

                                                                    30

1    potential litigation or an actual litigation that

2    she was on?

3              MS. BARNES:  Objection.

4              THE WITNESS:  There was a, I don't

5    know if it was potential or actual.  There was a

6    case against Clear Channel that put over 11,000

7    people onto this system in August of '04.

8              BY MR. SCHREIBER:

9        Q.    And she was one of them.

10       A.    Apparently.

11       Q.    Do you know what this case was about?

12       A.    Yes, sir.

13       Q.    What was it about?

14             MS. BARNES:  Objection.

15             BY MR. SCHREIBER:

16       Q.    You may answer.

17             MS. BARNES:  Well, let's go off the

18   record for a second.

19             MR. SCHREIBER:  I don't know what you

20   are about to tell me.  It will go back on the

21   record once you tell me.

22             (Discussion off the record.)

31

1          BY MR. SCHREIBER:

2          Q.     Ms. Barnes has made reference to an

3    unrelated matter, government investigation, that

4    had caused 11,000 people to be put on this list.

5    It's called a litigation list or litigation

6    server?

7          A.     Yes, sir.

8          Q.     We don't need to go into the specifics

9    of it, but am I correct to understand that Ms.

10   D'Onofrio as one of these many people, all of her

11   e-mails had been saved going forward from August

12   of 2004 through the present?

13         A.     Through exiting the company, yes, sir.

14         Q.     Okay.  So they were saved and are

15   still in existence.

16         A.     Yes, sir.

17         Q.     And that is the basis for these two

18   disks with some 46,000 items on them.  Is that

19   correct?

20         A.     I am assuming.  Those disks are not

21   mine.

22         Q.     Who created those disks?

112

1              MR. SCHREIBER:  Yeah.  I realize we're

2      just talking e-mail.

3              BY MR. SCHREIBER:

4        Q.    If somebody from Kroll was to want to

5      do a forensic investigation of other e-mails other

6      than just the ones that Ms. D'Onofrio's name

7      appears on, "To," "From," would they have to do

8      that in San Antonio or could it be done long

9      distance?

10       A.    I'm not sure I understand the

11     question.

12       Q.    Well, we are going to give you some

13     names.  I've given the names already to counsel

14     in document requests.  None of that information

15     really has been produced.  Now, we don't know if

16     those names are part of the 11,000 that are on

17     that special list.  Assuming that you have not

18     independently of that 11,000 kept other e-mails,

19     somebody from our forensic investigating concern,

20     Kroll, will want to review forensically certain

21     search parameters, the actual stored data, okay?

