**EXHIBIT 9**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AUDREY (SHEBBY) D'ONOFRIO,<br><br>Plaintiff,<br><br>v.<br><br>SFX SPORTS GROUP, INC., et al.<br><br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>) Civil Action No. 1:06-cv-00687 (JDB)<br>) Next Event:<br>)<br>)<br>)<br>)<br>) |

DEFENDANT SFX SPORTS GROUP, INC.'S OBJECTIONS
AND ANSWERS TO PLAINTIFF'S INTERROGATORIES

Comes now defendant SFX Sports Group, Inc. ('defendant" or "SFX") and objects to and answers Plaintiff's Interrogatories as follows:

GENERAL OBJECTIONS

1.    SFX objects to these interrogatories as overly broad, vague and unduly burdensome.

2.    SFX further objects to these interrogatories to the extent they seek information protected by the attorney-client privilege, the attorney work-product doctrine, or other applicable federal, state or common-law privilege.

3.    SFX further objects to these interrogatories to the extent they contain vague and ambiguous terms for which definitions have not been provided.

4.    SFX further objects to these interrogatories to the extent they seek the discovery of information neither relevant to this action, nor reasonably calculated to lead to the discovery of admissible evidence.

5.    SFX further objects to these interrogatories to the extent they exceed the scope of

the requirements of the Federal Rules of Civil Procedure.

## OBJECTIONS AND ANSWERS

1.    Please state the name, business address and the title or office in the Defendant
corporation of the person or persons (see Definition and Instruction F) answering these
interrogatories on behalf of the defendant.

ANSWER:  Subject to and without waiving SFX 's general objections:

Alaka Williams
Human Resources
Live Nation, Inc.
5335 Wisconsin Avenue, N.W.
Suite 850
Washington, DC  20015

2.    Describe in complete detail (see Definition and Instruction B) every reason or
reasons why the Plaintiff was terminated from SFX.

OBJECTION:  This interrogatory is overly broad, vague and argumentative.  Further,

this interrogatory seeks the discovery of information neither relevant to this action, nor

reasonably calculated to lead to the discovery of admissible evidence.

ANSWER:  Subject to and without waiving the foregoing objections and SFX's general

objections, on or about March 2005, SFX prepared a business plan for the future business of its

sports group.  As part of the plan, SFX evaluated and planned for a reduction in force to help

achieve its business goals.  This reduction involved the elimination of corporate overhead,

including several divisions and positions.  Mr. Dan Rosier, the former Chief Financial Officer for

SFX, made the determination as to what groups, divisions and positions would be eliminated.

Kimberly Wray, Head of Human Resources, Clear Channel Communications, Inc. identified the

persons in the groups, divisions and positions for elimination.  Ms. Alaka Williams implemented

the reduction by notifying persons of the terminations of employment.  Plaintiff's position as

Senior Director of Client Communications was one of the positions eliminated in the reduction,

-2-

as well as the positions of her assistant Tim Yowpa and her boss Peter Hughes, both of whom

also worked in public relations.

3.      Identify (see Definition and Instruction E, J) every person employed by the
Defendant (or its affiliate corporations, Live Nation, Inc., or Clear Channel Communications,
Inc.) who were involved in or played any type of role in the termination of the Plaintiff in both
2001 as well as September, 2005 and indicate those persons specific involvement in the
termination decisions and the underlying justification for each termination.

OBJECTION: This interrogatory is overly broad and vague. Further, the interrogatory

is cumulative and seeks the discovery of information neither relevant to this action, nor

reasonably calculated to lead to the discovery of admissible evidence.

ANSWER: Subject to and without waiving the foregoing objections and SFX's general

objections, SFX states that on or about May 4, 2000, SFX hired Plaintiff as Senior

Communications Director. On or about March 31, 2001, Plaintiff's employment was separated.

At this time, Plaintiff signed an Employee Separation Agreement waiving and releasing SFX

from any and all claims related to her employment with it. In consideration for the release,

Plaintiff was paid a severance amount of $4,327.20. SFX directs Plaintiff to its answer to

Interrogatory No. 2 and its Answer filed herein. SFX further directs Plaintiff to documents

produced for inspection and copying in SFX Sports Group, Inc.'s Responses to Plaintiff's

Request for Production of Documents.

4.      Identify and describe in complete detail any policy of the Defendant (or its
affiliate corporations, Live Nation, Inc., or Clear Channel Communications, Inc.) relative to the
hiring or retention of pregnant women (during the relevant time period)?

OBJECTION: This interrogatory is overly broad, vague and argumentative. Further this

interrogatory contains ambiguous terms for which definitions have not been provided and seeks

the discovery of information neither relevant to this action, nor reasonably calculated to lead to

the discovery of admissible evidence.

ANSWER:  Subject to and without waiving the foregoing objections and SFX's general

objections,  SFX is an Equal Opportunity Employer and has an Equal Opportunity Employment

policy that prohibits discrimination on any basis prohibited by law in its hiring, firing and

retention of employees.

5.      With respect to any policy relative to the hiring or retention of pregnant women,
identified in #4, please state with reference to each individual responsible for setting such
policies (during the relevant time period):

(a)      Name, address, sex, age, race, religion and national origin;
(b)      The dates during which each was responsible for setting such policy;
(c)      The individual's job title and employment history with the Defendant.

OBJECTION:  This interrogatory is vague and argumentative.  Further this interrogatory

contains ambiguous terms for which definitions have not been provided and seeks the discovery

of information neither relevant to this action, nor reasonably calculated to lead to the discovery

of admissible evidence.

