UNITED  DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AUDREY (SHEBBY)  D'ONOFRIO    :
    :
        Plaintiff    :
    :
    v.    :    Case No.: 06-687 JDB/JMF
    :
    :
SFX SPORTS GROUP, INC., et. al.    :
    :
       Defendants  :
.................................................................:

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFF'S SECOND
<u>MOTION TO COMPEL DISCOVERY, AND FOR SANCTIONS</u>**

Plaintiff's Second Motion to Compel Discovery, and For Sanctions (the "Motion")

should be granted because a) the Plaintiff has complied with the Rules of Procedure, both

local and federal, that govern the filing of this motion, b) the Defendants have failed to

meet their obligations under the Federal Rules of Civil Procedure to comply with the

Plaintiff's discovery requests, c) the Plaintiff has shown that sanctions in this case are

appropriate and d) the Plaintiff is entitled to an award of expenses and attorney fees

relating to the filing of this motion as well as the investigating of all issues pertaining to the

electronic discovery material that was lost, destroyed, or withheld by the Defendants.

**I.    THE PLAINTIFF COMPLIED WITH APPLICABLE RULES OF FEDERAL AND
LOCAL PROCEDURE IN FILING THIS MOTION**

Despite the Defendants' assertions to the contrary, the Plaintiff conferred with

Defendants' counsel prior to the filing of this motion in accordance with Local Rule 7(m)

and Rule 37(a)(2)(B) of the Federal Rules of Civil Procedure.

Under Local Rule 7(m), there is a requirement to discuss any anticipated non-

dispositive motion with opposing counsel in a good-faith effort to determine opposition and

narrow disagreement. (Rules of the United States District Court for the District of Columbia, Rule 7(m)) The Federal Rules of Civil Procedure require a similar good-faith effort to confer with the opposing party in order to secure the information without court action. Fed. R. Civ. P. 37(a)(2)(B).

Here, there was a good-faith effort by the Plaintiff to confer with the Defendants in order to secure the requested production without the necessity of court action. It should be noted that the Plaintiff filed her original Motion on September 15, 2006, requesting much of what is at issue in this latest motion. Rather than address the substance of that motion, the Court indicated to the parties that it would deny the Motion without prejudice (conference call September 20, 2006) and that it wished the parties to confer and report to the Court on the status of discovery. The lengthy record will show that counsel conferred at least 3 separate times in person and reported to the Court on numerous occasions [See, e.g., docket entries October 26, 2006, November 1, 2006, November 9, 2006, January 4, 2007, January 19, 2007, January 29, 2007, March 14, 2007, March 21, 2007, and May 18, 2007], as well as conferred by telephone with the Court or appeared for status conferences regarding the discovery impasse, as well as other matters, which the Plaintiff now addresses. The delay of some 8 months since September, 2006 has not resulted in the Plaintiff having any substantial success in obtaining the Defendants' documents and information.

After a status hearing of March 21, 2007, [see Plaintiff's Status Report, docket #32] Plaintiff's counsel sent a letter (Exhibit 1) on April 2, 2007, conforming to the requirements of Fed. R. Civ. P. 37, in order to resolve the discovery impasse. This letter touched on all of the major disputed issues addressed in the Plaintiff's current Motion, i.e. the Defendants' "business plan", information about Howard Schacter and his employment contract,

information about persons who have assumed Plaintiff's job responsibilities, persons having knowledge, other similarly situated employees [in particular, Howard Schacter], prospective clients of SFX and the need for public relations, as well as the other discovery issues noted in this motion. The letter explicitly references the possibility of filing a motion regarding these outstanding issues if the Defendants do not comply with their discovery obligations. Plaintiff's concerns on these issues had also been previously commemorated, *inter alia,* in an e-mail (Exhibit 2) sent from Mr. Schreiber to Ms. Barnes on February 26, 2007. Mr. Schreiber has also expressed Plaintiff's discovery concerns, those that led to the filing of this motion, verbally to Defendants' counsel. Some examples of this verbal notification occur in the deposition transcripts: discussion of privilege logs (Mason Depo. 127:13-21; Williams Depo. 14:19-15:5; Wray Depo. 47:25-48:3), defendants' non-responsiveness to Plaintiff's requests (Mason Depo. 160:7-20; Williams Depo. 161:15-162:7), witnesses and those with personal knowledge (Williams Depo. 10:17-11:18), the business plan (Williams Depo. 162:9-12, 165:6-7), and the motion itself (Williams Depo. 183:9-10) all appear on the record during these depositions. It should also be noted that Plaintiff's verbal discussions with the Defendants' counsel regarding this motion and the issues addressed were by no means limited to those discussions commemorated in the deposition transcripts. The Plaintiff has made a good-faith effort to resolve these matters without the filing of this motion for some 8 months.

