UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
AUDREY (SHEBBY) D'ONOFRIO,    .
                              .
          Plaintiffs,         .
                              .   CA No. 06-0687 (JDB)
     v.                       .
                              .   Washington, D.C.
SFX SPORTS GROUP, et al.,     .   Wednesday, March 21, 2007
                              .   9:23 a.m.
          Defendants.         .
                              .
. . . . . . . . . . . . . . . .
```

TRANSCRIPT OF STATUS HEARING
BEFORE THE HONORABLE JOHN D. BATES
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiff:           DAVID E. SCHREIBER, ESQ.
                             4550 Montgomery Avenue
                             Suite 760N
                             Bethesda, Maryland 20814
                             301-951-1530

For the Defendants:          JOHNINE P. BARNES, ESQ.
                             ADRIENNE M. KING, ESQ.
                             Baker & Hostetler, LLP
                             1050 Connecticut Avenue, NW
                             Suite 1100
                             Washington, D.C. 20036-5304
                             202-861-1633

Court Reporter:              BRYAN A. WAYNE, RPR, CRR
                             Official Court Reporter
                             U.S. Courthouse, Room 6812
                             333 Constitution Avenue, NW
                             Washington, D.C. 20001
                             202-354-3186


Proceedings reported by machine shorthand, transcript produced
by computer-aided transcription.

PROCEEDINGS

THE DEPUTY CLERK: Your Honor, we have Civil Action 06-687, Audrey D'Onofrio versus SFX Sports Group, Inc. We have Mr. David Schreiber representing the plaintiff, Ms. Johnine Barnes representing the defendant. Will counsel please identify the other people at your table.

MR. SCHREIBER: Good morning, Your Honor. David Schreiber for the plaintiff, Audrey D'Onofrio, and the plaintiff is here today, Ms. D'Onofrio.

THE COURT: Good morning to both of you.

MS. BARNES: Good morning, Your Honor. Johnine Barnes and Adrienne King from our office.

THE COURT: Good morning to both of you.

All right. It's my belief that I could take the rest of the morning hearing the saga of what has or hasn't happened in this case. That is not my intention, however. It seems to me that we have two things to deal with.

I will allow each of you to advise me of whatever you want, but the two things that I think that we need to get a feel for are, number one, where we are in discovery and how we get through discovery in a more efficient manner than has occurred to date; and two, a separate matter, whatever is going to happen with respect to any threats or promises made by plaintiff with respect to forthcoming motions on the state of discovery and what has happened in the past.

1   I don't need to hear that whole saga. I have read what has
2   been filed in your status reports. I am concerned about what
3   has occurred in this case, but I don't need to hear it right now
4   in this courtroom from counsel. I may hear it in the future in
5   writing or otherwise, but I don't need to hear it this morning.
6       Let's start by Mr. Schreiber telling me where you think we
7   are and what needs to be done in order for us to get discovery
8   in this case completed.
9       MR. SCHREIBER: Thank you, Your Honor. I won't
10  repeat what I wrote. To try and accomplish discovery at this
11  point, time is going to be requested at some point, depending
12  upon how the Court reacts to item number two. I still want to
13  take some more depositions initially to find out what happened.
14  Gene Mason is a person named by the IT person as person who, to
15  use his phrase, scrapped this --
16      THE COURT: Well, what happened is not necessarily
17  relevant to the issues in this case. It may be relevant to any
18  sanctions or related motions that you seek, but what happened
19  with respect to the handling of discovery may not be really at
20  the heart of the issues in the case.
21      MR. SCHREIBER: Well, what it does for us, if we
22  obtain what we believe is there, at the very least corroborates
23  Ms. D'Onofrio's statements, pleadings to the Court in terms of
24  what happened because she has written the material in the form
25  of e-mails.

1   THE COURT: No, no, no. I'm not saying that you're
2   not entitled to get all the discovery information that exists,
3   but the travails of how it wasn't produced and was found don't
4   really relate to the underlying claims in the case.
5   MR. SCHREIBER: In the sense that, yes, there's not a
6   cause of action for that per se, but what it does for us is
7   support her cause of action. The cause of action really boils
8   down to why she was terminated and why she wasn't paid what her
9   predecessor, a male, was paid. And that's where all of our
10  discovery is focused.
11  To report to the Court a little bit about what I've seen
