UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AUDREY (SHEBBY) D'ONOFRIO          :
                                    :
    Plaintiff                       :
                                    :
v.                                  :    Case No.: 06-687 JDB/JMF
                                    :
                                    :
SFX SPORTS GROUP, INC., et. al.    :
                                    :
    Defendants                      :
...................................:

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S COMBINED OPPOSITION TO
DEFENDANT DANIEL ROSIER'S AND DEFENDANT KIMBERLY WRAY'S
MOTIONS TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

Plaintiff, Audrey D'Onofrio ("D'Onofrio"), through undersigned counsel, hereby opposes the Motions to Dismiss for Lack of Personal Jurisdiction filed by Defendant Daniel Rosier ("Rosier") and Defendant Kimberly Wray ("Wray") (together, the "Individual Defendants"[1]). Because the two Motions rely on the same legal grounds, D'Onofrio has combined her arguments into this single Memorandum, with appropriate references to the facts regarding each Individual Defendant as necessary.

**FACTS**

D'Onofrio was Senior Director of Public Relations for Corporate Defendant SFX Sports Group, Inc. ("SFX"). Am. Compl. ¶ 5. Rosier was the Chief Financial Officer for SFX. Am. Compl. ¶ 4. Wray was head of Human Resources for Corporate Defendant

---

[1] D'Onofrio refers to Rosier and Wray herein as the "Individual Defendants", as distinguished from the "Corporate Defendants", namely SFX Sports Group, Inc., Live Nation, Inc., and Clear Channel Communications, Inc.

Clear Channel Communications, Inc., the parent company of SFX at the relevant times alleged in the Amended Complaint. Am. Compl. ¶¶ 3, 4.

D'Onofrio has sued the Individual Defendants because, through discovery, they were identified as individuals who were responsible for the discriminatory and retaliatory acts alleged in the Amended Complaint. Am. Compl. ¶ 4. In particular, as of 4:27 p.m. on Friday, September 16, 2005, D'Onofrio's employment was not going to be terminated. Deposition of Kimberly Wray, May 9, 2007 ("Wray Dep.") at 74:12-75:23, 86:3-8; Deposition of Daniel Rosier, May 22, 2007 ("Rosier Dep.") at 83:18-84:22. Rosier and Wray subsequently had a telephone conversation in which they discussed D'Onofrio's pregnancy and her termination. Wray Dep. at 86:3-88:10, 108:7-25; *see* Rosier Dep. at 85:16-88:13 (admitting conversation, but denying discussing pregnancy). After Rosier and Wray's conversation, on the morning of Saturday, September 17, 2005, D'Onofrio's name was placed on the termination list. Wray Dep. at 76:9-21, 86:3-23, 106:22-107:5.

Rosier admitted that he was the individual who decided to terminate D'Onofrio's employment in the District of Columbia. Rosier Dep. at 120:12-121:4, 122:21-123:11; *see also* Defendant SFX Sports Group, Inc.'s Objections and Answers to Plaintiff's Interrogatories, Answer No. 2 ("Mr. Dan Rosier, the former Chief Financial Officer for SFX, made the determination as to what groups, divisions and positions would be eliminated."). Wray also admitted her involvement in D'Onofrio's termination. Wray Dep. at 86:3-88:10, 108:7-25; *see also* Defendant SFX Sports Group, Inc.'s Objections and Answers to Plaintiff's Interrogatories, Answer No. 2 ("Kimberly Wray, Head of Human Resources, Clear Channel Communications, Inc. identified the persons in the groups, divisions and positions

for elimination.")[2]

With respect to FMLA (at times noted as "disability"), Wray testified that she did not want to know about D'Onofrio's pregnancy, and that Alaka Williams (Wray's subordinate) did not tell Wray that D'Onofrio was asking for any type of medical leave prior to her termination. Wray Dep. at 66:9-67:25, 102:14-104:14. However, Julie Ann Kennedy, currently Vice President of Employee Development for Live Nation, Inc., testified that Wray instructed Alaka Williams not to give D'Onofrio the disability paperwork she requested prior to her termination. Deposition of Julie Ann Kennedy, May 31, 2007, at 188:14-191:11.

