## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **AUDREY (SHEBBY) D'ONOFRIO,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**SFX SPORTS GROUP, INC.** *et. al.*,<br><br>**Defendants.** | Civil Action No. 06-687 (JDB/JMF) |

## MEMORANDUM OPINION

Before the court is <u>Plaintiff's Second Motion to Compel Discovery, and for Sanctions</u> [#35] ("Motion").  This case was referred to me by Judge John D. Bates for management of the discovery process.

### I.  Background

This lawsuit involves claims by plaintiff, Audrey (Shebby) D'Onofrio, that she received disparate treatment from her employer, SFX Sports Group, Inc. ("SFX"),[1] based upon her gender.  Plaintiff also alleges that she was subjected to a hostile work environment and was terminated in retaliation for her protected activities.  She brings this lawsuit under the District of Columbia Human Rights Act ("DCHRA"), the Equal Pay Act, and the District of Columbia Family Medical Leave Act.

### A.  Procedural History of Discovery Disputes

The discovery issues raised by plaintiff in her Motion have been before the Court in one fashion or another for quite some time, beginning on September 15, 2006, when

---

[1] Plaintiff also names as defendants SFX's parent corporation, Clear Channel Communications, Inc. ("Clear Channel") (currently operating as Live Nation, Inc.), Dan Rosier, former Chief Financial Officer for SFX, and Kimberly Wray, head of Human Resources for Clear Channel.

plaintiff filed her <u>Motion To Compel Discovery, for Sanctions and for Enlargement of Time for Discovery</u> [#16] ("First Motion").  In her First Motion, plaintiff argued, in part, that defendants' responses to interrogatories and discovery requests were wholly inadequate.  Following a conference call held on September 20, 2006, Judge Bates denied the First Motion without prejudice and instructed the parties to report back to the Court after "meet[ing] to discuss outstanding discovery issues."  Bates Order, 9/20/06.

Plaintiff informed the court in the <u>Joint Status Conference Report</u> [#18], filed on October 10, 2006, that continued discussion with defendants had not resolved many of the issues set forth in her First Motion.  <u>Id.</u> at 2-4.  A status conference was held on October 26, 2006, after which Judge Bates issued an order setting forth a schedule to address disputed discovery issues.  Bates Order, 10/26/06.

On November 8, 2006, plaintiff filed her <u>Memorandum Regarding Electronic Discovery Issues and Enlargement of Time for Discovery</u> [#25], in which she informed the Court of issues surrounding her desire to employ a forensics expert.  <u>Id.</u> at 1-2.  The parties discussed other unresolved discovery disputes at a status conference on November 9, 2006, after which Judge Bates issued an order extending the discovery schedule.  Bates Order, 11/9/06.  These issues were once again discussed during a telephone conference on January 4, 2007.  After the conference, Judge Bates ordered the parties to meet and confer and submit to the Court proposed discovery schedules.  Bates Order, 1/4/07.

On January 19, 2007, plaintiff filed her <u>Memorandum Regarding Discovery Conference and Status of Discovery</u> [#29], in which she notified the Court that the parties had once again met but had made no further progress resolving their various discovery disputes.  <u>Id.</u> at 1.  Plaintiff again expressed her desire for Court action to compel

discovery, and, if necessary, "a complete forensic search of the electronic data system maintained by the Defendants." Id. at 6.

The Court held another status conference on January 29, 2007.  In an attempt to break the logjam, Judge Bates ordered both parties to undertake certain discovery obligations on or before February 20, 2007.  Bates Order, 1/29/07 at 1.  The parties were instructed that they could move the Court to compel discovery only if, "after meeting their obligation to work openly and collegially with opposing counsel," either party feels that responsive information has been withheld.  Id. at 2.

On March 14, 2007, plaintiff filed her Status Report [#32], in which she complained of the defendants' "meager" progress in complying with its discovery obligations, and the "startling disclosure" that e-mails – previously represented by defendants to not be retrievable – had been retrieved.  Id. at 1.  She complained of the format in which these e-mails had been produced, and alleged that testimony taken from several sources suggested that the defendants engaged in improper conduct concerning discovery.  Id. at 2-7.

Another status conference was held on March 21, 2007, after which Judge Bates ordered defendants to supplement their interrogatory answers and discovery production no later than April 20, 2007.  Bates Order, 4/20/07.  Unsatisfied with defendants' supplemental production, plaintiff filed the instant motion on May 17, 2007.

## II.  Outline of this Opinion

As indicated above, discovery in this case has been fractious.  The disputes have ranged from the serious (allegations of willful obliteration of evidence) to the mundane

(the failure to confer prior to filing the Motion[2]), and at times it seems as if no discovery request or response has gone unchallenged.  This opinion will therefore have to deal with many issues, *seriatim*, as they have arisen.  The table of contents that follows is presented in the hopes of bringing some order out of the chaos:

