UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| AUDREY(SHEBBY) D'ONOFRIO,<br><br>Plaintiff,<br><br>v.<br><br>SFX SPORTS GROUP, INC., et al.<br><br>Defendants. | Civil Action No. 06-0687 (JDB) |

MEMORANDUM OPINION

Plaintiff Audrey ("Shebby") D'Onofrio brought this civil action alleging that she was discriminated against on the basis of her gender and pregnancy by her employer defendant SFX Sports Group, Inc. ("SFX"), a wholly owned subsidiary of defendant Live Nation, Inc., which in turn was formerly a subsidiary of defendant Clear Channel Communications, Inc.[1]  She filed suit on March 13, 2006 in the Superior Court of the District of Columbia.  In addition to naming the aforementioned corporations as defendants, plaintiff added Dan Rosier and Kimberley Wray -- the former Chief Financial Officer at SFX and the head of Human Resources at Clear Channel Communications, respectively -- as defendants in their personal capacities.  Plaintiff seeks

---

[1] Live Nation previously "functioned under the name of Clear Channel Entertainment." Live Nation Answer ¶ 2.  And Clear Channel Communications "was the parent company of Clear Channel Entertainment."  Clear Channel Communications Answer ¶ 2.  According to defendant Clear Channel Communications, it is not a proper party to this lawsuit because the organizations in question are distinct legal entities.  See id. at 2.  It has not, however, moved to dismiss the complaint on that basis and thus that question is not presently before the Court.

monetary and injunctive relief under the District of Columbia Human Rights Act ("DCHRA"), the District of Columbia Family Medical Leave Act, and the Equal Pay Act, 29 U.S.C. § 206(d)(1). Defendants removed the case to this Court on April 17, 2006, citing diversity jurisdiction over the District of Columbia claims and federal question jurisdiction over the Equal Pay Act claims. Although the corporate defendants then answered the complaint, defendants Rosier and Wray have each moved to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2). Those motions are now fully briefed and ripe for resolution. After careful consideration, and for the reasons set forth below, the Court will grant the motions.

## BACKGROUND

In May 2000, plaintiff was hired as the "Senior Director of Public Relations" at SFX.[2] Second Am. Compl. ¶ 9. At the time she was hired, plaintiff was promised a promotion if one of her immediate supervisors, Howard Schacter, departed for another branch of SFX. Id. Mr. Schacter did in fact transfer to a different department and plaintiff "ascended to Mr. Schacter's former role," taking on his responsibilities and duties but without "the corresponding change in title [or] . . . equivalent salary." Id. ¶ 10.

Following an ethical disagreement with SFX's Chairman and CEO, David Falk, plaintiff was informed that her position was being eliminated during the summer of 2001. Id. ¶ 12. She believes that she was terminated "in retaliation for her 'disagreement' with Mr. Falk." Id. ¶ 13. In any event, plaintiff was promptly rehired by SFX in 2002. Id. ¶ 14. According to her, she

---

[2] The factual discussion here is limited to that necessary to determine the applicable jurisdictional facts for purposes of the motions. Because many of the facts alleged in plaintiff's complaint are not relevant to personal jurisdiction over these two individual defendants, they need not be explored here.

accepted the position that she was offered upon the condition that she would shortly be promoted to "Vice President, with a commensurate increase in salary."  Id.  Over the course of the next several years, plaintiff continued to agitate for her putative promotion and salary increase to no avail.  Id. at 15-16.

Plaintiff informed SFX that she was pregnant in August 2005.  Because she was having a "difficult pregnancy and was experiencing several serious medical issues," id. ¶ 18, and pursuant to medical advice, she decided to go on disability leave during the remaining term of her pregnancy.  Id.  Thus, plaintiff requested the appropriate paperwork from Alaka Williams, "the Human Resources Manager at Clear Channel who was assigned to SFX Sports Group, Inc."  Id.  Ms. Williams informed plaintiff that she would prepare the disability paperwork and inquired whether plaintiff intended to return to the company following the completion of her pregnancy; plaintiff confirmed that she did so intend.  Id. ¶ 19.

