# APPENDIX A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AUDREY (SHEBBY) D'ONOFRIO, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ) <br> SFX SPORTS GROUP, INC., *et al.* ) <br> ) <br> Defendants. ) <br> ) | ) <br> ) <br> ) <br> ) <br> ) <br> ) Civil Action No. 1:06-cv-00687 <br> ) (JDB/JMF) <br> ) Next Event: No pending event <br> ) <br> ) <br> ) <br> ) |

## DEFENDANTS' POST-HEARING BRIEF REGARDING SPOLIATION

INTRODUCTION

On March 13, 2006, Audrey D'Onofrio ("Plaintiff") filed a lawsuit in the District of Columbia Superior Court, Civil Division against SFX Sports Group, Inc., Live Nation, Inc. and Clear Channel Communications, Inc. (collectively "Defendants") and Five John Does (the "Complaint").[1] The case was removed to the United States District Court for the District of Columbia.

Ms. D'Onofrio asserts several claims with regard to her employment with SFX Sports Group, Inc. ("SFX Sports Group"). Specifically, she asserts claims of discrimination with respect to her pregnancy, gender and disability and retaliation under the District of Columbia Human Rights Act "(DCHRA"), violations of the D.C. Family and Medical Leave Act, and violations of the Equal Pay Act.

Discovery in this case closed on July 19, 2007. There have been a number of discovery

---

[1] Plaintiff amended her complaint to add Daniel Rosier and Kimberly Wray as individual defendants. The Court dismissed the individual defendants from the lawsuit on February 18, 2008.

disputes between the parties. On May 17, 2007, Plaintiff filed a Second Motion to Compel Discovery, and for Sanctions against Defendants. Plaintiff's motion requested that the Court compel Defendants to produce a number of documents and categories of information. Additionally, in her motion, Plaintiff argues that Defendants have failed to provide all of her electronic communications and other electronic documents.

This Court granted Plaintiff's motion in part and denied Plaintiff's motion in part. Pursuant to the Order, on March 10, 2008, Defendants' supplemented its discovery responses with Plaintiff's payroll records and information pertaining to Plaintiff's compensation; Defendants' filings with the U. S. Securities and Exchange Commission indicating Defendants' net worth; and declarations from Alaka Williams, current Director of Employee Relations for Live Nation, Inc. ("Live Nation") and Julie Kennedy, Vice President Employee Development, Live Nation Alliances, Live Nation attesting to the hiring practices of SFX Sports Group, Inc.[2] See Memorandum Opinion dated January 23, 2008, pp. 13, 18, 20.

The Court denied Plaintiff's motion to compel Defendants' Business Plan in its original format with accompanying metadata; e-mails in .pst format as Defendants have produced the same;[3] Plaintiff's "employee contract" and documents concerning Plaintiff's "promotions";

---

[2] Ms. Kennedy was the Director of Human Resources for SFX Sports Group during the period of 2002–2005, the time of Plaintiff's employment. Ms. Williams was the Regional Employee Relations Specialist, Southeast Region at the time of the separation of Plaintiff's employment.

[3] On February 28, 2007, Defendants' produced to Plaintiff e-mails from the Legato system in the .dat format, which contained hash markings identifying the production. On April 15, 2008, pursuant to direction of the Court, Defendants produced to Plaintiff two DVDs containing exact copies of the .pst files of Plaintiff's e-mail on the Legato system and contained on the local server, which do not contain hash markings for identification of production. As testified to at the hearing, items in the .pst file from the local server have been deleted. There has been no evidence as to how the items were deleted. Defendants introduced evidence of the last date the file was modified, September 21, 2005 – six days prior to the separation of Plaintiff's employment.

information regarding similarly situated employees; information relating to any complaints or allegations of discrimination or harassment against Defendants; documents regarding Defendants' organization structure; job descriptions and qualifications of public relations and marketing positions; names of Defendants' lay witnesses prior to pretrial statement; and a privilege log. Id. at pp.

On April 4, 2008, the Court held an evidentiary hearing regarding Plaintiff's electronic communications and the "scrapping" of Plaintiff's computer.

