# EXHIBIT 4

1

```
 1              UNITED STATES DISTRICT COURT
 2              FOR THE DISTRICT OF COLUMBIA
 3   ---------------------------x
 4   AUDREY (SHEBBY) D'ONOFRIO,           COPY
 5              Plaintiff,
 6      vs.                          Case No. 06-687 JDB
                                     Judge John D. Bates
 7   SFX SPORTS GROUP, INC.,
     et al.,
 8
              Defendants.
 9   ---------------------------x
10                                   Bethesda, Maryland
11                                   February 21, 2007
     Deposition of
12                      JOE SHANNON
13   called for oral examination by counsel for
14   Plaintiff, pursuant to notice, held at the law
15   offices of David E. Schreiber, 4550 Montgomery
16   Avenue, Suite 760N, Bethesda, Maryland, beginning
17   at 11:32 a.m., before Lynell C.S. Abbott,
18   Shorthand Reporter and Notary Public in and for
19   the State of Maryland, when were present on behalf
20   of the respective parties:
21
22
```

```
                                                              2

 1                    A P P E A R A N C E S

 2

 3      On Behalf of Plaintiff:

 4      Law Office of David E. Schreiber

 5      By:  David E. Schreiber, Esq.

 6      4550 Montgomery Avenue, Suite 760N

 7      Bethesda, Maryland  20814

 8      (301) 951-1530

 9

10      On Behalf of Defendants:

11      Baker & Hostetler

12      By:  Johnine P. Barnes, Esq.

13      1050 Connecticut Avenue, N.W.

14      Suite 1100

15      Washington, D.C.  20036-5304

16      (202) 861-1633

17           and

18      Donna K. Schneider, Esq.

19      Clear Channel

20      200 East Basse Road

21      San Antonio, Texas  78209

22      (210) 832-3468
```

3

1       Also Present:

2       Audrey (Shebby) D'Onofrio

3       Douglas Bond

4

5

6                    C O N T E N T S

7  EXAMINATIONS

8  JOE SHANNON                                    PAGE

9       BY MR. SCHREIBER                              4

10

11

12

13

14                    E X H I B I T S

15 MARKED FOR IDENTIFICATION                        PAGE

16 AND ATTACHED:

17

18 JS Exhibits:

19     No. 1                                         10

20     No. 2                                         22

21

22

4

```
 1                    P R O C E E D I N G S
 2                   -        -        -        -
 3
 4    --Whereupon
 5                         JOE SHANNON
 6    a witness, called for examination, having first
 7    duly sworn (or affirmed), was examined and
 8    testified as follows:
 9                         * * * * * * * *
10                         EXAMINATION
11            BY MR. SCHREIBER:
12         Q.    Would you tell us all, please, your
13    full name, and your business address.
14         A.    Joe Shannon.  J-o-e, S-h-a-n-n-o-n.
15    Business address, 20880 Stone Oak Boulevard,
16    San Antonio, Texas, 78258.
17         Q.    By whom are you employed?
18         A.    Clear Channel.
19         Q.    There are a number of Clear Channels.
20    Can you give us the specific corporation that you
21    are employed by?
22         A.    No, I cannot.  Clear Channel
```

29

1    A.    I have no idea what phase of
2    litigation a case is in.
3    Q.    Well, how do you characterize the word
4    "litigation" that you just used?  What does it
5    mean corporately?
6    A.    To me it means, we have a litigation
7    e-mail server.  And when we get notification
8    from our Legal Department that XYZ employee or
9    ex-employee needs to be put on the litigation
10    server, that's about the extent of the contact I
11    receive, not the reason why or what phase of the
12    case it's in or even if there is a case.
13    Q.    Do you know when Ms. D'Onofrio was put
14    on this list, this litigation server list?
15         MS. BARNES:  Objection.
16         THE WITNESS:  I do now.
17         BY MR. SCHREIBER:
18    Q.    Tell me what you know.
19    A.    August 2004.
20    Q.    August of 2004 Ms. D'Onofrio was put
21    on a list.  Was there any information regarding
22    why she was on a list about potential -- was it a

30

1  potential litigation or an actual litigation that
2  she was on?
3         MS. BARNES:  Objection.
4         THE WITNESS:  There was a, I don't
5  know if it was potential or actual.  There was a
6  case against Clear Channel that put over 11,000
7  people onto this system in August of '04.
8         BY MR. SCHREIBER:
9    Q.   And she was one of them.
10   A.   Apparently.
11   Q.   Do you know what this case was about?
12   A.   Yes, sir.
13   Q.   What was it about?
14        MS. BARNES:  Objection.
15        BY MR. SCHREIBER:
16   Q.   You may answer.
17        MS. BARNES:  Well, let's go off the
18  record for a second.
19        MR. SCHREIBER:  I don't know what you
20  are about to tell me.  It will go back on the
21  record once you tell me.
22        (Discussion off the record.)

