# EXHIBIT 5

Page 1

```
1                UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF COLUMBIA
2

   AUDREY (SHEBBY) D'ONOFRIO    )
3          Plaintiff             )
                                 )
4  VS.                           ) Case No.:  06-687 JDB
                                 ) Judge John D. Bates
5  SFX SPORTS GROUP, INC,        )
   et al.                        )
6          Defendants            )

7

8  ***********************************************
9               THE ORAL DEPOSITION OF
10                  KIMBERLY WRAY
11                   MAY 9, 2007
12                    DUPLICATE
13 ***********************************************
14
15              THE ORAL DEPOSITION OF KIMBERLY
16 WRAY, produced as a witness at the instance of the
17 Plaintiff and duly sworn, was taken in the
18 above-styled and numbered cause on the 9th day of
19 May, 2007 from 9:10 a.m. to 12:30 p.m., before JULIE
20 VERASTEGUI, CSR in and for the State of Texas,
21 reported by stenographic and computer-aided
22 transcription at Hoffman Reporting & Video Service,
23 206 East Locust, San Antonio, Texas 78212, pursuant
24 to the Federal Rules of Civil Procedure and the
25 provisions stated on the record or attached hereto.
```

Page 2

1  S-T-I-P-U-L-A-T-I-O-N-S
2
3  It is further stipulated and agreed
4  by and between counsel for the respective parties
5  hereto that the original of the deposition of
6  KIMBERLY WRAY shall be sent to MS. JOHNINE P. BARNES
7  at her address for the purpose of obtaining the
8  signature of the witness thereon before any notary
9  public.

Page 4

I-N-D-E-X
WITNESS:
KIMBERLY WRAY                            PAGE
Stipulations ................................   2
Appearances ..............................   3
Index .........................................   4
Examination by Mr. Schreiber ............   5
Witness Signature Page ................   153
Reporter's Jurat ............................   155

EXHIBITS
NO.   DESCRIPTION                         PAGE
1...   10/6/05 Fax and Letter From         17
       Mr. Schreiber to Ms. Wray

2...   Various E-mails Bates-Stamped       69
       SFX0349-SFX0358

3...   Various E-mails Bates-Stamped       81
       SFX0100-SFX0103

4...   The Marquee Group New Hire Form    147
       for Mr. Howard Schacter

Page 3

APPEARANCES

FOR THE PLAINTIFF:

   MR. DAVID E. SCHREIBER
   Attorney at Law
   4550 Montgomery Avenue, Suite 760 N
   Bethesda, Maryland 20814-3304
   PHONE: 301.951.1530
   FAX: 301.951.1599
   E-MAIL: des913@covad.net

FOR THE DEFENDANTS:

   MS. JOHNINE P. BARNES
   BAKER & HOSTETLER, L.L.P.
   Attorneys at Law
   Washington Square, Suite 1100
   1050 Connecticut Avenue, N.W.
   Washington, D.C. 20036-5304
   PHONE: 202.861.1633
   FAX: 202.861.1783
   E-MAIL: jbarnes@bakerlaw.com

ALSO PRESENT:

   DONNA K. SCHNEIDER,
   Corporate Counsel for Clear Channel;

   KIMBERLY WRAY,
   The Witness; and
   JULIE VERASTEGUI,
   Certified Court Reporter.

Page 5

1   (Deposition began at 9:10 a.m.)
2         KIMBERLY WRAY,
3   having been first duly sworn, testified as follows:
4         EXAMINATION
5   BY MR. SCHREIBER:
6   Q.  Good morning, Ms. Wray.  I am
7   David Schreiber.  I represent Audrey D'Onofrio in a
8   Civil Action, 06-687, U.S. District Court, D.C.  You
9   are here for a deposition.
10        Let me first ask you, would you set
11  out your full name and address for the record?
12        MS. BARNES:  And give your work
13  address.
14        THE WITNESS:  Okay.  Kimberly Wray,
15  200 East Basse, San Antonio, Texas, 78209.
16  Q.  (By Mr. Schreiber) Okay.  Do you live
17  locally in San -- San Antonio?
18  A.  No.
19  Q.  Okay.  Big state.
20  A.  It's in the state, yes.  It's in Boerne.
21  Q.  Boerne?
22  A.  Uh-huh.
23  Q.  Okay.  That's another one I never heard.
24       Okay.  Have you ever been deposed
25  before?

