UNITED  DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| AUDREY (SHEBBY)  D'ONOFRIO | : | |
| | : | |
| Plaintiff | : | |
| | : | |
| v. | : | Case No.: 06-687 JDB/JMF |
| | : | |
| | : | |
| SFX SPORTS GROUP, INC., et. al. | : | |
| | : | |
| Defendants | : | |
| ..............................................................: | | |

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION FOR LEAVE TO DESIGNATE AN EXPERT OUTSIDE OF THE TIME SET FOR DISCOVERY**

The Plaintiff opposes Defendants' Motion for Leave to Designate an Expert Outside of the Time Set for Discovery.  The Plaintiff designated her experts over one (1) year ago on June 18, 2007.  The designation was delayed due to the Defendants' various discovery abuses, such as refusing to produce financial information regarding Howard Schacter's compensation package (which is still incomplete), purposefully corrupting Plaintiff's ability to review electronic material produced belatedly, and the spoliation of the pertinent and relevant electronic data as well as the destruction of the Plaintiff's computer.[1]  Once it became obvious that a computer forensics expert was necessary the Plaintiff retained Kroll Ontrack (Mr. Douglas Bond) to assist in the evaluation of the Defendants' actions and efforts, the actual data and material produced by the Defendants, and the possibility of

---

[1]The designation of Dr. Patricia Z. Bannon, Plaintiff's obstetrician, was done out of an abundance of caution, since the issue of Ms. D'Onofrio's pregnancy and the notice given to the Defendants seems to be one that the Defendants continue to challenge.  Dr. Bannon will testify both as a fact witness and will no doubt offer her medical opinion as to Ms. D'Onofrio's pregnancy, which is at the heart of this case.

1

further forensic investigation to recover, *inter alia,* electronic data, documents and e-mails.

The Defendant's have been aware of the involvement and efforts of Mr. Bond and Kroll since February 21, 2007. The Defendants' contumacious, intentional and/or grossly negligent actions in this matter are the reasons why the Plaintiff was forced to go to the extraordinary lengths and expense to retain an expert of Kroll's stature and caliber. Why, at this late date, they have decided to now name a new expert is unclear. They have previously designated their in house "expert" (Joseph Shannon) to testify on their behalf (pursuant to F.R.C.P. 30B(6)) about the purported searches for electronic documents and data, as well as the actual destruction/spoliation of evidence by the Defendants.[2] The Defendants are no doubt mindful of the potential exposure they now face due to their actions. The Defendants now seem fearful that Mr. Bond will somehow corrupt his investigation of their data, to the Plaintiff's advantage.[3] The Court heard Mr. Bond's testimony on April 4, 2008 and can evaluate for itself his credibility, forthrightness, competency and honesty.

The Defendants state in the first paragraph of their Memorandum that "to date, Plaintiff's expert has not rendered an opinion on this issue" (i.e. Defendants failure to produce all available and appropriate electronic documents and communications). The Defendants and their counsel (some 5 in number) were present when Mr. Bond testified

---

[2]In fact, Mr. Bond was present at Mr. Shannon's deposition on February 21, 2007, as Plaintiff's computer forensic expert. Ms. Barnes and Donna Schneider, Esq., Clear Channel in house counsel, were present on behalf of the Defendants.

[3]Mr. Bond's CV, Plaintiff's Exhibit 1 at the April 4, 2008 hearing, set forth his extensive credentials. Mr. Bond was accepted by the Court, without objection, as a qualified forensic computer expert. It is Attached hereto as Exhibit 1.

at length at the April 4, 2008 hearing regarding the spoliation issues created by Defendants' destruction of evidence.   Mr. Bond expressed his opinion as to what had occurred and what he expected to be able to do once he was given the opportunity by this Court to actually investigate the Defendants' backup systems still in existence.[4]   The Defendants must have overlooked his testimony that morning, as well as later in the afternoon.  His opinion could not have been clearer.  The Defendants now state that they need an expert, regarding Mr. Bond's proposed search, to "opine about the integrity of the search".[5]  It is the Plaintiff's belief that the Defendants wish to control still further the Plaintiff's investigation of the loss of evidence and the potential retrieval of evidence still in existence.

