## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| _____ ) | |
| **AUDREY (SHEBBY) D'ONOFRIO,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Action No. 06-687 (JDB/JMF)** |
| ) | |
| **SFX SPORTS GROUP, INC., et al.,** ) | |
| ) | |
| **Defendants.** ) | |
| _____) | |

### MEMORANDUM OPINION

This case was referred to me by Judge Bates for the management of discovery disputes, of which there have been many.  Currently pending before the Court is <u>Defendants' Motion for a Protective Order</u> [#99] ("Defs. Mot.").

### I.    Background.

Plaintiff alleges that she was terminated from her position in public relations at SFX because she was pregnant.  Defendants argue that she was terminated because SFX decided it no longer needed to provide public relations services to its clients.

Plaintiff sought electronic documents from her former employer – items one might expect to find on a computer or server.  Initially, plaintiff was told no responsive documents existed, her computer had been thrown away, and her file on the server was empty.  Subsequently, defendants notified plaintiff of the existence of a back-up e-mail server called Legato and plaintiff sought assistance from computer forensics experts to determine whether a forensic search of the Legato and local servers might recover the lost data.  I held an evidentiary hearing on April 4, 2008 to determine whether a forensic examination would be beneficial, and whether it was necessary.

Ultimately, I concluded that the search was warranted and asked counsel to work together to outline a protocol that should guide the search.  The attempt at cooperation was fruitless and I outlined an appropriate protocol based on the parties' competing proposals.  See generally D'Onofrio v. SFX Sports Group, Inc., 254 F.R.D. 129 (D.D.C. 2008).

The protocol provided that the search results would be turned over to defense counsel for privilege review and counsel was given a few weeks to create and file a privilege log.  Id. at 133. On March 5, 2009, defendants filed their privilege log, which is 568 pages long and contains 9,413 entries that variously assert attorney-client or work-product privileges, or seek to withhold documents on the grounds that they contain proprietary or private information.  The parties have informed me that the searches yielded hundreds of thousands of documents.  See, e.g., Joint Motion for Extension of Time to Enlarge Time to Comply [#95] at 1.  I convened a hearing on March 10, 2009 to discuss how to proceed efficiently and whether the parties might be aided by the new Federal Rule of Evidence 502(d)-(e).[1]  See Whitaker Chalk Swindle & Sawyer, LLP v. Dart Oil & Gas Corp., No. 08-CV-468, 2009 WL 464898, at *4-5 (N.D. Tex. Feb. 23, 2009) (recognizing that amended Fed. R. Evid. 502 permits court or parties to fashion a protective order that will permit the parties to go forward with discovery without waiving privilege).

---

[1] Federal Rule of Evidence 502(d)-(e) provides:

> (d) **Controlling effect of a court order**. – A Federal court may order that the privilege or protection is not waived by disclosure connected with the litigation pending before the court – in which event the disclosure is also not a waiver in any other Federal or State proceeding.

> (e) **Controlling effect of a party agreement**. – An agreement on the effect of disclosure in a Federal proceeding is binding only on the parties to the agreement, unless it is incorporated into a court order.

At the hearing, defense counsel explained the diligent efforts she and her colleagues put forth to evaluate the documents that were unearthed by the forensic examination.  Counsel offered to provide to plaintiff's counsel a copy of the attorney notes that defendants took while conducting the privilege review to aid plaintiff's counsel in evaluating defendants' assertion of privilege.  Defendants' offer is conditioned on the agreement that the notes can only be viewed by plaintiff's counsel and his employees and plaintiff's expert and his employees, but not by the plaintiff or any other person without prior written consent.  Defs. Mot. at 3.  Plaintiff objects to this proposal and argues that plaintiff must be able to see the notes.  Plaintiff's Memorandum in Support of Opposition to Defendants' Motion for Protective Order [#102] ("Pl. Opp.") at 3.

Defendants also agreed at the hearing to permit plaintiff to test the validity of the privilege log using statistical sampling.  Defendants offered to allow plaintiff's expert to select a representative sample, that would be made available to plaintiff's counsel for his review to determine whether the privileges asserted were in fact appropriate.  Defendants' offer is conditioned on three criteria with which plaintiff takes issue: (1) the documents be designated "attorneys' eyes only," (2) the sample exclude documents that were created on or after March 17, 2006, and (3) plaintiff's expert tell defendants what method he uses to generate the statistical sample prior to doing so.

The parties have now filed their proposed protective orders which reflect these differences.

