UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AUDREY (SHEBBY)  D'ONOFRIO            :
                                     :
              Plaintiff              :
                                     :
       v.                            :        Case No.: 1:06-cv-00687 JDB/JMF
                                     :
                                     :
SFX SPORTS GROUP, INC., et. al.      :
                                     :
              Defendants             :
............................................................:

## PLAINTIFF'S MOTION FOR SANCTIONS AND SPOLIATION INSTRUCTION/INFERENCE

The Plaintiff, **AUDREY (SHEBBY) D'ONOFRIO,** (hereinafter, at times, "Plaintiff")

by and through her undersigned counsel, David E. Schreiber, Esq., moves this Court to

order sanctions including a default judgment as to Count IV and an adverse jury

instruction/inference as a result of Defendants' intentional spoliation of evidence and

misconduct in this case.  In support of this motion, Plaintiff submits the accompanying

memorandum, exhibits, and proposed Order.

WHEREFORE, Plaintiff respectfully requests this Court enter an Order granting

Plaintiff's Motion for Sanctions, including, *inter alia,* or in the alternative, entry of a default

judgment, a spoliation instruction, which would apply to any summary judgment motion

filed by Defendants as an adverse inference, counsel fees and costs, as well as such other

and further relief as this Court may deem just and proper.

Respectfully submitted,
DAVID E. SCHREIBER, P.C.


By:_____/s/_____
David E. Schreiber, Esq. #152082
4550 Montgomery Avenue, Suite 760N
Bethesda, Maryland 20814
(301) 951-1530
Counsel for Plaintiff

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AUDREY (SHEBBY)  D'ONOFRIO          :
                                                          :
                    Plaintiff                     :
                                                          :
          v.                                        :        Case No.: 1:06-cv-00687 JDB/JMF
                                                          :
                                                          :
SFX SPORTS GROUP, INC., et. al.       :
                                                          :
                    Defendants   :
............................................................:

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR SANCTIONS AND SPOLIATION INSTRUCTION

Discovery issues, and specifically issues related to electronically stored information (hereinafter, at times, "ESI"), have permeated this case since Defendants' initial disclosures, which included no ESI. There are well-established principles that should guide the disputes that arise from ESI. Among these principles is *"omnia presumuntur contra spoliatorem,* which means, 'all things are presumed against a despoiler or wrongdoer.'" *Trigon Ins. Co. v. U.S*., 204 F.R.D. 277, 284 (E.D. Va. 2001). Defendants' intentional destruction of the Plaintiff's computer and data stored within, the wiping of documents related to the Plaintiff from the D.C. server, and the loss of the contents of her office, have prejudiced her throughout discovery, and Defendants should not be permitted to benefit from that misconduct. Therefore, *inter alia,* at the very least an adverse inference may be drawn from Defendants' intentional destruction of material evidence, and sanctions may properly be ordered against the Defendants and their counsel.

Defendants' conduct represents a "pattern of stubborn defiance," which is appropriate for sanctions. *Bray & Gillespie Mgmt. LLC v. Lexington Ins. Co.*, 259 F.R.D.

3

591, 594 (M.D. Fl. 2009), modified, in part, (Slip Copy, 2009 WL 5606058 (M.D.Fla.))

(ordering sanctions where the plaintiff repeatedly failed to produce responsive documents,

including ESI, to Defendant's discovery requests).  This conduct includes, but is not limited

to, spoliation, failure to produce adequate responses to discovery, and unnecessary

dilatory tactics that have stalled the resolution of this dispute and created substantial and

completely unnecessary costs for the Plaintiff.

In addition, the acts, omissions and deficiencies of Defendants' counsel, both in-

house and outside litigation counsel, must be visited upon the Defendants and their legal

responsibilities.  As such, the acts, omissions and responsibilities of the Defendants and/or

their counsel, when noted herein, refer to the actions of both groups, entities and/or

individuals. As stated in *Vagenos v LDG Financial Services, LLC*, 2009 WL 5219021

(E.D.N.Y):

> The obligation to preserve evidence "arises when [a] party has notice that the
> evidence is relevant to litigation or when a party should have known that the
> evidence may be relevant to future litigation." *Zubulake v. UBS Warburg LLC,* 220
> F.R.D. 212, 216 (S.D.N.Y.2003). The preservation obligation "runs first to counsel,
> who has 'a duty to advise his client of the type of information potentially relevant to
> the lawsuit and of the necessity of preventing its destruction.' " *Chan v. Triple 8
> Palace,* No. 03 CIV 6048, 2005 WL 1925579 (S.D.N.Y. Aug. 11, 2005) (*quoting
> Turner v. Hudson Transit Lines,* 142 F.R.D. 68, 73 (S.D.N.Y.1991). Counsel thus
> had a duty to advise and explain to his client the continuing obligation to retain
> pertinent documents. *See Telecom Int'l Am. Ltd. v. AT & T Corp.,* 189 F.R.D. 76, 81
> (S.D.N.Y.1999). The responsibility of counsel to so inform his client is "heightened
> in this age of electronic discovery." *Green v. McClendon,* No. 08 Civ. 8496, 2009
> WL 2496275 (S.D.N.Y. Aug.13, 2009) (*quoting Qualcomm Inc. v. Broadcom Corp.,*
> 05 Civ.1958-B, 2008 WL 66932, at *9 (S.D.Cal. Jan.7, 2008); *see also Phoenix
> Four, Inc. v. Strategic Resources Corp.,* No. 05 Civ. 4837, 2006 WL 1409413, at
> *5-6 (S.D.N.Y. May 23, 2006) (underscoring counsels' affirmative duty to ensure that
> all sources of relevant information are discovered). Having chosen to retain his
> attorney, plaintiff is responsible for his attorney's negligent conduct or bad advice
> in connection with the action. *See Chira v. Lockheed Aircraft Corp.,* 634 F.2d 664,
> 666 (2d Cir.1989) ("Absent a truly extraordinary situation ... the client is not excused
> from the consequences of his attorney's nonfeasance.").

