# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **AUDREY D'ONOFRIO,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No. 06-687 (JDB/JMF)** |
| **SFX SPORTS GROUP, INC.,** *et al.* | |
| **Defendants.** | |

## MEMORANDUM OPINION and REPORT & RECOMMENDATION

This case has been referred to me by Judge Bates for the resolution of discovery disputes. Currently pending before the Court is <u>Plaintiff's Motion for Sanctions and Spoliation Instruction/ Inference</u> [#123]. A portion of this opinion addresses plaintiff's request for dispositive relief. Thus, a portion of this opinion is a report and recommendation to Judge Bates.

## I. Background

This lawsuit involves claims by plaintiff, Audrey (Shebby) D'Onofrio, that her employer, SFX Sports Group, Inc. ("SFX"),[1] discriminated against her because she is a woman. Plaintiff also alleges that she was subjected to a hostile work environment and then was terminated in retaliation for her protected activities. She brings this lawsuit under the District of Columbia Human Rights Act ("DCHRA"), the Equal Pay Act, and the District of Columbia Family Medical Leave Act.

---

[1] Plaintiff also names as defendants SFX's parent corporation, Clear Channel Communications, Inc. ("Clear Channel") (currently operating as Live Nation, Inc.), Dan Rosier, former Chief Financial Officer for SFX, and Kimberly Wray, head of Human Resources for Clear Channel.

Discovery in this case has been fractious.  An extensive discussion of the procedural history of the discovery disputes may be found in my prior opinions in this case.  See, e.g., D'Onofrio v. SFX Sports Group, Inc., 247 F.R.D. 43, 44-45 (D.D.C. 2008) (hereinafter "D'Onofrio I"); D'Onofrio v. SFX Sports Group, Inc., 254 F.R.D. 129, 129-34 (D.D.C. 2008) (hereinafter "D'Onofrio II"); and D'Onofrio v. SFX Sports Group, Inc., 256 F.R.D. 277, 278-79 (D.D.C. 2009) (hereinafter "D'Onofrio III").  I will provide a brief summary.

The parties encountered trouble in the discovery process as early as September 15, 2006, when plaintiff filed her Motion To Compel Discovery, for Sanctions and for Enlargement of Time for Discovery [#16] ("First Motion"). D'Onofrio I, 247 F.R.D. at 44.  Intervention by Judge Bates failed to resolve the disputes, and on October 26, 2006, Judge Bates issued an order setting forth a schedule to address disputed discovery issues. D'Onofrio I, 247 F.R.D. at 44 (citing Bates Order, 10/26/06).  On November 8, 2006, plaintiff filed her Memorandum Regarding Electronic Discovery Issues and Enlargement of Time for Discovery [#25] ("Plaintiff's E-Discovery Memo."). Id.  In this memorandum, plaintiff informed the court that she wished to employ a forensic expert.[2] Id. (citing Plaintiff's E-Discovery Memo. 1-2).

Judge Bates continued to push the parties towards a resolution of their disputes, ordering the parties to meet and confer and submit proposed discovery schedules to the

_____

[2] Plaintiff sought electronic documents from her former employer - items one might expect to find on a computer or server. D'Onofrio III, 256 F.R.D. at 278.  Plaintiff had been told by defendants that no responsive documents existed, that her computer had been thrown away, and that her file on the server was empty. Id.  Later, defendants notified plaintiff that there was a back-up e-mail server, and plaintiff wanted to enlist the help of forensics experts to determine whether a forensic search of the "Legato" and local servers might recover the lost data. Id.  The Legato server is discussed in more detail later in this opinion.

Court. Id. (citing Bates Order, 11/9/06; Bates Order, 1/4/07). Nevertheless, plaintiff filed her Memorandum Regarding Discovery Conference and Status of Discovery [#29] ("Plaintiff's Memo. on Discovery"), notifying the Court that the parties could not reach a resolution and that plaintiff continued to seek Court action to compel discovery and to employ a forensic expert. Id. (citing Plaintiff's Memo. on Discovery 1). Judge Bates again ordered cooperation among the parties, but to no avail; the plaintiff continued to complain about defendants' discovery failures, alleging that defendants may have engaged in improper conduct concerning discovery. Id. (internal citations omitted). After another status conferences with Judge Bates, plaintiff filed Plaintiff's Second Motion to Compel Discovery, and for Sanctions [#35]. Id. at 45. Judge Bates referred the matter to me, and I attempted to resolve the motion. I ordered an evidentiary hearing on the issue of spoliation of electronically stored information ("ESI"). D'Onofrio I 247 F.R.D. at 49.