22     For instance, for the Department of Justice, I

**EXHIBIT 5**

```
 1              UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF COLUMBIA
 2
      AUDREY (SHEBBY) D'ONOFRIO   )
 3              Plaintiff         )
                                  )
 4    VS.                         )  Case No.:  06-687 JDB
                                  )  Judge John D. Bates
 5    SFX SPORTS GROUP, INC,      )
      et al.                      )
 6              Defendants        )

 7

 8    *******************************************************

 9              THE ORAL DEPOSITION OF

10                 KIMBERLY WRAY

11                  MAY 9, 2007

12                   DUPLICATE

13    *******************************************************

14

15              THE ORAL DEPOSITION OF KIMBERLY

16    WRAY, produced as a witness at the instance of the

17    Plaintiff and duly sworn, was taken in the

18    above-styled and numbered cause on the 9th day of

19    May, 2007 from 9:10 a.m. to 12:30 p.m., before JULIE

20    VERASTEGUI, CSR in and for the State of Texas,

21    reported by stenographic and computer-aided

22    transcription at Hoffman Reporting & Video Service,

23    206 East Locust, San Antonio, Texas 78212, pursuant

24    to the Federal Rules of Civil Procedure and the

25    provisions stated on the record or attached hereto.
```

```
1                    S-T-I-P-U-L-A-T-I-O-N-S

2

3              It is further stipulated and agreed

4    by and between counsel for the respective parties

5    hereto that the original of the deposition of

6    KIMBERLY WRAY shall be sent to MS. JOHNINE P. BARNES

7    at her address for the purpose of obtaining the

8    signature of the witness thereon before any notary

9    public.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

3

<pre>
 1              A P P E A R A N C E S

 2

 3    FOR THE PLAINTIFF:

 4
                    MR. DAVID E. SCHREIBER
 5                  Attorney at Law
                    4550 Montgomery Avenue, Suite 760 N
 6                  Bethesda, Maryland  20814-3304
                    PHONE:  301.951.1530
 7                  FAX:  301.951.1599
                    E-MAIL:  des913@covad.net
 8

 9    FOR THE DEFENDANTS:

10
                    MS. JOHNINE P. BARNES
11                  BAKER & HOSTETLER, L.L.P.
                    Attorneys at Law
12                  Washington Square, Suite 1100
                    1050 Connecticut Avenue, N.W.
13                  Washington, D.C.  20036-5304
                    PHONE:  202.861.1633
14                  FAX:  202.861.1783
                    E-MAIL:  jbarnes@bakerlaw.com
15

16    ALSO PRESENT:

17
                    DONNA K. SCHNEIDER,
18                  Corporate Counsel for Clear Channel;

19                  KIMBERLY WRAY,
                    The Witness; and
20
                    JULIE VERASTEGUI,
21                  Certified Court Reporter.

22

23

24

25
</pre>

HOFFMAN REPORTING & VIDEO SERVICE

SAN ANTONIO / DALLAS / HOUSTON
210.736.3555 / 800.395.2840

1    conversation this late afternoon, early evening.

2    Tell me exactly what the two of you talked about.

3         A.    Again, I don't recall if we had a

4    conversation or if it was e-mailed.  When I found

5    out that she was going to be put on the list, we did

6    verbally talk, and I told him that she is pregnant.

7    His response was that Michael Rapino and him have

8    decided they were going to be getting rid of the --

9    the entire PR function and that was going to be

10   outsourced outside the company.

11        Q.    Wow.  Outsourced.  Okay.  That's the first

12   time we've heard that.  Now, the outsourcing that he

13   just told you about, what did he say about that, if

14   anything?

15        A.    That was it.

16        Q.    Did he discuss the cost of doing something

17   like this?

18        A.    No.  He would not have done that with me.

19        Q.    Okay.  And you didn't raise the cost of

20   whether it was cheaper to keep somebody in-house

21   versus hiring a PR firm?