ANSWER:  Subject to and without waiving the foregoing objections and SFX's general

objections, SFX directs Plaintiff to its answer to Interrogatory No. 4 and to documents produced

for inspection and copying in SFX Sports Group, Inc.'s Responses to Plaintiff's Request for

Production of Documents.  SFX further states that Ms. Alaka Williams is the Regional Director

of Human Resources for SFX.  Her job responsibilities include, but are not limited to the

implementation of SFX's employment policies.

6.      Identify and describe in complete detail Defendant's (or its affiliate corporations,
Live Nation, Inc., or Clear Channel Communications, Inc.) policy, if any, concerning the
continued employment of pregnant women, including, but not necessarily limited to, matters
such as the following:

(a)      How much paid personal leave the employee may take;
(b)      How much unpaid personal leave the employee may take;
(c)      How much vacation time the employee may take;
(d)      How much sick leave the employee may take;

(e)    How much paid disability leave the employee may take;
(f)    How much unpaid disability leave the employee may take;
(g)    How much total leave the employee may take and still return to her same job;
(h)    How much total leave the employee may take and still return to the company;
(i)    Accrual or loss of seniority while on leave;
(j)    Susceptibility to layoff while on leave;
(k)    Whether pregnancy is ever grounds for discharge;
(l)    Whether pregnancy will ever result in reassignment to another job;
(m)    Whether an employee who takes an extended leave, while not guaranteed a job, is subject to rehire.

OBJECTION:  This interrogatory is overly broad, unduly burdensome, vague, cumulative and argumentative.  Further this interrogatory contains ambiguous terms for which definitions have not been provided and seeks the discovery of information neither relevant to this action, nor reasonably calculated to lead to the discovery of admissible evidence.

ANSWER:  Subject to and without waiving the foregoing objections and SFX's general objections, SFX directs Plaintiff to its answer to Interrogatory No. 4 and to documents produced for inspection and copying in SFX Sports Group, Inc.'s Responses to Plaintiff's Request for Production of Documents.

7.    Identify and describe in complete detail Defendant's (or its affiliate corporations, Live Nation, Inc., or Clear Channel Communications, Inc.) policy, if any, concerning disabled employees, including, but not necessarily limited to matters such as the following:

(a)    How much paid personal leave the employee may take;
(b)    How much unpaid personal leave the employee may take;
(c)    How much vacation time the employee may take;
(d)    How much sick leave the employee may take;
(e)    How much paid disability leave the employee may take;
(f)    How much unpaid disability leave the employee may take;
(g)    How much total leave the employee may take and still return to his or her same job;
(h)    How much total leave the employee may take and still return to the company;
(i)    Accrual or loss of seniority while on leave;
(j)    Susceptibility to layoff while on leave;
(k)    Whether disability is ever grounds for discharge;
(l)    Whether disability will ever result in reassignment to another job;
(m)    Whether an employee who takes an extended leave, while not guaranteed a job, is subject to rehire.

OBJECTION: This interrogatory is overly broad, unduly burdensome, vague, cumulative and argumentative. Further this interrogatory contains ambiguous terms for which definitions have not been provided and seeks the discovery of information neither relevant to this action, nor reasonably calculated to lead to the discovery of admissible evidence.

ANSWER: Subject to and without waiving the foregoing objections and SFX's general objections, SFX directs Plaintiff to its answer to Interrogatory No. 4 and to documents regarding its Short Term Disability policy produced for inspection and copying in SFX Sports Group, Inc.'s Responses to Plaintiff's Request for Production of Documents.

8.      Identify (see Definition and Instruction E, I) any pregnant woman (during the relevant time period) employed by Defendant (or its affiliate corporations, Live Nation, Inc., or Clear Channel Communications, Inc.) who has been forced to take leave either immediately upon becoming pregnant or at a particular point in her pregnancy.

OBJECTION: This interrogatory is overly broad, unduly burdensome, vague, cumulative and argumentative. Further this interrogatory contains ambiguous terms for which definitions have not been provided and seeks the discovery of information neither relevant to this action, nor reasonably calculated to lead to the discovery of admissible evidence.

ANSWER: Subject to and without waiving the foregoing objections and SFX's general objections, there is no, nor has there been "any pregnant woman employed by Defendant...who has been forced to take leave either immediately upon becoming pregnant or at a particular point in her pregnancy." SFX further directs Plaintiff to its answer to Interrogatory No. 4 and to documents produced for inspection and copying in SFX Sports Group, Inc.'s Responses to Plaintiff's Request for Production of Documents.

9.      Describe in complete detail (see Definition and Instruction B) the nature of Howard Schaecter's employment with SFX Sports Group, including, but not limited to:

(a)      the exact job title of Mr. Schaecter's position(s),
(b)      a reasonably detailed description of his duties and responsibilities,
(c)      the dates of his tenure in each position,

-6-

(d)    all persons supervised in each position,

(e)    the supervisors reported to in each position and for what time period,

(f)    all forms of compensation earned in each position, including but not limited to, salary, bonus, restricted stock, options, vehicle allowance, relocation pay and severance.

OBJECTION:  This interrogatory is overly broad and unduly burdensome.  Further this interrogatory seeks the discovery of information neither relevant to this action, nor reasonably calculated to lead to the discovery of admissible evidence.