However, the Defendants non-responsiveness on many discovery issues has made the filing of this motion a necessity. By the time of this motion, the Defendants were well aware that their non-responsiveness would necessitate the filing of this motion. In addition to the aforementioned letters and conversations, there were several specific references of the possibility/need of filing a motion to compel in the March 21, 2007 status hearing with

Judge Bates (Exhibit 3). At the status hearing, Judge Bates advised counsel on numerous occasions that the proper way to deal with Defendants' failure to meet discovery requests was through a motion to compel (March 21, 2007 Status Hearing 11:15-18, 14:9-10, 14:20-22). The Plaintiff has made repeated good-faith efforts resolve these matters without the filing of this motion–in accordance with the requirements of the Rules of Civil Procedure as per Judge Bates admonitions to the parties. The Defendants' argument that the motion should be denied because of a failure to comply with Rules of Civil Procedure is, therefore, without merit.

**II.  PLAINTIFF'S MOTION TO COMPEL DISCOVERY SHOULD BE GRANTED BECAUSE PLAINTIFF'S CLAIMS ARE MERITORIOUS AND DEFENDANTS' ASSERTIONS TO THE CONTRARY ARE WITHOUT MERIT.**

In their opposition memorandum, the Defendants argue several reasons why they believe the Plaintiff's motion should be denied and why they have not complied with the Plaintiff's discovery requests. While the Defendants' responses to the Plaintiff's claims in the motion to compel are numerous, none of them are persuasive and many of them either misstate or misinterpret the discovery issues in this case. The reasons for their opposition lack merit and are indicative of their general obstinance in fulfilling Plaintiff's discovery requests in this case. This Reply will attempt to track Defendants' Memorandum.

**A.  Plaintiff Is Entitled To Both The Discovery And Relief Sought.**

Plaintiff is entitled to both the discovery and relief sought in her Motion. The discovery sought by the Plaintiff has not been produced, is relevant to the issues in the case, and would be responsive to Plaintiff's requests. The Defendants have been non-responsive in producing the requested discovery and have failed to meet their obligations under the applicable Rules of Civil Procedure.

### 1. Plaintiff is entitled to receive electronic data in its original format or a reasonably usable format if necessary.

Plaintiff is entitled to receive electronic data in its original format or a reasonably usable format if necessary. The Plaintiff initially received the electronic data in neither format; instead, she received it in a format that was essentially unusable and not in compliance with the Rules of Civil Procedure.

Federal Rule of Civil Procedure 34(a) provides:

Any party may serve on any other party a request to produce and permit the party making the request, or someone acting on the requestor's behalf, to inspect, copy, test, or sample any designated documents or electronically stored information-- including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations stored in any medium from which information can be obtained--*translated, if necessary, by the respondent into reasonably usable form.* [emphasis added]

Additionally, Rule 34(b) provides that:

The request shall set forth, either by individual item or by category, the items to be inspected, and describe each with reasonable particularity. The request shall specify a reasonable time, place, and manner of making the inspection and performing the related acts. The request may specify the form or forms in which electronically stored information is to be produced ....

and that:

a party who produces documents for inspection shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the request.

Rule 34 requires that documents be submitted in the format in which they are kept through the usual course of business or, if necessary, in a reasonably usable form or format. The Defendants misinterpret Rule 34, by omitting the words "if necessary," as allowing production in a reasonably usable format in all cases. This interpretation is clearly erroneous and contrary to the language of Rule 34. The Defendants have failed to show that their failure to produce the requested documents in their original format has been borne out of necessity. The effect was to produce initially (almost a year after this case was filed) some 63,000 pages of e-mail in an unsearchable, and therefore, unusable

format.

In the Plaintiff's Requests for the Production of Documents, she very clearly stated that if files were kept in the normal course of business, then she wanted them produced in that format. Instruction No. 4 of Requests for the Production of Documents states that "for any documents that are stored or maintained in files in the normal course of business, such documents shall be produced in such files, or in such a manner as to preserve and identify the file from which such documents were taken." The Defendants maintain their e-mails in a PST file format (Shannon Depo. 116:11-16). Production of the e-mails in this format would have been responsive to the Plaintiff's request; however, the Defendants initially chose to scan the e-mails and provide them in a image-laden PDF format. After Plaintiff's repeated requests for usable data, the Defendants produced a more searchable format. However, as noted below, much of the important metadata was not available. (See Bond Declaration, Exhibit 4 generally.)

In their opposition motion, Defendants rely heavily on *Pace v. Int'l Mill Serv., Inc.,* 2007 U.S. Dist. LEXIS 34104, *2 (N.D. Ind. May 7, 2007) for the proposition that they are not required to produce the files in their original format, but rather in a PDF format. To reach this conclusion, the Defendants have ignored the facts in *Pace* and have misinterpreted that court's ruling as providing a bright-line standard of reasonably usable in the production of documents.

The facts in *Pace* are clearly distinguishable from the facts in this case; in addition to PDF files, IMS (the party responding to the document request) provided the requested documents in Microsoft Office Excel comma separated value files and in a text-delineated format. *Pace v. Int'l Mill Serv., Inc.,* 2007 U.S. Dist. LEXIS 34104, *2 (N.D. Ind. May 7, 2007). IMS provided this information in an attempt to resolve the issues surrounding the

production of documents. *Id.* Additionally, the PDF files provided by IMS could be "rudimentarily searched." *Id.* In denying the motion, the court stated that Pace failed to show that he made a request calling for a specific format and, thus, under Rule 34, the court could not conclude that IMS had not met its burden. *Id.*, at *7.