12  from the 63,000 pages that was recently given to us, we still
13  haven't seen anything more than the one business-plan document
14  that was finally produced after the Court ruled that a
15  protective order wasn't appropriate.
16  That document -- I brought it with me, but I'm not going
17  to go into details as an example of why we have to go further
18  here -- indicates that it's a first draft and it's a blueprint,
19  their word.
20  THE COURT: Okay. You and I are talking this way,
21  I think, and I think that maybe it's because of the term "what
22  happened." When you use the term "I need more depositions to
23  determine what happened," if you're referring to what happened
24  with respect to the plaintiff and her cause of action or causes
25  of action in this case, that's fine. You need to explore that.

1    If you're talking about depositions to determine what
2    happened with respect to the handling of discovery in this case,
3    that's a separate issue that may -- it conceivably could have
4    some relevance to the underlying claims, but in all likelihood,
5    it does not.
6         MR. SCHREIBER: Well, notice, for instance, to the
7    defendants about the equal pay issue, we believe it's in the
8    e-mails and in the communications. To depose certain people, it
9    is very necessary for us to have the, call it the written or the
10   electronic data, to ask the proper questions or to make sure we
11   get the right answers. Without that material, I go in somewhat
12   blind, for instance, and so that's why I want to --
13        THE COURT: All right. What I want is I want your
14   plan on what needs to be done in terms of discovery.
15        MR. SCHREIBER: Well, our discovery I believe is
16   according to --
17        THE COURT: Don't worry about what the deadline is
18   right now. What needs to be done? And let's set a schedule for
19   it.
20        MR. SCHREIBER: We have nine more depositions to go
21   under the current status.
22        THE COURT: And then you need, you think, a couple
23   more after that? Or is nine what remains?
24        MR. SCHREIBER: I just don't know what's going to
25   happen with the discovery part, so the nine that I'm looking at,

1  because I've used one for their IT person, I'm going to use at
2  least one more for this gentleman, Mr. Mason.  And then for the
3  substantive people, there are probably at least going to be
4  eight, unless I can secure affidavits from certain people.
5       So, yes, there will be a few more depositions.  I can't
6  speculate right now as to how many because I don't know where
7  this leads me because a number of names have come up in just
8  this one deposition.
9       THE COURT:  All right.  But you're figuring something
10 in the neighborhood of 10 depositions by the plaintiff remain.
11      MR. SCHREIBER:  And I'm going to do a 30(b)(6) as part
12 of that because I'm going to try to get as much information in
13 one deposition from these defendants, and then in the written
14 discovery materials that we're still asking for, I'm going to
15 address that separately.
16      The reason I mentioned the motion, which is -- well, I'm
17 getting to number two.
18      THE COURT:  You're not going to address it separately
19 because I want to know what needs to be done in discovery so I
20 can set a schedule.  That's what I'm asking.
21      MR. SCHREIBER:  Okay.  Aside from just the
22 depositions, we're going to need more documents.  The electronic
23 material that was given to us in the last--
24      THE COURT:  Wait a minute.  You're going to need more
25 documents.  Do you have existing document requests that have

1  been filed?

2  MR. SCHREIBER: Yes.

3  THE COURT: That seek all categories of documents that
4  you need?

5  MR. SCHREIBER: That is correct, and we --

6  THE COURT: Then you only need more production on
7  existing discovery requests.

8  MR. SCHREIBER: That is correct. I need more
9  production, and I'm going to address that subsequently, not this
10 morning, unless the Court wants to hear it, which I don't think
11 the Court does.

12 THE COURT: And this is on electronic discovery?

13 MR. SCHREIBER: Well, maybe paper; I can't sure.
14 I couldn't find out from the IT person what's electronic and
15 what's not. Pay/salary for the comparator, we still are at a
16 loggerhead as to get his full package, for instance. We found
17 out some more about somebody who worked for Ms. D'Onofrio and
18 Mr. Glutson, who it turned out was paid more than she was.

19 THE COURT: All right. Production on existing
20 document requests. What else? You've given me two outstanding
21 items of discovery that need to be completed, approximately 10
22 depositions, and you believe additional production on existing
23 document requests from the defendants is necessary.

24 MR. SCHREIBER: That is correct. Those correlate a
25 little bit with answers to interrogatories which may need to be