As alleged in the Amended Complaint, the termination of D'Onofrio's employment in the District of Columbia constituted a discriminatory and/or retaliatory act under the District of Columbia Human Rights Act[3] and the D.C. Family Medical Leave Act[4]. Am. Compl. ¶¶ 6, 7-8, 31-42, 47-56. As alleged in the Amended Complaint, Rosier and Wray created a pretextual justification for D'Onofrio's termination – "that she was part of a

---

[2] In resolving a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the court is free to consider relevant materials outside the pleadings. *Land v. Dollar*, 330 U.S. 731, 735 n. 4 (1947) ("When a question of the District Court's jurisdiction is raised, either by a party or by the court on its own motion, ... the court may inquire by affidavits or otherwise, into the facts as they exist."), *overruled on other grounds by Larson v. Domestic & Foreign Commerce Corp.,* 337 U.S. 682 (1949).

[3] The D.C. Human Rights Act provides for personal liability of both Rosier and Wray. *Lance v. United Mine Workers of America 1974 Pension Trust*, 400 F. Supp. 2d 29, 32 (D.D.C. 2005) (citing *MacIntosh v. Building Owners & Managers Ass'n Intern'l,* 355 F. Supp. 2d 223, 230 (D.D.C. 2005); *see also Martini v. Fannie Mae*, 977 F. Supp. 464, 479 (D.D.C. 1997), *reversed on other grounds and vacated*, 178 F.3d 1336 (D.C. Cir. 1999), *cert. dismissed*, 528 U.S. 1147 (2000).

[4] D.C. Code §32-507(a) ("It shall be unlawful for any person to interfere with, restrain, or deny the exercise of or the attempt to exercise any right provided by this chapter.").

3

planned reduction in force which eliminated her position. That statement was false." Am. Compl. ¶ 20.

## ARGUMENT

This Court has specific personal jurisdiction over the Individual Defendants in accordance with the requirements of the District of Columbia long-arm statute and Constitutional due process. The Individual Defendants purposefully directed their conduct toward the forum jurisdiction; D'Onofrio's claim arises out of their forum-related activities; and the exercise of personal jurisdiction comports with fair play and substantial justice.

To establish specific personal jurisdiction over a non-resident, the court normally must engage in a two-part analysis, finding that the requirements of both the applicable long-arm statute and Constitutional due process are satisfied. *GTE New Media Servs., Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000). In this case, the District of Columbia's long-arm statute provides: "(a) A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's [] transacting business in the District of Columbia . . . ." D.C. Code § 13-423(a)(1). Section 13-423(a)(1) is "given an expansive interpretation" that is "coextensive with the due process clause." *Mouzavires v. Baxter*, 434 A.2d 988, 992 (D.C. 1981) (en banc), *cert. denied*, 455 U.S. 1006 (1982)*; accord Crane v. Carr,* 814 F.2d 758, 762 (D.C. Cir. 1987) (citing *Mouzavires*); *Shoppers Food Warehouse v. Moreno*, 746 A.2d 320, 325 (D.C. 2000) (en banc). As a result of this congruence, the analysis of specific personal jurisdiction under Section 13-423(a)(1) collapses into a single inquiry: Whether the non-resident defendant had sufficient minimum contacts with the jurisdiction in order to satisfy due process. *GTE New Media Servs.*, 199 F.3d at 1347; *Fisher v. Bander*, 519

A.2d 162, 163 (D.C. 1986) ("We have held that [Section 13-423(a)(1)] is co-extensive with the due process clause of the fifth amendment, and that its construction is subsumed by a due process analysis."). "The only nexus required by subsection (a)(1) of this statute between the District of Columbia and the nonresident defendant is 'some affirmative act by which the defendant brings itself within the jurisdiction and establishes minimum contacts,' but the jurisdiction thereby conferred is restricted to claims arising from the particular transaction of business carried out in the District. *Berwyn Fuel, Inc. v. Hogan*, 399 A.2d 79, 80 (D.C.1979) (quoting *Cohane v. Arpeja-California, Inc.*, 385 A.2d 153, 158 (D.C.1978)).

*Calder v. Jones* established that specific personal jurisdiction can be predicated on a defendant's intentional action expressly aimed at the forum jurisdiction. *Calder v. Jones*, 465 U.S. 783 (1984). In *Calder*, the United States Supreme Court held that a California court had personal jurisdiction over a Florida reporter and editor in a libel action arising out of an article published in a national newspaper that defamed a celebrity who lived and worked in California. *Id.* at 784-86. One of the Florida defendants frequently traveled to California on business unrelated to the libel action; the other had been to California only twice, again on unrelated business. *Id.* at 785-86. The applicable long-arm statute was co-extensive with the limits of due process. *See id.* at 786 n.5.