I.       Background

         A.       Procedural History of Discovery Disputes

II.      Outline of this Opinion

III.     Electronically Stored Information

         A.       Business Plan

                  1.       Rule 34 – "If Necessary"

                  2.       Request for Specific Forms of Production

         B.       E-Mails

         C.       Spoliation of Electronic Records

IV.      Other Issues Relating to Plaintiff's Discovery Requests

         A.       Information Pertaining to Plaintiff

         B.       Similarly Situated Employees

         C.       Other Complaints of Discrimination

         D.       Services Provided after Plaintiff's Departure

         E.       Organizational Documents / Job Descriptions / Qualifications

         F.       Applicant and Employment Market Pool

---

[2] Defendants rightly point out that plaintiff has not complied with Local Rule 7(m), which requires parties filing a nondispositive motion to "discuss the anticipated motion with opposing counsel . . . in a good-faith effort to determine whether there is opposition to the relief sought and, if there is opposition, to narrow the areas of disagreement."  The Court does not take Local Rule 7(m) lightly, but will nevertheless resolve the Motion on its merits so as to prevent further delay.  In addition, while not a substitute for compliance with Local Rule 7(m), the Court nevertheless notes that there was considerable opportunity for the parties to confer and narrow the areas of disagreement during the many scheduled status conferences.

G.      Disclosure of Financial Information

H.      Production of the Names of Witnesses

V.      Privilege Log

VI.     Sanctions

VII.    Conclusion

## III.  Electronically Stored Information

Many of the discovery disputes at issue in the Motion relate to electronically stored information.  In particular, plaintiff: (a) asks the court to compel the production of the Business Plan in its original electronic format, with accompanying metadata; (b) asks the court to compel the production of defendants' e-mails in an original format with accompanying metadata; and (c) claims that defendants have deliberately caused the spoliation of electronic records and have purposely failed to produce many e-mails and documents.

### A.  Business Plan

Plaintiff asks the Court to compel the production of the Business Plan[3] "in its original electronic format, with accompanying metadata.[4]"  Motion at 6.  Plaintiff argues that Rule 34 permits the production of documents outside of their original format only "if necessary," and, in this case, no such necessity exists.  <u>Memorandum of Points and Authorities in Support of Plaintiff's Reply to Defendants' Opposition to Plaintiff's</u>

---

[3] The Business Plan was the subject of <u>Defendants' Memorandum In Support Of Protective Order Regarding SFX Sports Group, Inc.'s Business Plan and Related Documents</u> [#22], filed on November 22, 2006.

[4] Metadata has been defined as "information about a particular data set which describes how, when, and by whom it was collected, created, accessed, or modified and how it was formatted."  <u>Williams v. Sprint/United Management Co.</u>, 230 F.R.D. 640, 646 (D. Kan. 2005) (quoting THE SEDONA GUIDELINES: BEST PRACTICE GUIDELINES AND COMMENTARY FOR MANAGING INFORMATION & RECORDS IN THE ELECTRONIC AGE app. F).

<u>Second Motion to Compel Discovery, and for Sanctions</u> [#49] ("Reply") at 5.

Defendants respond that: (a) plaintiff did not request that the Business Plan or any other

documents be produced in a specific format; (b) production in original electronic format

with metadata is not required by the Federal Rules of Civil Procedure or in the absence of

a clear agreement or court order, neither of which are present here; and (c) plaintiff has

not made any attempt to demonstrate the relevance of the metadata.  <u>Defendants'</u>

<u>Opposition to Plaintiff's Second Motion to Compel Discovery, and for Sanctions</u> [#41]

("Opp.") at 7-9.

### 1.  Rule 34 – "If Necessary"

As an initial matter, plaintiff argues that Rule 34 of the Federal Rules of Civil

Procedure[5] permits the production of documents other than in their original format only

"if necessary."  Reply at 5 ("Defendants have failed to show that their failure to produce

the requested documents in their original format has been borne out of necessity.").  Rule

34(a) states, in relevant part:

**(a) In General**.  A party may serve on any other party a request . . . :

> **(1)**  to produce and permit the requesting party or its representative
> to inspect, copy, test, or sample the following items in the
> responding party's possession, custody, or control:
>
>> **(A)**  <u>any</u> designated documents or <u>electronically stored</u>
>> <u>information</u>--including writings, drawings, graphs, charts,
>> photographs, sound recordings, images, and other data or
>> data compilations--<u>stored in any medium from which</u>
>> <u>information can be obtained either directly or, if</u>
>> <u>necessary, after translation by the responding party into a</u>
>> <u>reasonably usable form</u>

---

[5] All references to the Federal Rules of Civil Procedure are to the version that became effective December 1, 2007.

Fed. R. Civ. P. 34(a)(1)(A) (emphasis added).  Rule 34(a) does not set forth constraints

on the manner of production, but instead establishes the permissible scope of a request.

Id. ("A party may serve on any other party a request . . . ").  Consequently, the "if

necessary" clause seized upon by plaintiff is actually a constraint on the requesting party

rather than the responding party.  Id.  In other words, electronic data is subject to

discovery if it is stored in a directly obtainable medium.  If, however, it is not stored in a

directly obtainable medium, a request may be made of the responding party to translate

the electronic data into a "reasonably usable form."  Id.  Because the step of translating

this type of electronic data adds an extra burden on the responding party, the request may

only seek for it to be done "if [the translation is] necessary."  Id.  It is not the case that

this clause requires the responding party to produce data in its original form unless

"necessary" to do otherwise.