The operative events for our purposes took place on or around September 26, 2005.  On that day, Ms. Williams contacted plaintiff by phone and allegedly informed her that "due to changes in the company, there was no longer a need for a public relations function, such that her position was to be eliminated effective that day."  Id. ¶ 20.  According to plaintiff, Wray also participated in that conversation via conference call.[3]  Thus, plaintiff added Wray as a defendant because she believed that Wray was in part "responsible for the discriminatory and retaliatory acts" directed against plaintiff.  Id. ¶ 30A.  Additionally, Rosier was added as a defendant because "he was the individual who decided to terminate [plaintiff's] employment."  Id. ¶ 30B.

---

[3] As discussed below, both Ms. Williams and Wray directly contradicted this account in their respective depositions.  Each asserted that Wray was not on the phone during this conversation.

Specifically, plaintiff alleges that as of the late afternoon on September 16, 2005, plaintiff's position was not scheduled to be terminated. Id. ¶ 30A. In her view, however, "Rosier and Wray subsequently had a telephone conversation in which they discussed [plaintiff's] pregnancy and her termination." Id. Pursuant to that conversation, plaintiff alleges, she was added to the "termination list" on September 17, 2005.[4]

Wray's Clear Channel Communications office is located in Texas, where she also resides. Wray's Mot. to Dismiss (hereinafter "Wray's Mot.") Ex. 1 ¶¶ 1-2. For his part, Rosier's office during his tenure at SFX was located in Texas as well. Rosier's Mot. to Dismiss (hereinafter "Rosier's Mot.") Ex. 1 ¶¶ 1-2. He currently resides in Texas and works out of California. Id. Ex. 1 ¶ 2. At the time that the phone call concerning plaintiff's termination took place, then, both Wray and Rosier were situated in Texas.

## STANDARD OF REVIEW

Plaintiff bears the burden of establishing personal jurisdiction over each defendant. In order to meet her burden, plaintiff must allege specific facts on which personal jurisdiction can be based; she cannot rely on conclusory allegations. See GTE New Media Services, Inc. v. Ameritech Corp., 21 F. Supp. 2d 27, 36 (D.D.C. 1998), remanded on other grounds sub nom. GTE New Media Services, Inc. v. BellSouth Corp., 199 F.3d 1343 (D.C. Cir. 2000); Comsat Corp. v. Finshipyards S.A.M., 900 F. Supp. 515, 520 (D.D.C. 1985). Moreover, plaintiff cannot aggregate factual allegations concerning multiple defendants in order to demonstrate personal jurisdiction over any individual defendant. See Rush v. Savchuk, 444 U.S. 320, 331-32 (1980)

---

[4] The "termination list" was evidently a component of SFX's reorganization plan to scuttle "various underperforming units," including plaintiff's Public Relations department. Second Am. Compl. ¶ 29.

(rejecting aggregation of co-defendants' forum contacts in determining personal jurisdiction because "the requirements of *International Shoe* must be met as to each defendant over whom a state court exercises jurisdiction"). When considering personal jurisdiction, the Court need not treat all of the plaintiff's allegations as true. Instead, the court "may receive and weigh affidavits and other relevant matter to assist in determining the jurisdictional facts." United States v. Philip Morris Inc., 116 F. Supp. 2d 116, 120 n. 4 (D.D.C. 2000); see also Capital Bank Int'l, Ltd. v. Citigroup, Inc., 276 F. Supp. 2d 72, 74 (D.D.C. 2003); Novak-Canzeri v. Al Saud, 864 F.Supp. 203, 206 (D.D.C. 1994) ("the Court must accept Plaintiff's claims as true in ruling on a 12(b)(2) motion, unless they are directly contradicted by an affidavit").

## DISCUSSION

There are, of course, two distinct variants of personal jurisdiction: "(1) general, 'all purpose' adjudicatory authority to entertain a suit against a defendant without regard to the claim's relationship *vel non* to the defendant's forum-linked activity, and (2) specific jurisdiction to entertain controversies based on acts of a defendant that touch and concern the forum." Kopff v. Battaglia, 425 F. Supp. 2d 76, 81 (D.D.C. 2006) (citing Steinberg v. Int'l Criminal Police Org., 672 F.2d 927, 928 (D.C. Cir. 1981)). General jurisdiction sets a high bar, requiring a defendant's contacts with a forum to be "continuous and systematic" before forcing a defendant to defend a suit arising out of any subject matter whether or not related to the forum. See Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 415-16 (1984). Specific jurisdiction, by contrast, requires a lesser showing that nevertheless must satisfy a two-step inquiry: (1) jurisdiction over the defendant must be authorized by the forum's long-arm statute, here D.C. Code § 13-423; and (2) the exercise of that jurisdiction must satisfy the federal requirement of

constitutional due process.  See United States v. Ferrara, 54 F.2d 825, 828 (D.C. Cir. 1995).