FACTUAL BACKGROUND

Plaintiff was employed with SFX Sports Group in the position of Senior Communications Director. On or about September 27, 2005, Plaintiff's employment, along with approximately 19 other SFX Sports Group employees, was separated as a result of the restructuring of SFX Sports Group.

Prior to the Court's hearing on April 4, Defendants presented evidence in this case that, subsequent to Plaintiff's termination, Plaintiff, as most other employees of SFX Sports Group, was afforded the opportunity to retrieve her personal belongings, including information from her computer. See Deposition of Alaka Williams, April 26, 2007 ("Williams Depo."), pp. 279:21-281:11 (attached hereto as Exhibit 1). It was not Defendants' expectation that business documents would be located on Plaintiff's computer, or any other Company employee's computer. See Deposition of Eugene Mason, April 23, 2007 ("Mason Depo."), pp. 142:9-143:3, 144:5-16 (attached hereto as Exhibit 2). It was Defendants' practice and instruction to its employees to save business documents to the local market server where each respective employee is located. See Transcript of Evidentiary Hearing, P.M. Session, Friday, April 4, 2008 ("Afternoon Hearing."), pp. 79:25–80:2 (attached hereto as Exhibit 3); Deposition of Joseph

Shannon, February 21, 2007 ("Shannon Depo."), pp. 50:9–51:15 (attached hereto as Exhibit 4).

Eugene Mason, who assisted in maintaining the information technologies of SFX Sports Group during the time of Plaintiff's employment, created file folders on the local servers for employees to store their computerized information and communications. Afternoon Hearing, pp. 73:13-19; 79:8-13; 80:7-10. Plaintiff should have been aware of this policy, which protects against the destruction of electronic devices, documents and communications, because one of her computers was replaced during her employment with SFX Sports Group. Id., p. 104:21.

1.   The Computer

Sometime between October and December 2005, within a couple of months after the separation of Plaintiff's employment, the computer that Plaintiff used during her employment ("Plaintiff's Former Computer") was "scrapped." Afternoon Hearing, p. 105:20-22: Mason Depo., pp. 115:3-119:4, 122:9-13. After Plaintiff's separation, Mr. Mason and Albert Doby chose to reissue Plaintiff's Former Computer to another employee. Afternoon Hearing pp. 77:1-24; 106:14-18. Mr. Doby is the current Office Manager/IT Coordinator of Live Nation and held this position at SFX Sports Group during Plaintiff's employment. Id. at 104:1-4. Messrs. Mason and Doby chose Plaintiff's Former Computer because it was one of the newer models not in use in the office. Id. at 77:1-2; 106:14-18.

Messrs. Doby and Mason "scrapped" Plaintiff's Former Computer after it no longer would function following a failed attempt to upload applications on it. Id., pp. 76:24 – 77:19; 106:2-24; Mason Depo., pp. 117:2-118:1. Neither Messrs. Doby or Mason was aware of any potential claims by Plaintiff at the time the computer was destroyed. Afternoon Hearing p. 84:7-17.

On or about October 6, 2005, Plaintiff's counsel sent a letter to Kimberly Wray, Director

of Human Resources Services, Clear Channel Communications, Inc. ("CCU"), the former parent company of SFX Sports Group,[4] indicating that Plaintiff might assert claims with regard to the termination of her employment and requesting the preservation of Plaintiff's electronic communications. Letter to Kimberly Wray from David Schreiber, dated October 6, 2005, attached hereto as Exhibit 6. Ms. Wray is located in San Antonio, Texas.

Plaintiff's counsel did not send any correspondence to Plaintiff's employer, SFX Sports Group, informing it of any potential claims or lawsuit by Plaintiff against it, nor did Plaintiff make a request that SFX Sports Group preserve any of her electronic communications. Indeed, Mr. Mason did not have any knowledge of Plaintiff's counsel's correspondence to Ms. Wray requesting the preservation of Plaintiff's electronic communications. Mason Depo., pp. 119:17-122:7. To this end, Mr. Mason did not notify anyone at CCU of the destruction of Plaintiff's Former Computer until after Plaintiff filed this lawsuit and he was asked the computer. Id. at pp. 162:12-16, 123:3-13.