31

BY MR. SCHREIBER:

Q. Ms. Barnes has made reference to an unrelated matter, government investigation, that had caused 11,000 people to be put on this list. It's called a litigation list or litigation server?

A. Yes, sir.

Q. We don't need to go into the specifics of it, but am I correct to understand that Ms. D'Onofrio as one of these many people, all of her e-mails had been saved going forward from August of 2004 through the present?

A. Through exiting the company, yes, sir.

Q. Okay. So they were saved and are still in existence.

A. Yes, sir.

Q. And that is the basis for these two disks with some 46,000 items on them. Is that correct?

A. I am assuming. Those disks are not mine.

Q. Who created those disks?

44

1     A.    Yes, sir.

2     Q.    And then what happens?

3     A.    The tapes are taken offsite on a daily basis. The tapes are rotated on a weekly basis. We have five days of backup on tape, five days of deleted items, which essentially gives us potentially ten days. Best case scenario if all the stars were lined up, those tapes are rotated weekly. Monday's tape is always Monday's tape. The tapes for us are for disaster recovery purposes only, if the building blows up, and need to be restored in some other location. You would never want to go to tape to try to restore an Exchange system.

15    Q.    Let me ask you this: You told us Mr. Cavender was the person in September/October who started to look for electronically stored data regarding the D'Onofrio case.

19    A.    Yes, sir.

20    Q.    To your knowledge, did anybody else in IT make any effort prior to that date to look for any electronically stored data beginning in

45

1  September of '05?
2      A.   Local data.
3      Q.   What local data was looked for?
4      A.   Anything that Ms. D'Onofrio may have
5  stored on a local server within her market.
6      Q.   When did that happen?
7      A.   I'm not sure as to the exact dates.
8      Q.   Approximate, if you can.
9      A.   Spring/summer '06 maybe.
10     Q.   The letter that you are looking at,
11 Exhibit 2, indicates a request to retain all types
12 of electronic data and documents.  That request
13 you are telling me did not trigger any activity,
14 to your knowledge, in October '05 and going
15 forward until at least the spring or summer of
16 '06 with respect to Ms. D'Onofrio's local data,
17 as you called it?
18          MS. BARNES:  Objection.
19          BY MR. SCHREIBER:
20     Q.   Do you know?
21     A.   As far as my knowledge with my
22 department, no.

50

1     Q.    Would that be resident on the hard
2 drive or on some other server, the calendar?
3     A.    It's resident on the Exchange system
4 that sits in San Antonio for active employees.
5     Q.    So if she was using her Outlook
6 calendar, in essence, she would be working off
7 of a system in San Antonio, not one in her office.
8     A.    That is correct.
9     Q.    Would a copy of her calendar at any
10 time be on her hard drive in her office?
11     A.    If the individual archives to a PST
12 file, their calendar items, their e-mail items,
13 their contact items, that would be on the local
14 hard drive or could be on a local file server
15 depending on where they put that PST file.
16     Q.    Did anybody attempt to determine
17 whether any of the Outlook calendar material was
18 available on any document retention system at
19 Clear Channel for Ms. D'Onofrio?
20     A.    Other than recovering stuff off the
21 server from her public share.
22     Q.    What stuff are you referring to off of

1  public share?
2      A.   I have not seen the documents but I'm
3  assuming anything she stored on her H drive was on
4  the local server.
5      Q.   What is the H drive?
6      A.   Most people, I won't say all, but most
7  people in most markets will have a local file
8  server that is managed locally, whether it's by a
9  regional IT person or by a contract IT person,
10 that we will usually advise the local markets to
11 store their documents, documents Excel, documents
12 PowerPoint, documents out on this file server
13 versus storing them on their local C drives for
14 the very reason that Mr. Mason ran into in the
15 summer of '06, spring of '06, hard drives fail.
16     Q.   Are you aware whether or not Ms.
17 D'Onofrio's data, material was stored on an H
18 drive going back some years, let's say 2003?
19     A.   I am not relevant to the dates of
20 the data because I haven't seen it, but there was
21 data there.
22     Q.   You don't know what the data is,