2 (Pages 2 to 5)

HOFFMAN REPORTING & VIDEO SERVICE
SAN ANTONIO / DALLAS / HOUSTON

Page 6

1  A. Yes.
2  Q. How many times?
3  A. Eight or nine.
4  Q. Okay. Probably more than I've taken
5  depositions almost, but not quite. Obviously I
6  don't have to give you the long version of what
7  these are about, but I'll give you the -- the short
8  version.
9      I'll ask the questions; you try and
10 give your best answers. You're under oath. If I
11 don't ask a very good question, you can tell me.
12 I've got thick skin. If you don't understand
13 something, ask me to repeat it, if -- if necessary.
14 We can take a break if you need it. We have time.
15 I don't have to catch a plane until late this
16 afternoon, so we're not in a rush.
17     And so I want you to take your
18 time, think about your answers, make sure that
19 you're satisfied with your answers. If a question's
20 pending, you can't speak to Ms. Barnes, but we do
21 take breaks, and you can talk to her generally, but
22 you can't talk about pending issues, so to speak.
23 And it's like testifying in court, only we're not in
24 court.
25     So do you have any questions of me

Page 7

1  at this point?
2  A. No.
3  Q. Okay. Good. How long have you worked for
4  Clear Channel?
5  A. A little over six years.
6  Q. Okay. Do you actually work for Clear
7  Channel or Live Nation?
8  A. Clear Channel.
9  Q. Okay. And give me the six years of your
10 employment with the organization. Has it always
11 been Clear Channel? Or did you evolve from other
12 entities, subordinates?
13 A. No. I was hired on with Clear Channel, the
14 corporate office, to start there Employee Relations
15 Department.
16     MS. BARNES: I'm sorry. Just so we
17 can clarify for the record, are you referring to
18 Clear Channel Communications or one of the -- Clear
19 Channel Entertainment --
20     MR. SCHREIBER: Well, I'm assuming
21 we're talking about Clear Channel, the -- the
22 parent.
23 Q. (By Mr. Schreiber) Is that who you work
24 for?
25 A. Yes, Clear Channel Communications.

Page 8

1  Q. Okay. It's never been that clear, for our
2  record purposes anyway, how the subsidiaries work.
3  Tell me, before we get into your work-related
4  activities. There's the parent Clear Channel
5  Communications. And take me down the subsidiaries.
6  How does it work?
7      MS. BARNES: Well, I'm going to
8  object to the extent that she can testify on her
9  personal knowledge, but she's not a corporate
10 representative to testify --
11     MR. SCHREIBER: I'm not suggesting
12 she is, Ms. Barnes. I just want to know what she
13 knows. And she's in a position that will allow me
14 to hopefully get some information.
15 Q. (By Mr. Schreiber) So if you could, just
16 sort of describe for me how it works.
17 A. Okay. When I was hired on, we -- I was
18 hired on at the corporate parent office here in
19 San Antonio. We had other divisions that --
20 Entertainment, Outdoor, Radio and TV, and they
21 operated under their own CEO, who -- Those CEOs
22 reported up to Mark Mays, our CEO.
23 Q. Okay. So when you say "Entertainment,"
24 would it have been Clear Channel Entertainment?
25 A. Clear Channel Entertainment.

Page 9

1  Q. Clear Channel Outdoor?
2  A. Uh-huh.
3  Q. Same for Radio and TV?
4  A. Clear Channel Radio, Clear Channel TV.
5  Q. Okay. And SFX, one of the defendants in
6  this case, is a subsidiary, or was, of Clear Channel
7  Entertainment; is that correct?
8  A. Correct.
9  Q. Okay. Do you still -- Does the parent
10 still have the Outdoor, the Radio and the TV
11 Divisions?
12 A. We no longer have Entertainment.
13 Q. Okay. And Outdoor, Radio and TV?
14 A. As of today, we still have the others.
15 Q. Okay. Now, Clear Channel Entertainment has
16 become, through certain spinoffs, Live Nation?
17 A. Uh-huh.
18 Q. Okay. Say yes.
19 A. Yes. Yes.
20 Q. Okay. And am I correct to understand that
21 Clear Channel owns Live Nation?
22     MS. BARNES: I'm going to continue
23 to object.
24     MR. SCHREIBER: That's fine.
25     THE WITNESS: They did. We spun