The Defendants have sent what they purport to be "protocols" which would be satisfactory for them.   As indicated in various correspondence to the Defendants the Plaintiff believes that the constraints and parameters of the "protocols" would not fulfill the Court's potential mandate to determine exactly what evidence the Defendants destroyed, when it occurred, and what, if any, evidence, is still available to the Plaintiff to present to this Court and potentially a jury.  The Defendants did not produce with their Motion the letters from Plaintiff's counsel, the first dated April 17, 2008, and the second letter, dated June 2, 2008, which voiced the Plaintiff's concerns about the so-called "protocols" and set

---

[4]Previously, the Plaintiff had submitted Mr. Bond's Declaration as Exhibit C to her Second Motion to Compel Discovery, and for Sanctions.

[5]To paraphrase the comments of Joseph Welch, Esq., during the Army/McCarthy hearings (June 9, 1954), after being exposed as intentionally destroying evidence, have these Defendants no sense of decency!

out Plaintiff's position.[6]

Since the Defendants continue to claim that they are not aware of any statement of the Plaintiff's position, we will restate, for ease of reference, what previously the Plaintiff stated in her last pleading filed on June 16, 2008, regarding Plaintiff's opposition to Defendants filing of a post hearing brief, which outlined Plaintiff's position previously stated in the June 2, 2008 letter to Defendants' counsel:

As noted subsequently from the hearing as well as the Defendants' latest motion, that statement was incorrect. For example, the Plaintiff's June 2, 2008 letter explains that Mr. Bond was able to extract far more information/data/documents from the recently produced disk sent to the Plaintiff as a result of the hearing [the so-call deleted material for the local SFX server] than the Defendants claim they have produced. Given the various and varied representations by the Defendants and their counsel for some two (2) years, (including those contained in the recent motion), the latest proposals/protocols are viewed candidly by the Plaintiff, at best, with substantial skepticism.

The Plaintiff's June 2, 2008 letter, not noted by the Defendants, sets out why the Defendants' proposed protocols are of concern. The salient points as laid out in the letter were and are, as follows:

1.     Plaintiff did not agree to limit the time for searches;
2.     Plaintiff did not agree to the need to unnecessarily limit access by credentialing our Expert, however, Plaintiff will not have an account created for our Expert;
3.     Plaintiff did not agree to limit the location where the search[s] will be undertaken;
4.     Plaintiff requires that all system commands, including but not limited to the gathering, labeling and distribution of reports and data extracts should be done under the observation of our Expert and produced to our Expert on site;

5.     Plaintiff agreed that the rerunning the 2007 search is fine but we will run new searches based upon our own parameters, search fields and terms to be designated by our Expert and us, at all relevant sites and on all relevant data bases;
6.     Plaintiff did not agree to limit the imaging of the local server or any related computer hard drive;
7.     Plaintiff will not limit "restores" of e mails or any other documents; and
8.     Plaintiff will not limit the cost associated with our Expert's investigation or

---

[6]The letters are produced here as Exhibits 2 and 3 to this Opposition.

4

counsel  fees and costs incurred as a result of our motions filed in this matter.

Additionally, one of the more important aspects of the search is that it must encompass both the Legato system, as well as the local server[s], with search parameters that will capture all communications, documents and data that reference Ms. D'Onofrio, not just communications to /from Ms. D'Onofrio.   (This was apparently the limited manner in which Defendants did their searches previously.) This fact was stated at the very beginning of the June 2, 2008 letter : " As I said in my last letter of April 17th "Mr. Bond/Kroll will conduct an "on site" search of both the D.C. server[s], or any related relevant hard drive, as well as any Legato server or system, wherever located, if necessary."