## II.   Analysis.

### a.   "Attorneys' Eyes Only"

Defendants argue that the plaintiff should not be permitted to see the attorney notes or the

documents that are turned over to counsel as part of the statistical sample.  In support they

contend that counsel does not need his client's assistance to make a legal determination of

whether documents are privileged or contain confidential or proprietary information.  I agree.

Plaintiff argues that it is necessary for D'Onofrio to see the notes to help her counsel

determine whether the documents are relevant, using her superior knowledge of the context in

which this litigation arose.  This argument would be significantly more persuasive if these

documents were being withheld on the basis of relevance, rather than privilege, or because they

contain information that should be kept confidential, such as salary information, social security,

or telephone numbers.  I cannot see why counsel needs the plaintiff's assistance to determine

whether a given item is properly labeled as privileged or confidential.

Plaintiff further makes the argument that it is inappropriate to prevent her from having

access to the documents because defendants have not carried their burden to demonstrate why

revealing this information will be harmful.  She cites Judge Bates's earlier decision in this case

rejecting defendants' attempt to designate their business plan as "attorneys' eyes only."  See

Order (11/06/2006) [#24] at 3-4.  There, however, Judge Bates had already made the threshold

determination that the un-redacted business plan was discoverable.  Id. at 2; see also Klayman v.

Judicial Watch, Inc., 247 F.R.D. 19, 23 (D.D.C. 2007) (rejecting defendant's request for a

blanket protective order preventing plaintiff from seeing any discovery materials but leaving

open the possibility that certain distinct categories of materials might warrant a protective order).

In the case of information that is concededly discoverable – meaning relevant and not privileged

– we presume the information will be available to all the parties.  It is only when the proponent

of the protective order can show good cause, usually by demonstrating that disclosure would be

4

harmful, that the court will interfere and dictate what information can or cannot be shared with which people and organizations, even if relevant and discoverable. See, e.g., Intervet, Inc. v. Merial Ltd., 241 F.R.D. 55, 57-58 (D.D.C. 2007) (collecting cases that preclude "competitive decision-makers" from viewing information out of concern that they will use that information inappropriately); U.S. ex rel. Purcell v. MWI Corp., 209 F.R.D. 21, 27-28 (D.D.C. 2002) (accepting defendants' assertion that release of financial information and trade secrets to relator, who is employed with a competitor, would be harmful as sufficient to show good cause for protective order); Alexander v. F.B.I., 186 F.R.D. 54, 57-58 (D.D.C. 1998) (permitting protective order that designated medical and psychological evaluations attorneys' eyes only despite lack of evidence of harm because party seeking access did not demonstrate any prejudice).

This is not a case where I have determined that plaintiff is entitled to the documents described in the privilege log and the parties are negotiating a protective order to ensure that sensitive information is dealt with properly. To the contrary, defendants assert their right to withhold these items completely but have offered to compromise in two ways for the sake of efficiency. Accordingly, the authorities cited by the plaintiff and discussed above are irrelevant at this juncture. Even if those authorities were applied to this case, however, I would find that defendants have shown good cause why plaintiff should not be permitted to view the notes and documents. As noted in Alexander, there need not be a great deal of harm to justify protecting information when doing so would not prejudice the party who will be prevented from seeing the information. Id. I have already determined that plaintiff's counsel is in a better position to determine whether the legal bases for withholding these items are appropriate given his training and experience. Further, while I believe that plaintiff, were she given access to these documents,

would take all appropriate steps to put anything she learns out of her mind, it is a simple fact that it is difficult to unlearn something once it is learned.  See United States v. Lowis, 174 F.3d 881, 885 (7th Cir. 1999) (noting the difficulties of "unringing the bell.").  If she is not already in a position to compete with the defendants, she likely will be in the future, and thus there is a risk that she might inadvertently use information that she gained through this lawsuit.  The same risk cannot be said to be posed by permitting her counsel to review these items because he will never compete with the defendants and is also bound by the protective order I am issuing not to disclose what he sees except to certain people and under certain circumstances.  For these reasons, I would find that good cause exists to make these items available on an "attorneys' eyes only" basis.

### b.    Documents created after March 16, 2006.

Defendants ask that any documents that were created after March 16, 2006 not be included in the representative sample.  March 16, 2006 is the date on which suit was filed, and is approximately six months after the plaintiff was terminated.  Defendants argue that a sufficient amount of time had passed so that documents created six months after her departure would not bear on any facts in the case.  Further, as suit had been filed, many of these documents are communications between counsel of record and her client pertaining to this case.