Accordingly, the Plaintiff requests the appropriate sanctions, and as grounds therefor states as follows:

## BACKGROUND

The facts giving rise to this motion are by now all too familiar in this case.  Hence, Plaintiff will attempt to recite only those facts that are most pertinent to discovery activity at issue in this motion.[1]

The Plaintiff, Ms. Audrey D'Onofrio, was employed by Defendants until her termination in 2005, which forms the basis for a portion of her claims.[2]  For over four years, Ms. D'Onofrio has expended considerable resources, in the form of time and legal fees, to litigate this case.  A substantial portion of those expenses have come as a result of the Defendants' discovery violations, most notably the destruction of Ms. D'Onofrio's computer, the wiping of material from the D.C. server, and the destruction of the materials left in her office. Defendant Clear Channel was sold for $19 billion during this litigation and was regularly listed on the Forbes 400 as a publically traded company, and Defendant Live Nation is a publically traded company with a $2.5 billion market capitalization.  Plaintiff emphasizes the distinction between the parties only to highlight that the conduct engaged in by the Defendants not only has no justifiable excuse, but it also suggests a deliberate and vexatious attempt to undermine Ms. D'Onofrio's ability to prove her claims. Defendants are sophisticated enterprises that are conceivably involved in many litigation

---

[1] Since some of the matters in issue here overlap with the Plaintiff's Show Cause Response to Support the Enlargement of Time for Discovery, some discussions are duplicated in both pleadings.

[2] Ms. D'Onofrio's claims also include violations of the Equal Pay Act.

actions at any given time, and they – and their litigation counsel – are familiar with the rules of discovery that they have seemingly disregarded throughout this matter.  As a result of the Defendants' misconduct discussed herein, Ms. D'Onofrio has been forced to bear the burden, both financially and through the harm done to her in attempting to prove her claims, that Defendants have created.  Such a course of dealing suggests a strategy on the part of the Defendants to frustrate and exhaust Ms. D'Onofrio, by delaying and obstructing her access to the information that should have routinely been made available in this litigation.  This strategy is exemplified in the details which follow.

On October 6, 2005, Plaintiff's counsel sent a letter to Defendants informing them of the potential claims in this case and the need to preserve material evidence and information.[3]  Thereafter, this case was filed in the Superior Court, removed to this Court, and discovery began on or about May 3, 2006.  Defendants' Rule 26 Initial Disclosures were received on June 29, 2006.  The Defendants produced only small portions of the Plaintiff's personnel file, (some 72 pages) from some four (4) years prior to her termination.  The initial disclosure listed only 4 witnesses, Alaka Williams, Kimberly Wray, Daniel Rosier and the Plaintiff, Audrey D'Onofrio.

Plaintiff served Defendants with requests for the production of documents and interrogatories on July 24, 2006.  After consenting to an enlargement of time for Defendants to respond to discovery on two occasions, the Plaintiff filed a motion to compel responses to her discovery requests on September 13, 2006.  While this motion was dismissed by Judge Bates, without prejudice, (requesting that the parties' counsel work

---

[3] Exhibit A

together to remedy the situation[4]) this Court subsequently ordered Defendants to supplement their responses on multiple occasions.  Despite the efforts by the Court and the Plaintiff, the information produced remained largely unsatisfactory.

Discovery was further delayed by Defendants over the issue of the protective orders and, specifically, the disclosure of Defendants' "business plan," which resulted in the Court's Order of November 6, 2006, requiring Defendants to produce the non-redacted business plan, which apparently forms the basis of their defense of business justification.

For the first eleven (11) months of this litigation[5], Defendants' counsel repeatedly told the Plaintiff and this Court that the Defendants could not produce or locate any electronic documents, including: emails to and from the Plaintiff or from others who wrote or referred to the Plaintiff and the matters complained of in her complaint; work created by the Plaintiff on her computer; documents from the local D.C. server; or even the materials left in her office when she was summarily terminated.[6]  The Defendants and their counsel did not state during this period of time why, in fact, nothing was available.  That purported explanation would come later, as well as the information that the Defendants and their counsel had not instigated a litigation hold or even initiated any specific inquiry of the individuals who they claimed had information.

Then, as recounted in Plaintiff's Status Report filed March 14, 2007 (#32), on

---

[4]Defendants then began producing small amounts of paper documents, beginning on September 20, 2006, and periodically thereafter.

[5]This matter was originally filed in Superior Court on March 17, 2006.  The period of time from the October 6, 2005 letter until February 13, 2007, is some sixteen (16) months.

[6]See Plaintiff's Declaration I (Exhibit B).

7

February 13, 2007, Plaintiff was informed that some electronic data was indeed available, because it had been "backed up" on the Texas "Legato" server created as a result of another legal matter with the Department of Justice (DOJ).  Defendants never provided this Court with a plausible explanation for why its own in-house attorneys, who were aware of both the DOJ archiving system and the Complaint filed by the Plaintiff, or their litigation counsel, did not produce those documents for nearly one year after this case was filed. Furthermore, once Defendants produced the emails from Ms. D'Onofrio's computer that she was previously told did not exist, Defendants' counsel deliberately converted the data from their original ".pst" format, which could be processed and searched using standard Microsoft Office applications, to a ".pdf" file that was nothing more than an unsearchable picture of over 63,000 pages of materials.  In doing so, Defendants forced Ms. D'Onofrio to expend considerable attorney fees and expert witness fees to simply restore the data to its original format so that she would be able to make use of the documents.