A. Evidentiary Hearing

The evidentiary hearing was "held on April 4, 2008 for the purpose of determining: '(a) the basis for the [ ] conclusion that email and other electronically stored information have not been produced; (b) testimony from plaintiff as to what electronically stored information she believes has not been produced; and (c) the circumstances concerning the scrapping of plaintiff's computer and the consequences thereof in light of any demand made by plaintiff to preserve its contents.'" D'Onofrio II, 254 F.R.D. at 129-30 (citing D'Onofrio I, 247 F.R.D. at 49).

At the hearing, plaintiff presented Mr. Douglas Bond, a forensic computer analyst, who plaintiff retained as an expert in this matter. D'Onofrio II, 254 F.R.D. at 130 (citing Transcript of Evidentiary Hearing-Morning Session 4:17-25 (Apr. 4, 2008) ("AM

Tr.")).  Mr. Bond testified that he might be able to locate electronically stored information on the defendants' servers using forensic techniques. Id. (citing AM Tr. 28:1-13).  Bond further explained that his investigation is best done in person. AM Tr. 34:7-15.  The defendants agreed to allow an in-person search of the defendants' servers, but the parties were unable to come to an agreement as to the appropriate protocol to guide that search. D'Onofrio II, 254 F.R.D. at 130.

At the evidentiary hearing, I also heard evidence concerning plaintiff's spoliation allegations. D'Onofrio II, 254 F.R.D. at 130.  Defendants called Mr. John Cavender, who is a security officer with Clear Channel Communications.  Mr. Cavender testified to what searches for electronically stored information he performed in response to plaintiff's discovery requests and explained the defendants' Legato system. Id.  Defendants also called Mr. Eugene Mason, who is Vice President of Finance at SFX Basketball.  Mr. Mason testified that he is the "de facto I.T. person" in the office where plaintiff was employed. Id. (citing Transcript of Evidentiary Hearing-Morning Session 72:22-24 (Apr. 4, 2008) ("PM Tr.")).  Mr. Mason also testified that he "scrapped" plaintiff's computer after he decided that it could not be used and also searched for items requested by the plaintiff. Id. (citing PM Tr. 77:1-12).

After the hearing, defendants filed motions for leave to file supplemental briefings. D'Onofrio II, 254 F.R.D. at 130.  I denied the motions; however, I recognized that after the forensic search was completed and the extent of any lost ESI was determined, supplemental briefing might be warranted. Id.

B. The Search

Prior to the search, I crafted a protocol for the search. D'Onofrio II, 254 F.R.D. at 130. In doing so, I determined that reproducing the prior searches conducted by defendants, as proposed by defendants, was "not likely to produce all of the electronically stored information that plaintiff legitimately demanded." Id. at 131. I came to this conclusion for several reasons. First, defendants' first search was limited to e-mails sent and received by plaintiff. See id. (citing PM Tr. 32:4-24). Second, plaintiff has testified that she kept several back-ups of electronic files both on disks and in hard copy in her office and that she had only used the discarded computer for a short time because it was a replacement for an older model that crashed. Id. (citing AM Tr. 78:11-14; PM Tr. 74:6-11). I was not, however, aware of any efforts taken to locate and produce the back-ups, hard copies, or restore the crashed computer. Lastly, defendants' witness testified that the first time that he was asked to make a copy of the plaintiff's file on the server was in March of 2008, a full two years after this case was filed, and one and a half years after plaintiff filed her first motion to compel discovery. Id. (citing PM Tr. 90:3-21).

As will be established later, defendants, at a minimum, also failed to implement appropriately a litigation hold after plaintiff notified Clear Channel in October 2005 that she intended to file suit. I therefore crafted a protocol that permitted plaintiff's "expert to conduct a diligent search of all potential repositories of electronically stored information that [were] likely to yield information that [was] responsive to plaintiff's discovery demands." Id. at 132. I determined that plaintiff's expert must be permitted to search any depository of electronically stored information that may contain the following: "(1) e-

mails to or from plaintiff to include e-mails in which her name appears in the "cc" or "bcc" lines; (2) e-mail in which her name is mentioned; (3) electronically stored information created by her; (4) electronically stored information sent to her, again whether sent to her directly or as one of other recipients; (5) electronically stored information in which her name appears, whether her full name or her first or last name or initials." Id.  I also required defendants to restore electronically stored information newly discovered during the search, if such restoration was necessary to render it "reasonably usable," in accordance with Rule 34(b)(2)(E)(ii) of the Federal Rules of Civil Procedure. Id.  I defined reasonably usable as "capable of being read on a computer using either commonly available word processing software, such as Word or Word Perfect, e-mail software such as Outlook or Lotus Notes, or Adobe Acrobat Reader and without the necessity of having to buy other software because only that software renders the restored e-mail." Id.  Defendants agreed to pay $10,000 for the expert's search; however, I indicated I would determine how to allocate costs in excess of $10,000. Id.