22        A.    No.

23             **MS. BARNES:**  Objection.

24        Q.    **(By Mr. Schreiber)** Okay.  Did you ever come

25   to find out what PR firm supposedly was hired?

1    A.    I don't recall.  If she did, there wasn't

2    anything that I -- I would -- I remember from it.  I

3    mean, there wasn't any big reaction or big problem

4    that came up with it.  I don't recall if I had that

5    conversation with her or not.

6    Q.    How was the severance package determined if

7    they wanted to offer a terminated employee?

8    A.    If she was not -- If Audrey was not under

9    contract -- And she wasn't -- it is determined based

10   on years of service; two years for the -- two weeks

11   for the first year and one week for every year after

12   that.

13   Q.    At what levels were people under contract?

14                    **MS. BARNES:**  Objection.

15                    **THE WITNESS:**  I don't know.

16   Q.    **(By Mr. Schreiber)** Would a vice president

17   have a contract?

18                    **MS. BARNES:**  Objection.

19                    **THE WITNESS:**  Not -- Not

20   necessarily.

21   Q.    **(By Mr. Schreiber)** Do you know if

22   Howard Schacter had a contract?

23   A.    I don't know.

24                    **(Deposition Exhibit No. 4 was**

25   **marked.)**

1    Q.    **(By Mr. Schreiber)** Exhibit 4, Ms. Wray, is

2    a document, SFX271, produced to us.  This is not

3    your handwriting; is that correct?

4    A.    Correct.

5    Q.    Actually, we're told that it's probably

6    Julie Kennedy's handwriting.  This indicates that

7    his annual salary is $180,000.  And below that, it

8    starts, "per employment agreement."  Has anybody in

9    your organization tried to obtain or find an

10   employment agreement that Mr. Schacter had?

11                    **MS. BARNES:**  Objection.

12                    **THE WITNESS:**  I don't know.

13   Q.    **(By Mr. Schreiber)** Has anybody asked you,

14   to your knowledge, of trying to locate this supposed

15   employment agreement?

16   A.    No.  We did not keep Entertainment's

17   employment agreements in San Antonio.

18   Q.    Who did?

19   A.    They were maintained in Houston.

20   Q.    I see.  So who in Houston would have,

21   possibly, Mr. Schacter's agreement?

22   A.    I am not sure of the person who maintained

23   it.  It possibly could have -- It could have been

24   Kimberly Bowron.

25   Q.    Spell that, would you?

# EXHIBIT 6



April 18, 2000

Ms. Audrey D'Onofrio
300 Memorial Park Drive
Springfield, PA  19064

Dear Audrey:

We are very excited to offer you a position with the SFX Sports Group, a division of SFX Entertainment.  Please accept this letter as written confirmation of the offer as we have discussed it.

- Your title will be Senior Director/Communications.  You will report directly to Howard Schacter, Vice President/Communications.
- You will receive an annual salary of $75,000, which will be reviewed one year after start date, and thereafter, subject to SFX and/or SFX Sports Group review policies as announced periodically.
- You will begin your employment on Thursday, May 4, 2000.  Your employment will be "At Will" unless otherwise mutually agreed in writing.
- You shall receive a package of medical, dental and life benefits consistent with those offered to all SFX and/or SFX Sports Group employees as well as standard sick leave.
- You shall receive two weeks of vacation annually.
- You shall be included, if you choose, in the SFX Entertainment 401k plan once you have fulfilled the eligibility requirements.

Audrey, on behalf of all of us at SFX, we are very excited to have you join our team.  We look forward to your contributions to our company and the clients whom we serve.  If this document represents your understanding of the terms and conditions, please indicate by signing below and returning one copy to me.

Sincerely,

Howard Schacter
Vice President/Communications


Signed: _____
            Audrey D'Onofrio


CC: Bill Allard

**EXHIBIT 7**

Page 1