ANSWER:  Subject to and without waiving the foregoing objections and SFX's general objections, Mr. Howard Schacter was hired as Vice President of Corporate Communications for SFX on or about November 1, 1999.  In this position, Mr. Schacter supervised four persons, one of whom was Plaintiff.  Mr. Schacter's job responsibilities, included, but were not limited to managing the communication of corporate news, specifically the flow of information regarding the consolidation and branding of SFX's Sports Group, both internally and externally; maximizing media relations opportunities for SFX's talent, events and other properties; and exploring the feasibility of developing public relations as a revenue-generating business function. In this position, Mr. Schacter reported to Mr. Robert Allard, the former Chief Operating Officer of SFX.

In or about late 2000, Mr. Schacter's job responsibilities were transferred to the offices of SFX Entertainment in New York City.  In this position, Mr. Schacter's job responsibilities expanded to include overall corporate branding and communications for SFX Entertainment. His employment with Clear Channel Entertainment was separated on or about January 1, 2003.

SFX further directs Plaintiff to documents produced for inspection and copying in SFX Sports Group, Inc.'s Responses to Plaintiff's Request for Production of Documents.

10.    If the Defendant (or its affiliate corporations, Live Nation, Inc., or Clear Channel Communications, Inc.) alleges or contends that the failure to retain the Plaintiff was due to the

Plaintiffs lack of qualifications, describe in complete (see Definition and Instruction B) detail any of the qualifications that the Plaintiff lacked, and the reason that the Defendant (or its affiliate corporations, Live Nation, Inc., or Clear Channel Communications, Inc.) considers such qualifications necessary to efficient job performance.

OBJECTION:  This interrogatory is overly broad, vague, cumulative and argumentative.

ANSWER:  Subject to and without waiving the foregoing objections and SFX's general objections, SFX directs Plaintiff to its answer to Interrogatory No. 2.

11.    Identify (see Definition and Instruction E, J) all persons involved in the decision to not promote Audrey (Shebby) D'Onofrio to the title of Vice President at any time during the entire span of her tenure of employment with SFX Sports Group. In responding, please provide:

(a)    the name, address, phone number and title of each individual involved,
(b)    the exact role each individual played in the decision to deny the title of Vice President,
(c)    the person or persons who made the actual decision not to promote Ms. (Shebby) D'Onofrio to the title of Vice President, and
(d)    the underlying justification for denying the promotion.

OBJECTION:  This interrogatory is overly broad, vague, cumulative and argumentative. Further this interrogatory seeks the discovery of information neither relevant to this action, nor reasonably calculated to lead to the discovery of admissible evidence.

ANSWER:  Subject to and without waiving the foregoing objections and SFX's general objections, there was no "decision to not promote Audrey (Shebby) D'Onofrio to the title of Vice President at any time during the entire span of her tenure of employment with SFX Sports Group."

12.    Identify (see Definition and Instruction E, I) each individual who was hired or promoted to the position for which the Plaintiff was employed, or who assumed Plaintiffs job responsibilities, subsequent to the Plaintiffs termination:

(a)    Name, address, sex, age, race, religion and national origin;
(b)    The individual's prior employment with the defendant;
(c)    The date hired or promoted;
(d)    The position to which hired or promoted;
(e)    The individual's qualifications.

OBJECTION: This interrogatory is overly broad, unduly burdensome, vague, cumulative and argumentative.

ANSWER: Subject to and without waiving the foregoing objections and SFX's general objections, there is no one employed with SFX in the position of Senior Director of Client Communications or who assumed the responsibilities of Plaintiff's job in SFX.

13.    If the Defendant (or its affiliate corporations, Live Nation Inc., or Clear Channel Communications, Inc.) alleges or contends a business justification for forced termination of the Plaintiff as a result of the Plaintiffs pregnancy, describe in complete detail (see Definition and Instruction B) all facts on which you base your allegations or contentions.

OBJECTION: This interrogatory is overly broad, unduly burdensome, vague, cumulative and argumentative.

ANSWER: Subject to and without waiving the foregoing objections and SFX's general objections, SFX states that there was no "forced termination of the Plaintiff as a result of the Plaintiff's (sic) pregnancy." SFX further directs Plaintiff to its answer to Interrogatory No. 2.

14.    Identify (see Definition and Instruction E, J) all persons involved in the decision to restore the employment of Audrey (Shebby) D'Onofrio in 2002. In responding, please provide:

   (a)    the name, address, phone number and title of each individual involved,
   (b)    the exact role each individual played in the process,
   (c)    the person or persons who made the actual decision to restore employment, and the underlying justification for reinstating Audrey (Shebby) D'Onofrio as an employee.

OBJECTION: This interrogatory is vague, cumulative and argumentative. Further this interrogatory seeks the discovery of information neither relevant to this action, nor reasonably calculated to lead to the discovery of admissible evidence.

ANSWER: Subject to and without waiving the foregoing objections and SFX's general objections, SFX states that on or about February 21, 2002, Mr. Robert Urbach, former Executive

Vice President of SFX directed the hiring of Plaintiff as Senior Director of Client

Communications.  Mr. Dan Rosier approved the hiring.

15.     Describe in complete detail (see Definition and Instruction B) the alleged restructuring of SFX ("due to changes in the company, there was no longer a need for a public relations function, such that her position was to be eliminated effective that day" Complaint, ¶20), or related entities, that formed the basis for the termination of the Plaintiff.

OBJECTION:  This interrogatory is vague, cumulative and argumentative.

ANSWER:  Subject to and without waiving the foregoing objections and SFX's general

objections, SFX directs Plaintiff to its answer to Interrogatory No. 2.

16.     Persons Having Knowledge: Identify (see Definition and Instruction E, I) (a) each non-expert witness you intend to call to testify and/or (b) persons with knowledge of discoverable matters. With respect to such person, state the following information:

(a)     The subject matter(s) upon which each person is expected to testify.
(b)     The substance of the facts and/or opinions as to which each person is expected to testify.
(c)     A summary of grounds for each such opinion.
(d)     The identity of all data reflecting your answer to (B) above.