Here, the Defendants have failed to initially provide the requested documents in any format other than that of unsearchable images compiled in a PDF format. After being pressed by the Plaintiff, they provided additional formats, but still failed to organize the material in a responsive form and removed much of the metadata. Thereafter, they have not made any good-faith efforts to resolve this issue of production–unlike IMS in *Pace*. The Plaintiff here–unlike that in *Pace*–has made a specific request for the format that files are kept in during the normal course of business. As the court in *Pace* stated, "the conformity of a responding party's production of electronic files to the rule must be gauged on a case-by-case basis, according to the specific terms of the request." *Id.*, at *5. *Pace* does not provide the bright-line standard of "reasonably usable" which the Defendants argue for; instead, their production must be judged based on Plaintiff's request for the documents as kept in the normal course of business. Accordingly, Defendants have failed to meet their obligations under Rule 34 and they should be compelled to provide the material in the format used in the normal course of business, together with all metadata.

Alternatively, even if it was acceptable for Defendants to provide a "reasonably usable" format in response to Plaintiff's requests, their production of e-mails and other documents did not meet this standard. The e-mails initially produced in PDF format were done so in a way to render them unsearchable (Declaration of Douglas Bond, #2). Instead of converting the files into a PDF format which would have retained some functionality, the Defendants deliberately chose to scan the e-mail files and load them into the PDF files as

7

images or pictures.  By doing this, the message is viewable, but not searchable as it would have been in its original format (Declaration of Douglas Bond, #2).  Defendants' actions here are tantamount to taking a picture of the message and submitting the picture for production in lieu of the original or a facsimile of the original.  Production of documents in this manner does not even meet the standard of "reasonably usable," which Defendants incorrectly tout as their obligation under the Rules.

As noted above the Defendants have supplemented this production by producing e-mails in an exported format (.msg files).  These files are not as searchable and lack the metadata that these messages contain in the format they are kept in the usual course of business.  The file creation, access, and modification dates of these files show only the time that these messages were put in that format; not when the message was originally created, accessed, or modified.  These files lack the usability of the original format–the format requested by the Plaintiff.  Such production by the Defendants is non-responsive to Plaintiff's requests and once again in violation of the Rules of Civil Procedure.  Plaintiff's request for this data in its original, as used in the normal course of business, format should be granted.

The Defendants have also not produced all of the requested e-mail and other documents requested, whether electronically or otherwise.  Defendants have never stated under oath what efforts were made to search for the requested documents, who may have undertaken these efforts, or what were the results of these purported efforts.  It was only by taking a deposition of Joseph Shannon, pursuant to Rule 30(B)(6), that the Plaintiff discovered some efforts to locate documents, but the information obtained is inconsistent with testimony from other witnesses employed by the Defendants.  The Plaintiff was also prevented from determining what certain witnesses did to obtain documents since

Defendants' counsel claimed throughout the depositions that a witnesses turning over specific documents would be an invasion of her work product privilege, revealing counsel's thought process regarding this case. Such a position is highly questionable.

>    **2.    Plaintiff is entitled to receive Defendants' "Business Plan" and other documents with the accompanying metadata.**

Plaintiff is entitled to receive Defendants' "business plan"[1] and other documents, as well as all drafts and versions, with the accompanying metadata which is relevant and was requested as part of the document and electronic data request. The Defendants refusal to provide metadata is non-responsive to the Plaintiff's requests for documents and non-compliant with their obligations under Rule 34.

Relevant evidence is that evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. F.R.E. 401. Metadata is the information that describes the history, tracking, or management of an electronic document. *Williams v. Sprint/United Management Co.*, 230 F.R.D. 640, 646 (D. Kan. 2005). This includes all of the contextual, processing, and use information needed to identify and certify the scope, authenticity, and integrity of active or archival electronic information or records. *Id.* When it comes to the history of a document, metadata describes how, when and by whom it was collected, created, accessed, or modified and how it is formatted. *Id.* (quoting *The Sedona Guidelines*).

By way of example, the metadata for the "business plan" is highly relevant to both the Plaintiff's allegations as well as the Defendants' business justification claims in this

---

[1] The Defendants' "business plan" was the subject of a motion by Defendants to redact or to be kept from the Plaintiff herself. The Court denied Defendants' motion [Docket #24]. The plan would appear to be the linchpin of the defense.

case.  Since the metadata tells the history of the document, having the metadata on the "business plan" will shed light on the purported history of the plan and its applicability to the justification of Plaintiff's termination.  Given the inconsistent narratives presented by those deposed thus far in this case, gaining access to the history of the "business plan" is essential to reconstructing the actual chain of events that surrounded the development of the "business plan" (which Defendants allege as forming the basis for the Plaintiff's termination).  Because the "business plan" is at the center of the Plaintiff's claim of the Defendants' pretext in firing her, information obtainable from the "business plan" metadata is relevant to show the history of these documents (when created, who created, who modified, when modified, etc.) and the proof of Plaintiff's claims.  Therefore, the "business plan" and other documents, as well as all drafts and versions, with the accompanying metadata  should be produced.