```
 1   amplified depending on what documents are produced, because very
 2   often it's "See documents."  So the answers will probably be
 3   supplemented again depending upon what they make available to
 4   us.
 5              THE COURT:  Their answers.
 6              MR. SCHREIBER:  Their answers.
 7              THE COURT:  Okay.  What else?
 8              MR. SCHREIBER:  I believe that's it, then.
 9              THE COURT:  Ms. Barnes, what additional discovery do
10   you need?
11              MS. BARNES:  At this time, Your Honor, we don't see
12   any additional discovery.  To the extent that we're not able to
13   secure affidavits from the witnesses whom we have contacted, we
14   may need depositions of them, but at this point we're fine.
15              THE COURT:  Mr. Schreiber, how long do you need in
16   order to complete this discovery?
17              MR. SCHREIBER:  I'm going to be absolutely candid with
18   you.  I'm not sure.
19              THE COURT:  I understand there's a little bit of
20   uncertainty, but I need to set a schedule.
21              MR. SCHREIBER:  Well, you may...
22              THE COURT:  All right. Here's a proposal.  Let me
23   take control of it, then.  I'm going to require or give the
24   defendant the opportunity to supplement their document
25   production -- and that includes electronic discovery to the
```

extent that it's responsive to the discovery request -- and their answers to interrogatories within 30 days. You've got the opportunity to supplement, and you need to do so within 30 days. That's point one.

Then, you will have everything that they say that they have that is responsive to the discovery requests. You may believe that there is more that they have not produced and you may need to do a little bit of work in these depositions in order to determine that. You may be filing a motion to compel. But we need to have a schedule to allow that all to take place, so I'm going set the close of discovery at 90 days from now.

Mr. Schreiber --

MR. SCHREIBER: May I ask the Court, because I know my June is taken up with a vacation that I have planned for about two years, which is going to be a couple weeks in June, so I know that in 90 days I won't be here. And so can I suggest to the Court 120 days just so that I'm not -- because the first two weeks of June I'm going to be out of the country, and this was planned a year or so ago.

So if you could make it 120 days, then I know that I'm at least in the country and available to do whatever is necessary to brief the Court, if that's going to be the case, or at least appear at a status conference.

THE COURT: Ms. Barnes?

MS. BARNES: We object, Your Honor. Even to the