The Supreme Court determined that jurisdiction was proper based on the "effects" in California of the defendants' conduct in Florida. *Id.* at 789-90. In so ruling, the Court observed that the defendants' "intentional . . . actions" were "expressly aimed" at California; that they knew that the article "would have a potentially devastating impact" on Ms. Jones' ability to work in California, and that, under these circumstances, the defendants could

5

fairly have expected to be "haled into court" in California. *Id.* at 789-90. The Court concluded that "[a]n individual injured in California need not go to Florida to seek redress from persons who, though remaining in Florida, knowingly cause the injury in California." *Id.* at 790; *see also Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774-75 (1984) (personal jurisdiction proper even absent physical contact with forum where defendant's efforts were "purposefully directed" toward residents of another State).

Here, D'Onofrio alleges that Rosier and Wray "expressly aimed" and "purposefully directed" their conduct toward D'Onofrio and her employment in the District of Columbia. It is immaterial that the Individual Defendants were not in the District of Columbia when they acted to terminate D'Onofrio's employment. *See Burger King v. Rudzewicz,* 471 U.S. 462, 476 (1985) ("[I]t is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted."); *Keeton*, 465 U.S. at 774-75 (jurisdiction may not be avoided merely because defendant did not physically enter the forum); *Gorman v. Ameritrade Holding Corp.*, 293 F.3d 506, 511 n. 4 (D.C. Cir.2002) (transactions by telephone and facsimile alone can, depending on the circumstances, be an adequate basis for personal jurisdiction). Regardless of where the Individual Defendants were located at the time of their conduct, they terminated D'Onofrio's employment in the District of Columbia unlawfully and generated a pretextual reason to cover up their unlawful act. *See Burger King,* 471 U.S. at 475-76 (forum may assert specific jurisdiction over nonresident defendant where alleged injury arises out of or relates to actions by defendant himself that are purposefully directed toward forum resident); *Calder*, 465 U.S. at 789-90 (same); *FC Investment Group LC v.*

*Lichtenstein*, 441 F. Supp.2 d 3, 8-11 (D.D.C. 2006) (court had personal jurisdiction under Section 13-423(a)(1) over director of corporation who made telephone calls and sent fax to plaintiff to communicate false information that assisted perpetration of fraud in District of Columbia); *cf. Murphy v. PriceWaterhouseCoopers, LLP,* 357 F. Supp. 2d 230, 243 (D.D.C. 2004) (indicating that court could have found specific personal jurisdiction over individual defendant board members in age discrimination case had complaint alleged that individual defendants specifically made decisions regarding employees in PwC's District of Columbia office).  The affirmative act by which the Individual Defendants brought themselves within the jurisdiction and established minimum contacts occurred at D'Onofrio's place of employment: the District of Columbia.  *See Helmer v. Doletskaya*, 393 F.3d 201, 205 (D.C. Cir. 2004) (citing with approval *Mareno v. Rowe*, 910 F.2d 1043 (2d Cir. 1990), holding that termination occurred at plaintiff's place of employment); *see also Passantino v. Johnson & Johnson Consumer Products, Inc.*, 212 F.3d 493, 505-06 (9th Cir.2001) (discriminatory employment act occurred where plaintiff worked, not where decision was made); *Cox v. National Football League*, 1997 WL 619839 at *3 (N.D. Ill. Sept. 29, 1997) (same: "To hold otherwise would encourage employers to make their decisions to terminate and discipline in far away offices in order to protect themselves from litigation."); *McDonald v. American Fed'n of Musicians*, 308 F.Supp. 664, 665-66 (N.D. Ill.1970) (same: "The plaintiffs live and work in this district and were required to repay the fees here.  The fact that the decision that required them to do so was made elsewhere does not necessitate the conclusion that no alleged act of discrimination occurred in this district.  It taxes common sense to suggest otherwise.").

The Individual Defendants had "fair warning" that they might be haled into court in

the District of Columbia. "[T]his 'fair warning' requirement is satisfied if the defendant has 'purposefully directed' his activities at residents of the forum,, and the litigation results from alleged injuries that 'arise out of or relate to' those activities, . . ." *Burger King,* 471 U.S. at 472-73 (quoting *Keeton*, 465 U.S. at 774, and *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)). Here, D'Onofrio is suing the Individual Defendants for the precise acts that they "purposefully directed" at her place of employment. *See Berwyn Fuel*, 399 A.2d at 80 (jurisdiction is limited to claims arising from the particular transaction of business carried out in the District). Thus Rosier and Wray could "reasonably anticipate being haled into court" in the District of Columbia.