### 2.  Request for Specific Form of Production

This does not end the analysis of whether a responding party might be required to

produce electronic data in its original form with metadata.  To the contrary, Rule 34(b)

states that a discovery request "may specify the form or forms in which electronically

stored information is to be produced."  Fed. R. Civ. P. 34(b)(1)(C).  In this case, plaintiff

argues that she so specified in Instruction No. 4 of Plaintiff's Requests for the Production

of Documents (the "Instruction"):

> [F]or any documents that are stored or maintained in files
> in the normal course of business, such documents shall be
> produced in such files, or in such a manner as to preserve
> and identify the file from which such documents were
> taken.

Opp. at 6.  It is apparent that this language, when first written, was not meant to

encompass electronic data.  Instead it addresses a common concern of paper discovery:

the identification of a document's custodian and origination.  It is for this reason that the Instruction applies to documents "stored or maintained in files," and why it seeks to "preserve and identify" the identity of that file.  Indeed, the Instruction makes perfect sense when one presumes "file" to refer to a physical file cabinet or folder.[6]

Of course, "file" can also mean electronic data stored on an electronic medium.[7] Using this definition, the Instruction can be strained to provide the responding party with two options for producing electronic documents: (a) produce the electronic file containing the document (i.e. a .PDF or .XLS file), or (b) produce the document in such a manner as to "preserve and identify the file from which" it was taken.  The inclusion of the word "preserve" makes it very difficult to understand how the Instruction could apply to electronic documents; after all, how can the production of a document without the electronic file encompass the "preserv[ation]" of that electronic file?  A more credible reading of the second option is that a document need not be produced as an electronic file if the alternate production "preserve[s the] identi[ty of] the file from which" it was taken. In practice this would likely refer to a "trailer" at the bottom of a printed electronic document containing its location on electronic storage media (i.e. an electronic spreadsheet could be printed on a piece of paper with the trailer "c:\accounting\harry\ FY07 charts.xls").[8]  I do not know if defendants provided such a trailer because plaintiff did not attach the Business Plan to its Motion or provide any other detail concerning its

---

[6] See MERRIAM-WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY UNABRIDGED (2002) (defining "file" as "a container (as a folder or a metal cabinet) in which papers are kept usually in chronological or alphabetical order for ready reference").

[7] See OXFORD ENGLISH DICTIONARY (2d ed. 1989) (defining file as a "collection of related records stored for use by a computer and able to be processed by it").

[8] Indeed, the Motion itself contains a trailer on the bottom of each page that reads: "C:\MyFiles\CLIENT\Shebby\Pleadings\Discovery\MOTIONS\Motion may 16.wpd."

format, other than to state that it was not in its original form with accompanying metadata.  Nevertheless, it is clear that the Instruction, if applicable to electronic files, permits production of the Business Plan in a non-native form without accompanying metadata.

Ultimately, then, it does not matter whether the Instruction referred to paper or electronic files – a plain reading leads to the conclusion that plaintiff did not make a request that the Business Plan be produced solely in its original format with accompanying metadata.  See Vanston Bondholders Prot. Comm. v. Green, 329 U.S. 156, 170 (1946) ("Putting the wrong question is not likely to beget right answers even in law.").  A motion to compel is appropriate only where an appropriate request is made of the responding party.  See Fed. R. Civ. P. 37(a)(1)(B); Raghavan v. Bayer USA, Inc., No. 3:05-cv-682, 2007 WL 2099637, at *4 (D. Conn. July 17, 2007) ("The court will not compel discovery that has not been sought.").  Because no such request has been made concerning the Business Plan, the Court will not compel the defendant to produce it in its original form with accompanying metadata.[9]  See, e.g., Ponca Tribe of Indians v. Continental Carbon Co., No. CIV-05-445-C, 2006 WL 2927878, at *6 (W.D. Okla. Oct. 11, 2006) ("The original document requests issued by Plaintiffs failed to specify the manner in which electronic or computer information should be produced. [Defendant] elected to use a commonly accepted means of complying with the request.  Nothing in the materials provided by Plaintiffs supports requiring [Defendant] to reproduce the information in a different format.  Accordingly, Plaintiffs' request for reproduction of

---

[9] Where the requesting party "does not specify a form for producing electronically stored information, a [responding] party must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms."  Fed. R. Civ. P. 34(b)(2)(e)(ii) (emphasis added).

documents in their native electronic format will be denied."); Wyeth v. Impax Labs., Inc., No. Civ. A. 06-222-JJF, 2006 WL 3091331, at *1-2 (D. Del. Oct. 26, 2006) ("Since the parties have never agreed that electronic documents would be produced in any particular format, [Plaintiff] complied with its discovery obligation by producing image files"). Cf. Treppel v. Biovail Corp., 233 F.R.D. 363, 374 (S.D.N.Y. 2006) (requiring production in native format where requesting party asked for it and producing party did not object). See also RALPH C. LOSEY, E-DISCOVERY, CURRENT TRENDS AND CASES 158-59 (2007) (summarizing recent cases as amounting to a "lesson . . . that in order to obtain metadata you may need, you should specifically ask for it to begin with").

## B.  E-Mails

Plaintiff also asks the Court to compel the production of defendants' e-mails in an original format with accompanying metadata.  Reply at 6-7.[10]  Plaintiff contends that defendants produced the e-mails in .MSG format, which is "not searchable and  lack[s] metadata."  Id.  Plaintiff requests that the e-mails be produced in the .PST format in which they were originally maintained.  Id.