Here, Wray and Rosier correctly argue that general jurisdiction is unavailable.  During the relevant time period, both lived and worked in Texas.  Wray Mot. Ex. 1 ¶ 2; Rosier Mot. Ex. 1 ¶ 2.  Neither regularly does business with the District of Columbia, nor do they solicit business within the District.  Wray Mot. Ex. 1 ¶ 3; Rosier Mot. Ex. 1 ¶ 3.  Indeed, within the past decade Wray has visited the District only twice, and Rosier only twelve times.  Wray Mot. Ex. 1 ¶ 4; Rosier Mot. Ex. 1 ¶ 5.  In short, plaintiff has alleged no facts to satisfy the steep requirement of continuous and systematic contacts with the District of Columbia sufficient to impose general jurisdiction.

Turning to specific jurisdiction, plaintiff has similarly failed to make the proper showing required by the District's long-arm statute.  At the outset, it is worth noting that "as a general rule, courts cannot exert jurisdiction over individual corporate officers or employees 'just because the court has jurisdiction over the corporation.'"  Kopff, 425 F. Supp. 2d at 84 (quoting Flocco v. State Farm Mu. Auto. Ins. Co., 752 A.2d 147, 162 (D.C. 2000)).  Thus, plaintiff bears the burden of demonstrating that the individual defendants are subject to personal jurisdiction in their own right apart from any jurisdiction that might exist over their corporate-entity employers.  See Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 781 n. 13 (1984) ("But jurisdiction over an employee does not automatically follow from jurisdiction over the corporation which employs him . . . .  Each defendant's contacts with the forum State must be assessed individually.").  In relevant part, the D.C. long-arm statute provides:

> A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's --
>     (1) transacting any business in the District of Columbia;

>	(2) contracting to supply services in the District of Columbia;
>	(3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia;
>	(4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia.

D.C. Code § 13-423(a)(1)-(4). Plaintiff has alleged no facts in this case that would trigger the application of subsections (a)(2) or (a)(3).[5] Instead, she focuses primarily upon subsections (a)(1) and (a)(4).

In her opposition, plaintiff initially argued that the relevant prong of the long-arm statute is subsection (a)(1). Specifically, she contended that "Section 13-423(a)(1) is 'given an expansive interpretation' that is 'coextensive with the due process clause.'" Pl.'s Opp'n at 4 (quoting Mouzavires v. Baxter, 434 A.2d 988, 992 (D.C. 1981), cert denied, 455 U.S. 1006 (1982)). Thus, according to plaintiff, the sole inquiry is whether the "non-resident defendant[s] had sufficient minimum contacts with the jurisdiction in order to satisfy due process." Id. Relying on Calder v. Jones, 465 U.S. 783 (1984), and its progeny, plaintiff argues that defendants Wray and Rosier have had sufficient minimum contacts with the District because they purposefully directed their discriminatory activity in Texas towards the District, ultimately causing tortious injury there -- namely, plaintiff's termination for an allegedly discriminatory reason. Id. at 5-7. Put another way, plaintiff effectively argues that this case presents the so-called "direct-a-tort" scenario.

As defendants correctly point out, plaintiff's argument falters with respect to subsection

---

[5] Just as in Kopff, here "[t]he other provisions of the long-arm statute deal[ing] with ownership of real property and the existence of certain contractual or familial relationships . . . are not relevant for present purposes." 425 F. Supp. 2d at 82.