2.  Electronic Communications Produced

During the course of this lawsuit, Defendants have produced a significant amount of Plaintiff's electronic documents and communications from her employment with SFX Sports Group. Indeed, Plaintiff testified at the hearing that Defendants produced "over 60,000 odd documents." Afternoon Hearing, p. 21:5. Mr. Mason was able to retrieve the electronic documents in Plaintiff's personal file on the local file server. Mason Depo., p. 33:15-34:7. This information was produced to Plaintiff on or about February 20, 2007.

Additionally, Defendants were able to retrieve the majority, if not all of Plaintiff's

---

[4] SFX Sports Group, along with all other divisions of Clear Channel Entertainment, were sold by CCU in 2005. The sale of SFX Sports Group was in or about December 2005. See Deposition of Kimberly Wray ("Wray Depo."), May 9, 2007, p. 9:25-10:5 (attached hereto as Exhibit 5).

electronic communications. As a result of an unrelated legal matter, Plaintiff's electronic communications, along with that of several other SFX Sports Group employees, was placed on the Legato system, which preserves and captures electronic communications, in or about August 2004 – over one year before the separation of Plaintiff's employment. Afternoon Hearing, pp. 33:21-34:12; Shannon Depo., pp. 29:6-31:16; See Affidavit of John Cavender, ("Cavender Aff."). attached hereto as Exhibit 7. The Legato system is housed on servers in San Antonio, Texas. After several complicated searches, Defendants were able to retrieve and produced Plaintiff's e-mails. See Afternoon Hearing, p. 39:8-15.; Cavender Aff.

Defendants' searches for Plaintiff's e-mail on the Legato system, more likely than not, encompassed the majority, it not all of Plaintiff's e-mails during her employment with SFX Sports Group. Afternoon Hearing, p. 41:13-17. This is so because at the time Plaintiff was placed on the Legato system, August 2004, her entire mailbox was imported into the system and thereafter the system continued to capture any e-mails sent to and from Plaintiff's mailbox up until Plaintiff's separation. Id., p. 34:8-12. This includes e-mail that pre-dates August 2004, which existed in Plaintiff's mailbox at the time of the importation. Id. It even includes e-mails that Plaintiff deleted from her e-mail mailbox after August 2004 up until the end of her employment. Id.

Mr. Cavender's search for Plaintiff's e-mail in February 2007 yielded the same result that would have come from a search of Plaintiff's e-mail immediately following the separation of her employment. Id., p; 69:7-12. Additionally, Defendants conducted similar searches for e-mails from and/or to persons alleged by Plaintiff as having knowledge of her claims. Id., p. 49:4-21. Defendants' also produced this information.

Defendants were not able retrieve any information from Plaintiff's local e-mail file, e.g.

6

any e-mails that Plaintiff saved on the local server. Id., p. 82:8-15. Notations on the local server indicate that the last date this file was modified was on September 21, 2005 – six days prior to Plaintiff's termination. Id., p. 81:6-15. It is more likely than not that this file contained the same e-mails that were archived in the Legato system. In any event, Defendants produced a copy of the file for Plaintiff to analyze if the e-mail can be recovered on April 15, 2008.

Additionally, Defendants have agreed to allow Plaintiff's expert, Douglas Bond of Kroll On Track, to conduct an onsite search of the Legato system and the servers for SFX Sports Group, Inc. in Washington, D.C., pursuant to appropriate agreed upon protocols as suggested by the Court. Defendants' counsel communicated this to Plaintiff's counsel on April 4. On April 9, Plaintiff's counsel indicated that proposed protocols would be sent to Defendants. To date, Defendants have not received such protocols. On April 15, Defendants forwarded to Plaintiff proposed protocols and indicated that they would pay the reasonable costs for Mr. Bond to conduct the search, not to exceed $10,000.

ARGUMENT

I. There is no evidence that Defendants acted in "bad faith" in destroying the computer.

Under the District of Columbia law, there are two subcategories of behavior encompassed in the definition of spoliation: 1) deliberate destruction and 2) failure to preserve evidence. See Battocchi v. Washington Hospital Center, 581 A.2d 759 (D.C. 1990). "Bad faith" has been defined to include deliberate destruction or destruction with "reckless disregard for the relevance of the evidence." Rice v. United States, 917 F. Supp. 17, 19 (D.C. 1996) (citing Battocchi, 581 A.2d at 766).