HOFFMAN REPORTING & VIDEO SERVICE
SAN ANTONIO / DALLAS / HOUSTON

00657092-31d1-4670-9775-8b096758dedf

Page 10

1  off in 2005.
2  Q. (By Mr. Schreiber) When you say "spun off,"
3  what does that mean?
4  A. Meaning there was not a buyer to buy it; it
5  was spun off to the shareholders.
6  Q. So the shareholders of Clear Channel
7  Communications, the parent, are the principle owners
8  of Live Nation?
9  A. No. They have their own shareholders and
10 own board of director.
11 Q. Okay. Am I to understand that the
12 principle owners of Clear Channel are the principle
13 owners of Live Nation at this point?
14     MS. BARNES: Objection.
15     THE WITNESS: I -- I doubt it.
16 I'm -- No. I'm not that much involved in it.
17 Q. (By Mr. Schreiber) Okay. So the Mays
18 family, for instance, do you know if they're owners
19 of Live Nation stock?
20 A. I --
21     MS. BARNES: I'm going to continue
22 to object.
23     THE WITNESS: I wouldn't know.
24     MS. BARNES: Okay. Let me object.
25 Q. (By Mr. Schreiber) In 2005, you said it was

Page 11

1  spun off. When in 2005?
2  A. December of '05.
3  Q. Okay. So prior to that, Live Nation was a
4  wholly-owned subsidiary of Clear Channel -- of -- of
5  Clear Channel Corporation, correct?
6  A. Correct.
7  Q. Okay. And let's go back to you a little
8  bit.
9     Okay. Can you tell me a bit about
10 your education? Where did you go to school?
11 A. I went to University of Texas in
12 San Antonio.
13 Q. Okay. Did you get a degree?
14 A. Graduated with a business HR degree. It
15 was called "personnel" at the time.
16 Q. Okay. And approximately what year would
17 that have been?
18 A. 1991.
19 Q. And did you have any other degrees or
20 courses that you took?
21 A. I have two other certifications.
22 Q. Okay. Tell me what they are.
23 A. SPHR.
24 Q. Would you tell me what that means?
25 A. Senior Professional Human Resources. And

Page 12

1  ARM, Associate Risk Management.
2  Q. Okay. Are those both from University of
3  Texas at San Antonio or others?
4  A. No. They're through different
5  organizations -- national organizations.
6  Q. So you don't have anything beyond the BA
7  from -- or BS, I guess, from University of Texas?
8  A. Correct.
9  Q. Okay. And you said that you came to Clear
10 Channel six years ago, which would be 2000, 2001?
11 A. 2001.
12 Q. Okay. When in 2001 did you begin with
13 them?
14 A. It was in May -- the beginning of May.
15 Q. Can you tell me what you did before then?
16 A. I worked at NBC Bank here in San Antonio
17 for three years.
18 Q. Can you give me the years? If we start
19 with '91 --
20 A. '91. Just go back. '91.
21 Q. And to '94, approximately? Or -- Or did
22 you go there --
23 A. I -- I started Clear Channel in -- Oh,
24 okay. In '91, I went -- I didn't go to NBC Bank.
25 Q. Okay.

Page 13

1  A. You're going --
2  Q. Let me do it this -- this way. '91, you
3  graduated University of Texas?
4  A. Correct.
5  Q. Okay. Why don't you take me forward then.
6  A. I went to work for Sunday House Foods.
7  Q. What was it again?
8  A. Sunday House Foods, a turkey processing
9  plant. And I did human resources from '91 to '94.
10 Then I went to their corporate office, promoted up
11 to their -- their parent company in San Antonio and
12 was there for an additional three years.
13 Q. Okay. Was it the same name, Sunday House?
14 A. It was Mission City Management.
15 Q. So that would be '94 to '97?
16 A. Uh-huh.
17 Q. Okay. Next one?
18 A. Then I worked for NBC Bank.
19 Q. '97 to when?
20 A. To '91 -- Or to '01.
21 Q. 2001?
22 A. Sorry. 2001.
23 Q. That's okay. And did you do generally HR
24 work for each of these?
25 A. Yes. Yes.

4 (Pages 10 to 13)