Still outstanding, as also commemorated in the June 2, 2008 letter, are the following:

> Furthermore, as noted in my prior letter you still have not addressed the "whereabouts of all of the paper material, videos and diskettes left in Ms. D'Onofrio's office but not produced, as far as we can tell, which may have significant bearing on our claims as well as further related investigations of discoverable material", as well as "the stock and/or options issued to Mr. Schacter" (other than 1 sheet of paper noting possible stock options, but not values etc. associated with the exercise of the options). [Footnote omitted]

As noted previously, the Court, in addressing the spoliation issue, will evidently address the parameters of the additional discovery to be afforded to the Plaintiff, as noted in the Court's July 16, 2007  Minute Order.  Apparently, the Court's written opinion/guidance will help the Defendants focus on the extent of their spoliation as well as the necessary remedies both as to the destroyed evidence as well as to that which still may be retrievable.

While the Court certainly has discretion to allow the Defendants' grossly tardy request to designate an expert, it should not be lightly entertained.  The Defendants proffer numerous cases allowing late designations of experts.  None of the cases are remotely similar to the situation with which the Court is now confronted.  In none of the cases have the moving parties acted purposefully, or alternatively, acted with gross or even simple negligence, in destroying evidence.   In the cases cited by the Defendants there were normally extenuating circumstances, not of the moving parties own making, allowing the court to balance the equities of the situation.

5

Defendants believe that they are entitled to deference under F.R.C.P. 6(b) as well as the concept of "excusable neglect". Defendants point to *Yesudian ex rel. U.S. v. Howard University*, 270 F.3d 969 (D.C. Cir. 2001) as an example. That case does not assist the Defendants when the reader focus's on the language at page 971, cited by the Defendants, reflecting on the import of F.R.C.P. 6(b). Those factors militate against the Defendants' request, i.e. "the length of the delay" (over 1 year), the "potential impact on judicial proceedings" (Defendants' destruction of evidence has delayed this case for some 2 years) , "the reason for the delay" (the delay is entirely attributable to the Defendants destruction of evidence), "was within the reasonable control of the movant" (again, the cause and the delay are directly attributable to the Defendants' actions), and "whether the movant acted in good faith" (once again, the intentional, gross or simple negligent loss/destruction of evidence undercuts any claim of good faith). The prejudice to the Plaintiff is apparent, given the delays caused by Defendants' spoliation of evidence, together with the so-called  "protocols" of the Defendants, i.e. their continuing control over access to pertinent, relevant and important evidence for the Plaintiff. When one analyzes the Defendants' request, it appears that they wish to be further rewarded for their spoliation of the evidence.

Lastly, one statement in Defendants' motion seems almost surreal. After attempting to review the history of this matter since the Defendants first disclosed that the electronic evidence had been destroyed (the Plaintiff's computer and the e-mail on the local server) and then supposed portions of the e-mail were preserved on a remote backup system in Texas, a period of 1 ½ years approximately, they state that "Defendants' need to designate an expert did not arise until it was agreed that Mr. Bond would conduct this search and

6

render an opinion therefrom."[7]

In May of 2007 Plaintiff filed her 2nd Motion to Compel and for Sanctions. In her

Memorandum she stated in Paragraph 7, as follows:

> As may be recalled from prior filings, the Defendants failed to locate
> electronic data, memoranda, and especially e-mails, for almost a year after
> suit was filed, and some 17 months after being notified of the claims. When
> they "discovered" the Dept. of Justice archived material (some 11,000
> people, including employees of SFX) , the electronic data was not produced
> in a searchable form.  Only after complaints by the Plaintiff did the
> Defendants' counsel make a "searchable" data base available.2  However,
> an exhaustive review by Plaintiff's consultant, Kroll, revealed that the
> pertinent e-mails and documents were not among the material produced.  A
> request to have a Kroll representative personally review the archived material
> at the Defendants' Texas or D.C. locations has been rebuffed by Defendants'
> counsel, after an earlier indication (prior to the February 2007 production)
> that it would be allowed.3
>> Fn 2 See Declaration of Douglas Bond, Kroll Ontrack, Exhibit C, to be
>> filed shortly.
>> Fn 3 It might posited that the Plaintiff's retention of Kroll may have
>> prompted the recent availability of some electronic data.   The
>> Defendants' refusal to allow Kroll to investigate further may be an
>> indication of other spoliation issues.