Plaintiff argues that six months is an "arbitrary" cutoff and that eight and a half months would be more appropriate.  She argues that there may be documents created after March 16, 2006 that bear on whether SFX really stopped providing a public relations function and documents that deal with spoliation issues.

There is always some degree of imprecision in determining the appropriate temporal

6

scope of discovery in wrongful termination cases.  See Waters v. U.S. Cap. Police Bd., 216

F.R.D. 153, 158-59 (D.D.C. 2003) ("[T]he proper scope of discovery in any case is a function of

the nature of that case."); Pleasants v. Allbaugh, 208 F.R.D. 7, 9-10 (D.D.C. 2002) ("The

problem of setting a time period for the discovery ordered is a perplexing one because it does not

admit of a lapidary solution; life is messy and cannot be divided into neat chronological

segments.").  A judge must simply draw a reasonable line between the likely and the unlikely, the

discoverable and the prohibited, the wheat and the chaff.  As the Supreme Court stated in another

context:  "If in its theory the distinction is justifiable, as for all that we know it is, the fact that

some cases, including the plaintiff's are very near to the line makes it none the worse.  That is the

inevitable result of drawing a line where the distinctions are distinctions of degree; and the

constant business of the law is to draw such lines."  Dominion Hotel, Inc. v. Arizona, 249 U.S.

265, 268-69 (1919) (Holmes, J.).  Accord Schlesinger v. Wisconsin, 270 U.S. 230, 241 (Holmes,

J., dissenting) ("While I should not dream of asking where the line can be drawn, since the great

body of the law consists in drawing such lines, yet when you realize that you are dealing with a

matter of degree you must realize that reasonable men may differ widely as to the place where the

line should fall.").

        All one can do is weigh probabilities against probabilities, barring discovery whose likely

benefit is outweighed by its cost considering the needs of the case, the amount in controversy, the

parties' resources, the importance of the issues at stake in the controversy and the importance of

the discovery in resolving the issues.  Fed. R. Civ. P. 26(b)(C)(iii).  The more time that elapses

between defendant's being fired and the action she claims shows that the reason given is

pretextual the less permissible is the inference that the action was pretextual.  See McPeek v.

<u>Ashcroft</u>, 212 F.R.D. 33, 35-36 (D.D.C. 2003).   In light of that reality, it is exceedingly unlikely that documents created more than six months after she was fired are relevant and a limitation of six months after her termination is generous.

Finally, plaintiff has had ample opportunity to create a record before this Court and there is no need for further discovery on the issue of spoliation.  All that remains on the issue of spoliation is to determine what information, if any, could not be recovered by forensic investigations and, if information is missing, to determine whether defendants should be sanctioned.

I also think it is appropriate to remind plaintiff that the point of this exercise is not to look for relevant documents – in fact, it appears that defendants have not sought to withhold information on the basis of relevance at this juncture – but to ascertain whether the documents are what the defendants say they are.  For these reasons I accept defendants' proposal to limit the documents that could be included in the sample to documents created before March 17, 2006.

### c.    Consultation among experts.

Defendants ask that plaintiff's expert notify defendants' expert what methodology he intends to use prior to conducting the statistical sample.  Plaintiff objects and argues that she should be permitted to do the sampling and then explain her methodology to defendants' counsel at a later time.  I agree with plaintiff that there is no need for the additional step of requiring plaintiff's expert to consult with defendants' consulting expert prior to conducting the sample.  I will require plaintiff to explain her expert's methodology to the defendants once the sampling is done and defendants can then consult with whomever they like.  I expect plaintiff to explain her

8

expert's methods to defendants as soon as is practicable after the sampling is done.

### III.   Conclusion.

For the foregoing reasons, defendants' Motion will be granted in part and their proposed order entered with appropriate modifications.  Also outstanding at this time is the parties' Joint Motion to Enlarge Time to Comply [#95].  As that applies to the defendants, I will grant the motion nunc pro tunc and accept their filing on March 5, 2009 as timely.  Plaintiff has already had almost a month to consider her objections, and the compromise captured within this opinion is designed to save a great deal of time.  Defendants shall hand over the attorney notes as soon as possible and in no event later than Friday, April 3, 2009.  Plaintiff will then have 21 days from the date when her counsel receives the notes to object to the privilege log.  Defendants will have 7 days to reply.

An Order accompanies this Memorandum Opinion.


Date:  April 1, 2009                                           /S/
                                            JOHN M. FACCIOLA
                                            U.S. MAGISTRATE JUDGE