Depositions revealed more troubling information about the Defendants' failure to make reasonable efforts to produce material evidence in this case.  For instance, during the Rule 30(b)(6) deposition of Joe Shannon,[7] Chief Technology Officer for "Clear Channel Corporate," on February 21, 2007, he revealed that *no one at Clear Channel, the parent company of SFX, had contacted him about the present case until no earlier than February 7, 2007*, which was 17 months after Defendants were first contacted by Plaintiff's counsel regarding her claims.  Mr. Shannon was the person responsible for the preservation and

---

[7] Mr. Shannon was produced as the corporate designee to answer questions regarding the loss of the Plaintiff's computer, the wiping of the D.C. server, and the "newfound" sudden production of electronic documents and data.

recovery of electronic documents; he stated that neither he nor anyone in his IT unit received any notification of the need for retention of electronic data regarding this potential or pending legal matter from October 6, 2005 until February 7, 2007.[8]  Defendants' and their counsels' failure to contact their own IT department directly resulted in the destruction or "scrapping" of Ms. D'Onofrio's computer, the wiping of portions of the D.C. server related to Ms. D'Onofrio, and the loss of the contents of her office.  This has caused the substantial delay in discovery and raised many issues that this Court has dealt with for the last three (3) years.

Ultimately, it was learned that the Plaintiff's computer was deliberately destroyed by the Defendants.  When and why this occurred is the subject of conflicting testimonies given by Defendants; however, Mr. Shannon testified that the computer was "scrapped" after Gene Mason, of SFX, "looked through or at" the computer and/or its hard drive in the spring or summer of 2006.[9]   In addition, it was further revealed that the portion of Ms. D'Onofrio's data copied to the local D.C. server for SFX was supposedly deleted by an unknown individual.[10] No explanation was ever given by Defendants as to who did this or why.  Some time later, Plaintiff's expert (Mr. Douglas Bond of Kroll Ontrack) was able to retrieve some of the "deleted" material; however, Plaintiff believes that there are still many important documents and emails missing that would support her case. ***This has required the need to retrieve electronic data from and through an archive system, and eventually***

---

[8]Exhibit C, Shannon deposition, pp. 19-21.

[9]Exhibit C, Shannon deposition, p. 49.

[10]Exhibit C, Shannon deposition, p. 24-25.  Mr. Mason testified at the April, 2008 hearing and confirmed the intentional destruction of the computer and the loss of the Plaintiff's "portion" of the D.C. server.

9

***through the further use of Plaintiff's forensic expert, Mr. Bond.  The results of those***

***efforts give rise to the inference that further documents are still missing.***

Finally, once some documents from the backup servers were obtained through the efforts of Ms. D'Onofrio and her forensic expert, Mr. Bond, Defendants and their counsel continued to cause unnecessary delays and further prevent the production of documents that are highly relevant by asserting claims of privilege for over 9,000 documents.  At the time, Defendants produced a privilege log that this Court found to be insufficient to allow the Plaintiff to evaluate the privilege claims.  The first privilege log created by Defendants and their counsel in April, 2009 was insufficient and left Plaintiff and the Court unable to evaluate the bases for the claims of privilege.  Once again, the Plaintiff was forced to request the Court's assistance in producing something Defendants should have done properly and previously.  Thereafter, Defendants amended the privilege log but produced a log where approximately 70% of privilege claims were based on "Proprietary/Private Information," which is (a) not a recognized privilege and (b) unnecessary given the two existing protective orders in this case.  Defendants' treatment of the privilege logs increased the workload for the Court and the Plaintiff in this case so as to evaluate the claims of privilege, i.e. the Court requiring the Plaintiff to undertake a "stratified statistical sampling," at substantial expense, and resulted in this Court's determination that approximately 40% of Defendants' claims of privilege were invalid.[11]

More importantly, many of the claimed privileged documents were highly relevant to Ms. D'Onofrio's wrongful termination claim.  As this Court determined, there was no basis

---

[11]This figure excludes the more-than-6,000 documents listed as "Proprietary/Private Information."

for the privilege claims made over 33 emails that provided several missing details regarding the sequence of events that led to Ms. D'Onofrio's termination.  It is implausible that Defendants' counsel were so mistaken as to the basic concepts of privilege, which suggests that they made baseless privilege claims in a deliberate attempt to further withhold information to which Ms. D'Onofrio was entitled.

In addition to the destruction of Ms. D'Onofrio's electronic documents, the contents of her former office have apparently gone missing as well.  Throughout this litigation the Plaintiff has continually requested the papers, CDs, computer disks, and videos left in her office after her termination from SFX.  Defendants have produced substantially nothing and, in fact, after depositions had concluded claimed that Ms. D'Onofrio, while ailing from her pregnancy-related complications, as documented by her medical records, purportedly came to the SFX offices and removed five boxes of personal and/or business records!  Such an allegation is preposterous, as noted by Ms. D'Onofrio in her Declaration I and Declaration II, as well as in the Declaration of her husband, Chris Shebby.[12]

Plaintiff's Declaration I sets forth the voluminous records and materials she kept in her office, documenting her work product of over five years, as well as many internal documents and correspondences relevant to her efforts to obtain the proper title and compensation.  The Plaintiff returned to her former office only once to retrieve personal items.  At the time, she was physically unable to carry out any boxes, as a result of her pregnancy-related complications.  She was accompanied by her husband who carried one box of personal items.  At no time did Plaintiff or her husband have the opportunity, or the

---

[12] Exhibits D and E, Plaintiff's Declaration II and Declaration of Chris Shebby.

physical capacity, to remove all of the items Plaintiff kept from her office in one trip.  The sheer number of files, documents, magazines, videotapes, three-ring binders, and other items make Defendants' assertion that Plaintiff removed all of these items from her office simply incredible.  Moreover, having just terminated Ms. D'Onofrio, and having escorted her to her office, it flies in the face of one's imagination to believe that the Defendants would allow Ms. D'Onofrio to remove every piece of work product from her office, particularly when Alaka Williams of SFX specifically instructed Ms. D'Onofrio not to remove work items.[13] Furthermore, it is difficult to understand why Defendants would wait three years to make these claims, since it was not until October 22, 2008 that Ms. Barnes sent copies of affidavits from Albert Doby and Aleka Williams, months after the Court's April 4, 2008 hearing.