C. Privilege Review

The searches yielded hundreds of thousands of documents. D'Onofrio II, 254 F.R.D. at 133 (citing Joint Motion for Extension of Time to Enlarge Time to Comply [#95] at 1).  The protocol I crafted for the search allowed defense counsel several weeks to conduct privilege review of the documents recovered by the search and to create a privilege log. D'Onofrio II, 254 F.R.D. at 133.  Defendants filed a 568-page privilege log on March 5, 2009. D'Onofrio III, 256 F.R.D. at 278.  The logs contained 9,413 entries that variously asserted attorney-client or work-product privileges, or sought to withhold documents on the grounds that they contained proprietary or private information. Id.  In

an effort to proceed efficiently with this large privilege log, I convened a hearing on March 10, 2009 to discuss whether the parties might be aided by the new Federal Rule of Evidence 502(d)-(e). Id. (internal citations omitted).  Defendants agreed to permit plaintiff to test the validity of the privilege log using statistical sampling. Id. at 279.  A protective order was put in place for the process.  See Protective Order [#106].  Some disputes, not at issue in this pending motion, arose in regards to the privilege log; thus, I undertook an *in camera* review of a sampling of the documents.  See Memorandum Order [#115].

     D. Motion for Sanctions

     After about a six-month break in proceedings, for the parties to pursue mediation, plaintiff filed the pending Motion for Sanctions and Spoliation Instruction/Inference.  See Motion for Sanctions and Spoliation Instruction/Inference and Memorandum of Points of Authorities in Support [#123] ("Pl. Mot.").  In the motion, plaintiff seeks "default judgment as to Count IV and an adverse jury instruction/inference as a result of [d]efendants' intentional spoliation of evidence and misconduct in this case." Id. at 1.  Plaintiff also seeks attorneys' fees and costs. Id.  Plaintiff argues that "[d]efendants' intentional destruction of [p]laintiff's computer and data stored within, the wiping of documents related to the plaintiff from the [ ] server, and the loss of the contents of her office,[3] have prejudiced her throughout discovery, and [d]efendants should not be permitted to benefit from that misconduct." Pl. Mot. 1.  It is for these reasons, and defendants' "pattern of stubborn defiance" that plaintiff believes sanctions to be appropriate. Id. (quoting Bray v. Gillespie Mgmt. LLC v. Lexington Ins. Co., 259 F.R.D.

_____

[3] Plaintiff claims that upon her termination she was not permitted to retrieve from her office information that would have established her claims.

591, 594 (M.D. Fl. 2009)).  Plaintiff argues that sanctions are justified because defendants' failure to preserve evidence has placed "unreasonable burdens" on plaintiff, including forcing her to recreate the entire record of her work product. Id. at 17.

Defendants argue that plaintiff raises issues already addressed by the Court, such as the format in which e-mails were produced. Defendants' Opposition to Plaintiff's Motion for Sanctions and Spoliation Instruction/Inference [#135] ("Defs. Opp.") at 5. Moreover, defendants argue that plaintiff cannot meet the burden necessary to warrant an adverse inference in the case, that plaintiff sent a preservation letter to her employer, or that the evidence that was lost has not been recovered. Id. at 8-12.

**II. Legal Standard**

The parties in this case have flung case law from all over the country at each other.  I am reminded of the anecdote about an appellate court judge who, when counsel relied on a single, lonely district court case from another Circuit for his entire argument, interrupted the lawyer to say: "Counsel, you can find a district court in this country that will say anything."  The point for counsel is that it should focus on what guidance the court of appeals for this Circuit has provided.  While the court of appeals has not yet made its way into the specific complications that arise from the loss of electronically stored information, it has given clear guidance as to what consequences should flow from the loss of information due to a party's fault.[4]

A party to litigation has "an obligation to preserve and also not to alter documents it knew or reasonably should have known were relevant . . . if it knew the destruction or

---

[4] "Fault" is merely used for the moment as a place marker, awaiting a discussion of how one is to define the "fault" that will engender certain consequences.

alteration of those documents would prejudice [its opponent]." <u>Shepherd v. Am. Broad.</u>
<u>Cos.</u>, 62 F.3d 1469, 1481 (D.C. Cir. 1995) (internal quotations omitted).

A. <u>Spoliation</u>

A party's obligation to preserve potentially relevant evidence arises "once [the
party] anticipates litigation." <u>Smith v. Cafe Asia</u>, 246 F.R.D. 19, 21 n.2 (D.D.C. 2007)
(quoting <u>United Med. Supply Co., Inc. v. U.S.</u>, 77 Fed. Cl. 257, 258 (2007) (internal
quotation marks omitted)). A party that fails to preserve such evidence "runs the risk of
being justly accused of spoliation[5] and may find himself the subject of sanctions." <u>Id.</u>
(citing <u>United Med. Supply Co.</u>, 77 Fed. Cl. at 263; <u>Lebron v. Powell</u>, 217 F.R.D. 72, 78
(D.D.C. 2003)).