```
 1           IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF COLUMBIA
 2
     - - - - - - - - - - - - - - - x
 3
     AUDREY D'ONOFRIO                :     ORIGINAL
 4
               Plaintiff            :
 5
     vs.                            :    No. 06-687
 6
     SFX SPORTS GROUP, INC.,        :
 7   ET AL.
 8             Defendants           :
 9   - - - - - - - - - - - - - - - x
10                    March 1, 2007
11                    Washington, D.C.
12   DEPOSITION OF:
13                    AUDREY D'ONOFRIO
14        was called for examination by counsel for the
15   Defendants, pursuant to notice, taken at Baker &
16   Hostetler, 1050 Connecticut Avenue, N.W,  Suite 1100,
17   Washington, D.C., commencing at 10:12 a.m., before
18   Misty Klapper, a Notary Public in and for the District
19   of Columbia, when were present on behalf of the
20   respective parties:
21
22
```

288e6786-2af2-458d-892e-9d46ae0d485f

Page 2

1    APPEARANCES:

2            JOHNINE BARNES, ESQ.
             LAURIE BABINSKI, ESQ.
3            Baker & Hostetler
             1050 Connecticut Avenue, N.W.
4            Suite 1100
             Washington, D.C.  20026
5            COUNSEL FOR THE DEFENDANTS

6
             DAVID SCHREIBER, ESQ.
7            4550 Montgomery Avenue
             Suite 760 North
8            Bethesda, Maryland  20814
             COUNSEL FOR THE PLAINTIFF
9

10

11

12

13

14                    C O N T E N T S

15   WITNESS:                EXAMINATION BY:    PAGE:

16   Audrey D'Onofrio          Ms. Barnes         4

17

18

19

20

21

22

288e6786-2af2-458d-892e-9d46ae0d485f

Page 60

1      A.    There was Josh Schwartz; Lowell Taub;

2  Lonnie -- I can't remember his last name, Lonnie

3  something; Eric Wold.  Rob Urbach was initially the

4  leader, and then Peter Hughes.  There were other

5  people, but, again, I don't have -- a variety of

6  people.

7      Q.    And the people that worked in just the

8  SFX marketing division, again, their job

9  responsibilities entailed getting the sponsorships and

10  pitching the clients and bringing the clients in?

11      A.    Correct, from what I understand.  I

12  didn't have their job.

13      Q.    But it was not what your job entailed?

14      A.    No, my job was completely different.

15      Q.    Okay.

16      MR. SCHREIBER:  How are you doing?  Do

17  you need a break?

18      THE WITNESS:  Yeah, I could use a break.

19      MR. SCHREIBER:  Do you want to take five?

20  Do you have another question before we take a break.

21      MS. BARNES:  I want to finish my line of

22  questioning.

288e6786-2af2-458d-892e-9d46ae0d485f

# EXHIBIT 8

## Kennedy, Julie

| | |
|---|---|
| **From:** | Schacter, Howard |
| **Sent:** | Wednesday, May 03, 2000 12:30 PM |
| **To:** | Barbara Rosenwach; Grandsimsp@aol.com; Kar?, Jessica; kwelch;@browns.nfl.com; London - SFX Sports; Los Angeles - ProServ; Los Angeles - SFX Tellem; mpeterson@smepowerbranding.com; mredlick@browns.nfl.com; New York - SME; North Hollywood - Tollin/Robbins; paatpse@aol.com; pinillrose@webtv.net; proserv@ozemail.com.au; proservuk@aol.com; r suktennis@aol.com; sally@park.netkonect.co.uk; SFX Sports Group; nlbayliff@aol.com; Sports Group - CT; Sports Group - GA; Sports Group - NJ; Sports Group - TX; tileym@aol.com; tsass@globalnet.co.uk; tvagent@aol.com; Waks, Todd; Washington D.C. - ProServ |
| **Subject:** | Audrey D'Onofrio |

As you heard during yesterday's conference call, I am pleased to announce that Audrey D'Onofrio will be joining the SFX Sports Group on Thursday, May 4, as a Senior Director on the Communications team. Audrey is joining us from Octagon Sports Marketing, where she was a PR Director responsible for supporting that company's Marketing division, which included not only sponsors and consulting clients, but the events Octagon produces as well. Prior jobs included work as a Director in pr giant Hill & Knowlton's Media Relations department, and as a booker for CNN's "Larry King Show." We are thrilled to have Audrey bring her wealth of experience, media contacts and passion for our business to SFX.

Elaborating on yesterday's call, on June 1 I'll be moving to New York City to help develop the Communications function to support SFX Corporate and all our divisions. Fortunately, we've got a great team already in place in the Sports Group, including Jim Gluckson, Rachel Zuk and Alyson Sadofsky. Audrey will take on responsibility for day-to-day management of Sports Group PR while working from the DC-1620 L Street office. She'll report to me, with direction coming from the Sports Group management - and all of you as needs arise.

Please be sure to drop Audrey a note of welcome over the next few days.

---

Howard Schacter
VP/Communications
SFX Sports Group
1620 L Street NW, Suite 600
Washington, DC 20036
P: 202-721-9565
F: 202-721-7201
E: Howard.Schacter@sfx.com

SFX0053