OBJECTION:  This interrogatory is vague, cumulative and argumentative.  SFX further

objects to these interrogatories to the extent they exceed the scope of the requirements of the

Federal Rules of Civil Procedure.

ANSWER:  Subject to and without waiving the foregoing objections and SFX's general

objections, SFX directs Plaintiff to its Initial Disclosures produced herein.

17.     Formal Performance Appraisal/Evaluation:  For each formal performance appraisal given to the Plaintiff by the Defendant (or its affiliates) for any year in which the Plaintiff was employed, provide the following information:

(a)     Date of each performance appraisal;
(b)     Overall employee performance rating contained in each performance appraisal;
(c)     Percentage of any salary increase reflected in any such performance appraisal;
(d)     A summary of any negative statements made against the Plaintiff in any such performance appraisal;
(e)     The present location of any such performance appraisals.

OBJECTION:  This interrogatory is vague, cumulative and argumentative.  Further this interrogatory contains ambiguous terms for which definitions have not been provided and seeks the discovery of information neither relevant to this action, nor reasonably calculated to lead to the discovery of admissible evidence.

ANSWER:  Subject to and without waiving the foregoing objections and SFX's general objections, SFX directs Plaintiff to documents produced for inspection and copying in SFX Sports Group, Inc.'s Responses to Plaintiff's Request for Production of Documents.

18.    Describe in complete detail (see Definition and Instruction B) the nature of Audrey (Shebby) D'Onofrio's employment with SFX Sports Group, including but not limited to:

(a)    the exact job title of Ms. (Shebby) D'Onofrio's position(s),
(b)    a reasonably detailed description of her duties and responsibilities, the dates of her tenure in each position,
(c)    all persons supervised in each position,
(d)    the supervisors reported to in each position and for what time period,
(e)    all forms of compensation earned in each position, including but not limited to, salary, bonus, restricted stock, options, vehicle allowance, relocation pay and severance.

OBJECTION:  This interrogatory is vague and cumulative.  Further this interrogatory seeks the discovery of information neither relevant to this action, nor reasonably calculated to lead to the discovery of admissible evidence.

ANSWER:  Subject to and without waiving the foregoing objections and SFX's general objections, SFX directs Plaintiff to its answer to Interrogatory No. 14.  SFX further states that on or about February 21, 2002, Plaintiff was hired by SFX as Senior Director of Client Communications.  In this position, Plaintiff was paid approximately $80,000 and was eligible, if applicable, to receive a bonus up to $10,000.  Plaintiff's responsibilities, include but were not limited to supporting the marketing function by creating public relations campaigns designed to enhance client marketability; implementing publicity initiative for sports clients; managing client media requests; creating client press kits; and managing client media training.  Plaintiff's direct

supervisors during her employment were Robert Urbach and Peter Hughes. Plaintiff's assistant,

Tim Yowpa reported to her during her employment. On or about September 27, 2005, Plaintiff's

employment with SFX was separated.

19.    Describe in complete detail (see Definition and Instruction B) the nature of Jim
Gluckson's employment with SFX Sports Group, including but not limited to:

(a)    the exact job title of Mr. Gluckson's position(s),
(b)    a reasonably detailed description of his duties and responsibilities,
(c)    the dates of his tenure in each position,
(d)    all persons supervised in each position, the supervisors reported to in each
        position and for what time period,
(e)    all forms of compensation earned in each position, including but not limited to,
        salary, bonus, restricted stock, options, vehicle allowance, relocation pay and
        severance.

OBJECTION:  This interrogatory is overly broad, unduly burdensome and vague.

Further this interrogatory seeks the discovery of information neither relevant to this action, nor

reasonably calculated to lead to the discovery of admissible evidence.

ANSWER:  Subject to and without waiving the foregoing objections and SFX's general

objections,  Mr. Gluckson became employed with SFX as part of its acquisition of his former

employer SMTI.  was employed as Vice President of Communications in SFX's New York City

offices from or about October 29, 1997 to  about 2002.  Prior to his employment with SFX, Mr.

Gluckson was formerly employed with SMTI.  SMTI was acquired by SFX.  His job

responsibilities included, but were not limited to directing and executing public relations

strategies and on-site management for SFX events, including the sport's group events; securing

media exposure for SFX events through contact with national sports and business media and

expert knowledge of horse racing, golf and tennis.  SFX further directs Plaintiff to documents

produced for inspection and copying in SFX Sports Group, Inc.'s Responses to Plaintiff's

Request for Production of Documents.

BAKER & HOSTETLER LLP

By: _____
Johnine P. Barnes (D.C. Bar No. 464810)
Lee T. Ellis, Jr. (D.C. Bar No. 3683)
1050 Connecticut Avenue, N.W.
Suite 1100
Washington, D.C.  20036
(202) 861-1500

Attorneys for Defendants SFX Sports Group, Inc.,
Live Nation, Inc. and Clear Channel Communications, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on August 30, 2006 a copy of the foregoing Defendant SFX

Sports Group Inc.'s Objections and Answers To Plaintiff's Interrogatories was served by regular

mail on David E. Schreiber, Esq., David E. Schreiber, P.C., 4550 Montgomery Avenue, Suite

760N, Bethesda, MD 20814.