Secondly, the metadata should be produced on the electronic documents because the Plaintiff requested such information in her document requests.  Instruction #4 of the Request for Production of Documents specifically asks for documents in the format they are kept in the normal course of business.  This is a specific request to have the documents produced in a particular format; metadata is included in this request because metadata is contained in the files as they are kept in the normal course of business and the defendant has not shown otherwise.

Defendants once again misrepresent the cases they site in support of their bright-line propositions that allow their non-production of the requested documents.  With respect to *Kentucky Speedway, LLC v. Nat'l Assoc. of Stock Car Auto Racing, Inc.*, a case on which the Defendants apparently rely heavily, the facts of the case are not directly on point

as Defendants claim nor does the court say what the Defendants allege/proffer/claim.[2] The facts are distinguishable because Kentucky Speedway did not identify any specific documents for which metadata would be relevant. *Kentucky Speedway, LLC v. Nat'l Assoc. of Stock Car Auto Racing, Inc.,* 2006 U.S. Dist. LEXIS 92028, *23 (E.D. Ky. December 18, 2006). That court stated that the Advisory Committee Notes to the newly amended Rule 34 "made clear that if information is maintained in a way that makes it searchable by electronic means, then the information should not be produced in a form that removes or significantly degrades this feature." *Id.*, at *22-23.

While the *Kentucky Speedway, LLC* court noted that one commentator observed that this was not intended to mandate production of metadata and that another court had appeared to articulate a general presumption against production of metadata, the court ruled that the Plaintiff (Kentucky Speedway) needed to identify the specific documents for which metadata is sought in order to facilitate production. *Id.*, at *23, 24. Defendants mistake that court's holding as an outright denial of the production of metadata and a bright-line rule against such production. Instead, *Kentucky Speedway* addresses the need for specificity in the requests for documents and the format in which they are requested. It should be noted that under Federal Rule of Civil Procedure 34, a party can request

---

[2]In fact, this case is not even from the court the Defendants claim. In their discussions about the case, Defendants make a representation to the Court that this case is from the United States District Court for the District of Columbia. It is not. It is from the Eastern District of Kentucky. Defendants use language such as "The Court...has agreed" and "this Court" in order to inaccurately imply that this Court issued this opinion–attempting to give it much more precedential value in the current action than it should currently hold.

Additionally, this inaccurate representation cannot be chalked up to a mere oversight since the case is mentioned several times over numerous paragraphs as being a case from this Court. Defendants' actions here are questionable at best and may be a basis to suggest the lack of good-faith that the Defendants have shown generally in the matters of discovery.

production of electronically stored information in its "native format", which includes the metadata for the electronic document. *Lorraine v. Markel Am. Ins. Co.,* 2007 U.S. Dist. LEXIS 33020, *50 (D. Md. May 4, 2007).

Here, the Plaintiff–unlike that in *Kentucky Speedway*–has made a request for the production of documents in a specific format. That request was for documents to be provided in the format they are kept in the normal course of business (i.e. its "native format"). This request includes metadata. The Plaintiff has identified the documents in the request for production of documents and is entitled to the metadata in those documents under Rule 34, as well as all drafts or versions.

### 3.    Plaintiff is entitled to an onsite inspection of Defendants' stored information because it is relevant.

Plaintiff is entitled to an onsite inspection to examine the Defendants' stored information–e-mails of approximately 11,000 people[3], as represented by Mr. Shannon–in order to find pertinent e-mails and documents of witnesses because this material is relevant to the case. The Plaintiff has requested such an examination and has been rebuffed. The fact that the archived material was created for a purpose unrelated to the Plaintiff's claims is of no importance as to whether or not it contains relevant evidence for this case and if an onsite examination is proper under the Rules of Civil Procedure.

Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party. Fed. R. Civ. P. 26(b), F.R.E. 401. Any party may submit a request...to another party a request to permit entry upon designated land...in the possession or control of the party upon whom the request is served for the purpose of inspection...[of] any designated object within the scope of 26(b). Fed. R. Civ. P. 34(a)(2).

---

[3]The e mails were archived, due to an investigation by the Dept. Of Justice, in 2004.

Here, the Defendants misstate in their Opposition as to what the Plaintiff is seeking. The Plaintiff is not seeking for an onsite inspection of the e-mails of 11,000 people; instead, the Plaintiff is seeking access to the stored material in order to search for witness e-mails that would be relevant to this case. These e-mails would include witness e-mails about the Plaintiff and the other issues in this case; not just those produced by Defendants that were supposedly just sent to or received by the Plaintiff[4]. There are several pertinent e-mails and documents that have not been produced by the Defendants that could potentially be located in this archived grouping of e-mails. Additionally, such a search would contain e-mails discussing aspects of this case that have, to now, been unavailable to the Plaintiff. These e-mails would help make the existence of the facts surrounding her dismissal, the pretext of such, and the Defendants' acts of discrimination more probable. The Plaintiff is entitled to an onsite inspection of this relevant archived material.