```
 1   extent that plaintiff has issues with respect to production of
 2   the discovery, 30 days has gone by since the deposition of the
 3   IT person, and plaintiff has not done anything.
 4           THE COURT:  Well, that's too bad, Ms. Barnes.  I view
 5   this as a problem that has been created by the defense.  So I
 6   note your objection, but I am not sympathetic to it at all.
 7           I don't like the 120-day figure, though.  That's an awfully
 8   long time.  So if I put that in place, there are not going to be
 9   any extensions of it.  Everybody's going to work in this time
10   frame and is going to get the discovery in this case done.  If
11   there are motions to compel, file; and if are there are motions
12   for sanctions, file them, and I will look seriously at them.
13           And, to the extent that there's any discovery that I
14   conclude has not been completed now that I've given you 30 days
15   on the defense side to supplement, if I order further
16   production, if I find that things have not been produced, you
17   will -- you and your client will be sanctioned.  Believe me.
18   You will be.
19           With respect to the existing things that have happened, you
20   can file a motion.  I'm not going to prejudge that.  I think
21   that there's a lot of information here that I will be receiving,
22   I assume, if such a motion is filed from both sides, and I'm not
23   going to prejudge it.
24           But for the future, I want everybody to be warned, no more
25   discovery -- I'll use the term "shenanigans."  It is not meant
```

1  to infer that counsel have done anything improper or even that
2  clients have done anything improper, but we're going to get
3  through this now without further major bumps in the road.
4      And if I have to devote a lot of attention to it, I will.
5  And when I have to devote a lot of attention to discovery, it's
6  on my schedule, not your schedule, and you will not be
7  convincing me here on out that you have problems because of some
8  other obligations.  If something has to be done, it will get
9  done, believe me.  I'm up to here -- that is, up to my neck --
10 with the discovery problems in this case.  So no more.
11     So, we now have discovery schedule 30 days for the
12 defendants to supplement any outstanding document production and
13 answers to interrogatory, and then the close of discovery is 120
14 days from now.
15     And in the meantime, Mr. Schreiber, if you think when you
16 get any supplementation that occurs that you don't have
17 everything, you're going to have to get a motion to compel in.
18 I'm now allowing you to file motions to compel.  No more of
19 these telephone calls.  I don't want telephone calls from you
20 anymore.
21     But I'm warning you that the losing party on motions to
22 compel, discovery squabbles, may well face having to pay the
23 cost of the other side.  It's going to cost you to take
24 frivolous positions here on out in discovery in this case.
25     Mr. Schreiber.

1    MR. SCHREIBER: One thing that I wanted to address
2 today, in the last production of material, the defendants
3 indicated, "See electronic discovery produced." They gave us
4 63,000 pages. Future reference, we're going to ask that the
5 documents at least be noted as responsive to a particular
6 request, because going through 63,000 pages, I don't want to
7 have to come back to the Court about that.
8    Since it just happened recently, I just wanted to alert the
9 Court and to counsel to alleviate that problem as far as the
10 motion to compel, where sanctions is concerned. Giving us
11 63,000 pages and trying to figure it out -- I've got somebody
12 working on it, obviously. We haven't just sat idle. But that's
13 not how I conducted discovery, and I'm asking that the Court and
14 counsel to understand that it would not be productive to do that
15 in the future. So I would ask that to happen.
16    THE COURT: Ms. Barnes?
17    MS. BARNES: Some of the things that were not stated
18 in the status report is that the 63,000 were produced because
19 that's what plaintiff requested. When the electronic
20 information was discovered, I sent a letter to plaintiff's
21 counsel asking that we come up with search terms, asking that we
22 come up with something agreeable that would produce the
23 responsive documents, because all the documents are not
24 responsive.
25    And in normal circumstances, all the documents would not be

1   produced because they're not responsive and not relevant to --
2   I mean, there are things in there like little pictures of
3   something that she captured off of the Internet that have
4   absolutely nothing to do with this case and that we would not
5   have produced.

6   But in fairness to plaintiff, in light of the way that the
7   information was discovered, we requested of plaintiff's counsel,
8   how do you want this produced? We asked him for search terms.
9   I have correspondence that indicates that plaintiff denied and
10  said that they did not want to use search terms.

11  So when you ask me to produce documents that are not
12  responsive and many of which are not relevant, which we only did
13  in fairness to make sure that if there were any concerns with
14  respect to not receiving things or making sure they have
15  everything, then you can't ask me to categorize something that I
16  wouldn't produce to you otherwise.

17  But in fairness, in trying to make sure that everything was
18  encompassed -- and I have correspondence. And when we sent it
19  to plaintiff's counsel, I put in the correspondence, "At your
20  request is all of the information." So all of this is well
21  documented.

22  THE COURT: Okay. I understand, and I think there's
23  some surface appeal to that.

24  MR. SCHREIBER: May I?

25  THE COURT: With respect to this issue of 63,000 pages,

we'll call it, that aren't tagged, specifically to discovery responses, that may be a dispute between the parties now, and it may be a dispute in the future. I'm not telling you anything that should dissuade you from talking with each other and working together on the discovery in this case. Indeed, I would suggest to you that that's even more important now than it was in the past.

So, on that issue, you can discuss it, you can work together, but if there is something that one side or the other thinks is not right, file a motion on it, and the losing party may well be faced with having to pay the cost of the other side.

I just don't think that discovery has worked in this case, and one of the reasons it hasn't worked may be because, unlike in most cases where I make the offer and it seems to work, I made myself available, and it seems from what has occurred in this case with the phone calls to chambers and in looking at some of the communications between the two sides with the threat of a call to Judge Bates always being presented to the other side, I don't think it's really worked.

So now you're going to have to spend your client's money, so to speak -- applies more to one side than the other, in all likelihood -- to file a motion, and if the motion is not well taken or the defense of the motion is not well taken, you may well be paying for the other side's costs as well as your own.

All right? So we have a schedule, and we need another

1  status call. I don't want to let you too far from my sights,
2  and we will do that in May, Mr. Bradley. Sometime around the
3  middle of May. It's just a status call.
4      THE DEPUTY CLERK: Okay. We can do it on Friday,
5  May 18 at nine o'clock.
6      THE COURT: How does Friday, May 18, at 9 a.m. sound
7  to you, Mr. Schreiber?
8      MR. SCHREIBER: I'm available, Your Honor.
9      THE COURT: Ms. Barnes?
10     MS. BARNES: May 18?
11     THE COURT: May 18. Friday, May 18, 9 a.m.
12     MS. BARNES: I'm fine on that date.
13     THE COURT: All right. We'll have a status on Friday,
14 May 18, at 9 a.m. Any other direction you need in terms of
15 where we're going? At that status, depending upon how things
16 seem to be going, I may well set a further schedule in the case.
17     MR. SCHREIBER: As far as experts, things like that,
18 we're still in premature position of not having enough
19 information to have economists actually do anything in this
20 case.
21     THE COURT: We can talk about that a little bit.
22     MR. SCHREIBER: All right. I just want to let the
23 Court know that.
24     THE COURT: Okay. I will see you then, and I wish you
25 luck in your efforts. And, quite frankly, I hope not to hear

```
 1    from you before then, but we'll see where we are.
 2              MR. SCHREIBER:  Thank you.
 3              MS. BARNES:  Thank you, Your Honor.
 4              THE COURT:  Thank you.
 5         (Proceedings adjourned at 9:45 a.m.)
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

\* \* \* \* \* \*

CERTIFICATE

I, BRYAN A. WAYNE, Official Court Reporter, certify that the foregoing pages are a correct transcript from the record of proceedings in the above-entitled matter.

_____
BRYAN A. WAYNE