"Once it has been decided that a defendant purposefully established minimum contacts within the forum State, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *Burger King Corp.*, 471 U.S. at 476-77 (1985) (quoting *Int'l Shoe Co. v. State of Washington*, 326 U.S. 310, 320 (1945)). Thus courts in "appropriate case[s]" may evaluate "the burden on the defendant," "the forum State's interest in adjudicating the dispute," "the plaintiff's interest in obtaining convenient and effective relief," "the interstate judicial system's interest in obtaining the most efficient resolution of controversies," and the "shared interest of the several States in furthering fundamental substantive social policies." *Id.* at 477 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980). However, "where a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, <u>he must present a compelling case</u> that the presence of some other considerations would render jurisdiction unreasonable." *Id.* (emphasis supplied).

Here the Individual Defendants have made no showing, much less a compelling case, that the presence of "some other considerations" would render this Court's exercise of personal jurisdiction over them unreasonable.  They have not argued that defending this lawsuit in the District of Columbia would be unduly burdensome.  *See* Def. Daniel Rosier's Motion to Dismiss for Lack of Personal Jurisdiction; Def. Kimberly Wray's Motion to Dismiss for Lack of Personal Jurisdiction.  Indeed, given the ease and convenience of modern transportation and telecommunications, the Individual Defendants would be hard-pressed to make a compelling case for undue burden.  *See Burger King*, 471 U.S. at 474 ("because 'modern transportation and communications have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity,' it usually will not be unfair to subject him to the burdens of litigating in another forum for disputes relating to such activity", quoting *McGee v. International Life Insurance Co.*, 355 U.S. 220, 223 (1957)).  Mr. Rosier apparently visits D.C. more than once a year, Rosier Aff. ¶ 5, and Ms. Wray has visited twice in the past decade, Wray Aff. ¶ 4.  The Individual Defendants are already represented by local counsel and, it can be assumed, have had no difficulty communicating with counsel.  *See* Def. Daniel Rosier's Motion to Dismiss for Lack of Personal Jurisdiction; Def. Kimberly Wray's Motion to Dismiss for Lack of Personal Jurisdiction.  In short, defending in the District of Columbia should pose no undue burden on the Individual Defendants.

Even if the Individual Defendants were to make some showing of burden, the rest of the *World-Wide Volkswagen* factors weigh in favor of finding personal jurisdiction over them.  The District of Columbia has a substantial interest in protecting its residents and employees who work in the District from discrimination.  *See Biscoe v. Arlington County*,

738 F.2d 1352, 1361 (D.C. 1984), *cert. denied*, 469 U.S. 1159 (1985) (noting "the special and largely unique interest of the District in protecting persons who. . . work in the District", citing *Gaither v. Myers*, 404 F.2d 216, 223 (D.C. Cir. 1968)); *see also McGee v. International Life Insurance Co.*, 355 U.S. 220, 223 (1957) (noting that State frequently will have a "manifest interest in providing effective means of redress for its residents"). D'Onofrio has a substantial "plaintiff's interest in obtaining convenient and effective relief" for her discrimination claims brought under local law in local courts. The "interstate judicial system's interest in obtaining the most efficient resolution of controversies" favors adjudication of D'Onofrio's claims against all the Defendants in this single forum. And finally, the "shared interest of the several States in furthering fundamental substantive social policies"–here, the substantive social policy against discrimination–is well-served in this District of Columbia District Court.

## CONCLUSION

For the foregoing reasons, Defendant Daniel Rosier's and Defendant Kimberly Wray's Motions to Dismiss for Lack of Personal Jurisdiction should be denied. To the extent necessary, the Plaintiff will further amend her allegations contained in her First Amended Complaint, to comport with the allegations noted herein, and separately requests leave to file a Second Amended Complaint, attached hereto as an exhibit. Additionally, the Individual Defendants also have made no showing that would entitle them to an award of costs and attorney's fees, and so that relief should also be denied.

Respectfully submitted,

DAVID E. SCHREIBER, P.C.


By:_____/s/_____
David E. Schreiber, Esq.
4550 Montgomery Avenue, Suite 760N
Bethesda, Maryland 20814
(301) 951-1530
Bar No. 152082
Counsel for Plaintiff


## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Memorandum of Points and Authorities in Support of Plaintiff's Combined Opposition to Defendant Daniel Rosier's and Defendant Kimberly Wray's Motions to Dismiss for Lack of Personal Jurisdiction was filed and served electronically, on July 6, 2007 to:

Johnine P. Barnes, Esq.
Lee T. Ellis, Jr. Esq.
Baker & Hostetler, LLP
Washington Square, Suite 1100
1050 Connecticut Ave., N.W.
Washington, D.C. 20026-5304

_____/s/_____
David E. Schreiber, Esq.