Defendants, however, contend that they did produce the e-mails in .PST format. On February 27, 2007, Johnine P. Barnes, counsel for defendants, sent a letter to David E. Schreiber, plaintiff's counsel, in which she agreed to "reproduce the electronic documentation . . . as a .pst file."  Defendants' Surreply To Plaintiff's Reply To Defendants' Opposition To Plaintiff's Second Motion To Compel Discovery, And For Sanctions [#59] ("Surreply") at 4, and Exh. 2 thereto.  She told Mr. Schreiber, plaintiff's counsel, that this supplemental production would be available on February 28, 2007.  Id.

---

[10] Defendants initially produced the e-mails in PDF format but, upon "repeated requests" by plaintiff, produced the e-mails in an alternate format.  Reply at 6.

Defendants have also provided an affidavit from John Cavender, the Security Principal for Clear Channel.  <u>Affidavit of John Cavender</u> ("Cavender Aff."), attached as Exh. 1 to Surreply.  Cavender is responsible for the "retention and extraction of Clear Channel's archived email on the Legato system."  <u>Id.</u> at ¶ 2.  Cavender states that he has reviewed the DVDs that were produced to plaintiff and can confirm that they contain defendants' e-mail production in .PST format, and that the production can be "searched by many criteria."  <u>Id.</u> at ¶¶ 9-10.

Because it appears that the e-mails have been produced in .PST format, and because plaintiff has conceded that production in that format satisfies her request, the Court considers her request to compel the e-mails in .PST format to be moot.  <u>See</u> Reply at 6 ("Production of the e-mails in this format [.PST] would have been responsive to the Plaintiff's request.").

### C.  Spoliation of Electronic Records

Plaintiff claims that defendants have "deliberately caused the spoliation of the electronic records of the Plaintiff and have purposely failed to produce those e-mails and other documents that are still available."  Motion at 7.  She alleges that her consultant, Kroll Ontrack, Inc. ("Kroll"), conducted "an exhaustive review" of the searchable database of archived Department of Justice material produced by defendants and discovered that "pertinent e-mails and documents were not among the material produced."  Motion at 6.  Plaintiff's request to have a Kroll representative review the archived material at the defendants' Texas or Washington, D.C. locations was refused by defendants.  <u>Id.</u>  Plaintiff intimates that defendants' unwillingness to permit an inspection may be an effort to hide spoliation.  <u>Id.</u> at n.3.  Pointing to conflicting deposition

testimony, plaintiff also raises questions about when her computer was "scrapped." Motion at 6-7, 12 (comparing Mason Dep. at 117-27 with Shannon Dep. at 46-49).

In response, defendants state in a footnote that they "have never received any correspondence from Kroll or Plaintiff's counsel regarding any deficiencies with the electronic data produced." Opp. at 19 n.3. They also insist that plaintiff was not prejudiced by the scrapping of her computer because all e-mails sent and received by her were captured from "defendants' server and have been produced." Id. at 20.

I have concluded that this record is simply too thin to assess the merits of these serious allegations and, for that reason, I am ordering that an evidentiary hearing be held. Specifically, I intend to hear testimony pertaining to: (a) the basis for the Kroll representative's conclusion that e-mail and other documents have not been produced; (b) testimony from plaintiff as to what documents and electronically stored information she believes have not been produced; and (c) the circumstances concerning the scrapping of plaintiff's computer and the consequences thereof in light of any demand made by plaintiff to preserve its contents.

### IV.  Other Issues Relating to Plaintiff's Discovery Requests

I will now turn to the assortment of other issues raised by plaintiff, including discovery requests related to: (a) information pertaining to plaintiff; (b) information pertaining to similarly situated employees; (c) other complaints of discrimination directed at defendants; (d) the continuation, or lack thereof, of public relations services to defendants' clients; (e) organizational documents and job descriptions; (f) applicant and employment market pools; (g) financial data; and (h) the identity of defendants' anticipated trial witnesses.

## A.  Information Pertaining to Plaintiff

Plaintiff complains that she has not received any of her payroll records or any documents relating to defendants' decision to deny her a promotion.[11]   Motion, Exh. A at ¶¶ 5, 6, 19.  She raises similar concerns about defendants' failure to produce any documents relating to her job title or compensation, and points to deposition testimony indicating that no effort was made to locate such documents.  Id. at ¶ 17 (citing Shannon Dep. at 116).

Defendants' response is succinct: these documents either do not exist or have not been found.  Opp. at 12.  Defendants do not speak specifically to the deposition testimony cited by plaintiff, but explain that no payroll records have been found and that no documents exist pertaining to the "alleged" decision not to promote plaintiff.  Id.

I expect the defendants to search diligently for documents responsive to plaintiff's requests – particularly the payroll records that defendants assert have not been located, and information pertaining to plaintiff's job title or compensation – and supplement their production with the fruits of that search.  See Opp. at 12.  As defendants are aware, that search must encompass electronically stored information, including the electronically stored information identified by Joe Shannon at his deposition.  Shannon Dep. at 102-05.  As to employment contracts and documents concerning promotions, however, no further production is necessary in light of plaintiff's at-will employment and her failure to allege in her complaint that she was denied a specific promotion.