(a)(1). In Wiggins v. Equifax, the court held that "[p]ersonal jurisdiction over the employees or officers of a corporation in their individual capacities must be based on their personal contacts with the forum and not their acts and contacts carried out solely in a corporate capacity." 853 F. Supp. 500, 503 (D.D.C. 1994) (emphasis added). In instances where contacts with the forum were exclusively in relation to defendants' corporate responsibility, the court reasoned, "defendants are clearly not 'doing business' with the District of Columbia." Id. Moreover, the court added that "[t]he fact that [defendants] may have acted in a supervisory capacity over persons with contacts with the District also fails to create personal jurisdiction." Id. Similarly, in Richard v. Bell Atlantic Corp., 976 F. Supp. 40 (D.D.C. 1997), the court held that "plaintiffs have failed to plead sufficient jurisdictional facts, because acts committed within the scope of employment cannot be imputed to the individual defendants to establish personal jurisdiction over them." Id. at 50. The D.C. Court of Appeals has expressly adopted the principles identified by Wiggins and Richard with respect to the "doing business" prong of the long-arm statute found at subsection (a)(1). See Flocco, 752 A.2d at 163 ("We agree with the analysis of the courts in *Wiggins* and *Richard*."). Indeed, that court explained that a contrary conclusion would "permit the exercise of jurisdiction . . . whenever a plaintiff has made conclusory allegations, on information and belief, that [defendants] have directed or supervised activities of subordinates who have taken some action in the District." Id. at 164.

      The present case is indistinguishable from Wiggins, Richard, and Flocco. Viewed most charitably to plaintiff, the only facts of jurisdictional import alleged in her complaint (and accompanying briefs) are that Wray and Rosier discussed -- in Texas -- plaintiff's employment situation (and arguably her pregnancy) prior to placing her on the termination list. As plaintiff

points out, "Rosier admitted that he was the individual who decided to terminate D'Onofrio's employment in the District of Columbia." Pl.'s Opp'n at 2. Similarly, "Wray also admitted her involvement in D'Onofrio's termination." Id. Although it is not entirely clear, plaintiff appears to have abandoned the assertion made in her Second Amended Complaint that Wray participated in plaintiff's termination phone call on September 26, 2005 in light of sworn deposition testimony that directly contradicts that claim. See Wray Mot. Ex. 3 at 3 & Ex. 4 at 3. Finally, plaintiff asserts that Wray instructed Ms. Williams "not to give [plaintiff] the disability paperwork she requested prior to her termination." Pl.'s Opp'n at 3.

All of those factual assertions fall squarely within Wray and Rosier's scope of employment. Indeed, they are all actions taken pursuant to Rosier and Wray's official corporate duties and responsibilities. None of the allegations involve either Wray or Rosier doing business with the District in their personal capacities. Similarly, plaintiff has not suggested that any of the past instances when either defendant visited the District were in any way connected to her allegedly discriminatory termination. Simply put, just as in Wiggins, "[t]hese acts, carried out within the scope of [defendants'] employment, do not create sufficient contacts to establish personal jurisdiction." 853 F. Supp. 503.

It is true, as plaintiff points out, that there is an exception to the general rule that jurisdiction over the corporate entity does not alone establish jurisdiction over employees of that entity. Indeed, this Court has previously recognized that exception "in cases where the individuals are 'more than employees of the corporation.'" Kopff, 425 F. Supp. 2d at 84. Plaintiff's argument that the exception applies in this case, however, is not persuasive. She asserts that Wray and Rosier "cannot be treated as mere employees acting solely in their

-9-

corporate capacities." Pl.'s Sur-reply at 3. To support that position, plaintiff cites to Purcell v. Thomas, 928 A.2d 699 (D.C. 2007). But her reliance on Purcell is misplaced. There, the D.C. Court of Appeals held that a high level official can qualify as an "employer" under the DCHRA and thus incur individual liability under that act. Id. at 714-15. Be that as it may, that conclusion has no relevance to the personal jurisdiction inquiry. The question here is not whether Wray and Rosier can be held liable as a matter of substantive law but rather whether the Court can exercise jurisdiction over them in the first instance consistent with both the long-arm statute and the Due Process Clause.[6] The Court concludes that it lacks personal jurisdiction over defendants Wray and Rosier on the basis of D.C. Code 13-423(a)(1) .