Here, there is no evidence that Defendants engaged in any bad faith in the destruction of the computer. Mr. Mason had no knowledge of Plaintiff's counsel's correspondence to Ms.

7

Wray at the time he "scrapped" the computer, nor was he aware that Plaintiff had any potential claims against Defendants. Afternoon Hearing p. 84:7-17; Mason Depo., pp. 119:17-122:7. Plaintiff's Former Computer was "scrapped" within a few months following Plaintiff's separation and many months before Plaintiff filed this lawsuit. Afternoon Hearing, p. 105:20-22. Accordingly, there is no evidence that the destruction of the computer was done deliberately to impede Plaintiff's claims, or that it was done in a reckless disregard for its relevance in Plaintiff's claims. Battacchi, 581 A.2d at 766.

Additionally, it should be noted that the circumstances surrounding the "scrapping" of Plaintiff's Computer occurred in 2005. This was over a year prior to the effective date of the electronic discovery rules and heightened awareness of and sensitivity to the preservation of electronic devices and stored information. W.E. Aubuchon Co., Inc. v. BeneFirst, LLC, 245 F.R.D. 38, 41 (D.Mass. 2007). Again, Neither Messrs. Mason nor Doby had any knowledge of Plaintiff's potential or actual claims against SFX Sports Group. Afternoon Hearing, p. 84:7-17; Mason Depo., pp. 119:17-122:7. In fact, Messrs. Mason and Doby testified that the recycling of Plaintiff's Computer for another employee was standard practice. Afternoon Hearing, pp. 77:1-24; 106:14-18. U.S. v. O'Keefe, ---F.Supp.2d ---, 2008 WL 449729, *7 (D.D.C. Feb. 18, 2008).

II.     There is no evidence that the likely success of Plaintiff's claims are significantly impaired by the destruction of the computer.

There is no evidence that the loss or destruction of the computer significantly impairs Plaintiff's ability to prove her claim. See Bell v. Rotwein et al., 2008 U.S. Dist. LEXIS 16305, Civil Action No. 07-1578 (March 5, 2008 D.D.C.). To succeed on an independent claim of spoliation under District of Columbia law, Plaintiff must demonstrate 1) the existence of potential civil action; 2) a legal or contractual duty to preserve evidence which is relevant to the action; 3) destruction of that evidence by the duty-bound Defendant; 4) significant impairment in

the ability to prove the potential civil action; 5) a proximate relationship between the impairment of the underlying suit and the unavailability of the destroyed evidence; 6) a significant possibility of success of the potential civil action if the evidence were available and 7) damages adjusted for the estimated likelihood of success in the potential civil action. Krieger v. United States Dep't of Justice, 529 F. Supp. 2d 29, 55 (D.D.C. 2008).

Defendants were able to retrieve Plaintiff's electronic documents from the local file server. Consistent with Defendants' practice to instruct its employees to save documents on the local file servers, as opposed to the employee's computer, Defendants searched to retrieve Plaintiff's electronic documents from the local file server after her termination. See Mason Depo., pp. 33:15-34:7. Plaintiff's documents should have been saved on this server. Afternoon Hearing, pp. 79:25-80:2; Shannon Depo., pp. 50:9-5:15. Defendants produced documentation from the local server to Plaintiff. Mason Depo., pp. 33:15-34:7. This information included electronic documents prepared by Plaintiff in furtherance of her job duties and responsibilities, e.g. press releases, and documents relevant to SFX Sports Group business development and plans. See attached Exhibits 8 and 9.

Additionally, Defendants were able to retrieve the majority, if not all, of Plaintiff's electronic communications during her employment. Again, Plaintiff's electronic communications were placed on the Legato system on or about August 2004. Afternoon Hearing, pp. 33:21-34:12; Shannon Depo., pp. 29:6-31:16. This resulted in the preservation of Plaintiff's mailbox as of August 2004 and any e-mails sent to and from the mailbox thereafter. Afternoon Hearing, p. 34:8-12. It is from this system that Defendants searched, retrieved and produced Plaintiff's electronic communications. Id., p. 39:8-15; Cavender Aff.