It is apparent that the Defendants have been on notice of their destruction/spoliation

of evidence since this case was filed in the Superior Court in March of 2006, or at least for

some 2 years since discovery was initiated in this Court.  They have known about the

Plaintiff's desire to obtain the requested discovery,  including the electronic documents, all

relevant  e-mail as well as the paper documents left in the Plaintiff's office (which are still

missing and have never been produced).   They have known of Kroll's/Mr. Bond's

involvement since at least February 21, 2007 (the Shannon deposition).   They have

delayed this matter with repeated filings and excuses.  Their excuse of not realizing the

---

[7]Defendants' Memorandum, page 5.

importance of the destruction/spoliation of the evidence until recently is simply unbelievable. The Plaintiff suggests that the Defendants' chutzpah should not now be rewarded.

For the reasons herein stated, the Plaintiff respectfully requests that the Court deny Motion for Leave to Designate an Expert Outside of the Time Set for Discovery.

Respectfully submitted,

DAVID E. SCHREIBER, P.C.


By:_____/s/_____
David E. Schreiber, Esq.
4550 Montgomery Avenue, Suite 760N
Bethesda, Maryland 20814
(301) 951-1530
Bar No. 152082
Counsel for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Plaintiff's Memorandum of Points and Authorities in Opposition to Defendants' Motion for Leave to Designate an Expert Outside of the Time Set for Discovery was filed and served electronically, on August 11, 2008 to:

Johnine P. Barnes, Esq.
Lee T. Ellis, Jr. Esq.
Baker & Hostetler, LLP
Washington Square, Suite 1100
1050 Connecticut Ave., N.W.
Washington, D.C. 20026-5304


_____/s/_____
David E. Schreiber, Esq.
UNITED  DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AUDREY (SHEBBY)  D'ONOFRIO          :

|  | : |  |
|---|---|---|
| Plaintiff | : | |
| | : | |
| v. | : | Case No.: 06-687 JDB/JMF |
| | : | |
| | : | |
| SFX SPORTS GROUP, INC., et. al. | : | |
| | : | |
| Defendants | : | |

............................................................:

## <u>ORDER</u>

Upon consideration of Defendants' Motion for Leave to Designate an Expert Outside of the Time Set for Discovery , Plaintiff's opposition thereto, and good cause not having been shown, it is by this Court this _____ day of _____, 2008,

ORDERED, that Defendants' Motion for Leave to Designate an Expert Outside of the Time Set for Discovery be, and the same is hereby, DENIED,

_____
JOHN M. FACCIOLA,
MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Copies to:

David E. Schreiber, Esq.

C:\MyFiles\CLIENTS\Shebby\Pleadings\Discovery\EXPERTS\Def. Motion\Pl Opp\Opp to Def Motion to Designate Expert late.wpd

David E. Schreiber, P.C.
4550 Montgomery Avenue
Suite 760N
Bethesda, Maryland 20814

Johnine P. Barnes, Esq.
Lee T. Ellis, Jr. Esq.
Baker & Hostetler, LLP
Washington Square, Suite 1100
1050 Connecticut Ave., N.W.
Washington, D.C. 20026-5304

C:\MyFiles\CLIENTS\Shebby\Pleadings\Discovery\EXPERTS\Def. Motion\Pl Opp\Opp to Def Motion to Designate Expert late.wpd