The aforementioned misconduct by the Defendants and their counsel has substantially prejudiced the Plaintiff and caused her to endure significant expenses to attempt to correct the persistent obstruction erected by the Defendants.  Therefore, the Plaintiff brings this motion respectfully requesting that this Court order the proper remedies in the form of a default judgment with respect to Plaintiff's Equal Pay Act claim, an adverse inference instruction to the jury as a result of Defendants' spoliation of evidence, as well as and a similar inference to be applied to Defendants' anticipated summary judgment motion, and monetary sanctions so that the Plaintiff is not forced to bear the severe and substantial costs of Defendants' sanctionable behavior.

## ARGUMENT

---

[13] Plaintiff is aware that SFX had security cameras in the office; however, no videos or photos of the alleged "removal" have ever been produced.

**I. Spoliation**:

When spoliation of evidence occurs, at the very least *an adverse inference* is warranted when the following three elements are met:

> (1) the party having control over the evidence had an obligation to preserve it when it was destroyed or altered; (2) the destruction or loss was accompanied by a "culpable state of mind"; and (3) the evidence that was destroyed or altered was "relevant" to the claims or defenses of the party that sought the discovery of the spoliated evidence, to the extent that a reasonable factfinder could conclude that the lost evidence would have supported the claims or defense of the party that sought it.
> *Bolger v. D.C.*, 608 F.Supp.2d 10, 30 (D.D.C. 2008).

Spoliation includes not only the destruction of evidence, which occurs through "gross indifference or reckless disregard" to the relevance of the evidence to a potential claim of which the defendant has notice, but also the failure to preserve evidence. *Rice v. U.S.*, 917 F.Supp. 17, 19-21 (D.D.C. 1996).   Where the spoliation occurs as a result of gross indifference or reckless disregard, an adverse inference with respect to the evidence at issue is compelled. *Id*. at 21 (citing *Battocchi v. Washington Hospital Center*, 581 A.2d 759, 767 (D.C. 1990) ("'...a trial court may well abuse its discretion by refusing to allow factual inferences adverse to the culpable party' where evidence is unavailable as a result of gross indifference or reckless disregard for its relevance.")).   When there is a failure to preserve evidence, the court looks at "(1) the defendant's degree of, at a minimum, negligence; (2) the importance of the evidence; and (3) the absence of other evidence enabling plaintiff to make the same point." *Id*. at n.5 (relying on *Battocchi*, 581 A.2d at 767).

In *Zubalake v. UBS Warburg*, the court described the duties of litigants,[14] including

---

[14]Judge Scheindlin, who authored the *Zubalake* opinions, recently issued a detailed analysis of the relevant law while imposing sanctions for the failure to properly implement a litigation hold to preserve likely discoverable materials. *See Pension*

their counsel, when there is a litigation hold:

> In short, it is *not* sufficient to notify all employees of a litigation hold and expect that the party will retain and then produce all relevant information. Counsel must take affirmative steps to monitor compliance so that all sources of discoverable information are identified and searched....[C]ounsel and client must take *some reasonable steps* to see that sources of relevant information are located.
> *Zubalake v. UBS Warburg LLC*, 229 F.R.D. 422, 432 (S.D.N.Y. 2004).

In *Swofford v. Eslinger*, a case that is remarkably similar to the case before this Court, the plaintiff's motion for spoliation sanctions was granted when the defendants allowed a computer and emails containing key evidence to be destroyed despite receiving a preservation letter.  *Swofford v. Eslinger*, 2009 WL 3818593 (M.D. Fla. Sept. 28, 2009). The court relied on *Zubalake* to hold *the defendants and their attorneys* responsible for the spoliation, stating "[n]othing other than bad faith can be inferred" when the plaintiff's preservation letters were received and the defendant's counsel failed to ensure evidence

---

*Comm. of the Univ. of Montreal Pension Plan v. Banc of America Securities,* 2010 U.S. Dist. LEXIS 1839, 2010 WL 184312 (S.D.N.Y. Jan. 11, 2010).  Judge Scheindlin's opinion reiterated the duties parties have to preserve and disclose relevant records:

...courts have a right to expect that litigants and counsel will take the necessary steps to ensure that relevant records are preserved when litigation is reasonably anticipated, and that such records are collected, reviewed, and produced to the opposing party. As discussed six years ago in the Zubulake opinions, when this does not happen, the integrity of the judicial process is harmed and the courts are required to fashion a remedy....  *Id*. at *2.  The opinion went on to define negligence, gross negligence, and willful conduct, and provided guidelines from which courts could determine when sanctions should be ordered and, if so, what sanctions are appropriate.  The opinion also mentioned the role of sanctions in preserving the integrity of the judicial process.  *Id*. at *14 ("The case law makes crystal clear that the breach of the duty to preserve, and the resulting spoliation of evidence, may result in the imposition of sanctions by a court because the court has the obligation to ensure that the judicial process is not abused.").  The opinion referred to fees and cost-shifting as "less severe sanctions," for which the inquiry should focus more on the conduct of the spoliating party than the resulting prejudice.  For "more severe sanctions," such as a spoliation inference, the inquiry should be focused on whether any missing evidence was relevant and whether the innocent party suffered prejudice.  *Id*. at *17.

was preserved. *Id*. at 4.  Granting the plaintiff's motion for sanctions, the court ordered an

adverse inference instruction and found *the defendants and their attorneys* jointly and

severally liable for the attorneys' fees and costs associated with the sanctionable conduct.