B. <u>Categories of Sanctions the Court Has the Discretion to Award for Spoliation</u>

The Federal Rules of Civil Procedure do not contain a provision specifying a
remedy for the failure to preserve evidence. The trial court, nevertheless, has a great deal
of discretion in exercising its inherent powers to fashion an appropriate sanction, but
because of their potency, such powers must be exercised with restraint. <u>See</u> <u>Chambers v.</u>
<u>NASCO, Inc.</u>, 501 U .S. 32, 43-46 (1991) (finding that the inherent authority of the court
should be exercised when an applicable rule or statute is "not up to the task."). Sanctions
available to a court, under its inherent power, include dispositive sanctions, awards of
attorneys' fees and expenses, contempt citations, disqualifications or suspensions of
counsel, and drawing adverse evidentiary inferences or precluding the admission of

---

[5] "Spoliation refers to the destruction or material alteration of evidence or to the failure to
preserve property for another's use as evidence in pending or reasonably foreseeable
litigation." <u>Pension Comm. of Univ. of Montreal Pension Plan v. Banc of America Sec.</u>,
685 F. Supp. 2d 456, 465 (S.D.N.Y. 2010).

evidence. Shepherd, 62 F.3d 1469 at 1475 (citing Gregory P. Joseph, Sanctions: The Federal Law of Litigation Abuse § 28(A) (2d ed. 1994)).

The court of appeals has subdivided these sanctions into two categories: (1) punitive or penal sanctions; and (2) issue-related sanctions. See Shepherd, 62 F.3d at 1478. Issue-related sanctions include adverse evidentiary determinations and preclusion of the admission of evidence. Id. (citing Marrocco v. Gen. Motors Corp., 966 F.2d 220, 225 (7th Cir. 1992); Jamie S. Gorelick, Stephen Marzen & Lawrence Solum, Destruction of Evidence § 3.16, at 118 (1989 & Supp. 1995)). The court of appeals has found that, "[b]ecause issue-related sanctions are fundamentally remedial rather than punitive," a court may impose such sanctions "whenever a preponderance of the evidence establishes that a party's misconduct has tainted the evidentiary resolution of the issue." Id. Punitive or penal sanctions require a higher burden of proof than issue-related sanctions. Shepherd, 62 F.3d at 1478. These sanctions are dispositive sanctions (dismissal or default judgment), contempt orders, awards of attorneys' fees, and the imposition of fines. Id. Because the court of appeals has found these to be fundamentally penal in nature, a court "must find clear and convincing evidence of the predicate misconduct" before imposing them. Id.

C. Sanctions Sought by Plaintiff

1. *Dispositive Sanctions*

Dispositive sanctions, such as dismissal of a lawsuit or default judgment, as a sanction for spoliation, falls within a court's inherent powers; however, they are particularly severe sanctions. Chambers, 501 U.S. at 43-45; see also Shepherd, 62 F.3d at 1475 (internal citations omitted). The court of appeals for the District of Columbia

Circuit has indicated that a dispositive sanction (*i.e.* dismissal or default) is a drastic

sanction that should "be taken only after unfruitful resort to lesser sanctions." <u>Ripalda v.

Am. Operations Corp.</u>, 977 F.2d 1464, 1466 (D.C. Cir. 1992) (finding in a case of

attorney misconduct that the district court's reliance on dismissal in the first instance was

an abuse of discretion) (internal citations omitted).  Thus, such a draconian sanction

"should be imposed only in the most severe of circumstances, and in general only after a

resort to lesser sanctions have proved [sic] ineffective." <u>United States ex rel. Miller v.

Holzmann</u>, No. 95-CV-1231, 2007 WL 781941, at *2 (D.D.C. Mar. 12, 2007).  Further,

for a court to impose a dispositive sanction, it must be "satisfied by clear and convincing

evidence that the accused party acted in bad faith." <u>Shepherd</u>, 62 F.3d at 1477.

### 2. *Attorneys' Fees*

The court of appeals has categorized attorneys' fees as a punitive or penal

sanction like dispositive sanctions.  <u>See</u> <u>Shepherd</u>, 62 F.3d at 1478.  As such, a court

"must find clear and convincing evidence of the predicate misconduct" before imposing

them. <u>Id.</u>

### 3. *Adverse Inference*

"There are three elements required to establish an adverse inference: (1) the party

having control over the evidence had an obligation to preserve it when it was destroyed

or altered; (2) the destruction or loss was accompanied by a culpable state of mind; and

(3) the evidence that was destroyed or altered was relevant to the claims or defenses of

the party that sought the discovery of the spoliated evidence, to the extent that a

reasonable factfinder could conclude that the lost evidence would have supported the

claims or defense of the party that sought it." <u>Mazloum v. District of Columbia Metro.