_____
Johnine P. Barnes

-14-

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AUDREY (SHEBBY) D'ONOFRIO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 1:06-cv-00687 (JDB) |
| | ) Next Event:  Status Report 10/10/06 |
| | ) |
| SFX SPORTS GROUP, INC., et al. | ) |
| | ) |
| | ) |
| Defendants. | ) |

DEFENDANT SFX SPORTS GROUP, INC.'S
SUPPLEMENTAL ANSWERS TO PLAINTIFF'S INTERROGATORIES

Comes now defendant SFX Sports Group, Inc. ('defendant" or "SFX") supplements it

answers Plaintiff's Interrogatories as follows:

4.      Identify and describe in complete detail any policy of the Defendant (or its affiliate
corporations, Live Nation, Inc., or Clear Channel Communications, Inc.) relative to the hiring or
retention of pregnant women (during the relevant time period)?

ANSWER:  Subject to and without waiving SFX's previous objections, SFX is an equal

opportunity employer, but SFX does not have a written policy regarding the "retention of

pregnant women."  SFX does maintain a Family Medical Leave policy, which is located under

Tab C of the documents produced for inspection and copying in SFX's Responses to Plaintiff's

Request for Production of Documents.

5.      With respect to any policy relative to the hiring or retention of pregnant women,
identified in #4, please state with reference to each individual responsible for setting such policies
(during the relevant time period):

(a)      Name, address, sex, age, race, religion and national origin;
(b)      The dates during which each was responsible for setting such policy;
(c)      The individual's job title and employment history with the Defendant.

ANSWER: Subject to and without waiving SFX's previous objections, Alaka Williams

was responsible for setting policies during the relevant time period. Ms. Williams was the

Regional Director of Human Resources for SFX during Plaintiff's employment with SFX, and is

currently the Regional Director of Human Resources for Live Nation, Inc.

6.    Identify and describe in complete detail Defendant's (or its affiliate corporations,
SFX Sports Group Inc., or Clear Channel Communications, Inc.) policy, if any, concerning the
continued employment of pregnant women, including, but not necessarily limited to, matters
such as the following:

    (a)    How much paid personal leave the employee may take;
    (b)    How much unpaid personal leave the employee may take;
    (c)    How much vacation time the employee may take;
    (d)    How much sick leave the employee may take;
    (e)    How much paid disability leave the employee may take;
    (f)    How much unpaid disability leave the employee may take;
    (g)    How much total leave the employee may take and still return to her same
        job;
    (h)    How much total leave the employee may take and still return to the
        company;
    (i)    Accrual or loss of seniority while on leave;
    (j)    Susceptibility to layoff while on leave;
    (k)    Whether pregnancy is ever grounds for discharge;
    (l)    Whether pregnancy will ever result in reassignment to another job;
    (m)    Whether an employee who takes an extended leave, while not guaranteed
         a job, is subject to rehire.

ANSWER: Subject to and without waiving SFX's previous objections, SFX directs

Plaintiff to Tab C of the documents produced for inspection and copying in SFX, Inc.'s

Responses to Plaintiff's Request for Production of Documents.

7.    Identify and describe in complete detail Defendant's (or its affiliate corporations,
SFX Sports Group Inc., or Clear Channel Communications, Inc.) policy, if any, concerning
disabled employees, including, but not necessarily limited to matters such as the following:

    (a)    How much paid personal leave the employee may take;
    (b)    How much unpaid personal leave the employee may take;
    (c)    How much vacation time the employee may take;
    (d)    How much sick leave the employee may take;
    (e)    How much paid disability leave the employee may take;
    (f)    How much unpaid disability leave the employee may take;

(g)    How much total leave the employee may take and still return to his or her same job;

(h)    How much total leave the employee may take and still return to the company;

(i)    Accrual or loss of seniority while on leave;

(j)    Susceptibility to layoff while on leave;

(k)    Whether disability is ever grounds for discharge;

(l)    Whether disability will ever result in reassignment to another job;

(m)    Whether an employee who takes an extended leave, while not guaranteed a job, is subject to rehire.

ANSWER:  Subject to and without waiving SFX's previous objections, SFX directs

Plaintiff to Tab D of the documents produced for inspection and copying in SFX, Inc.'s

Responses to Plaintiff's Request for Production of Documents.

16.    Persons Having Knowledge: Identify (see Definition and Instruction E, I) (a) each non-expert witness you intend to call to testify and/or (b) persons with knowledge of discoverable matters. With respect to such person, state the following information:

(a)    The subject matter(s) upon which each person is expected to testify.

(b)    The substance of the facts and/or opinions as to which each person is expected to testify.

(c)    A summary of grounds for each such opinion.

(d)    The identity of all data reflecting your answer to (B) above.

ANSWER:  Subject to and without waiving SFX's previous objections, SFX directs

Plaintiff to its Initial Disclosures produced herein and its answers contained herein.

BAKER & HOSTETLER LLP

By: _____

Johnine P. Barnes (D.C. Bar No. 464810)
Lee T. Ellis, Jr. (D.C. Bar No. 3683)
1050 Connecticut Avenue, N.W.
Suite 1100
Washington, D.C.  20036
(202) 861-1500

Attorneys for Defendants SFX Sports Group, Inc.,
SFX, Inc. and Clear Channel Communications, Inc.

-3-

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 10, 2006, a copy of the foregoing Defendant SFX Sports

Group, Inc.'s Supplemental Answers To Plaintiff's Interrogatories was served by regular mail on

David E. Schreiber, Esq., David E. Schreiber, P.C., 4550 Montgomery Avenue, Suite 760N,

Bethesda, MD 20814.