### 4.    There is an employment contract to be produced.

Defendant misstates Plaintiff as requesting an employment contract *for her* that does not exist. This is incorrect. The Plaintiff is not requesting her employment contract, but rather that of *Howard Schacter,* who the Plaintiff replaced and who will be used for comparison sake with respect to the Equal Pay Act claim, which was identified by reference to Mr. Schacter's offer sheet by Kimberly Wray in her deposition on May 31, 2007. (Wray Depo. P 147-151.) The Defendants have not produced this employment contract, which Ms. Wray suggests is in storage in Houston. His contract is relevant

---

[4]The Plaintiff maintains that there are far more e mails and other documents that have not been produced. The search of this particular data base is necessary since the Defendants have scrapped her computer and have deleted all of her e mails, and possibly other documents, from the local server in Washington, D.C. [Mason deposition, p. 101-103; Shannon deposition, p 75-77].

evidence under Rule 26(b) for the Plaintiff's discrimination and equal pay claims and, thus, should be produced.

### 5.    Defendants are required to produce a privilege log.

Defendants are required to produce a privilege log since they have claimed privilege regarding various documents and information in many of their responses and in a number of the depositions.  Federal Rule of Civil Procedure 26(b)(5) states that:

> When a party withholds information otherwise discoverable under these rules by claiming that it is privileged or subject to protection as trial-preparation material, the party shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection.

Fed R. Civ. P. 26(b)(5)(A).  Whenever a party withholds information that would otherwise be discoverable based on privilege, they must produce a privilege log.  "The essential function of a privilege log is to permit the opposing party, and ultimately, the court, to evaluate a claim of privilege."  *U.S. v KPMG LLP*, 237 F. Supp. 2d 35, 38 (D.D.C. 2002).

Here, the Defendants have claimed privilege on numerous occasions.  In the depositions, Defendants have responded to all questions about who produced what document and other information as if such information is privileged (See Mason Depo. 15:4-19, 127:7-128:8; Williams Depo. 9:4-11:18, 14:1-15:5; Wray Depo. 47:14-48:11, 52:21-53:13).  The information requested would be discoverable if Defendants' counsel had not claimed privilege.  A privilege log covers both documents and communications. Fed R. Civ. P. 26(b)(5)(A).  In order for a proper assessment of Defendants' claims of privilege on these documents and communications, a privilege log should be produced in compliance with Rule 26.

14

**6.    The information Plaintiff seeks to compel does exist.**

The information that the Plaintiff seeks to compel through this motion does exist. In particular, the Defendants claim that the following do not exist: 1) Plaintiff's payroll records, 2) personnel files of employees who had similar job duties, 3) other allegations of discrimination by Defendants, 4) complaints of discrimination or harassment committed by Defendants, 5) job description for Plaintiff's job, 6) discovery regarding the decision not to promote Plaintiff, 7) the alleged reason for termination, and 8) discovery regarding persons who have assumed Plaintiff's position.    While discovery is still open in this case, Defendants are and have been well aware that these documents are in existence and yet have not produced them.    Having addressed these issues in Plaintiff's Motion, only a sample of these issues will be reviewed below.

First, Plaintiff seeks her payroll records.    While Defendants claim in their opposition that such records do not exist, this is contrary to what was stated in Joe Shannon's deposition.    Mr. Shannon stated that back-ups of financial information go back eight years and all active HR information is maintained (Shannon Depo. 103:6-11, 103:18-20).    This active HR information would include that of the Plaintiff who was fired a year and a half ago–when the deposition was taken (Shannon Depo. 103:22-104:3).    These files would include payroll information and, specifically, salary information (Shannon Depo. 104:8-105:9).    This is the information that Plaintiff seeks and has not been produced by the Defendants .

Secondly, Plaintiff seeks the personnel files of employees who had similar job duties.    Defendants claim that no such files exist because of their narrow and incorrect interpretation of what "similarly situated" means.    They presume it to mean anyone who had the exact same duties and responsibilities as the Plaintiff and, not surprisingly, they

state that no one shared her exact duties and responsibilities. As discussed in greater detail below, Howard Schacter was similarly situated to the Plaintiff because both were in charge of public relations for the SFX Sports Group at various points. Personnel files for Howard Schacter exist and have been properly requested for by the Plaintiff. The Defendants have failed to meet their obligations under the Federal Rules to fulfill this request and production of these documents should be compelled.