---

[11] Plaintiff initially complained that there had been no production of "Plaintiff's employment contract with the Defendant, SFX," and that defendants had not acknowledged whether such a contract existed.  Motion, Exh. A at ¶ 6.  Defendants responded that no employment contract existed for plaintiff because she was an at-will employee.  Opp. at 12.  In her Reply, plaintiff accuses defendants of "misstat[ing] Plaintiff as requesting an employment contract *for her* that does not exist.  This is incorrect.  The Plaintiff is not requesting her employment contract . . . " Reply at 13 (emphasis in original).  Plaintiff's accusation is incorrect – her Motion states with great specificity that defendants have failed to produce "Plaintiff's employment contract" or acknowledge whether one exists.  Motion, Exh. A. at ¶ 6.

## B.  Similarly Situated Employees

Plaintiff complains that defendants have not provided her with information she sought pertaining to fellow employees who were similarly situated.  Motion, Exh. A at ¶¶ 3, 7-8; Motion, Exh. B at ¶¶ 1, 3.  Defendants insist that "there was no other person who shared similar duties with plaintiff."  Opp. at 12.  Plaintiff accuses defendants of using a "narrow and incorrect interpretation" of "similarly situated," and that "Howard Schacter was similarly situated to the Plaintiff because both were in charge of public relations for the SFX Sports Group at various points."  Reply at 15-16.  Defendants disagree but have nevertheless produced the personnel file, containing wage information, of Mr. Schacter. Opp. at 13.  That will suffice.

## C.  Other Complaints of Discrimination

Plaintiff also seeks the production of documents relating to any complaints or allegations of discrimination or harassment against the defendants.  Motion, Exh. A at ¶¶ 10, 12.  Defendants flatly respond that no such documents exist.  Opp. at 12.  The discovery sought here by plaintiff is reasonably calculated to lead to admissible evidence and is therefore discoverable.  White v. U.S. Catholic Conf., No. 97-cv-1253, 1998 WL 429842, at *5-6 (D.D.C. May 22, 1998).  Nevertheless, because plaintiff has not articulated any reason to believe that such documents exist, the Court will accept as true defendants' assertion that they do not.

## D.  Services Provided After Plaintiff's Departure

Plaintiff also asks this Court to compel responses to her discovery requests concerning "the person who replaced" her and information and documents pertaining to

whether the services she had provided while an employee have survived her departure. See Motion, Exh. A at ¶¶ 4, 18, 20-21; Motion, Exh. B at ¶¶ 2, 5.

Defendants respond that "no one assumed plaintiff's position upon the separation of her employment.  Any public relations function was contracted out."  Opp. at 12.  This is of no comfort to plaintiff, who insists that defendants must produce the requested documents regardless of whether the "position, duties or responsibilities" were contracted out.  Reply at 16.  This information is relevant to rebut defendants' purported reason for terminating plaintiff – that plaintiff, a specialist in public relations, was no longer needed because defendants had stopped offering public relations services to their clients. Plaintiff's First Amended Complaint at ¶¶ 20, 23.  See Aka v. Washington Hosp. Ctr., 156 F.3d 1284, 1288-89 (D.C. Cir. 1998) (complainant may, after making out a *prima facie* case of prohibited discrimination, rebut the employer's articulated nondiscriminatory reasons for the challenged employment decision).

Defendants contend that they have produced "contracts between defendant SFX and its clients that it possesses and has control over [,] documents used by defendant SFX in attempt to obtain new clients [,] and information regarding prospective clients of defendant SFX."  Opp. at 18.  Plaintiff responds that defendants "have not provided the contracts and 'pitches' requested of certain current and/or prospective client athletes (Defendants produced only a generic form contract provided in SFX0324-0328)."  Reply at 20.

On this record, and without seeing the actual information provided by the defendants, it is impossible to say with certainty whether plaintiff is entitled to more than she has received.  I will say that, as I have just indicated, plaintiff is entitled to documents

and information pertaining to whether the public relations services previously provided by her have since been provided to defendants' clients (regardless of whether such services have been provided by contractors or employees).  Defendants are to supplement their production in accordance with this directive, particularly with reference to Requests for Production 55, 58, and 60, and Interrogatory 21.

### E.  Organizational Documents / Job Descriptions & Qualifications

Plaintiff moves to compel the production of "documents and responses related to the Defendant's operations, physical locations, and corporate organizational structure . . . including the owners, shareholders, directors, and all others who have responsibility for the development of policy."  Motion, Exh. A at ¶ 11; Request for Production No. 24.  Defendants have produced an organizational chart "from circa 2003," but have otherwise objected on the basis of overbreadth and irrelevancy.  Opp. at 18; Reply at 20.  Plaintiff also requested the production of "documents pertaining to [public relations and marketing] job descriptions or job qualifications."  Motion, Exh. A at ¶ 16; Request for Production No. 48.  Defendants have stated that no responsive documents exist pertaining to the job descriptions or qualifications of plaintiff, but have otherwise objected to the request as overbroad.  Opp. at 12.  Additionally, defendants have refused to produce information about persons promoted to the position of vice president at SFX from 2000 to the present.  Motion, Exh. B at ¶ 4.