That does not end the inquiry, however. Plaintiff also attempts to take refuge under D.C. Code § 13-423(a)(4). To begin with, Section 13-423(a)(4) is "*more* restrictive than the Due Process Clause of the Constitution -- meaning the District government has made a deliberate decision not to allow access to D.C. courts to every person who is injured here and otherwise could bring a claim for civil redress." Kopff, 425 F. Supp. 2d at 82 (citing Crane v. Carr, 814 F.2d 758, 762 (D.C. Cir. 1987) ("The drafters of this provision apparently intended that the (a)(4) subsection would not occupy all of the constitutionally available space.")). In order to exercise

---

[6] Similarly, Covington & Burling v. Int'l Marketing & Research, Inc., 2003 WL 21384825 (D.C. Super. Ct. April 17, 2003), a case not cited by plaintiff but nevertheless discussed in Kopff, is also distinguishable from the present action. In that case, the court found personal jurisdiction over two corporate officers in their individual capacity because they were "the only corporate officers of [the corporation] and set company policies and procedures." Id. at *6 (emphasis added). Indeed, the defendants in Covington & Burling had direct "involvement and supervision of all aspects of the company." Id. (emphasis added). That is not the case here. Plaintiff's former employer is a member of a far larger corporate structure. Rosier and Wray are most certainly not the only corporate officers of their respective companies and plaintiff does not suggest that those two individuals control all aspects of the relevant corporations.

jurisdiction over a non-resident defendant pursuant to subsection (a)(4), the defendant must have caused tortious injury within the District and one of the "plus factors" in that subsection must also be present. Id. Those "plus factors" are: (1) regularly doing or soliciting business in the District; (2) engaging in any other persistent course of conduct in the District; or (3) deriving substantial revenue from goods used or consumed, or services rendered, in the District of Columbia. See D.C. Code § 13-423(a)(4). Moreover, the requisite plus factor must be "separate from and in addition to the in-state injury." Crane, 814 F.2d at 762.

    Against that backdrop, it is apparent that plaintiff cannot establish personal jurisdiction over the individual defendants pursuant to subsection (a)(4). As explained above, Wray and Rosier are not "doing business" in the District in their personal capacities, let alone "regularly" doing so. Nor is there any evidence that either defendant is engaged in any other persistent conduct within the District. Plaintiff has also not asserted that either defendant is deriving substantial revenue from services rendered in the District, especially not outside of their corporate capacities. Furthermore, even the limited contacts with the District that plaintiff has identified do not appear to be "separate from and in addition to" her supposedly unlawful termination; indeed, those contacts relate only to that injury. In short, none of the plus factors identified in subsection (a)(4) are present here.

    Plaintiff's "direct-a-tort" argument ultimately misses the mark. While it is true that Calder and its progeny are not limited to defamation cases, as defendants would have it, they are nevertheless inapposite here. Calder only discussed the minimum contacts required to establish personal jurisdiction consistent with the Due Process Clause; the long-arm statute at issue in that case was co-extensive with the reach of the Federal Constitution. 465 U.S. at 787-88. Similarly,

Keeton, another case relied upon by plaintiff, only concerned that issue. 465 U.S. at 774-75 ("New Hampshire has adopted a 'long-arm' statute authorizing service of process on nonresident corporations whenever permitted by the Due Process Clause."). But as discussed above, subsection (a)(4) of the District of Columbia's long-arm statute does not reach all of the defendants that the Due Process Clause would permit being hailed into District courts. Thus, even assuming that the exercise of personal jurisdiction here would not offend the Due Process Clause under the rubric of Calder,[7] plaintiff still could not establish personal jurisdiction over defendants due to the lack of the requisite plus factors identified in subsection (a)(4).

In sum, plaintiff cannot provide an adequate basis for personal jurisdiction over defendants Rosier and Wray under either subsection (a)(1) or (a)(4) of Section 13-423, which are the only conceivably applicable portions of the District's long-arm statute. Hence, the Court need not decide whether defendants have sufficient minimum contacts with the District to satisfy the requirements of the Due Process Clause. As explained above, it is plaintiff's burden to prove that there is an adequate basis to assert personal jurisdiction over defendants Wray and Rosier and she has failed to carry that burden here. The Court will therefore grant the motions to dismiss.

### CONCLUSION

For the foregoing reasons, the Court will grant the motions to dismiss of defendants Wray and Rosier. A separate Order accompanies this Memorandum Opinion.

                                                      /s/   John D. Bates
                                                        JOHN D. BATES
                                          United States District Judge

Dated:   February 18, 2008

---

[7] The Court expresses no opinion on this question.