Defendants' production included one document titled "SFX Sports Group Public

Relations: Promoting the Live Experience." Indeed, Plaintiff testified this document is "very useful [to her case] because it discusses . . . that [she] overs[aw] all the public relations and the competencies." Afternoon Hearing, pp. 19:23 – 20:1. Plaintiff further testified that this document from Defendants' production was one that she is "going to use" in her case. Id., p. 20:2.

Moreover, Defendants' have produced documents that Plaintiff identified as ones that she more than likely would have saved on her computer. Plaintiff identified at the hearing a copy of an e-mail from herself to herself that included an attachment discussing her job duties and responsibilities. Afternoon Hearing, p. 23:15-17; see Exhibit 9. This type of information is also relevant to Plaintiff's claim that her job was "invaluable" and that the type of work she performed was continued subsequent to the separation of her employment.

Conversely, neither Plaintiff nor her expert identified a single missing document in Defendants' electronic production. Plaintiff's expert's only basis for questioning the sufficiency of Defendants' production was the uncertainty of the origin of the produced electronic information.[5] Afternoon Hearing, p. 39:20-21. Likewise, Plaintiff offered only vague testimony

---

[5] Defendants have produced copies of the .pst files, unmarked for identification, containing Plaintiff's e-mail from the Legato system and the local file server to Plaintiff for review by her expert – Douglas Bond. As noted by the Court, this "eliminate[s] Mr. Bond's problem" with Defendants' production. Afternoon Hearing p. 63:17-19. Additionally, Defendants have agreed to allow Mr. Bond to conduct an onsite search of the Legato system and the servers for SFX Sports Group, Inc. in Washington, D.C., pursuant to appropriate agreed upon protocols as suggested by the Court. This removes any alleged adverse inference that any discovery allegedly not produced would be harmful to Defendants and dispute between the parties as Defendants have agreed to steps that will put the parties "in the exact same place." Transcript of Evidentiary Hearing, A.M. Session, Friday, April 4, 2008 ("Morning Hearing"), p. 90:13-16 (attached hereto as 10); Afternoon Hearing, pp. 63:17-19; see also Disability Rights Council of Greater Washington, et al. v. Washington Metropolitan Transit Authority, et al., 242 F.R.D. 139, 146-148 (D.D.C. 2007); Residential Funding Corporation v. DeGeorge Financial Corp., 306 F. 3d 99, 107-109 (2nd Cir. 2002).

10

about documents she believes might have been lost as a result of the scrapping of her computer, i.e. documents that she stored on her hard drive in violation of company policy about storing documents on the local server, not an employee's hard drive. Morning Hearing, p. 75:18.

CONCLUSION

Because Defendants were able to retrieve Plaintiff's electronic documentation from the local file server and electronic communications from the Legato system, items which Plaintiff identified as useful to her case, the destruction of the computer does not significantly impair Plaintiff's ability to prove her claim.[6] Accordingly, Plaintiff's Second Motion to Compel and for Sanctions regarding her computer should be denied.

BAKER & HOSTETLER LLP

By: /s/ Johnine P. Barnes
Johnine P. Barnes (D.C. Bar No. 464810)
Lee T. Ellis, Jr. (D.C. Bar No. 3683)
1050 Connecticut Avenue, N.W., Suite 1100
Washington, D.C. 20036
(202) 861-1500

Attorneys for Defendants SFX Sports Group, Inc.,
Live Nation, Inc. and Clear Channel Communications, Inc.

CERTIFICATE OF SERVICE

I hereby certify that on April 16, 2008 Defendants' Post-Hearing Brief Regarding Plaintiff's Allegations of Spoliation was served by electronic service on David E. Schreiber, Esq., David E. Schreiber, P.C., 4550 Montgomery Avenue, Suite 760N, Bethesda, MD 20814.

/s/ Johninine P. Barnes
Johnine P. Barnes

---

[6] Further, there has been no prejudice to Plaintiff in these proceedings. There has been no significant disruption or delay to the judicial system as no trial date has been set in this case. Zenian v. District of Columbia, 283 F. Supp. 2d 36, 38 - 39 (D.D.C. 2003); see also McDowell v. The Government of the District of Columbia, 233 F.R.D. 192, 203-204(D.D.C. 2006).