*Id*. at 10.

By letter dated October 6, 2005, Plaintiff's counsel informed Defendants, in part, as
follows:

> Please be advised that I represent Ms. Audrey (D'Onofrio) Shebby with
> respect to the wrongful termination of her employment by SFX/Clear Channel
> on or about September 26, 2005.  It is my understanding that her termination
> may be in violation, *inter alia*, of any or all of the following: the D.C. Human
> Rights Act, Title VII of the Civil Rights Act, the Civil Rights Act of 1964, the
> Civil Rights Act of 1991, the Worker Adjustment and Retraining Notification
> Act, et seq., The Americans with Disability Act, and The Family Medical Leave
> Act.  We further believe that the termination, due to your company's claim that
> there was a reorganization and/or dissolution at your company, was a pretext
> given her medical status and, furthermore, was a manifestation of disparate
> treatment based upon her gender.   In addition, it is apparent that Ms.
> (D'Onofrio) Shebby was not paid a salary (nor given a titled position)
> commensurate with her duties or equal to which her male predecessor was
> paid or titled when in her position.
> We also understand that your company maintains electronically stored
> information which is important and irreplaceable as a source of discovery
> and/or evidence in the above referenced matter.  We will, no doubt, formally
> request during litigation in this matter information from your computer
> systems, removable electronic media and other locations.  These requests
> will include, but would not be limited to, e-mail and other electronic
> communications, word processing documents, spreadsheets, databases,
> calendars, telephone logs, contact manager information, internet usage files,
> and network access information.
> The laws and rules prohibiting destruction of evidence apply to
> electronically stored information in the same manner that they apply to other
> evidence.  Due to its format, electronic information is easily deleted, modified
> or corrupted.  *Accordingly, your company and its subsidiaries and related
> entities must take every reasonable step to preserve this information until the
> final resolution of this matter.*  This includes, but is not limited to, an obligation
> to discontinue all data destruction and backup tape recycling policies.  If this
> is unclear in any respect, please contact me immediately.

(Plaintiff's counsel's Letter to Defendants dated October 6, 2005) (emphasis

added).[15]

This letter clearly put Defendants on notice of the Plaintiff's potential claims. Nevertheless, deposition testimony revealed that not only did Defendants fail to properly preserve evidence and prevent the "scrapping" of the Plaintiff's computer, but they also did not even make attempts to issue a litigation hold; in fact, they did not even contact the Joe Shannon, the head of Defendants' IT department, until 17 months after the preservation letter was received. Defendants' failure to issue a litigation hold and subsequent destruction of the Plaintiff's computer was inexcusable given its relevance in this case, not to mention the intentional deletion of electronic documents, email and data from the SFX D.C. server, and the loss of Plaintiff's office contents. As Ms. D'Onofrio has uncovered through her persistent efforts and significant costs, the computer contained numerous emails that would directly support her claims, including information about the sequence of events that led to her termination, as well as her pregnancy, gender, disability, unequal pay, retaliation and FMLA claims. It can hardly be argued that Defendants did not believe the Plaintiff's own computer or the contents of her office would be relevant to her claims and, therefore, Defendants' destruction easily meets the "gross indifference or reckless disregard" standard that compels an adverse inference. The fact that their counsel stood by and, *at best*, allowed this to occur, adds substantial credence to these claims.

Even if Defendants and their counsel are able to offer some explanation as to why the destruction of Plaintiff's computer and her electronic material on the D.C. server, or the loss of her office contents, was not done in bad faith, sanctions would still be appropriate

_____

[15]Exhibit A

under this Court's treatment of a failure to preserve evidence.  The Defendants and their counsel were at the very least negligent, given the fact that the Plaintiff's computer and emails contained on the computer (and on the SFX D.C. server) are perhaps the most important evidence in this case with respect to her pregnancy and wrongful termination claims, and there is no other evidence that allows the Plaintiff to make the same point.  In addition, this is also particularly true for Ms. D'Onofrio's Equal Pay Act claim, which requires that Ms. D'Onofrio demonstrate she did work comparable to her predecessor and comparator, Howard Schacter.  Unfortunately, because of Defendants' spoliation, Ms. D'Onofrio has been forced to undertake the unreasonable burden of trying to recreate the entire record of her work product.  While her prolonged efforts and substantial expenses produced some key information to support her wrongful termination claim, the nearly 100,000 documents[16] retrieved produced remarkably little, if any, evidence relevant to the work she did while employed by Defendants *or* the work done by Mr. Schacter.  Ms. D'Onofrio should not be forced to undertake this burden that resulted from Defendants' intentional spoliation; therefore, because Defendants destroyed the record of Ms. D'Onofrio's work, and thereby precluded her from obtaining the information needed to support her Equal Pay Act claim, Ms. D'Onofrio should be granted *a default judgment* with respect to that cause of action.

_____

[16] Ms. D'Onofrio has spent significant resources in an attempt to efficiently recover the material lost as a result of Defendants' destruction of her computer and wiping of the D.C. server.  Ms. D'Onofrio's counsel and expert attempted to use keywords and targeted searches to narrow the scope of documents retrieved.  However, because she was forced to operate from a backup server containing millions of documents, the search still produced a large number of results, including completely irrelevant SPAM, pictures, and other files that Ms. D'Onofrio was forced to sift through in search of the few documents that were relevant to her case.  Had Ms. D'Onofrio been able to search for the relevant materials on her computer, or even on the D.C. server, such a large number of documents would not have been necessary.