<u>Police Dep't</u>, 530 F. Supp. 2d 282, 291 (D.D.C. 2008) (Bates, J.) (citing <u>Thompson v. HUD</u>, 219 F.R.D. 93, 101 (D.Md. 2003)) (internal citations omitted).

The decision to give an adverse inference instruction to the jury as to a particular issue "is a question of law subject to de novo review; the choice of the language to be used in a particular instruction, however, is reviewed only for abuse of discretion." <u>Novak v. Capital Mgmt. & Dev. Corp.</u>, 570 F.3d 305, 315 (D.C. Cir. 2009) (quoting <u>Joy v. Bell Helicopter Textron, Inc.</u>, 999 F.2d 549, 556 (D.C. Cir. 1993)). More specifically, the trial court's refusal to permit the jury to infer from evidence that was not produced that its production would have been harmful to the non-producing party is reviewed for an abuse of discretion. <u>Czekaksi v. Lahood</u>, 589 F.3d 449, 454 (D.C. Cir. 2009). "Such an instruction 'is appropriate if it is peculiarly within the power of one party to produce the evidence and the evidence would elucidate a disputed transaction.'" <u>Id.</u> The party complaining of the missing evidence bears the burden of demonstrating that it is peculiarly in the opposing party's control. <u>Id.</u> at 455-56 (quoting <u>United States v. West</u>, 393 F.3d 1302, 1309 (D.C. Cir. 2005)).

But, as the court of appeals cautioned, care must be taken before an instruction premised on a missing witness or evidence is given, because "there is the danger that the instruction permitting an adverse inference may add a fictitious weight to one side or another of the case. When thus an instruction is sought which in a sense creates evidence from the absence of evidence, the court is entitled to reserve to itself the right to reach a judgment as wisely as can be done in all the circumstances . . . ." <u>Burgess v. United States</u>, 440 F.2d 226, 234 (D.C. Cir. 1970). While the facts will vary from case to case, it

is impossible to derive a definite guideline; instead "[t]he problem is one which must be left in large part to the sound judgment of the trial judge." Id. at 234 n.12.

### 4. *Preclusion*

The plaintiff has not requested preclusion as a sanction; however, preclusion is an issue-related sanction within the inherent powers of the court that may be applied in the case of spoliation. Preclusion can "ensure that a party will not be able to profit from its own failure to comply" with discovery rules or rules set forth by the Court. Butera v. District of Columbia, 235 F.3d 637, 661 (D.C. Cir. 2001) (citing Dellums v. Powell, 566 F.2d 231, 235 (D.C. Cir. 1977)). Preclusion can take two forms. It may be affirmative (a party is precluded from proving a fact) or negative (a party is precluded from disproving what the other party's evidence establishes). For example, preclusion could prevent defendant from arguing that plaintiff's work was dissimilar from the work of her comparator as a remedy for the alleged loss of evidence of her work product.

It must be recalled, however, that preclusion may have a dispositive effect on the case, as was illustrated in the Bonds case. See Bonds v. District of Columbia, 93 F.3d 801, 808 (D.C. Cir. 1996). In Bonds, the trial court's decision to preclude the defendant from presenting certain evidence was understandably deemed by the court of appeals to be, for all practical purposes, the entry of judgment against that party. Id. When preclusion has the effect of default judgment, then, under the law of this Circuit, it can be justified only by a clear and convincing showing of bad faith. See Shepherd, 62 F.3d at 1478. Even if preclusion does not have a dispositive effect, its consequences must be carefully considered before it is ordered.

Nevertheless, to guard against abuses of the judicial process, preclusion may be a necessary sanction. Id. Further, there is a deterrent value to preclusion, discouraging sloppiness, a significant consideration in a world where too many businesses still may not have efficient and useful record-keeping policies. Bonds, 93 F.3d at 808 (internal citations omitted). See also Weisberg v. Webster, 749 F.2d 864, 870-71 (D.C. Cir. 1984) (discussing the court's use of sanctions for deterrence as legitimate).

### III. Analysis

A. Evidence Was Lost

1. *Defendants' Obligation to Preserve*

Plaintiff argues that defendants' obligation to preserve arose upon receipt of plaintiff's letter, dated October 6, 2005, indicating that she intended to initiate litigation and requesting that electronically stored information be preserved. Pl. Mot. 16. Defendants argue that this letter, which it refers to as the preservation letter, did not create a duty to preserve, because the letter was not sent to plaintiff's employer. Defs. Opp. 9. Instead, defendants contend that plaintiff's service of the letter on her employer's parent company did not put anyone at SFX on notice of potential litigation. Id. Further, according to defendants, the letter was insufficiently detailed to impose a duty to preserve plaintiff's computer. Id.