Johnine P. Barnes

-4-

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| AUDREY (SHEBBY) D'ONOFRIO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) Civil Action No. 1:06-cv-00687 (JDB) | |
| | ) Next Event:  Status Conference: 1/29/07 | |
| SFX SPORTS GROUP, INC., et al. | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

DEFENDANT SFX SPORTS GROUP, INC.'S  THIRD
SUPPLEMENTAL ANSWERS TO PLAINTIFF'S INTERROGATORIES

Comes now defendant SFX Sports Group, Inc. ('defendant" or "SFX") supplements it

answers Plaintiff's Interrogatories as follows:

OBJECTIONS AND ANSWERS

1.      Please state the name, business address and the title or office in the Defendant
corporation of the person or persons (see Definition and Instruction F) answering these
interrogatories on behalf of the defendant.

ANSWER:  Subject to and without waiving SFX 's general objections:

Daniel C. Rosier
Executive Vice President, Human Resources
Live Nation, Inc.
9348 Civic Center Dr
Beverly Hills, CA 90210

2.      Identify (see Definition and Instruction E, I, J) each individual who was employed
by SFX Sports Group from 2000 through the present that was promoted to the title of Vice
President. In identifying each such person, please state:

(a)      the length of service each person had with SFX Sports Group prior to being
promoted to the title of Vice President, and
(b)      the succession of titles and the length of time with each title.

ANSWER: Subject to and without waiving SFX's previous objections and by agreement

of the parties, SFX directs plaintiff to a list of persons hired in the area of Public Relations for

SFX produced for copying and inspection in response to Plaintiff's Request for Production of

Documents to SFX Sports Group, Inc.

3.      Identify (see Definition and Instruction E, I, J) each prospective client that SFX
Sports Group has attempted to represent since 2000, including individuals that became clients, as
well as the SFX Sports Group agent that was responsible for overseeing the effort to secure the
new business.

ANSWER: Subject to and without waiving SFX's previous objections and by agreement

of the parties, SFX states that plaintiff was not involved in the retention of clients for SFX in the

sports of baseball and football. SFX further directs plaintiff to Press Kit regarding Mardy Fish

that was prepared by a SFX employee who worked with plaintiff.

I declare under penalty of perjury that the foregoing is true and correct. Executed on

January 19, 2007.

LIVE NATION, INC.

By:   _Daniel C. Rosier_
      Daniel C. Rosier

BAKER & HOSTETLER LLP

By: _____

Johnine P. Barnes (D.C. Bar No. 464810)
Lee T. Ellis, Jr. (D.C. Bar No. 3683)
1050 Connecticut Avenue, N.W.
Suite 1100
Washington, D.C. 20036
(202) 861-1500

Attorneys for Defendants SFX Sports Group, Inc.,
Live Nation, Inc. and Clear Channel Communications, Inc.

CERTIFICATE OF SERVICE

I hereby certify that on _23rd_ day of January, 2007 a copy of the foregoing Defendant SFX

Sports Group Inc.'s Third Supplemental Answers To Plaintiff's Interrogatories was served by

regular mail on David E. Schreiber, Esq., David E. Schreiber, P.C., 4550 Montgomery Avenue,

Suite 760N, Bethesda, MD 20814.

_____
Johnine P. Barnes

-3-

**EXHIBIT 10**

1

1          UNITED STATES DISTRICT COURT

2          FOR THE DISTRICT OF COLUMBIA

3    ----------------------------------

4    AUDREY (SHEBBY) D'ONOFRIO,                    **COPY**

5              Plaintiff,

6              v.                          Case No:
                                           06-687 JDB
7    SFX SPORTS GROUP, INC., et al.,       Judge John
                                           D. Bates
8              Defendants.

9    ----------------------------------

10                        Thursday, April 26, 2007

11                        Washington, D.C.

12   Deposition of:

13              **ALAKA B. WILLIAMS**

14   called for examination by counsel for the

15   Plaintiff, pursuant to Notice, taken at the law

16   offices of David E. Schreiber, P.C., Suite 760N,

17   4550 Montgomery Avenue, Bethesda, Maryland 20814,

18   beginning at 10:07 a.m., before Lu Anne Dawson,

19   Notary Public in and for the State of Maryland,

20   when were present on behalf of the respective

21   parties:

22

2

1    APPEARANCES:

2

3    FOR THE PLAINTIFF:

4    DAVID E. SCHREIBER, ESQ.

5    EUGENE OLIVER, LAW CLERK

6    David E. Schreiber, P.C.

7    Suite 760N

8    4550 Montgomery Avenue

9    Bethesda, Maryland   20814

10    (301) 951-1530

11

12    FOR THE DEFENDANTS:

13    JOHNINE P. BARNES, ESQ.

14    Baker & Hostetler, LLP

15    Washington Square

16    Suite 1100

17    1050 Connecticut Avenue, N.W.

18    Washington, D.C.   20026-5304

19    (202) 861-1633

20    Fax (202) 861-1783

21

22    ALSO PRESENT:  AUDREY D'ONOFRIO

69

1    That was the question.  That is when Ms. Barnes

2    interjected and told you to read it, okay?

3         A.    Correct.  This is my signature.

4         Q.    These were directed to SFX.  Why did

5    you sign on behalf of Live Nation?

6         A.    I'm the human resources person that

7    represents SFX.  Our parent company is Live

8    Nation.

9         Q.    That's fine.  Why did you sign as a

10   Live Nation employee for a company that you may or

11   may not own?  What authority was given to you by

12   SFX to sign on their behalf?

13             MS. BARNES:  Objection.

14             BY MR. SCHREIBER:

15        Q.    Do you know?

16             MS. BARNES:  Objection.

17             THE WITNESS:  Because I'm --

18             MS. BARNES:  Go ahead.

19             THE WITNESS:  Because I'm the Human

20   Resources person for SFX.  I'm the appropriate

21   response person for an interrogatory regarding

22   personnel documents.