Lastly, Defendants claim that no one assumed Plaintiff's position after she was termination and now belatedly claim both that it was contracted out and at the same time that it was handled within the company by various sports agents. These explanations are insufficient to explain why they have not produced information regarding persons who assumed Plaintiff's position, duties or responsibilities. If the person(s) who assumed Plaintiff's position, duties or responsibilities were contractors as Defendants state (both in their Opposition and in Wray Depo. 89:7-10), they are still obligated to produce the requested documents for those individuals in order to be responsive to Plaintiff's requests. If the person(s) who assumed Plaintiff's position, duties or responsibilities were various sports agents, then those individuals relevant documents and information must be produced.

### 7. <u>The information Plaintiff's seeks to compel is responsive to her requests.</u>

The information Plaintiff seeks to compel regarding employees–particularly Howard Schacter–is responsive to her document production requests. In Document Request No. 7, Plaintiff sought documents relating to the training, experience, abilities, duties, and performance of the Plaintiff and other similarly situated employees. Both the Plaintiff and Howard Schacter were–at different times–in charge of public relations for the SFX Sports Group (D'Onofrio Depo. 190:15-191:22). Mr. Schacter was the Plaintiff's predecessor in

her job duties and responsibilities (D'Onofrio Depo. 138:12-13). Defendants' argument that they are not similarly situated because Mr. Schacter was initially her boss and hired her is irrelevant since he was her predecessor and their duties and responsibilities were similar in their roles as head of public relations for Defendant, SFX Sports Group. Howard Schacter is similarly situated to the Plaintiff and information regarding his training, experience, abilities, duties, and performance should be compelled.

8.    **Plaintiff's requests are not overly broad and are relevant to this case.**

Plaintiff's requests are not overly broad and are relevant to this case. Defendants specifically object to the production of applicant pool information and financial information as being burdensome and irrelevant. Information regarding the applicant and employment market pool is relevant to the this case under F.R.E. 401 with respect to the claim of gender discrimination in that it shows the Defendants' hiring practices towards women and sheds light on women in managerial positions. Such evidence will also help indicate if there was a "glass ceiling" on how high women can advance. Knowledge of these issues would make the existence of gender discrimination by the Defendants more probable than without such information, and is therefore relevant and should be produced in compliance with Plaintiff's requests.

The production of Defendants' financial information is relevant in this case as to the issue of punitive damages. Defendants incorrectly proffer that *Caldwell v. District of Columbia* stands for the proposition that since a plaintiff need not introduce evidence of financial status for punitive damages, such information is not relevant. *Caldwell v. District of Columbia,* 201 F. Supp. 2d 27, 41 (D.D.C. 2001). Rather, *Caldwell* indicates that financial information is *one* possible way to show capacity for punitive damages, not that it does not have to be produced. This Court has stated that financial status is relevant to

punitive damages. *John Does I-VI v. Yogi,* 110 F.R.D. 629, 633 (D.D.C. 1986). While this Court has held that such information should not be proffered until needed in cases involving non-profit organizations (*Id.*) and individuals (see *Peskoff v. Faber,* 230 F.R.D. 25, 30 (D.D.C. 2005)), the production of financial information for publicly-traded corporations–like the Defendants–is much less burdensome than in the aforementioned cases and should be allowed in this case. Defendants' argument about there not being a *prima facie* showing of the right to recover punitive damages ignores the facts in this case which reveal several willful acts of discrimination on the part of the Defendants, termination related to Plaintiff's pregnant status, withholding of disability documents prior to Plaintiff's termination. Production of both the applicant pool and financial information is relevant to this case and its production so be compelled.

              **9.    Plaintiff's requests for information regarding those with knowledge of discovery matters is timely.**

Plaintiff's requests for information regarding those with knowledge of discovery matters is timely. Defendants' objection that Plaintiff is seeking to compel the production of the name of every non-expert witness is incorrect. Interrogatory No. 16 asks for the production of the identity, the subject matter, and the substance of the knowledge of "(a) each non-expert witness you intend to call to testify and/or (b) persons with knowledge of discoverable matters." (Plaintiff's Interrogatory to Defendants No. 16). The subject of this interrogatory is proper under Fed. R. Civ. P. 33(c). This request for this information is not premature and Defendants should be compelled to produce this information.

      **B.    Plaintiff's Allegations Regarding Missing E-mails From Defendants' Disclosures Is Sufficient To Compel A Response.**

Plaintiff's allegations regarding missing e-mails from Defendants' disclosures is

sufficient to compel a response.  Plaintiff alleges that there are several pertinent missing e-mails involving the issues and claims of this case.  The e-mails that Plaintiff seeks are from 2004 and 2005, and even earlier.  Plaintiff has specified with particularity the types of e-mails desired.  Because of the scrapping of Plaintiff's computer and the deletion of her e-mails, it would be impossible to reconstruct to the specific degree that Defendants demand in their Opposition and that is not required by the Federal Rules.  Instead, Defendants  are seeking to benefit from their negative acts of withholding, destroying, and deleting relevant electronic data in this case.  Therefore, Plaintiff's motion to compel the production of these e-mails should be granted.