In the absence of additional information bearing on the relevancy of this information to plaintiff's claim that she was terminated because of her gender, I find that information pertaining to the structure of divisions in which she never worked, job descriptions and qualifications for jobs she never held, and the names of corporate

officials in a particular position are not likely to lead to relevant evidence – and, therefore, I will deny any additional discovery in this regard.  Cf. Glenn v. Williams, 209 F.R.D. 279, 281-82 (D.D.C. 2002) (limiting the scope of discovery in Title VII action to the division in which plaintiff was employed).

### F.  Applicant and Employment Market Pool

Plaintiff seeks "all documents which indicate the breakdown of the defendant's applicant pool by any of the following characteristics: name, qualifications, date of application, position applied for and its rate of pay, date of birth, sex, national origin or religion of employees at the present time and at the time of Plaintiff's employment." Request for Production No. 33.

Notably, the words "applicant pool"[12] are not defined.  Apparently, they mean the persons who applied for jobs with defendants from the date of plaintiff's hiring to today. Moreover, although this case involves gender discrimination, the request applied to other forms of discrimination, although plaintiff has now eliminated religion and national origin.  Motion, Exh. A at ¶ 13.  On its face, the request is overly broad and the defendants' objection warrants being sustained.  See McGowan v. General Dynamics Corp., 794 F.2d 361 (8th Cir. 1986).

I appreciate, however, that a plaintiff in a Title VII case can "avoid summary judgment (and prevail at trial) by presenting other evidence, either direct or circumstantial, that permits an inference of discrimination."  Aka, 156 F.3d at 1295 n.11. An example provided in Aka is particularly apropos here: "[I]f a female plaintiff claims

---

[12] Plaintiff also seeks the same information as to the defendants' "employment market pool," but never defines that term.  Request for Production No. 34.  If it means the gender composition of the work force in the community where the plaintiff was employed, it is mystifying why she thinks that defendants have this information.

sex discrimination, evidence that the defendant employs women at rates far below their numbers in the applicant pool and the general population may well help her case." Id.

Though such information is discoverable, its availability and inferential value is often in question.  In regard to availability, there are no specific Employment Opportunity Commission ("EEOC") regulations that require employers to maintain information on the gender of each of its applicants.  Even if an employer were to maintain such information, EEOC regulations only require an employer to maintain records pertaining to the filling of a job vacancy for one year unless an applicant files an EEOC charge.  29 C.F.R. § 1602.14 (2007).  And data reflecting the gender of applicants, even if collected and maintained by an employer, may lack inferential value if it encompasses too broad a spectrum of vacancies, or if the sample size is too small.

I will therefore, in the exercise of my obligation to weigh benefit against cost under Rule 26(b)(2)(C)(iii) of the Federal Rules of Civil Procedure, resolve the question in two stages by directing defendants to file a declaration from a person who is familiar with their hiring process.  This declaration shall indicate: (a) what records are created when a persons applies for a position; (b) whether any inquiry is made as to the applicant's gender; (c) whether the responses to such inquiries are maintained; (d) how long any and all such records are maintained; and (e) how many positions the defendants filled each year in the years plaintiff was employed.  Once that information is provided, I will resolve defendants' objection, reserving the right to require additional briefing.

### G.  Disclosure of Financial Information

Plaintiffs ask this Court to compel the production of "[a]ll documents relating to the balance sheet reflecting the assets and liabilities and net worth of the Defendant

including 10-k statements and annual reports."  Motion, Exh. A at ¶ 15; Request for

Production No. 41.  Defendants have declined to produce this financial information

because they insist that a claim for punitive damages does not, by itself, warrant the

production of that information.  Opp. at 14.

 Defendants rely on the decision in <u>Skinner v. Aetna Life Ins. Co.</u>, No. 83-cv-

0679, 1984 U.S. Dist. LEXIS 19817, at *3 (D.D.C. Feb. 2, 1984), in which then

Magistrate Judge Burnett indicated his reluctance to permit discovery of the defendant's

financial condition when the extensive discovery that had already taken place failed to

disclose even a minimal showing of a *prima facie* case supporting a claim for punitive

damages.  <u>Id.</u> at *2-3.  He went on to state that:

> [E]ven where a claim for punitive damages has some
> factual support in the discovery record, discovery directed
> to this discreet issue should be limited to net worth, and
> production of an annual or other periodic balance sheet,
> distributed to stockholders in the regular course of
> business, or other financial statement or balance sheet
> subject to audit or independent CPA verification of
> accuracy should suffice.

<u>Id.</u> at *4.  <u>See</u> <u>also</u> <u>John Does I-VI v. Yogi</u>, 110 F.R.D. 629, 633 (D.D.C. 1986) ("[T]he

Court will extend limited protection to discovery concerning defendants' financial status.

This discovery is relevant, but should not be revealed until necessary to prove up punitive

damages.").  Nevertheless, a majority of federal trial courts have taken a different

approach than that in <u>Skinner</u> and <u>John Does I-VI</u>, and instead have "permit[ted] pretrial

discovery of financial information of the defendant without requiring plaintiff to establish

a *prima facie* case on the issue of punitive damages."  <u>Mid Continent Cabinetry, Inc. v.</u>

<u>George Koch Sons, Inc.</u>, 130 F.R.D. 149, 151-52 (D. Kan. 1990).