With respect to her other claims, some of the information Defendants destroyed has been recovered through Plaintiff's forensic expert; however, the delay in production substantially prejudiced the Plaintiff's efforts in more than three years of discovery leading up to this point.  As discussed in further detail, *infra*, Ms. D'Onofrio was forced to conduct discovery, including the taking of depositions, without the benefit of the information Defendants purged when they destroyed her computer and the SFX D.C. server as well as her office contents.  Further, many emails (once finally recovered), when viewed as a whole, give rise to the inference that there are numerous emails that have yet to be discovered, particularly with respect to Ms. D'Onofrio's work product and her repeated attempts to obtain the proper title and compensation, as well as other relevant documents.  For example, Ms. D'Onforio's substantial recovery efforts only unearthed one employee "evaluation," which justified a performance bonus Ms. D'Onofrio recieved in 2003.[17] [18]  This "evaluation" supports Ms. D'Onofrio's Equal Pay Act claim, as would the annual reviews Ms. D'Onofrio received while employed by the Defendants.  However, no other reviews or "evaluations" were found.  Once again, Defendants would have the Plaintiff and this Court believe that an organization such as SFX Sports, which was part of a Fortune 400 Company (Clear Channel), did not conduct regularly evaluate its employees.

Plaintiff also recalls several communications regarding her discussions about a raise

---

[17] Exhibit F, Document ID No. 0.7.43.132473.

[18] Exhibit F is being filed under seal, as are all of the documents retrieved from the Defendants, because they have asserted that nearly every document is confidential and subject to the existing protective orders in this case, despite the fact that many of these documents were widely distributed to third parties (e.g. press releases sent to the media, etc.) or are simply not of a sensitive or proprietary nature requiring confidentiality.  These expansive claims of confidentiality will be addressed in Plaintiff's Response to Defendants' recent Certification regarding the closing of discovery.

and change in title that are still missing.[19]  Given the history of spoliation in this case, this Court has just cause to be skeptical of the completeness of the search results, due to the likely culpability of the Defendants.

As discussed herein, Defendants' misconduct, and particularly the admitted destruction of documents, has deleted nearly the entire record that would support Ms. D'Onofrio's Equal Pay Act claim.  While a default judgment is regarded as a severe sanction, reserved for particularly egregious discovery violations, such is the case when the deliberate acts of the Defendants (i.e. destroying her computer, failure to disclose the backup servers for eleven months, and dilatory tactics such as the assertion of baseless claims of privilege and intentional conversion of documents into unsearchable formats) deprive Ms. D'Onofrio of the only information, her work product, that could support her Equal Pay Action claim.  If ever a default judgment would be appropriate, it is in this matter.

It is also within this Court's discretion to apply an adverse inference in the context of the anticipated summary judgment motion to be filed by the Defendants.  Plaintiff requests that as part of the sanctions to be considered, the Court draw a significant adverse inference from the destruction of the Plaintiff's computer, the attempted and successful wiping of the D.C. server containing Plaintiff's electronic data and correspondence, and the loss of the Plaintiff's office contents, all of which would directly and materially support her claims in this case.  See, e.g.,  *Smith v Napolitano*, 626 F. Supp. 2 81 (D.C.D.C. 2009, RMU), 42 Suffolk U. L. Rev. 683, *My Dog Ate My Email: Creating a Comprehensive Adverse Inference Instruction Standard for Spoliation of Electronic Evidence*, *Wood v.*

---

[19] See Exhibit B, Plaintiff's Declaration I.

*Pittsford Central School District* , 2008 WL 5120494 (C.A. 2 (N.Y.)) *Point-du-jour et al v.*

*American Airlines*, 2009 WL 3756627 (E.D. N.Y.)

## II. <u>Sanctions for Delays and Failure to Produce</u>:

Rule 37(b)(2) authorizes sanctions against parties who conduct discovery violations.

Fed. R. Civ. P. 37(b)(2).  The available sanctions were discussed by this Court in *Bolger*,

and summarized as follows:

> The Court may: (1) order that designated facts be taken as established for the purposes of the action, (2) prohibit the introduction of certain evidence, (3) strike pleadings, (4) stay further proceedings until the disobedient party obeys the discovery order, (5) dismiss the action, (6) render a default judgment, or (7) treat the failure to comply with the Court's order as contempt...the Court may also order the offending party, or his attorney, or both, to pay the reasonable expenses, including attorney's fees, caused by the failure.
> *Bolger v. D.C.*, 248 F.R.D. 339, 343 (D.D.C. 2008).

Under Rule 37, district courts have broad discretion to impose any combination of

sanctions for discovery violations, so long as the sanctions are just and proportionate to the

offense.  *Id*.  "Rule 37 sanctions are intended to prevent unfair prejudice to the litigant and

insure the integrity of the discovery process."  *Gratton v. Great American Communications*,

178 F.3d 1373, 1374 (11th Cir. 1999).

In *Bolger*, this Court imposed sanctions on the District of Columbia for discovery

violations that resemble the persistent conduct of Defendants in this case.  In his opinion,

Judge Bates noted, "[w]ithout a doubt, the salient facts in this case have often come to light

only through plaintiffs' persistent discovery efforts and this Court's orders, not through the

forthright disclosure of information by the [defendant]."  *Bolger*, 248 F.R.D. at 343.

The defendants conduct in *Bolger* included the failure to produce responsive

documents required by the Federal Rules and two orders of the Court.  *Id*. at 342.  For

nearly four years, the defendant maintained that certain evidence, a "running resume", did not exist; finally, only through the plaintiff's persistence did the defendant produce the evidence, though in a heavily redacted form.  *Id*.  The Court noted that, even if the defendant's claims that it was unaware the material existed were true, the defendant *should have known* that the running resume was discoverable. *Id*. at 345.  In evaluating the effect of the defendant's discovery violations, the Court determined, "[t]he protracted discovery period, the excessive amount of time plaintiffs had to devote to discovery disputes, the difficulty of deposing witnesses without all relevant information, and the District's failure to be forthright all clearly operated to the prejudice of plaintiffs." *Id*.