I disagree with defendants. The letter sent by plaintiff's counsel on October 6, 2005, less than two weeks after plaintiff was terminated, clearly indicated that plaintiff: (1) regarded her termination to be wrongful; (2) had retained counsel; (3) believed her termination to be a violation of the District of Columbia Human Rights Act, Title VII of the Civil Rights Act, the Civil Rights Act of 1964, the Civil Rights Act of 1991, the

Worker Adjustment and Retraining Notification Act, the Americans with Disability Act, and the Family Medical Leave Act; and (4) believed the company's restructuring was a pretext to terminate plaintiff based on her medical status and a manifestation of disparate treatment based on her gender. Pl. Mot. 16 (citing Pl. Mot, Ex. A).  Further, plaintiff's counsel informed defendants that plaintiff might formally request, through discovery, e-mail and other electronic communications, word processing documents, spreadsheets, databases, calendars, telephone logs, contact manager information, internet usage files, and network access information. Id.  The letter concludes by asserting that "the company *and its subsidiaries and related entities* . . . must take every reasonable step to preserve this information until the final resolution of this matter." Id. (emphasis added).  The letter warns against routine data destruction and backup tape recycling policies. Id.

There is no ambiguity in this letter in regards to the plaintiff's intent to pursue her claims in court, if necessary, or to the type of data she requests defendants to preserve. Defendants' argument that by sending the letter to the parent company, rather than to plaintiff's employer SFX, is disingenuous.  The letter was sent to Clear Channel, SFX's parent company.  The reference line of the letter indicates that it is in regards to Clear Channel and SFX.  Moreover, Clear Channel is a named defendant in this case.  The defendants, *i.e.*, *all* defendants, were on notice and should have undertaken steps to preserve potentially relevant information.

### 2. *Defendants Failed to Preserve Evidence*

The fact that defendants failed to preserve evidence has been established. Initially, in response to discovery requests, plaintiff was told that no responsive documents existed, that her computer had been thrown away, and that her file on the

server was empty. D'Onofrio III, 256 F.R.D. at 278. It was at this point that plaintiff sought the assistance of a forensic expert.

### 3. *Defendants' Remedial Efforts Restored Some Evidence That Was Lost*

Pursuant to the Court's order, defendants made their servers available to plaintiff's expert for a forensic exam that yielded hundreds of thousands of documents. D'Onofrio II, 254 F.R.D. at 133. Up to $10,000 of the cost of this search was paid for by defendants, who then executed a privilege review of these thousands of documents. D'Onofrio III, 256 F.R.D. at 278. As a result of defendants' efforts, some of the lost documents were recovered, and the loss of evidence was not total.

### B. Punitive or Penal Sanctions

#### 1. *Default Is Not An Appropriate Sanction In This Case*

As explained earlier, in the D.C. Circuit, a party seeking a dispositive sanction because of her opponent's loss or destruction of evidence must establish, by clear and convincing evidence, that the accused party acted in bad faith. See Shepherd, 62 F.3d at 1477.

It is clear to me that plaintiff's demand that she be awarded default judgment on her Equal Pay Act claim fails to meet this standard. While it is evident that defendants failed to act to preserve evidence, plaintiff has not shown, by clear and convincing evidence, that defendants acted in bad faith, *i.e.*, with a purposeful intent to destroy evidence. See, e.g., Shepherd, 62 F.3d at 1477. Furthermore, if the Court can find a less drastic sanction than dismissal or default that is fully effective, it should impose that lesser sanction. Bonds, 93 F.3d at 808; Ripalda, 977 F.2d at 1466. It is yet to be determined whether plaintiff is entitled to any other issue-related sanction, such as an

adverse inference or defendants' being precluded from presenting certain evidence. Until the plaintiff's entitlement to such sanctions is first addressed and resolved, dismissal cannot, under this Circuit's law, even be considered. To award plaintiff a default judgment without considering the efficacy of less drastic remedies violates this Circuit's law in the most obvious way.

## 2. *Attorneys' Fees*

The court of appeals has categorized attorneys' fees as a punitive or penal sanction like dispositive sanctions. See Shepherd, 62 F.3d at 1478. As such, a court "must find clear and convincing evidence of the predicate misconduct" before imposing them. Id. The evidence in this case of the predicate misconduct is simply not clear and convincing.

In other prominent spoliation cases, the lost evidence is gone forever and the consequences of its loss are a function of that reality. To say of this case, however, that it involves the loss of evidence is to have Hamlet without the Dane. To take that metaphor a step further, it stops the play after the First Act. This case involves the apparent loss of evidence, a diligent and expensive attempt to retrieve what was lost from other sources, and a bitter, irreconcilable dispute as to what may still be missing and its relevance to plaintiff's claims.