70

1          BY MR. SCHREIBER:

2          Q.    Have you ever signed interrogatories

3    before?

4          A.    I have not.

5          Q.    And you have never been deposed?

6          A.    Correct.

7          Q.    Did you read the introduction to the

8    questions before you answered the questions?

9          A.    Yes.

10         Q.    The instructions, et cetera?  You read

11   all that?

12         A.    Yes.

13         Q.    Were your answers based upon personal

14   knowledge or based upon collective knowledge,

15   talking with other people?

16         A.     It would be a combination of the two

17   simply because, again, much of the information

18   contained within this document was prior to my

19   arrival at Clear Channel Entertainment.

20         Q.     So you didn't have a lot of personal

21   knowledge with respect to the events that led up

22   to the termination of Ms. D'Onofrio; is that your

78

1    A.    Bring anything with me?

2    Q.    Documents?

3    A.    Any documents?  No, I do not have any

4    documents.

5         MS. BARNES:  I'm presuming that it's

6    been turned over, but I don't have a reason to not

7    believe it wasn't turned over.

8         BY MR. SCHREIBER:

9    Q.    Other than speaking with Julie Kennedy

10   about comparing the positions that Schachter held

11   and Ms. D'Onofrio held, did you speak with anybody

12   else about that topic?

13   A.    No.

14   Q.    So what is contained in your answers

15   to interrogatories, Exhibit 3, and we are going to

16   get to Exhibit 4 in a second, that's just your

17   information based upon Julie Kennedy?

18   A.    Correct.

19        (Thereupon, Williams Deposition

20   Exhibit Number 4 was marked for identification.)

21        BY MR. SCHREIBER:

22   Q.    Take a minute to look that over.

81

1    the information.  Is there anybody else besides

2    Julie Kennedy that you spoke with in preparation

3    for answering these questions?

4         A.    Julie Kennedy was able to assist me

5    in a major way because she was here prior to my

6    arrival and had the history.

7              Dan Rosier is also an individual that

8    had some first-hand knowledge as it relates to

9    history.

10        Q.    Okay.

11        A.    But he did not assist with the

12   interrogatories.

13        Q.    Well, did you ask him about

14   information that is now contained in these answers

15   to interrogatories?

16        A.    I believe we had a conversation,

17   again, regarding the differences in positions.

18        Q.    This is Dan Rosier?

19        A.    Correct.

20        Q.    Did you speak with him about anything

21   else other than the difference in positions?

22        A.    I don't recall any other questions

83

1    out where the information came from at the very

2    least?

3              MS. BARNES:  That's fine, but I'm

4    explaining it for the record.

5              BY MR. SCHREIBER:

6         Q.    Did you not write down something that

7    these people told you, or are you telling me that

8    you remembered everything?

9         A.    Well, again --

10             MS. BARNES:  Objection.

11             You can answer.

12             THE WITNESS:  As it relates to the

13   history and the discussions that I had with

14   Julie, a lot of what she was saying was either

15   her version of the story or what was actually

16   confirmed in the personnel file, for example,

17   hire dates, information about termination,

18   whatever, as it relates to those employees.

19             BY MR. SCHREIBER:

20        Q.    How about the job description or what

21   these people did?  You gave us a few things that

22   you thought Schachter did that Ms. D'Onofrio

85

1    just talking about a yellow pad.  Whether it's

2    electronically written or typed or whatever,

3    that's encompassed, so that you do not

4    misunderstand me.  In any fashion did you

5    commemorate any of the information that you

6    received?  Did you put it in electronic form,

7    written form or other form?

8           A.     I have not.

9           Q.     The answer is not.  Okay.  Who are

10   the four people that Mr. Schachter supposedly

11   supervised; do you know?

12          A.     I do not know.

13          Q.     Well, you indicated in your answer to

14   question number 9, the SFX answers number 3, page

15   7, that he supervised four people, including the

16   Plaintiff.

17                 MS. BARNES:  What page?

18                 MR. SCHREIBER:  7, answer 9, middle of

19   the page.  This is Exhibit 3, the SFX.

20                 (Witness reviewed document.)

21                 THE WITNESS:  I don't know who the

22   four specific people are.

86

1          BY MR. SCHREIBER:

2      Q.    Who does?

3      A.    Or were.

4          Julie Kennedy.

5      Q.    The information that is contained

6  in here, this is the total of his job that he

7  actually performed when he was in Washington,

8  D.C.; is that your testimony today?  Is there

9  anything else that he did that you didn't

10 commemorate in this answer?

11     A.    Not to my knowledge.

12     Q.    Again, this information comes only

13 from Julie Kennedy; is that correct?

14     A.    Correct.

15     Q.    When he went to New York, you have

16 written here that his job responsibilities

17 expanded to include overall corporate branding

18 and communications for SFX Entertainment; is that

19 correct?

20     A.    To my understanding, that's correct.

21     Q.    That's what you wrote?

22     A.    Right.

91

1          A.    I did not.

2          Q.    Are you in the same position, or have

3    you been promoted since you started in 2005?