      **C.**    **Defendants Have Not Revealed The Sources of Information Supplied In Their Answers To Plaintiff's Interrogatories.**

Defendants have not revealed the sources of information supplied in their answers to Plaintiff's interrogatories.  Definition and Instruction F of Plaintiff's interrogatories states:

> If any answer to these interrogatories is supplied by any person other than defendant, such person or persons shall be identified in either the specific answer to each such interrogatory or separately (but attached to it and incorporated as part of the defendant's answers) by noting, after each person so identified, the questions for which such person(s) supplied the information contained in response.

Here, the Defendants failed to follow this instruction.  They have not identified the specific basis for any of their answers, which is relevant.  Defendants' representative Alaka Williams' testimony that she received information from Julie Kennedy, Dan Rosier, and Kimberly Wray to answer the interrogatories does not address this request for the names of those who provided information for specific answers to interrogatories. Despite Defendants' contentions to the contrary, this is properly discoverable information under Federal Rule 33(c).  In answering the Plaintiff's interrogatories, the Defendants did not object specifically to this instruction and, as a result, they have waived any objection to this instruction and should be required to produce this information.  See Fed. R. Civ. P.

33(b)(4).

### D.____Defendants Have Not Produced The Discovery That Plaintiff Has Moved To Compel.

_____Defendants have not produced the discovery that Plaintiff has moved to compel. Once again, Defendants argue that no one was similarly situated to the Plaintiff because of their narrow and incorrect interpretation of the meaning of similarly situated. That argument was addressed previously in that Howard Schacter and the Plaintiff had similar job duties and responsibilities as the head of public relations for SFX Sports Group. Mr. Schacter was the Plaintiff's predecessor in her job duties and responsibilities (D'Onofrio Depo. 138:12-13). With regard to Mr. Schacter, the Plaintiff has not received his employment contract, certain financial information or any meaningful documents related to his duties or job description. The requested documents regarding similarly situated employees exists and should be produced.

Defendants have failed to produce fully the other requests identified by the Defendants. Defendants have evidently failed to provide Plaintiff with her full personnel file including all salary and pay information, as well as similar financial information for Mr. Schacter; they have provided only one organizational chart from circa 2003, and they have not provided the contracts and "pitches" requested of certain current and/or prospective client athletes (Defendants produced only a generic form contract provided in SFX0324-0328).

### _____E.    The Need For The Discovery Plaintiff Seeks To Compel Was Not Obviated By Any Prior Agreements Or Communications Between The Two Parties.

The need for the discovery Plaintiff seeks to compel was not obviated by any prior agreements or communications between the two parties. Defendants appear to refer to the production of all electronic mail sent to or from Plaintiff during her employment at SFX.

Their argument that their production of these e-mails in an unorganized and essentially unusable format is acceptable because it fulfilled Plaintiff's request for all e-mails is nonsensical. It ignores the fact that Plaintiff requested all documents to be produced in the manner that they are kept in the normal course of business. Additionally, Defendants changed these files from their native format to an almost useless format and claimed that these e-mails were too voluminous to produce in full. Instead of producing the e-mails in their native format which could have been produced quickly, Defendants delayed production of these e-mails and converted them into a non-requested format. Any delays in production were the fault of the Defendants and, thus, cannot be used as a reason for why the Plaintiff should not receive what she has requested. Simply put, there was no agreement to have the e-mails produced in this format and Defendants' actions here were meant to burden the Plaintiff in the discovery process and cause her to incur unneeded costs.

## III.    PLAINTIFF'S MOTION FOR SANCTIONS SHOULD BE GRANTED.

### A.    The Destruction of Plaintiff's Computer Materially Prejudiced the Plaintiff.

The destruction of Plaintiff's computer and the deletion of all of her e mail from the D.C. server materially prejudiced the Plaintiff and was done so in spite of the October 6, 2005 preservation letter in an effort to destroy evidence and frustrate Plaintiff's efforts to gain discovery. The letter sought the preservation of electronic data—including e-mails, files, calendars, and documents–in light of potential litigation on the Plaintiff's discrimination claims. Plaintiff's computer–containing her e-mails, files, calendars, and documents–was obviously covered by this letter. The Defendants had an obligation beginning on October 6, 2005 to make certain that this computer and the information on

it would not be destroyed.[5]  Once a "litigation hold" has been established, a party cannot continue a routine (or non-routine) procedure that effectively ensures that potentially relevant and readily available information is no longer "reasonably accessible" under Rule 26(b)(2)(B).  *Cache La Poudre Feeds, LLC v. Land O'Lakes, Inc.*, 2007 U.S. Dist. LEXIS 15277, *53-54 (D. Co. March 2, 2007).  The legal and the human relations departments of the corporate Defendants were on notice as of the beginning of October, 2005 and yet allowed the destruction of evidentiary material to occur.  Sanctions are appropriate for the destruction of a computer and the loss of e-mails and other documents from the D.C. server.  *See In re Cheyenne Software, Inc.,* 1997 U.S. Dist. 24141 (E.D.N.Y. August 18, 1997)(ruling that monetary sanctions were appropriate for the destruction of a computer).