Information pertaining to a defendant's financial condition is relevant to the issue of whether punitive damages should be awarded.  Hutchinson v. Stuckey, 952 F.2d 1418, 1423 n.4 (D.C. Cir. 1992) ("It is true that an award of punitive damages should be related to the defendant's ability to pay and should be adjusted if clearly excessive in light of that factor") (internal citations omitted).  But a defendant may never put its financial condition at issue,[13] or it may not do so until the Court concludes, as a matter of law, that plaintiff has made a sufficient showing to permit the jury to consider such damages.

Additionally, as Judge Burnett explained in Skinner, the only information needed – a net worth statement – is easily secured because it is already kept in the ordinary course of the defendants' business.  1984 U.S. Dist. LEXIS 19817, at *4.  Moreover, a net worth statement is not the kind of information that leads to additional discovery to understand it or its true significance.  It would therefore appear prudent to postpone the production of such information in the event that the jury does not consider punitive damages or the defendants do not place their financial condition at issue.  In the interest of efficiency, however, I will order that the defendants produce – in camera for Judge Bates' consideration at the pretrial conference – defendants' statement of net worth certified as accurate by a certified public accountant.  This in camera production will be made without defendants' having committed themselves to offering that statement into evidence.

### H.  Production of the Names of Witnesses

Plaintiff propounded an interrogatory that required the defendants to identify each lay witness it intends to call at trial.  Motion at Exh. B ¶ 3.  Defendants responded by

---

[13] Defendant has the burden of proving its financial condition if it wants to establish that no award of punitive damages is permissible.  Hutchinson, 952 F.2d at 1423 n.4.

identifying persons who may have knowledge of the case, but refused – and continue to refuse – to identify its lay witnesses.  Opp. at 15.

Parties are to produce as part of their initial disclosures the names of individuals "likely to have discoverable information."  Fed. R. Civ. P. 26(a)(1)(A)(i).  As for trial witnesses, however, no rule requires their disclosure until the calling party files a pretrial statement.  See LCvR 16.5(b)(1)(iv) (a party's Pretrial Statement shall contain a "schedule of witnesses to be called by the party").  Cf. Fed. R. Civ. P. 26(a)(3)(A)(i) (identification of witnesses must occur no later than 30 days prior to trial); Fed. R. Civ. P. 16(c)(2)(G) (providing that a court may, at a pretrial conference, take "appropriate action" with respect to "identifying witnesses").

The discrete question, then, is whether a party can be compelled to disclose its witnesses in the interval between the initial disclosure and the filing of the pretrial statement.  The traditional view is that it can not:

> A distinction has traditionally been drawn between witnesses to the events in question and witnesses who will be called for trial by the adverse party. The names of occurrence witnesses could always be obtained by discovery. It was generally held, however, that a party was not entitled to find out, by discovery, which witnesses its opponent intended to call at the trial although there was some authority to the contrary. Even when it was held that the names of witnesses to be called at the trial were not a proper subject for discovery it was recognized that the court could require each party to disclose its trial plans in this regard at a pretrial conference.

8 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & RUTH MARCUS, FEDERAL PRACTICE AND PROCEDURE § 2013 (2d ed. 1994) (footnotes omitted).

There exists a case from this court that deviates from the traditional view by holding that a party may be compelled to disclose during discovery the identity of trial

witnesses.  McKesson Corp. v. Islamic Republic of Iran, 185 F.R.D. 70, 82 (D.D.C.

1999).  The holding in McKesson does not appear to be the majority view, however.  See,

e.g., Brock v. R.J. Auto Parts and Serv., Inc., 864 F.2d 677, 679 (10th Cir. 1988) (trial

court erred in issuing discovery order requiring disclosure of identities of individuals

upon whose testimony plaintiff intended to rely); IBP, Inc. v. Mercantile Bank of Topeka,

179 F.R.D. 316, 323 (D. Kan. 1998) (interrogatory requesting list of all witnesses and

substance of their testimony held to be unduly burdensome because it did not seek

material facts about case or contentions of party, but rather sought counsel's decisions

about trial strategy); Kedzior v. Talman Home Federal Sav. & Loan Ass'n of Illinois, No.

89 C 4188, 1990 WL 70855, at *6-7 (N.D. Ill. May 10, 1990) (denying plaintiff's motion

to compel responses to interrogatories seeking identities of defendant's trial witnesses and

expected testimony of witnesses on the grounds that requiring party to disclose such

information during discovery before full evaluation of trial strategy was unreasonable);

Robbins v. Camden City Bd. of Educ., 105 F.R. D. 49, 58 (D.N.J. 1985) (holding that

interrogatories that sought the identification of trial witnesses were "premature and need

not be answered").

    In discovery, a principled exercise of discretion is always preferable to the *ersatz*

"certainty" of hard-and-fast rules.  It is easy to imagine a case where the number of

potential witnesses is great, the number of permitted depositions small, and the time to

take depositions limited.  In such a situation, the tentative disclosure of potential

witnesses may be appropriate.  Indeed, in another case I recently issued an order that did

just that.  Amer. Soc. for the Prevention of Cruelty to Animals v. Feld Ent., Inc., No. 03-

cv-2006, slip op. (D.D.C. Dec. 18, 2007).