Federal Rule of Civil Procedure 37(e) prohibits a court from imposing sanctions for the failure to produce ESI only when the information sought is "lost as a result of the routine, good-faith operation of an electronic information system." Fed. R. Civ. P. 37(e).  In *Ripley v. D.C.*, 06 CV 1705 this Court (Sullivan, J.), determined that Rule 37(e) did not serve as a barrier to sanctions.  In that case, the defendants deleted relevant emails despite their notice of the nature of the litigation and obligation to preserve material.  Defendants then claimed the emails could not be recovered, failing to disclose that the emails were available on a backup server. Thus, the information was disclosed and produced only through the plaintiff's insistence and motion to compel.  Judge Sullivan stated that while it was "plausible that defendants did not intentionally hide documents, it is clear that defendants were not as meticulous as they could have been" and ordered the defendants to pay attorney's fees associated with the motion to compel and for sanctions. (Order dated July 2, 2009.[20]) The

---

[20] Exhibit G.

facts of the instant case meet, at a minimum, this standard, since Defendants and their counsel were clearly not "meticulous" in preserving information while they allowed Ms. D'Onofrio's computer to be destroyed, as well as the other discovery misconduct discussed herein.

In *Moore v. Chertoff*, the Court ordered a preclusion sanction against the defendants who "failed to commence even a reasonable search for the full extent of [responsive documents]...until sixteen months after the requests were served." *Moore v. Chertoff*, 255 F.R.D. 10, 33 (D.D.C. 2008). The Court noted that a severe sanction, such as preclusion, was appropriate where "lesser corrective actions" were not effective in curing the defendant's lack of dilatory tactics and meaningful participation in the discovery process. *Id.* at 36.

Other Courts have also imposed sanctions for actions that represent the Defendants' misconduct in this case. In *Bray & Gillespie Management v. Lexington Insurance Company*, the court sanctioned the plaintiff who failed to search for and timely produce responsive documents. *Bray & Gillespie Mgmt. LLC v. Lexington Insurance Co.*, 259 F.R.D. 591 (M.D. Fl. 2009). In that case, the court found the sanctioned party's attorneys jointly and severally liable for the defendant's costs associated with the plaintiff's failure to produce documents and comply with discovery orders. *Id.* at 615-16. The attorneys' liability was based, in part, upon their failure to ensure that their client had made reasonable efforts to produce the documents requested by the opposing party and that the court ordered be produced.[21]

---

[21] Subsequent to the magistrate judge's recommendation for severe sanctions, the sanctioned party agreed to produce additional documents and pay certain fees, costs, and expenses related to the discovery dispute. As a result, the party requesting sanctions did not respond to the opposing counsel's appeal of the sanctions order;

Defendants' and their counsels' behavior in this case mirrors – and in many instances exceeds – the range of conduct cited herein that courts have deemed just cause for sanctions ranging from monetary awards to precluding the sanctioned party from presenting its case. Defendants' approach to discovery has hindered the resolution of this case from their initial disclosures[22] to the present. While their tactics have permeated this case throughout its proceedings, the treatment of ESI by itself merits the order of sanctions.

Even before this lawsuit was filed, Defendants were on notice of the nature of Plaintiff's claims and their duty to preserve relevant documents.[23] Despite this notice, the Federal Rules of Evidence, and the Model Rules of Professional Conduct, Defendants and their attorneys withheld substantial relevant ESI until eleven months after this case was filed and 17 months after the preservation letter was sent.[24] This was done primarily through the failure to issue a litigation hold, the failure to even contact Defendants' own IT department for 17 months, the subsequent destruction of Plaintiff's computer, the wiping of the D.C. server, and the failure to disclose the DC and Legato backup servers, from which some of the documents could and have been retrieved, together with the loss of the Plaintiff's office contents. This failure to disclose is similar to that in *Ripley*, as emails were deleted and the Defendants did not disclose the existence of a backup server.

––––––––––––––––––––––

thus, the district judge quashed the more severe sanctions while affirming the order for payment of fees, costs, and expenses.

[22] Defendants' initial disclosures pursuant to Federal Rule 26(a) contained only a small portion of the Plaintiff's personnel file and listed only four potential witnesses, including the Plaintiff.

[23] See Exhibit A, Plaintiff's preservation letter, October 6, 2005.

[24] A similar delay was the basis for a preclusion sanction in *Moore*, discussed *supra*.

While in *Ripley* there was a question as to the Defendants' knowledge of the backup servers, here there can be no dispute.  Defendants' own in-house attorneys were aware of the backup servers and the Complaint filed by the Plaintiff, yet they failed to produce the documents for nearly a year.  Additionally, Defendants' litigation counsel, Ms. Johnine Barnes, should have learned of the backup servers through minimal efforts.  If, in fact, Ms. Barnes was aware of the servers, the failure to disclose is that much more egregious.  Regardless of her actual knowledge, Ms. Barnes failed to ensure the Defendants made a reasonable effort to produce the responsive ESI.  In addition to Ms. Barnes, Defendants in-house counsel, including Mr. Richard Munisteri, Ms. Vanessa Villanueva, and others also should have taken steps to preserve documents, but they did not.  There is no justifiable excuse for the delay that forced Ms. D'Onofrio to expend considerable time and costs to obtain some documents that have provided important information regarding Ms. D'Onforio's wrongful termination claim (information that would have particularly useful during depositions that took place approximately three years ago).  The information obtained through Ms. D'Onofrio's efforts also make it clear that Defendants have deleted substantially all of her work product, thereby forcing upon Ms. D'Onofrio a nearly impossible burden with respect to her Equal Pay Act claim.