I can first say that it appears to me that the award of attorneys' fees now, under my inherent power, would be an abuse of discretion. While it is certainly true that plaintiff has expended significant resources to litigate the consequences of the loss of the information at issue, it is equally true that defendants have expended a veritable king's ransom on the forensic search of the Legato server and an examination of its contents for

17

relevance and privilege, all in an effort to restore what was lost. I have presided over this case for three years and am personally familiar with the high yield of documents from the forensic search, because I reviewed thousands of e-mails claimed to be privileged. Having done that, and having a general familiarity with the extraordinary amount of information that a forensic search yields and the consequential costs of privilege review, I can say without hesitation that I fully credit defense counsel's assertion that the search, review, and discovery disputes in this single-plaintiff case has cost over $1 million. The heart and soul of any sanction is its proportion to the harm done and the prejudice sustained. Bonds, 93 F.3d at 808 (finding that "[t]he choice of sanction should be guided by the 'concept of proportionality' between offense and sanction."). Given what defendant has already expended, adding attorneys' fees under the Court's inherent power to sanction crosses the line from fairness to disproportional punishment. That, put simply, is to place Pelion upon Ossa, and I will not do it.[6]

Rule 37 of the Federal Rules of Civil Procedure awards, except in certain circumstances, attorneys' fees to a moving party whose motion to compel discovery is granted, unless the opposing party establishes substantial justification for its position. See Fed. R. Civ. P. 37(a)(5)(A). The motion before me is one for sanctions and not to compel. The Rule just cited is therefore inapplicable. I appreciate that I must resolve the parties' cross-motions for sanctions related to plaintiff's Second Motion to Compel Discovery and for Sanctions [#37], which seeks attorney fees. See D'Onofrio I, 247 F.R.D. at 55 (postponing the parties' cross-motion for sanctions until the conclusion of

---

[6] This is a statutory fee-shifting case; however, this opinion speaks only to the award of attorneys' fees in the exercise of the Court's inherent powers.

the evidentiary hearing).  The parties will be permitted an opportunity to be heard on the issue of attorneys' fees available under Rule 37 as to the earlier motion, once all other motions are resolved.  I hope that resolution of all the other issues will finally move this case to trial, and I would prefer not to interfere with that process until I have first resolved the issues pertaining to <u>Plaintiff's Motion for Sanctions and Spoliation Instruction/ Inference</u> [#123].

C. <u>Issue-related Sanctions</u>

Having found punitive sanctions to be unwarranted in this case, I turn now to issue-related sanctions.

1. *Adverse Inference*

The plaintiff has moved for an adverse inference instruction. Pl. Mot. 1. Generally, an adverse inference instruction would tell the jury that it may infer from the loss of the evidence that, had the evidence been produced, it would have been detrimental to the party that lost it.  Before ordering such a sanction, however, this Court must first establish what was lost and what was recovered.  From that, the Court can craft a balanced instruction.

The plaintiff would have the Court instruct the jury to apply an adverse inference to the lost evidence, without qualification; but, that instruction is half true.  In this case, there were remedial efforts taken to restore the lost evidence.  The proper instruction, therefore, would have to take into account that, while certain information was lost, defendant made an effort to find it from another source, and that the alternative source yielded some evidence.  The problem, of course, is that the parties do not agree about what remains lost.  They agree even less about the significance of what was lost.

Plaintiff says that there is still much evidence that was lost, and it is significant. Defendants say that, given what was recovered, nothing was lost, but if any thing was, it is insignificant.

Moreover, in the instant case, plaintiff cannot establish by clear and convincing evidence that defendants acted in bad faith; therefore, any adverse instruction would be based on conduct that is not in bad faith. When a party, for example, has acted negligently and lost evidence, the inference does not flow naturally from the facts. When a person purposefully destroys evidence, it is reasonable to infer that he did so to keep it from being used against him. That is the historical basis of the doctrine and the maxim that everything is construed against the spoliator.[7] When, as in this case, it is not a party's bad faith that leads to the destruction of evidence, its actions hardly bespeak an intention worthy of such a harsh punishment because the logical premise of the instruction– that the spoliator must have destroyed the evidence to keep any one from seeing it– is not there. Without clear and convincing evidence of bad faith, all that is known or can be said is that a party was negligent, sloppy, or even reckless; a court cannot logically infer the intent of what a party did from its behavior because its behavior was unthinking– it was negligent and sloppy. If the jury is, nevertheless, instructed to draw an inference that the lost evidence would have been detrimental, it can only be because the interests in righting the evidentiary balance and in the deterring of others trumps the lacuna that a logician would detect in the logic of giving such an instruction.

---

[7] <u>Armory v. Delamirie</u>, (1721) 93 Eng. Rep. 664 (K.B.) (directing the jury to "presume the strongest against [defendant]," who had lost the evidence).