4          A.    I've been promoted.

5          Q.    Your job in 2005, the title was what?

6          A.    Regional Employee Relations

7    Specialist.

8          Q.    When did you get promoted?

9          A.    Last year.

10         Q.    2006?

11         A.    2006.  May 2006.

12         Q.    What are you now?

13         A.    Regional Director of Human Resources.

14         Q.    Does Alyson Sadofsky still work there?

15         A.    She does.

16         Q.    Is she a consultant or an employee?

17         A.    She's an employee.

18         Q.    Has she always worked there since you

19    have been there?

20         A.    She's always worked there.

21              MS. BARNES:  Can we just --

22              MR. SCHREIBER:  What's wrong?

95

1    2005.

2                   BY MR. SCHREIBER:

3        Q.    When you answered these questions, the

4    interrogatories, did you have any documents that

5    you relied upon for purposes of the information

6    that --

7                   MR. SCHREIBER:  Do you want some

8    water?

9                   THE WITNESS:  If I could.

10                   MR. SCHREIBER:  Why don't we just take

11    a second and I'll get you some water.

12                   THE WITNESS:  Thank you very much.

13                   (Brief recess.)

14                   BY MR. SCHREIBER:

15        Q.    Did you use any documents in preparing

16    the answers to interrogatories?

17        A.    The personnel files.

18        Q.    The personnel files of Schachter, Ms.

19    D'Onofrio --

20        A.    And Gluckson.

21        Q.    -- and Gluckson.  Okay.  Noting else,

22    though?

102

1          Q.     You told us that you did talk to him

2    to help determine what these positions were, so

3    that actually is one aspect of your answers to the

4    questions but not this question?  You didn't talk

5    to Rosier about number 2; is that your testimony?

6                 MS. BARNES:  Objection.

7                 BY MR. SCHREIBER:

8          Q.     You have talked to Rosier about other

9    things.  You talked about positions.

10                But I'm asking about number 2.

11   Did you talk to Dan Rosier about your answer to

12   number 2?

13         A.     I did not talk to Dan Rosier.

14         Q.     Did you look at the business plan that

15   you referred to that was created evidently in or

16   about March of 2005?  You say SFX prepared a

17   business plan.

18         A.     I did not look at it.

19         Q.     How did you know there was such a

20   thing?

21         A.     I know that there was some, such a

22   thing based on the fact that Kimberly Wray had

103

1    indicated that we were going to do some

2    downsizing.  I don't know the extent of what

3    the business plan --

4        Q.    Well, how do you know that it was

5    March of 2005 that they prepared a business plan?

6    Did she tell you this?

7        A.    I don't know the specific dates, but

8    I --

9        Q.    Where did the information come from?

10   That's all I want to know.

11       A.    I don't recall.

12       Q.    How did it get into your answer?

13            MS. BARNES:  I was going to object,

14   and I said go ahead and answer the question.

15            BY MR. SCHREIBER:

16       Q.    Yes.

17       A.    I believe it came into our answer just

18   based on information that was provided.  I don't,

19   I have not seen a business plan.

20       Q.    Information was provided by whom?

21   That's what I'm trying to get to.  How did you

22   know the detail of when this plan supposedly was

104

1    created?

2         A.    Again, I think it could have been just

3    based on subsequent conversations with Kimberly

4    Wray regarding changes in the divisions, but I

5    don't have a specific date.

6         Q.    I don't want you to guess now.  Are

7    you telling me that Kimberly Wray told you there

8    was a business plan in March 2005 that SFX

9    prepared for future business of its Sports Group?

10        A.    I don't know who told me.

11        Q.    Who told you that as part of the plan,

12   SFX evaluated a plan for a reduction in force to

13   help achieve its business goals?

14        A.    I believe that came from Kimberly Wray

15   once we had information regarding the spin-off.

16        Q.    Well, who did the evaluation?

17        A.    The evaluation?

18        Q.    You say --

19        A.    To my knowledge, Dan Rosier.

20        Q.    You said SFX evaluated.  So it was

21   Rosier who evaluated.  How do you know that?  Did

22   you ask him?

107

1    supposedly with a reduction in force?  What is

2    the relationship between the spin-off and the

3    reduction in force?

4                    MS. BARNES:  Objection.

5                    THE WITNESS:  The relationship between

6    a spin-off and a reduction in force?

7                    BY MR. SCHREIBER:

8        Q.    Right.  You just told me that the

9    reduction in force came about as a result of

10   the spin-off.  I want to know, what's the

11   relationship?

12                   MS. BARNES:  Continued objection.

13                   THE WITNESS:  They were reducing head

14   count.

15                   BY MR. SCHREIBER:

16       Q.    Who is they?

17       A.    Clear Channel Entertainment was

18   attempting to reduce head count.

19       Q.    Who told you this?

20       A.    Again, we received information from

21   Kimberly Wray.

22       Q.    Who is we?

108

1    A.    Every regional HR person.

2    Q.    When did you get this information from

3    Kimberly Wray?

4    A.    Shortly after they announced the

5    spin-off at the end of April.

6    Q.    What was the information that you

7    received, what document or documents?

8    A.    It was a conference call.

9    Q.    Who was on the conference call?

10    A.    Kimberly Wray, who was our supervisor,

11    and do you need the names of the other regional --

12    Q.    Might as well.

13    A.    Okay.  Lynne Maloney, who was Regional

14    Employee Relations Specialist in the Northeast;

15    Jennifer Moore, who was Regional Employee

16    Relations Specialist in Houston; Kim Allen, who

17    was Regional Employee Relations Specialist in the

18    West and I believe Marissa Hacker was on the

19    phone, as well, and she was Regional Employee

20    Relations Specialist in the Midwest.

21    Q.    Does Clear Channel Entertainment have

22    offices in all of these locations, the four that