**B.    Defendants Have Failed to Satisfactorily Disclose Information or to Continue to Supplement Disclosures as Required Under the Federal Rules.**

Defendants have failed to satisfactorily disclose information or to continue to supplement disclosures as required under the Federal Rules.  Discovery closes next month and Defendants responsiveness and supplementing of Plaintiff's discovery requests has been almost non-existent.  For example, Defendants only recently "discovered" that they had been archiving the e-mails of 11,000 employees–including the Plaintiff and other significant individuals in this case, despite their active involvement in that retention for years.  As has been shown throughout this motion, there are plenty of discoverable matters

---

[5]In their Opposition, Defendants represent Plaintiff's letter to be much broader than in actuality.  The case Defendants cite does not absolve them of their duty to preserve Plaintiff's computer.  Instead, that case dealt with a motion for sanctions where there was "no evidence of bad-faith alteration or destruction of evidence" and the Plaintiff was provided "much of what she sought to preserve," including "all relevant information." *Turner v. Resort Condos. Int'l., LLC,* 2006 U.S. Dist. LEXIS 48561, *22 (S.D. Ind. July 13, 2006).  Unfortunately, this is not the case here.  There is ample evidence of Defendants' bad faith in the destruction of evidence and the Plaintiff has not received all of the relevant information available.

and documents that Defendants are aware of and possess yet have not produced.  And when the Defendants have produced information, it often is in an unusable format or incomplete.  They have no substantial justification for their non-productive actions. Defendants have not continued to supplement their disclosures in a way as directed by Federal Rule 37(c)(1) and, thus, they should be sanctioned.

## IV.    PLAINTIFF IS ENTITLED TO AN AWARD OF EXPENSES AND  ATTORNEY'S FEES

The Plaintiff is entitled to an award of expenses and attorney's fees relating to the filing of this motion and investigation of the pertinent electronic discovery issues.  If the motion is granted, the court can require the party whose conduct necessitated the motion to pay attorney's fees or expenses.  Fed. R. Civ. P. 37(a)(4)(A).

Here, Defendants' conduct has necessitated the filing of this motion.  Their non-compliance with Plaintiff's discovery requests and the loss, destruction, and withholding of electronic and paper discovery materials by the Defendants have made this motion necessary.  If they had abided by their requirements under the Rules of Civil Procedure in responding to Plaintiff's requests, then there would have been no need for this motion.

Defendants' excuses as to why fees and expenses should not be awarded are unavailing. Their first assertion that the Plaintiff did not attempt to resolve her discovery grievances without the Court's intervention is clearly unsupportable. Some eight months of discussions, court hearings, status reports, and communications with defense counsel were unsuccessful.  The requirements of the Rules have been met by the Plaintiff and Defendants' argument to the contrary is without merit.

Defendants' second reason,  that Rule 37(a)(4)(A)'s exception to the awarding of fees and expenses in cases where the non-disclosure, responses, and objections was substantially justified, is also unsupportable.  Fed. R. Civ. P. 37(a)(4)(A).  As has been

shown above, the Defendants non-disclosure on these matters was not justified. Instead, their non-disclosure was borne out of a desire to materially prejudice the Plaintiff by engaging in behavior to delay production, withhold discoverable information, and to destroy evidence. Defendants should be obligated to the Plaintiff for attorney's fees and expenses.

## V.    DEFENDANTS ARE NOT ENTITLED TO AN AWARD OF EXPENSES AND ATTORNEY'S FEES.

The Defendants are not entitled to an award of expenses and attorney's fees even if this Court was inclined to deny Plaintiff's motion. Rule 37(a)(4)(B) provides that a court can choose not to reward attorney's fees and expenses to the prevailing party if the motion's filing was substantially justified. Defendants' arguments that the Plaintiff's motion is defective is groundless. Given all the issues in this case with non-responsive production, failure to provide documents in their requested formats, and the destruction of evidence, Plaintiff's motion was substantially justified in order to compel discovery and obtain important information relevant to this case. Therefore, this Court should not award the Defendants attorney's fees and expenses.

## VI.    CONCLUSION.

For the foregoing reasons, Plaintiff's Motion should be granted, Plaintiff should be awarded attorney's fees and expenses to cover the filing of this motion and investigating the electronic discovery issues addressed in this Motion.

Respectfully submitted,

DAVID E. SCHREIBER, P.C.

By:_____/s/_____

David E. Schreiber, Esq.
4550 Montgomery Avenue, Suite 760N
Bethesda, Maryland 20814
(301) 951-1530
Bar No. 152082
Counsel for Plaintiff

I hereby certify that a copy of the foregoing Plaintiff's Reply to Defendants' Opposition to Plaintiff's Second Motion to Compel Discovery, and for Sanctions, and Memorandum in Support thereof was filed and served electronically, on June 15, 2007 to:

Johnine P. Barnes, Esq.
Lee T. Ellis, Jr. Esq.
Baker & Hostetler, LLP
Washington Square, Suite 1100
1050 Connecticut Ave., N.W.
Washington, D.C. 20026-5304

_____/s/_____
David E. Schreiber, Esq.