On the other hand, in the ordinary case it would be a poor lawyer who, given the liberal discovery permitted by the Federal Rules of Civil Procedure, does not have a good idea of who his opponent's witnesses will be.  Moreover, if the unlikely occurs – the opposing party tries to name as a trial witness a person not identified in the initial disclosure, supplemented as necessary – the court has adequate means to prevent prejudice or unfair surprise.  <u>See</u> Fed. R. Civ. P. 37(c)(1) (precluding party from calling at trial a witness it had failed to disclose in its initial disclosure as a person with discoverable information, unless failure was substantially justified or is harmless).

Plaintiff makes no showing of any particular reason why I should deviate from the ordinary practice of the parties' awaiting each others' pretrial statements for the disclosure of their proposed trial witnesses.  <u>See</u>, <u>e.g.</u>, <u>Brock</u>, 864 F.2d at 679 (holding that a party wishing to obtain through discovery the identification of trial witnesses "must show a particular need for that deviation").  Consequently, I will not grant plaintiff's motion to compel the production of defendants' list of lay witnesses.  I must stress, however, that defendants have an obligation under Rule 26(e) to supplement their initial disclosures with the name of every person who may have discoverable information; the failure to meet that obligation carries a high risk of sanctions.  <u>See</u>, <u>e.g.</u>, <u>Coles v. Perry</u>, 217 F.R.D. 1, 5 (D.D.C. 2003).

**V.  Privilege Log**

Plaintiff asks this Court to compel defendants to produce a privilege log.  In her Motion, plaintiff argues that Rule 26(b)(5) requires that a "log be furnished as to any documents withheld on the basis of privilege or attorney work product."  Motion at 5.  Plaintiff argues that such a log is necessary because "[t]hroughout Defendants' discovery

responses, as well as during depositions of Defendants' witnesses, defense counsel has

claimed privilege as to documents that a witness supplied to counsel."  Id.  Moreover, she

complains of defendants' practice at depositions of "claim[ing] that the mere fact that the

witness actually produced a document to counsel as somehow being indicative of

counsel's work product."  Id.  In her Motion, however, plaintiff fails to provide the Court

with any discovery response or transcript, or citation thereto, evidencing the misconduct

she alleges.  Defendants, in turn, flatly deny that they have withheld privileged

documents:

> Defendants are not withholding any information otherwise
> discoverable and have not indicated any claims for attorney
> client or work product privileges as the basis for objecting
> to any of plaintiff's discovery requests.

Opp. at 11.  As such, they argue that Rule 26(b)(5) is inapplicable.  Id.  In her Reply,

plaintiff repeats her allegation that defendants have "claimed privilege regarding various

documents and information in many of their responses."  Reply at 14.  Yet again,

however, she provides no discovery response, or citation thereto, where defendants claim

privilege.  She does point to several portions of deposition transcripts in which she claims

"defendants have responded to all questions about who produced what document and

other information as if such information is privileged."  Reply at 14 (citing Mason Dep.

15:4-19, 127:7-128:8; Williams Dep. 9:4-11:18, 14:1-15:5; Wray Dep. 47:14-48:11,

52:21-53:13).  She does not, however, attach those transcripts (or even the cited portions)

as exhibits.

Local Rule 5.2 governs the filing of discovery materials with motions to

compel:

> Any motion concerning discovery matters shall be
> accompanied by a copy of, or shall set forth verbatim, the

> relevant portion of any nonfiled discovery materials to
> which the motion is addressed.

LCvR 5.2.  See also Nat'l Dist. Co., Inc. v. U. S. Treasury Dept., Bureau of Alcohol,

Tobacco and Firearms, 626 F.2d 997, 1013 n.56 (D.C. Cir. 1980) ("We are unable to

evaluate the accuracy of the paraphrases or the context of the quotations since no

citations to or copies of the documents were provided.").  Because plaintiff has not

complied with Local Rule 5.2, her request that this Court compel defendants to produce a

privilege log will be denied.

Furthermore, plaintiff has failed to adequately explain how the objections made

by defendants during depositions could trigger an obligation to produce a privilege log.

Indeed, the words "privilege log" do not appear in Rule 26(b)(5)(A).  Instead, the rule

requires that, if a party withholds information on the grounds of privilege, that party

shall:

> make the claim expressly and shall describe the nature of
> the documents, communications, or things not produced or
> disclosed in a manner that, without revealing the
> information itself privileged or protected, will enable other
> parties to assess the applicability of the privilege or
> protection.

Fed. R. Civ. P. 26(b)(5)(A).  In this case, counsel for defendants objected on the basis of

privilege to questions at depositions probing whether witnesses had located documents

and given them to counsel.  Motion at 4-5.  Regardless of the legitimacy of the

objections, by their very nature the objections served as "expressly" made claims of

privilege and, as such, "enable[d] other parties to assess the claim [of privilege]."  Fed. R.

Civ. P. 26(b)(5)(A)(ii).  Nothing more was required.

**VI.  Sanctions**

I will postpone ruling on the parties' cross motions for sanctions until after the

evidentiary hearing.

**VII.  Conclusion**

For the reasons stated above, the Motion is granted in part and denied in part.

An Order accompanies this Memorandum Opinion.


Date:  January 23, 2008                          _____/s/_____

                                                 JOHN M. FACCIOLA
                                                 UNITED STATES MAGISTRATE JUDGE