Of course, the backup servers may never have been needed but for the willful destruction of the Plaintiff's computer and office contents, after the Defendants had an obligation to preserve relevant materials.  This spoliation exceeds the conduct that this Court sanctioned in *Ripley* and *Bolger*.  It also led to the need for a forensic expert to extract files from the backup servers.

In addition to the aforementioned conduct by the Defendants and their counsel,

24

sanctions are also appropriate to rectify the resultant harm to the Plaintiff.  While Plaintiff has made extraordinary efforts to recover the information on her former computer, there are still questions that loom as a result of the spoliation, including whether additional documents have yet to be uncovered.  The need to recover these documents also resulted in a substantial delay that has prejudiced the Plaintiff.  New information has been discovered, as a result of Plaintiff's efforts, that would have substantially informed the discovery conducted to this point, including the depositions of several key witnesses.  For example, Plaintiff recently obtained a series of 33 emails that consist of correspondences regarding the decision-making process from which the Plaintiff was terminated.[25]   Defendants apparently went to great lengths to prevent the production of these documents: they were not produced in the initial disclosures, as they should have been; they were not produced in response to discovery requests, as they should have been; they were not produced in the first production of emails (that consisted of only messages to and from the Plaintiff), though the should have been; in fact, when these messages were finally recovered by Plaintiff's expert, Defendants still attempted to prevent their disclosure, asserting baseless claims of privilege, refuted by the Court, over each and every document.  Only as a result of this Court's order on August 17, 2009, which found that these documents were not protected by the privilege claims the Defendants asserted, was the Plaintiff finally able to see these emails.  Unfortunately, this was over two years after Plaintiff had the opportunity to conduct depositions of the people making these communications, including Daniel Rosier, whose deposition testimony is called into question by the newly-discovered emails.  This is another

---

[25] Exhibit H.

example of a discovery abuse for which this Court has imposed sanctions.[26]  *See Bolger*, 248 F.R.D. at 345.

Plaintiff's Declaration I[27] sets forth the vast amount of materials that have still not been produced that would substantially inform the claims at issue in this case.  For example, Plaintiff kept meticulous records regarding her efforts to obtain the proper title and compensation she was promised when she returned to work for SFX in 2001.  This included several correspondences with her supervisor, Robert Urbach.  The documents produced thus far contain some fragments of these correspondences, but many of the most important documents remain unavailable to the Plaintiff.  For example, Plaintiff's 2003 review was produced,[28] which is highly relevant to her claims, but there are no reviews to be found for any other year, and no explanation as to where the other reviews are.  Additionally, an email that was sent after Robert Urbach left the SFX Sports Group described that Peter Hughes would be conducting the Plaintiff's reviews.[29]  Once again, this information that should have been disclosed years ago would have significantly informed Plaintiff's prior discovery efforts, most notably her deposition of Mr. Hughes.

But for the Plaintiff's persistence, and the significant costs incurred thereby, and the assistance of this Court, substantially all of the relevant information discovered thus far

---

[26] Defendants have verbally opposed Plaintiff's request to enlarge discovery because of the need to make use of the information discovered through the forensic examinations of Defendants' servers.  If Plaintiff is unable to use the information Defendants failed to produce, the Defendants will benefit from their improper conduct.

[27] Exhibit B.

[28] Exhibit F.

[29] Exhibit I.

would still be hidden on Defendants' servers and unknown to this Court or the Plaintiff. Defendants' conduct has violated the letter and the spirit of the Federal Rules, resulted in substantial harm to the Plaintiff, and represents a pattern of conduct for which this Court has previously imposed sanctions.

## CONCLUSION

For the reasons stated herein, Plaintiff respectfully requests that this Court order the appropriate sanctions for Defendants' misconduct, including *inter alia,* or in the alternative, entry of a default judgment, a spoliation instruction, which would apply to any summary judgment motion filed by Defendants as an adverse inference, counsel fees and costs, as well as such other and further relief as this Court may deem just and proper.

Respectfully submitted,

DAVID E. SCHREIBER, P.C.

By:_____/s/_____
David E. Schreiber, Esq.
4550 Montgomery Avenue, Suite 760N
Bethesda, Maryland 20814
(301) 951-1530
Bar No. 152082
Counsel for Plaintiff

## REQUEST FOR HEARING

The Plaintiff requests a hearing on this matter.

_____/s/_____
David E. Schreiber, Esq.

**CERTIFICATION PURSUANT TO LOCAL RULE 7M**

Plaintiff's counsel certifies that he has attempted to resolve the instant dispute, commemorated in this motion, for a period of some two (2) years through numerous conversations with the Defendants' counsel, as well as through a myriad of correspondence, both electronically and by paper, in an effort to avoid the need for this motion.  The efforts of Plaintiff's counsel have obviously been unsuccessful and thus the need for this motion cannot be avoided.

_____/s/_____
David E. Schreiber, Esq.


**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing Plaintiff's Motion for Sanctions and Spoliation Instruction/inference was filed and served electronically on May 6, 2010 with certain Exhibits filed under seal (and served by mail) on:

Johnine P. Barnes, Esq.
Lee T. Ellis, Jr. Esq.
Baker & Hostetler, LLP
Washington Square, Suite 1100
1050 Connecticut Ave., N.W.
Washington, D.C. 20026-5304

_____/s/_____
David E. Schreiber, Esq.

C:\MyFiles\CLIENTS\Shebby\Pleadings\MOTIONS\Spoliation\Final Motion for Sanctions.EG 5.6.10.wpd