The problem, however, in this case is that imbalance in the evidence due to the loss is an unknown quantity and of an unknown value as to which the parties do not agree.

## 2. *Preclusion*

Preclusion may provide an approach that flows more logically when the destruction of evidence is not in bad faith. If I issued the sanction of preclusion in this case, the jury would not be instructed to draw an inference. Instead, defendants would be prohibited from presenting certain evidence because their behavior caused the loss of that evidence. Regardless of any intent, if the defendants destroyed evidence, plaintiff would be prevented from using it. Thus, the sanction of preclusion disables defendants from relying on the loss they caused.

While in this case the loss of evidence was followed by a genuine effort to find it, preclusion may be the most appropriate way to right evidentiary balance that was upset by the loss. On the other hand, defendants may be able to show, that, because of their efforts to find the lost information or otherwise, plaintiff has made no legitimate showing that the lost evidence would have helped her. Thus, while preclusion may still be justified on the basis of deterrence, the absence of any showing of prejudice may offend this Circuit's insistence that any litigation sanction be calibrated as carefully as possible to the prejudice suffered and the harm done. The problem, again, is that the Court does not know what remains lost and whether the lost evidence had significance for the case; thus, I cannot determine whether preclusion would be carefully calibrated enough of a sanction to satisfy the standard set by the court of appeals.

### 3. *Need for an Evidentiary Record*

In light of the complexity and nuance required to craft a balanced sanction, I am convinced that I must predicate any ruling or recommendation to Judge Bates on the strongest possible evidentiary record. It is only after establishing the prejudice the plaintiff suffered that any resulting sanction will fairly address that prejudice, consistent with this Circuit's insistence that any sanction imposed be a function of the prejudice done to a party by its offending opponent. <u>Bonds</u>, 93 F.3d at 808. Accordingly, I will order an evidentiary hearing to address the factual issues that I will now identify. The parties differ about several factual issues that bear directly on what, if any, sanction should be awarded. They fall roughly into two categories, those that pertain to the physical contents of plaintiff's office when she left her employ and the other with the loss of electronically stored information on the computer she used. I believe the following issues are still in dispute:

(1) What were the contents of plaintiff's office, and what was in the file drawers or cabinets immediately outside her office, on the day of her departure?

(2) When plaintiff returned to retrieve items from her office, was she precluded from taking whatever she wanted?

(3) Did any one supervise plaintiff as she removed items from her office?

(4) What was stored on plaintiff's computer that was not also on a network server? This would pertain to what is usually called her "local drive," *i.e.*, the part of her computer where information was stored that was not also stored on a network server.

(5) Of the contents of plaintiff's computer when she left, what should have been captured on some other media, whether the local server or the Legato server?

(6) When plaintiff's computer was disposed of, did the person disposing it know of her lawsuit?

(7) What was recovered from the DC server that duplicates information relevant to this lawsuit that was in plaintiff's office or on her computer?

(8) What was never recovered from the DC server that was relevant to this lawsuit?

(9) What was recovered from the Legato server that duplicates information relevant to this lawsuit that was in plaintiff's office or on her computer?

(10) What was never recovered from the Legato server that was relevant to this lawsuit?

Counsel will meet and confer first to establish whether, in their view, there are additional factual issues that must be resolved. If they agree that there are, they may jointly propose them as additions in a jointly filed document. If, on the other hand, they cannot agree, either party may propose additional issues, and I will consider including them.

As to all factual issues, I expect counsel to make a genuine effort to eliminate any need to hear evidence as to facts that are not in dispute. Thus, counsel will also meet and confer and attempt to reach agreement as to facts not in dispute and, if they can agree, jointly file a statement of their agreement. A separate Order specifies the deadlines by which all of this must be accomplished.

I appreciate that plaintiff seeks additional discovery as to the merits of the case itself.  See Plaintiff's Show Cause Response to Support the Enlargement of Time for Discovery [#127].  Action on that request will be stayed until the hearing is held.

**IV. Conclusion**

For the reasons stated herein, I recommend that plaintiff's motion for the sanction of default judgment in regards to her Equal Pay Act claim be denied.  Further, an evidentiary hearing to address other sanctions sought by plaintiff in her motion will be held.  A separate order accompanies this Memorandum Opinion.

In this Memorandum Opinion, I have spoken to plaintiff's demand that she be awarded default judgment.  That portion of the Memorandum Opinion must therefore be deemed a Report and Recommendation.  As to that portion, **plaintiff is reminded that failure to file timely objections to the findings and recommendations set forth in this report may waive her right of appeal from an order of the District Court adopting such findings and recommendations.  See Thomas v. Arn, 474 U.S.140 (1985).**


_____
JOHN M. FACCIOLA
UNITED STATES MAGISTRATE JUDGE